1  JESSICA L. GRANT (SBN 178138)
   JONATHAN A. PATCHEN (SBN 237346)
2  TAYLOR & COMPANY LAW OFFICES, LLP
   One Ferry Building, Suite 355
3  San Francisco, California  94111
   Telephone:  (415) 788-8200
4  Facsimile:  (415) 788-8208
   E-mail: jgrant@tcolaw.com
5  E-mail: jpatchen@tcolaw.com

6  Attorneys for Defendant SOFTSCAPE, INC.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 OAKLAND DIVISION

11

12  SUCCESSFACTORS, INC., a Delaware       Case No.: C-08-1376 (CW)
    corporation,
13                                         **MEMORANDUM OF POINTS AND**
              Plaintiff,                   **AUTHORITIES IN SUPPORT OF**
14                                         **DEFENDANT SOFTSCAPE, INC.'S**
    v.                                     **RESPONSE TO ORDER TO SHOW**
15                                         **CAUSE AND IN OPPOSITION TO**
    SOFTSCAPE, INC., a Delaware corporation; **MOTION OF PLAINTIFF**
16  and DOES 1-10, inclusive,              **SUCCESSFACTORS, INC. FOR**
                                           **EXPEDITED DISCOVERY**
17            Defendant.
                                           **[Declaration of Susan Mohr filed herewith]**
18
                                           Date:     March 27, 2008
19                                         Time:     2:00 p.m.
                                           Place:    Courtroom 2
20
                                           Honorable Claudia Wilken
21

22

23

24

25

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

III.  ARGUMENT ....................................................................................................... 3

A.    This Court Should Deny A Preliminary Injunction Because Plaintiff Has Failed To Demonstrate Either Imminent Irreparable Injury Or Any Probability Of Success On The Merits ................................................................................................................. 3

    1.    The Imminent Irreparable Injury Prerequisite Is Not Satisfied By Plaintiff's Claim Of Past Harm And Continuing Effects Thereof ........................................... 3

        (a)  SuccessFactors' Sole Reliance On Past Conduct To Establish Irreparable Injury Is Not Sufficient to Justify A Preliminary Injunction ................................................................................................... 4

        (b)  Even If There Is The Possibility of Continuing Harms To SuccessFactors From the Distribution of the Presentation, That Does Not Satisfy the Irreparable Injury Requirement ..................................... 5

        (c)  Because Softscape Does Not Intend to Dissemenate the Presentation, There Is No Basis for a Preliminary Injunction ..................... 7

        (d)  The Presumption Of An Irreparable Injury Does Not Apply Here .............. 8

    2.    SuccessFactors' Claims Have Very Little Probability of Success on the Merits Because SuccessFactors Fails to Establish Key Threshold Elements .......... 9

        (a)  Because SuccessFactors' Alleged Costs To Track Down the Author of the Presentation Does Not Satisfy The Threshold Requirement of $5,000 in Loss, The Computer Fraud and Abuse Act Claim Has No Chance of Success on the Merits ................................................................. 9

        (b)  Because Softscape's Only Use of SuccessFactors' Trademarks Was Purely Internal, There Is No Probability of Success on the Lanham Act Claim For Trademark Infringement. ................................................... 11

        (c)  There is No Probability of Success for the False Advertising Claim Under the Lanham Act Because Softscape Did Not Distribute the Presentation ............................................................................................... 12

B.    Even If This Court Were Inclined To Continue The TRO, It Is Overbroad And Should Be Limited ................................................................................................. 13

C.    Because Plaintiff Is Seeking Full Of Discovery In An Unreasonable Timeframe, There Is No Justification For Expedited Discovery ................................................ 14

IV.   CONCLUSION ................................................................................................... 18

**TABLE OF AUTHORITIES**

**CASES**

*1-800 Contacts v. WhenU.com, Inc.,*
    414 F.3d 400 (2d Cir. 2005)..................................................................... 11, 13

*ACT-UP v. Walp,*
    755 F. Supp. 1281 (M.D. Pa. 1991) ........................................................ 4

*Alabama v. United States Army Corps of Engineers,*
    424 F.3d 1117 (11th Cir. 2005).............................................................. 4

*Arthur J. Gallagher & Co., Inc. v. Edgewood Parts. Ins. Ctr.,*
    2008 U.S. Dist. LEXIS 8924 *7 n.4 (N.D. Cal. Jan. 23, 2008) ............ 4

*Better Packages, Inc. v. Zheng,*
    2006 U.S. Dist. LEXIS 30119 (D.N.J. May 17, 2006) ....................... 16

*Buckingham Corp. v. Karp,*
    762 F.2d 257 (2d Cir. 1985)................................................................. 5, 6

*Campbell Soup Company v. Conagra Inc.,*
    977 F.2d 86 (1992) ............................................................................ 6, 7, 8

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ............................................................................... 4

*Cognotec Servs. v. Morgan Guar. Trust Co.,*
    862 F. Supp. 45 (S.D.N.Y. 1994)........................................................ 12

*Cotter v. Desert Palace, Inc.,*
    880 F.2d 1142 (9th Cir. 1989)............................................................. 3

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) ............................................................................ 8

*Freecycle Network, Inc. v. Oey,*
    505 F.3d 898 (9th Cir. 2007)............................................................... 12

*GoTo.com v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000)............................................................. 8

*Independence Blue Cross v. Health Sys. Integration, Inc.,*
    1997 U.S Dist. LEXIS 781 (E.D. Pa. Jan. 29, 1997) ......................... 17

*Local Union No. 884 v. Bridgestone/Firestone, Inc.,*
    61 F.3d 1347 (8th Cir. 1995).............................................................. 4

*Lucero v. Detroit Public Schs.,*
    160 F. Supp. 2d 767 (E.D. Mich. 2001) .............................................. 5

*Mattel Inc. v. Walking Mountain Products,*
    353 F.3d 792 (9th Cir. 2003) .............................................................. 10, 14

TAYLOR & CO.
LAW OFFICES, LLP

ii.

*Nat'l League of Junior Cotillions, Inc. v. Porter,*
    Copy L. Rep. (CCH) ¶ 29,433 at *19 n.14 ........................................................................ 8

*Nat'l Wildlife Fed. v. Burlington Northern RR,*
    23 F.3d 1508 (9th Cir. 1994) .............................................................................................. 6

*Nelson v. NASA,*
    512 F.3d 1134 (9th Cir. 2008) ............................................................................................. 3

*Nexans Wires S.A. v. Sark-USA, Inc.,*
    2004 U.S. Dist. LEXIS 9712, at *25-26 (S.D.N.Y. May 27, 2004) .................................. 10

*Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network,*
    1998 U.S Dist. LEXIS 10511 *6 (E.D. Pa. July 15, 1998) .............................................. 16

*Pirtek USA, LLC v. Zaetz,*
    408 F. Supp. 2d 81 (D. Conn. 2005) ................................................................................... 7

*Qwest Commc'n Int'l, Inc. v. World-Quest Networks, Inc.,*
    213 F.R.D. 418 (D. Colo. 2003) .................................................................................. 15, 16

*Rice v. Fox Broad. Co.,*
    330 F.3d 1170 (9th Cir. 2003) .......................................................................................... 13

*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,*
    997 F.2d 484 (8th Cir. 1993) .............................................................................................. 5

*Siegel v. LePore,*
    234 F.3d 1163 (11th Cir. 2000) ......................................................................................... 4

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) .............................................................................................. 3

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997) .......................................................................................... 13

*Thurmond v. Compaq Computer Corp.,*
    171 F. Supp. 2d 667 (E.D. Tex 2001) ............................................................................... 10

*Tyco Int'l (US) v. Does,*
    2003 U.S. Dist. LEXIS 25136, at *8-9 (S.D.N.Y. Aug. 29, 2003) ..................................... 9

*United States v. Oregon State Med. Soc.,*
    343 U.S. 326 (1952) ........................................................................................................... 6

*United States v. Schiff,*
    379 F.3d 621 (9th Cir. 2004) ............................................................................................ 14

*Upper Hudson Planned Parenthood, Inc. v. Doe,*
    836 F. Supp. 939 (N.D.N.Y. 1993) .................................................................................... 4

*Valu Eng'g, Inc. v. Nolu Plastics, Inc.,*
    732 F. Supp. 1024 (N.D. Cal. 1990) ................................................................................... 8

TAYLOR & CO.
LAW OFFICES, LLP

iii.

*Vision Sports, Inc. v. Melville Corp.,*
      888 F.2d 609 n.3 (9th Cir. 1989) ........................................................................... 8


## STATUTES

15 U.S.C. § 1114(1) ...................................................................................................... 11

15 U.S.C. § 1125(a)(1) .................................................................................................. 12

15 U.S.C. § 1127 ........................................................................................................... 11

18 U.S.C. § 1030(a)(5)(B)(i) ........................................................................................... 9


## OTHER AUTHORITIES

Louis Altman, *4 Callmann on Unfair Competition, Trademarks and
      Monopolies* § 22:25 n.1 (4th ed. 2004) ......................................................... 12

Restatement (3d) of Agency § 7.03 ............................................................................... 11

TAYLOR & CO.
LAW OFFICES, LLP

iv.

# I.    **INTRODUCTION**

Plaintiff SuccessFactors, Inc. ("SuccessFactors") and defendant Softscape, Inc. ("Softscape") are competitors in the human resource software industry.  On March 4, 2008, approximately twenty-five SuccessFactors customers allegedly received an anonymous e-mail from hcmknowledge2008a@gmail.com.  Attached to the e-mail was an unflattering 43-page PowerPoint presentation about SuccessFactors labeled the "Naked Truth."

Without contacting Softscape, SuccessFactors leapt to the conclusion that the presentation was a "hit piece" generated by Softscape and that it had been purposely (albeit anonymously) provided to SuccessFactors' customers by Softscape as part of a competitive marketing campaign.  SuccessFactors filed suit on March 11, 2008, and immediately sought a Temporary Restraining Order ("TRO"), preliminary injunction, and expedited discovery.

As has become readily apparent, however, SuccessFactors made a mistake.  In responding to SuccessFactors' request for a TRO, Softscape conceded that it had produced the PowerPoint presentation, but that it was intended for *internal* use only.  Softscape never authorized the release or publication of the presentation and did not participate in its circulation.  The publication was never used in any Softscape external sales meetings and was *never* meant to be published or circulated.

Nonetheless, SuccessFactors continues to push for a preliminary injunction and expedited discovery.  This effort is legally unsound, however, because SuccessFactors is seeking a preliminary injunction as a remedy for *past* actions.  There is no hint, threat or evidence in this case of any continued conduct from Softscape, the anonymous e-mailer, or any other person sufficient to justify SuccessFactors' request for a preliminary injunction and expedited discovery.

# II.    **STATEMENT OF FACTS**

Defendant Softscape develops and markets human resource management software.  Declaration of Susan Mohr ("Mohr. Decl."), Exhibit A, ¶ 2.  SuccessFactors and Softscape are competitors in this industry.  Mohr Decl., ¶ 3.

On or about March 4, 2008, approximately twenty-five customers of plaintiff

1  SuccessFactors allegedly received an anonymous e-mail sent from mailbox
2  hcmknowledge2008a@gmail.com. Attached to the e-mail was a 43-page PowerPoint presentation
3  (the "Presentation") entitled the "Naked Truth." The Presentation used the logo of
4  SuccessFactors, included screenshots from various parts of SuccessFactors's website, and
5  presented information that was unfavorable to SuccessFactors. This circulation occurred only
6  once. There do not appear to have been any additional e-mails regarding SuccessFactors sent from
7  that e-mail address, nor have there been other similar documents circulated by anyone connected
8  with Softscape. Mohr Decl., ¶ 4.

9        On March 11, 2008, SuccessFactors filed suit. Claiming a host of injuries from
10  Softscape's alleged distribution of the Presentation, as well as from Softscape's alleged accessing
11  of SuccessFactors' website, SuccessFactors sought a TRO, expedited discovery and a preliminary
12  injunction.

13        Softscape conceded that it had prepared the Presentation, and that the document had been
14  intended only for internal use by Softscape's sales force. Mohr Decl., Ex. A. ¶ 4. Softscape did
15  not authorize the release or publication of the Presentation, and Softscape did not participate in the
16  circulation of the Presentation, either directly or indirectly, to SuccessFactors' customers. Mohr
17  Decl., ¶ 5. Softscape does not, and will not, use the Presentation in any external sales or
18  marketing efforts, has never authorized its release, and considers the Presentation to be its
19  confidential strategic business information. *Id*. Indeed, when Softscape first learned of the
20  Presentation's release, the CEO of Softscape sent an e-mail to all sales staff confirming the
21  confidentiality of the document and instructing them that it was not to be released outside of the
22  company. Mohr Decl., Ex. B, ¶ 6.

23        At this point, Softscape does not know how or by whom the Presentation was released.
24  Mohr Decl., ¶ 7. Softscape does not take the release of the Presentation lightly, however.
25  Softscape's Code of Conduct, for example, provides that "No employee shall disclose the
26  Company's confidential information to an unauthorized third party or use the Company's
27  confidential information for his or her own personal benefit." *Id*. Softscape consistently enforces

28

TAYLOR & CO.
LAW OFFICES, LLP

2.

1 | the terms of its employment and confidentiality policies, and violators are subject to discipline up

2 | to, and including, termination.  Mohr Decl., ¶ 8.  Softscape has even sued employees and former

3 | employees for breaches of its employment agreement.  *Id.*

4 |       On March 13, 2008, the Court granted in part SuccessFactors' application for a TRO and

5 | ordered a show cause hearing for March 27, 2008.

6 | ### III.    <u>ARGUMENT</u>

7 | **A.    This Court Should Deny A Preliminary Injunction Because Plaintiff Has Failed To**

8 | **Demonstrate Either Imminent Irreparable Injury Or Any Probability Of Success On The Merits**

9 |       To obtain preliminary injunctive relief, SuccessFactors must demonstrate either "(1) a

10 | likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious

11 | questions going to the merits were raised and the balance of hardships tips sharply in its favor. The

12 | two prongs are not separate tests but rather extremes of a single continuum, so the greater the

13 | relative hardship to the party seeking the preliminary injunction, the less probability of success

14 | must be shown." *Nelson v. NASA*, 512 F.3d 1134, 1141 (9th Cir. 2008) (internal citations,

15 | quotation marks, and alterations omitted).

16 |       The minimum showing for a preliminary injunction is at least "a fair chance of success on

17 | the merits, or questions serious enough to require litigation" and at least "a significant threat of

18 | irreparable injury." *Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1144 (9th Cir. 1989) (internal

19 | citation and quotation marks omitted).  Here, because there is no threat of irreparable injury (and

20 | hence no hardship to SuccessFactors), and there is relatively little probability of success on the

21 | merits, SuccessFactors' request for a preliminary injunction must be denied.

22 |     **1.    The Imminent Irreparable Injury Prerequisite Is Not Satisfied By Plaintiff's**

23 | **Claim Of Past Harm And Continuing Effects Thereof**

24 |       The core purpose of a preliminary injunction is to prevent imminent irreparable injury in

25 | the time between the motion and trial.  That is why this Court may grant a preliminary injunction

26 | only if SuccessFactors "demonstrate[s] a *significant* threat of irreparable injury." *Simula, Inc. v.*

27 | *Autoliv, Inc.,* 175 F.3d 716, 725 (9th Cir. 1999) (emphasis added).  If SuccessFactors cannot show

28 |

TAYLOR & CO.
LAW OFFICES, LLP

3.

1    the threat of irreparable injury, then a preliminary injunction is improper *even if* SuccessFactors

2    proves the likelihood of success on the merits. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.

3    2000); *see also Local Union No. 884 v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir.

4    1995).

5         SuccessFactors does not allege, much less demonstrate, that there is any threat – much less

6    a *significant* threat – of imminent irreparable injury.  Instead, SuccessFactors' "injury" is, at best,

7    the continuing effects of a single act of distribution on March 4, 2008.  Because SuccessFactors

8    cannot establish that there is a risk of imminent irreparable injury, there is no basis for a

9    preliminary injunction.

10        **(a)  SuccessFactors' Sole Reliance On Past Conduct To Establish Irreparable**
          **Injury Is Not Sufficient to Justify A Preliminary Injunction**

11

12        Past harm is insufficient to establish the threat of irreparable injury.  *See City of Los*

13   *Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  In *Lyons*, the Supreme Court held that a preliminary

14   injunction against the use of police chokeholds was improper because the plaintiff only showed

15   that he had been subject to a chokehold in the past and provided no evidence of any "real or

16   immediate threat" of being "wronged again." *Id.* at 111.  *See also Loya v. INS*, 583 F.2d 1110,

17   1114 (9th Cir. 1978) ("Injunctive relief is designed to deter future misdeeds, not to punish for past

18   conduct ... As a matter of law, therefore, plaintiffs could not obtain an injunction as to alleged past

19   violations of their rights."); *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117,

20   1134 (11th Cir. 2005) ("Past harm  ... does not fall within [the] window [between ruling on the

21   preliminary injunction and trial], and therefore cannot serve as a basis for granting a preliminary

22   injunction").

23        As this court has recognized, one isolated past incident does not satisfy the requirement of

24   present or future injury. *See Arthur J. Gallagher & Co., Inc. v. Edgewood Parts. Ins. Ctr.*, 2008

25   U.S. Dist. LEXIS 8924 *7 n.4 (N.D. Cal. Jan. 23, 2008) (holding in a misappropriation of

26   confidential business information case that "this one incident is insufficient to demonstrate a threat

27   of present or future harm") (citing *ACT-UP v. Walp*, 755 F. Supp. 1281, 1285-86 (M.D. Pa. 1991)

28

1   (denying preliminary injunction based on an "isolated incident performed by a state police officer

2   who had overstepped his authority.")); *see also Upper Hudson Planned Parenthood, Inc. v. Doe*,

3   836 F. Supp. 939, 959 (N.D.N.Y. 1993) ("a court may not rest a finding of irreparable harm solely

4   on the past conduct of the parties.").

5        Here, SuccessFactors relies exclusively on Softscape's alleged past conduct to justify the

6   preliminary injunction.  SuccessFactors alleges that Softscape accessed its public website and

7   webinars *in the past*, accessed a password-protected demo site *in the past*, and released the

8   Presentation (only once) *in the past*. *See* Plaintiff's Application for TRO (Docket No. 15) at pp. 4-

9   7.  There is no allegation here, much less a hint of any evidence, that Softscape may undertake any

10  similar conduct in the future.  As SuccessFactors concedes, "the preliminary injunction motion is

11  about one document: the Presentation." *See* Plaintiff's Application for Expedited Discovery

12  (Docket No. 12) at p. 5.  SuccessFactors' entire discussion of irreparable injury focuses on the

13  past. *See* Application for TRO at p. 8.  Even when apprised that Softscape would "assert that [the

14  Presentation] was intended as an internal document," SuccessFactors never alleged *any* threat of

15  future acts by Softscape. *See* SuccessFactors' Supplemental Statement in Support of TRO

16  (Docket No. 22) at pp. 2-3 ("Supp. Statement").  Thus, no matter how reprehensible Softscape's

17  *past* conduct is alleged to have been, that *past* conduct provides no basis for a preliminary

18  injunction. *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir. 1985) (even if the defendant's

19  conduct "may have been reprehensible, inequitable conduct alone cannot justify the entry of a

20  preliminary injunction.").

21            **(b)    Even If There Is The Possibility of Continuing Harm To**
                      **SuccessFactors From the Distribution of the Presentation, That Does**
22                    **Not Satisfy the Irreparable Injury Requirement**

23        Not only is past conduct insufficient to establish the threat of irreparable injury, but the

24  continuing effects of that past conduct cannot establish the threat of immediate or future

25  irreparable injury. *See, e.g., Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997

26  F.2d 484, 489-90 (8th Cir. 1993) (affirming the district court's conclusion that "present harm"

27  from acts that occurred before the preliminary injunction motion were "not sufficient" to justify

28

TAYLOR & CO.
LAW OFFICES, LLP

5.

1  some additional corrective action through a preliminary injunction); *Lucero v. Detroit Public*

2  *Schs.*, 160 F. Supp. 2d 767, 802 (E.D. Mich. 2001) (same). As the Supreme Court has held, "the

3  sole function of an action for injunction is to forestall *future violations.*" *United States v. Oregon*

4  *State Med. Soc.*, 343 U.S. 326, 333 (1952) (emphasis added); *Nat'l Wildlife Fed. v. Burlington*

5  *Northern RR*, 23 F.3d 1508, 1511 (9th Cir. 1994) (noting that plaintiff must show "a reasonable

6  likelihood of future violations" of the law in question).

7      The Second Circuit's decision in *Buckingham Corp.*, 762 F.2d at 260-63, illuminates this

8  rule. In that case, a former employee used confidential documents to establish a competing

9  business. The former employer obtained a preliminary injunction against the former employee.

10  The Second Circuit reversed, holding the former employee's past conduct (solicitation of suppliers

11  and use of the documents) was insufficient to justify the preliminary injunction. Importantly, the

12  court held that the loss of two suppliers was "purely past injury" even though "the damage flowing

13  from the injury, in terms of lost profits, may last well into the future." *Id.* at 262. Thus, past

14  injury with current effects "does not constitute a threatened irreparable ongoing or future injury

15  that [a preliminary injunction] could forestall." *Id.*

16      Here, the most that SuccessFactors' evidence purports to show is continuing damage

17  flowing from the singular dissemination of the Presentation. *See* Application for TRO at p. 7.

18  SuccessFactors makes no claim of any threat of future irreparable injury, and any continuing

19  alleged damage to SuccessFactors from the March 4, 2008 distribution of the Presentation cannot

20  properly be addressed or remedied by a preliminary injunction.

21      This conclusion is confirmed by the Third Circuit's ruling in *Campbell Soup Company v.*

22  *Conagra Inc.*, 977 F.2d 86 (1992). In *Campbell Soup*, a former employee of Campbell divulged

23  trade secrets to her new employer ConAgra. ConAgra obtained a patent based in part on the trade

24  secrets, and the public patent application disclosed the trade secrets. Campbell sued ConAgra and

25  sought a preliminary injunction to prevent disclosure of the trade secrets. The Third Circuit held

26  that the district court erred in granting the preliminary injunction because there was no "immediate

27  irreparable harm ... at this time in light of the fact that ConAgra has *already* revealed" the trade

28

TAYLOR & CO.
LAW OFFICES, LLP

6.

1    secret in the patent application.  *Id.* at 16.  The court concluded that "further disclosure of

2    something already revealed cannot" establish immediate irreparable harm.  *Id.*

3           Again, because all of the harm SuccessFactors alleges arises from what has already been

4    disseminated, there is no cause for an injunction to limit what has already been revealed.  *See*

5    *Pirtek USA, LLC v. Zaetz*, 408 F. Supp. 2d 81, 86 (D. Conn. 2005) (holding that only continuing

6    "infraction[s]" – as opposed to past infractions – were the proper subject of a preliminary

7    injunction).

8           **(c)    Because Softscape Does Not Intend to Dissemenate the Presentation,**
               **There Is No Basis for a Preliminary Injunction**

9

10          Beyond SuccessFactors' inability to demonstrate an immediate irreparable injury,

11   Softscape's assurance that it neither attempted nor intended to release the Presentation

12   affirmatively rebuts any risk of future irreparable injury.  Softscape has provided sworn

13   declarations that it did not authorize or intend to release the Presentation.  Softscape has further

14   assured this Court that it will not engage in such conduct in the future and that it does not, and will

15   not, use the Presentation in any of its external sales presentations.  Nonetheless, SuccessFactors

16   continues to press for a preliminary injunction.  Despite the authority that "injunctions will not be

17   issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties,"

18   *Campbell*, 977 F.2d at 17-18, this is precisely what SuccessFactors seeks.  *See* Supp. Statement at

19   p. 2 (labeling Softscape's assurances as "cold comfort" and seeking the reassurance of a "court

20   order.").  Putting to one side the illogical contention that whoever distributed the Presentation in

21   direct contravention of Softscape's policies (with the risk of termination and/or being sued) would

22   somehow now heed those same dictates in the face of a court order, because Softscape is not

23   attempting and does not intend to circulate the same or similar types of presentations (and

24   SuccessFactors does not contend otherwise), there is simply no justification for a preliminary

25   injunction.  No "injunction [will] be issued to restrain one from doing what he *is not attempting*

26   and *does not intend* to do."  *Campbell*, 977 F.2d at 18 (internal quotation marks omitted)

27   (emphases added).

28

1        **(d)**     **The Presumption Of An Irreparable Injury Does Not Apply Here**

2       While it may be true that, for some trademark cases, establishing a probability of success

3 on the merits may allow a presumption of irreparable injury, *see Vision Sports, Inc. v. Melville*

4 *Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989), that rule does not apply in this case for two reasons.

5       First, and most importantly, SuccessFactors confuses the presumption that the injury is

6 irreparable with the requirement that there be imminent injury. If the presumption of irreparability

7 applies at all, it only applies in cases of continuing (or threatened) conduct. In fact, unlike this

8 case that is focused solely on *past* conduct, the cases cited by SuccessFactor involve the

9 continuing or threat of continuing trademark misuse. *See, e.g., GoTo.com v. Walt Disney Co.*, 202

10 F.3d 1199, 1204 (9th Cir. 2000) (Disney "did not cease to use the logo" that allegedly infringed

11 Go.com's trademark despite a complaint from Go.com); *Valu Eng'g, Inc. v. Nolu Plastics, Inc.*,

12 732 F. Supp. 1024, 1025 (N.D. Cal. 1990) (continued distribution of a misleading sample and

13 sales pitch upon "direction of the highest levels of [] management"). Here, the presumption of

14 irreparable injury is inapposite *where there is no risk of future injury*. It is for this reason that the

15 court in *Campbell Soup*, 977 F.2d at 92-93, distinguished a similar presumption applicable to trade

16 secret cases on the basis that there was no threat of use of the trade secret in that case. Similarly,

17 there is no threat of continued injury in this case rendering the presumption of irreparable injury

18 inapplicable.

19       Second, the Supreme Court has strongly cautioned against employing presumptions that

20 substitute for the standard equitable considerations that underlie an injunction. *See eBay Inc. v.*

21 *MercExchange, LLC*, 547 U.S. 388 (2006). It appears that the majority of courts have found it

22 inappropriate to apply a presumption of irreparable injury at the preliminary injunction stage. *See*

23 *Nat'l League of Junior Cotillions, Inc. v. Porter*, Copy L. Rep. (CCH) ¶ 29,433 at *19 n.14

24 (collecting cases). At the very least, it is sensible not to rest any conclusion on irreparable harm

25 "solely on the presumption." *Id.*

26

27

28

2. **SuccessFactors' Claims Have Very Little Probability of Success on the Merits Because SuccessFactors Fails to Establish Key Threshold Elements**

SuccessFactors cannot prove a likelihood of success on the merits because, as explained below, each of its claims fails to establish a key threshold element. In its motion, SuccessFactors only argues for a probability of success on the merits with respect to three claims: (1) Trademark Infringement, (2) False Advertising under the Lanham Act, and (3) an alleged violation of the Computer Fraud and Abuse Act. *See* Application for TRO, pp. 9-19. But each of these claims fails at the threshold. First, because SuccessFactors does not establish that it suffered sufficient loss from Softscape's alleged access to SuccessFactors' demo, its Computer Fraud and Abuse Act claim fails at the outset. Additionally, because Softscape only used the presentation *internally*, the Lanham Act simply does not apply. Far from a probability of success, SuccessFactors' claims are meritless.

(a) **Because SuccessFactors' Alleged Costs To Track Down the Author of the Presentation Does Not Satisfy The Threshold Requirement of $5,000 in Loss, The Computer Fraud and Abuse Act Claim Has No Chance of Success on the Merits.**

The Computer Fraud and Abuse Act ("CFAA") prohibits certain malicious online activities and provides a civil cause of action for the victims of particularly damaging acts. As a prerequisite to its civil CFAA claim, SuccessFactors must first demonstrate that SuccessFactors suffered a loss from Softscape's allegedly unauthorized access in excess of $5,000. But the only "loss" alleged by SuccessFactors is a type of cost *expressly excluded from the statutory calculus*. Thus, SuccessFactors cannot show any chance of success on the merits.

As applicable here, the CFAA requires that any civil plaintiff allege that it suffered at least $5,000 in loss from the unauthorized conduct. 18 U.S.C. § 1030(a)(5)(B)(i). Not every type of loss is included for the statutory threshold, however. The statute limits "loss" to "the cost of responding to offense" meaning "damage assessment" and restoration of the computer system, and lost revenue because of the interruption of service. 18 U.S.C. § 1030(e)(11). The cost of investigating and trying to locate the perpetrator is *not* included as a qualifying type of loss. *Tyco*

1   *Int'l (US) v. Does*, 2003 U.S. Dist. LEXIS 25136, at *8-9 (S.D.N.Y. Aug. 29, 2003); *see also*

2   *United States v. Schuster*, 467 F.3d 614 (7th Cir. 2006) (costs incurred by victims primarily to

3   investigate the offense or aid the government's prosecution are not included as "loss"). Nor does

4   the term "loss" include time spent responding to effects unrelated to the computer system, *see*

5   *Nexans Wires S.A. v. Sark-USA, Inc.*, 2004 U.S. Dist. LEXIS 9712, at *25-26 (S.D.N.Y. May 27,

6   2004) (excluding costs of responding to misappropriation of trade secrets), or any damage

7   assessment done for the purpose of litigation, *see Thurmond v. Compaq Computer Corp.*, 171 F.

8   Supp. 2d 667, 680-83 (E.D. Tex 2001).

9       Here, the *only* loss alleged by SuccessFactors is the cost of investigating the source of the

10  Presentation and the identity of who accessed SuccessFactors' computer system. Declaration of

11  James Matheson (Docket No. 18), ¶ 4 ("I spent approximately 28 hours . . . in an effort *to*

12  *determine the author of this piece*.") (emphasis added); *see also id.* ("We had to set aside our

13  normal business activities to assist the company in determining *who is behind* the e-mail blast.")

14  (emphasis added); Declaration of Robert Bernshyeyn (Docket No. 17), ¶ 6 (noting that the

15  investigative team was looking into the distributor of the presentation, but making no mention of

16  any assessment of damage to the system or loss of service). These costs *do not count* toward the

17  required statutory threshold of $5,000 in loss.[1] In other words, SuccessFactors cannot point to *any*

18  evidence that a single moment of time was spent assessing any potential damage to

19  SuccessFactors' computers or repairing such damage, and it does not (and reasonably cannot)

20  allege that there were any costs associated with interruption of service. *See generally* Declaration

21  of James Matheson.

22      SuccessFactors' cannot -- and does not -- allege a cognizable loss in excess of $5,000.

23  Because SuccessFactors does not establish the statutory prerequisite of loss, its CFAA claim has

24  no probability of success.

25  ───────────────────────

26  [1] If SuccessFactors belatedly claims it is now investigating for damage to its system, this cost is
    equally excluded from the statutory calculus. *Thurmond*, 171 F. Supp. 2d at 680-83 (excluding

27  costs of a damage assessment done for purposes of litigation).

28

TAYLOR & CO.
LAW OFFICES, LLP

10.

1           **(b)      Because Softscape's Only Use of SuccessFactors' Trademarks Was**

2                    **Purely Internal, There Is No Probability of Success on the Lanham Act Claim For Trademark Infringement.**

3       Putting to one side the issues of nominative fair use, *e.g., Mattel Inc. v. Walking Mountain*

4   *Products*, 353 F.3d 792, 809-10 (9th Cir. 2003), SuccessFactors has no probability of success

5   because Softcape's use of SuccessFactors' trademarks was purely internal and, therefore, outside

6   the scope of the Lanham Act.[2]

7       At this stage, it cannot be disputed that the Presentation was intended for internal use at

8   Softscape.  Softscape did not distribute the Presentation to the public, and the disclosure of the

9   Presentation was not authorized, ratified or condoned by Softscape.  A trademark infringement

10   claim *requires* that the defendant used the trademark "in commerce."  15 U.S.C. § 1114(1).  Here,

11   Softscape's internal use of SuccessFactors trademarks fall outside the definition of "use in

12   commerce" in the Lanham Act:

13             For purposes of this Act, a mark shall be deemed to be in use in commerce —

14             (1) on goods when —

15                  (A)    it is placed in any manner on the goods or their containers or the displays associated therewith or on

16                        the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then

17                        on documents associated with the goods or their sale, and

18                  (B)    the goods are sold or transported in commerce, and

19             (2) on services when it is used or displayed in the sale or advertising

20                of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United

21                States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

22   15 U.S.C. § 1127.

23

---

24   [2] It remains unclear who circulated the presentation.  Even if it were an employee of Softscape,

25   that action is outside the scope of his or her employment and the use of an anonymous name and e-mail account removes any possibility of apparent authority.  Mohr Decl., ¶ 9.  The acts of the

26   distributor, if it were an employee of Softscape, are thus not attributable to Softscape.  *See* Restatement (3d) of Agency § 7.03.  The only use of SuccessFactors' trademark attributable to

27   Softscape is *internal* use.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO ORDER TO SHOW CAUSE AND IN OPPOSITION TO MOTION OF PLAINTIFF SUCCESSFACTORS, INC. FOR EXPEDITED DISCOVERY: CASE NO. C-08-1376 (CW)

1    Because Softscape's use of SuccessFactors' trademark was purely internal, and not used in

2    commerce, the Lanham Act has *no application* to the unfortunate distribution of the Presentation.

3    *See 1-800 Contacts v. WhenU.com, Inc.*, 414 F.3d 400, 409 (2d Cir. 2005) (holding that a

4    "company's internal utilization of a trademark in a way that does not communicate it to the public

5    is analogous to a[n] individual's private thoughts about a trademark. Such conduct simply does not

6    violate the Lanham Act . . . ."); *see also* Louis Altman, *4 Callmann on Unfair Competition,*

7    *Trademarks and Monopolies* § 22:25 n.1 (4th ed. 2004) ("A fortiori, a defendant who does not

8    sell, but merely uses internally within his own company, the trademarked product of another, is

9    not a trademark infringer or unfair competitor by virtue of such use.").

10    Since SuccessFactors cannot establish that Softscape used SuccessFactors' trademarks in

11    commerce, and Softscape's internal use does not violate the Lanham Act, a preliminary injunction

12    for trademark infringment is inappropriate. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 903

13    (9th Cir. 2007) (reversing a grant of preliminary injunction on a trademark infringement claim

14    because the plaintiff's "actions likely did not constitute a 'use in commerce,' as the record in this

15    case does not indicate they were made to promote any competing service or reap any commercial

16    benefit whatsoever.").

> (c)    **There is No Probability of Success for the False Advertising Claim Under the Lanham Act Because Softscape Did Not Distribute the Presentation**

19    Although SuccessFactors spends considerable effort trying to demonstrate that the

20    Presentation is false, and that Softscape believed the information to be accurate, that issue is

21    irrelevant for purposes of determining whether a preliminary injunction should issue.  Instead,

22    SuccessFactors' false advertising claim is meritless for three other reasons: (1) the Presentation

23    was not "used in commerce" by Softscape, (2) the Presentation was not an advertisement, and (3)

24    Softscape did not circulate the Presentation in interstate commerce.

25    First, it bears repeating that Softscape's Presentation was not "used in commerce."

26    Instead, it was an internal Softscape document limited to internal use.  Because the Presentation

27    was not disseminated in commerce by Softscape, SuccessFactors has no claim under Section 43(a)

28

1    of the Lanham Act. *See Cognotec Servs. v. Morgan Guar. Trust Co.*, 862 F. Supp. 45, 51

2    (S.D.N.Y. 1994) (despite bank's internal distribution of allegedly infringing materials, absent

3    dissemination "in commerce," plaintiff failed to state a claim for a violation of section 43(a) of the

4    Lanham Act); *see also* 15 U.S.C. § 1125(a)(1) ("use in commerce" is a prerequisite for any civil

5    action).

6            Second, SuccessFactors must prove that the Presentation was a "commercial

7    advertisement." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)

8    (noting that a false advertising claim requires a commercial advertisement). A commercial

9    advertisement is defined as "1) commercial speech; 2) by a defendant who is in commercial

10   competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods

11   or services. While the representations need not be made in a 'classic advertising campaign,' but

12   may consist instead of more informal types of 'promotion,' the representations 4) must be

13   disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or

14   'promotion' within that industry." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).

15   SuccessFactors' claim fails on the requirement that the "speech" – the circulation of the

16   Presentation – be conducted *by Softscape*. It was not. *See generally* Mohr Decl.

17           Finally, and for the same reason, SuccessFactors must prove that Softscape caused the

18   advertisement "to enter interstate commerce." *Southland Sod Farms*, 108 F.3d at 1139. Softscape

19   did no such thing. Though somebody circulated the Presentation – and Softscape continues to

20   investigate that leak – it was not Softscape. SuccessFactors' false advertising claim falters on this

21   fact.

22   **B.    Even If This Court Were Inclined To Continue The TRO, It Is Overbroad And
              Should Be Limited**

23

24           Although, as demonstrated above, there are no grounds for entering a preliminary

25   injunction, if this Court were to consider entering a preliminary injunction, Softscape submits it

26   would have to be much more narrowly tailored than the TRO.

27           The Court ordered, in the TRO, that Softscape refrain from "[p]ublishing, circulating, e-

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SOFTSCAPE, INC.'S RESPONSE
TO ORDER TO SHOW CAUSE AND IN OPPOSITION TO MOTION OF PLAINTIFF SUCCESSFACTORS, INC. FOR
EXPEDITED DISCOVERY: CASE NO. C-08-1376 (CW)

1  mailing, making available or otherwise distributing any product or document using Plaintiff's

2  trademarks or Plaintiff's secret information." TRO (Docket No. 26) at p. 2.  Softscape submits

3  that, at a minimum, this provision should be limited to apply only to external, as opposed to

4  internal, activities.  *See 1-800 Contacts v. WhenU.com, Inc.,* 414 F.3d 400, 409 (2d Cir. 2005)

5  (holding that a "company's internal utilization of a trademark in a way that does not communicate

6  it to the public is analogous to a[n] individual's private thoughts about a trademark.  Such conduct

7  simply does not violate the Lanham Act . . . .").  Nor should Softscape be prohibited from any

8  lawful or permissible use of SuccessFactors' trade secrets or trademarks.  *See, e.g., Mattel Inc. v.*

9  *Walking Mountain Products,* 353 F.3d 792, 809-10 (9th Cir. 2003) (describing nominative fair use

10  of another company's trademark).

11        The Court also ordered Softscape to refrain from "[m]aking any statements that purport to

12  be made by anybody other rather [sic] than Defendants or its agents."  TRO at p. 2. Softscape

13  suggests that this requirement is vague and overbroad, since it could be read to prohibit Softscape

14  from repeating any statement made by any customer, industry analysts or third party.  Under this

15  broad, but possible, reading, Softscape could not publish a customer testimonial on its website.  If

16  Softscape is so prohibited, the order raises substantial First Amendment concerns.  *See, e.g.,*

17  *United States v. Schiff,* 379 F.3d 621, 626 (9th Cir. 2004) (holding that a preliminary injunction

18  that restrains commercial speech is permissible only to the extent the commercial speech is

19  fraudulent, if the speech will incite imminent unlawfulness, or if the speech and aids or abets

20  criminal activity).  The TRO, as it could be interpreted, extends far beyond these limits.  Thus this

21  portion of the Order should, at the very least, be modified to comport with Softscape's First

22  Amendment rights.

23  **C.      Because Plaintiff Is Seeking Full Of Discovery In An Unreasonable Timeframe,
         There Is No Justification For Expedited Discovery**

24

25        This Court should deny SuccessFactors' request for expedited discovery for three reasons.

26  First, SuccessFactors' allegations provide no basis for preliminary injunctive relief and the

27  proposed expedited discovery neither addresses nor removes the infirmity.  Second,

28

TAYLOR & CO.
LAW OFFICES, LLP

14.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SOFTSCAPE, INC.'S RESPONSE
TO ORDER TO SHOW CAUSE AND IN OPPOSITION TO MOTION OF PLAINTIFF SUCCESSFACTORS, INC. FOR
EXPEDITED DISCOVERY: CASE NO. C-08-1376 (CW)

1   SuccessFactors' requested discovery is substantially overbroad – consisting of nearly all discovery

2   that is possible in this case – and should therefore be denied.  Third, there is no risk of lost

3   evidence.

4          SuccessFactors initially argues that because it is seeking a preliminary injunction,

5   expedited discovery is somehow appropriate.  Expedited Discovery Motion at pp. 4-6.  But

6   expedited discovery is not warranted here when SuccessFactors has not established that they

7   would be able to obtain a preliminary injunction *even if* the requested discovery were granted.  In

8   other words, the expedited discovery is futile.  For example, SuccessFactors cannot allege any

9   cognizable loss under the CFAA, and no amount of discovery from Softscape will remedy that

10  deficiency.  Similarly, SuccessFactors cannot show a threat of future irreparable injury.  Indeed,

11  all of SuccessFactors' proposed discovery is entirely backward-looking.  *See* Declaration of Liwan

12  A. Mah (Docket No. 13) ("Mah Decl."), Ex. A.  SuccessFactors concedes that the *entire*

13  preliminary injunction motion "is about one document: the Presentation."  Application for

14  Expedited Discovery at p. 5.  This only highlights, however, the fundamental flaw with

15  SuccessFactors' request for a preliminary injunction – because there is no threat of future

16  irreparable injury, this Court cannot grant a preliminary injunction.  No amount of discovery into

17  the nature and creation of the Presentation can remedy that flaw.

18         Particularly relevant here, *Qwest Commc'n Int'l, Inc. v. World-Quest Networks, Inc.*, 213

19  F.R.D. 418, 421 (D. Colo. 2003), confirms there is no good cause for expediting discovery in

20  anticipation of preliminary injunction when the proposed discovery relates to *past conduct*.  In that

21  case, Qwest sought expedited discovery related to the defendant's past conduct that allegedly

22  infringed on Qwest's trademark.  The court confirmed that rule, discussed above, that a

23  preliminary injunction is proper only upon evidence that "irreparable injury may occur *pendente*

24  *lite* if the preliminary injunction is not granted."  *Id.*  Applying that rule, the court rejected

25  expedited discovery because "much of the expedited discovery that Qwest seeks addresses

26  conduct that has already occurred, which would have little, if any, bearing on irreparable injuries

27  that may occur *pendente lite*."  *Id.*  The same result should apply here, especially because *all* of

28

TAYLOR & CO.
LAW OFFICES, LLP

15.

1    SuccessFactors proposed discovery is backward looking with no bearing on the future threat of

2    irreparable injury.

3          Second, SuccessFactors' proposed discovery is extremely overbroad and should be

4    rejected out of hand.  As a small sampling, SuccessFactors' amazingly labels the following

5    document requests as "limited:"

- All documents concerning the genesis, creation, review, or revision of the presentation, including but not limited to any version, edits, memoranda, notes, e-mails, embedded objects, file histories, or document management system logs;

- All documents concerning any assertions in the presentation, including but not limited to documents that support or refute those assertions;

- All communications concerning the presentation or any assertion therein, including but not limited to communications between or involving Softscape employees, its customers, or current or former SuccessFactors employees;

- A true and accurate bit-for-bit copy of the data storage media for any computer that has or has had access to the IP address 68.236.68.19; and

- A true and accurate bit-for-bit copy of the data storage media for any computer that was involved in the creation, modification, collection of information for, sharing, or e-mailing of the presentation.

16    *See* Mah Decl., Ex. A.  The proposed Rule 30(b)(6) deposition is no less broad and burdensome.

17    *Id.*  To highlight just one request, there are potentially hundreds of computers, printers and other

18    devices that connected or had access at any given point in time to the IP address 68.236.68.19.  It

19    is not likely that Softscape could *locate*, much less image, the hard drive of each of these devices

20    within a mere five (5) days.  Yet SuccessFactors is more than happy to downplay the massive cost

21    associated with this single document request.  *See* Motion for Expedited Discovery at p. 5.

22          Just as this Court has discretion to grant expedited discovery, this Court also has discretion

23    to prevent excessive or burdensome discovery.  *Qwest Commc'n*, 213 F.R.D. at 419.  Courts

24    routinely deny requests for overly broad, burdensome expedited discovery.  *Philadelphia*

25    *Newspapers, Inc. v. Gannett Satellite Info. Network*, 1998 U.S Dist. LEXIS 10511 *6 (E.D. Pa.

26    July 15, 1998) ("courts generally deny motions for expedited discovery when the movant's

27    discovery requests are overly broad").  The *Philadelphia Newspapers* case is instructive.  In that

28

1   case, the court looked past the movant's contention that the document requests were narrowly

2   tailored and examined the scope of the requests. Upon examination, the court found that the

3   document requests, like those here, were "potentially quite sizeable" because they asked for whole

4   volumes of documents rather than a few specific documents. *Id.* at *8-9. The court consequently

5   rejected the discovery request.

6          Courts have been even more hesitant to allow broad expedited discovery in the name of

7   resolving preliminary injunction motions to supplant standard merits discovery. For example, in

8   *Better Packages, Inc. v. Zheng*, 2006 U.S. Dist. LEXIS 30119 (D.N.J. May 17, 2006), the court

9   was faced with similarly broad discovery requests in preparation for a motion for preliminary

10  injunction. The court rejected expedited discovery because it was "overly broad and extended

11  well beyond those issues likely to arise in a preliminary injunction hearing." *Id.* at *13. The court

12  was even more skeptical of the discovery because "the factual basis for [the plaintiff's]

13  preliminary injunction is nearly identical to those allegations contained in the Complaint" and

14  "would lead to the parties conducting nearly all discovery in an expedited fashion under the

15  premise of preparing for a preliminary injunction hearing, *which is not the purpose of expedited*

16  *discovery*." *Id.* at 15 (emphasis added).

17         Because the Complaint here is about the creation and dissemination of the Presentation,

18  SuccessFactors' proposed discovery suffers from the same flaw: it seeks to shoehorn all, or nearly

19  all, conceivable merits discovery into an expedited process. *See Independence Blue Cross v.*

20  *Health Sys. Integration, Inc.*, 1997 U.S Dist. LEXIS 781 (E.D. Pa. Jan. 29, 1997) (rejecting

21  expedited discovery before a preliminary injunction because "the topics into which [plaintiff]

22  intends to explore are beyond what is needed in a motion for injunctive relief and appears to delve

23  into the merits of the underlying dispute between the parties."). SuccessFactors' proposed

24  discovery is even more unjust because it is a one-way street. It forces Softscape to bear the risk

25  and costs of expedited discovery (*e.g.*, only five (5) days to respond to the overbroad discovery

26  discussed above) whereas SuccessFactors would enjoy the reduced pace, burden, risks and cost of

27  non-expedited discovery.

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SOFTSCAPE, INC.'S RESPONSE
TO ORDER TO SHOW CAUSE AND IN OPPOSITION TO MOTION OF PLAINTIFF SUCCESSFACTORS, INC. FOR
EXPEDITED DISCOVERY: CASE NO. C-08-1376 (CW)

1    Finally, there is no risk of the loss of electronic data and other material. SuccessFactors

2    has no evidence that any electronic data is being "deleted or manipulated" by Softscape. *See*

3    Application for Expedited Discovery at p. 5. On the contrary, Softscape is fully SAS 70 Type II

4    compliant and Softscape backs up all relevant company information on a daily basis, takes its

5    obligations of preserving all potentially relevant material seriously, and has already effectuated the

6    necessary document and data retention policies. *See* Mohr Decl., ¶ 10. In other words, there will

7    be no data lost by denying expedited discovery. Unless SuccessFactors can point to some unique

8    evidence that demonstrates an imminent risk of loss of the relevant material, its argument that the

9    presence of electronic data justifies expedited discovery would hollow-out the mandatory

10   discovery stay in Rule 26(d)(1) because virtually every modern lawsuit involves electronic data.

11   That discovery will involve electronic data, without more, cannot justify expedited discovery,

12   especially where, as here, there is no risk of data loss.

13                    **IV.    CONCLUSION**

14   SuccessFactors' preliminary injunction motion seeks a present remedy for a past wrong.

15   This is not the purpose of a preliminary injunction. Unless and until SuccessFactors can

16   demonstrate a serious threat of a future wrong – as well as probability of success on the merits of

17   its claims – a preliminary injunction is improper, and SuccessFactors' proposed expedited

18   discovery is futile, overbroad, unduly burdensome and unnecessary. This Court should therefore

19   refrain from granting a preliminary injunction and deny SuccessFactors' application for expedited

20   discovery.

21

22   Dated: March 17, 2008                 Respectfully submitted,

23                                          TAYLOR & COMPANY LAW OFFICES, LLP

24

25

26   By: _____/S/_____

27                                          Jessica L. Grant
                                            Attorneys for Defendant SOFTSCAPE, INC.

28

TAYLOR & CO.                                18.
LAW OFFICES, LLP