**FENWICK & WEST LLP**

555 CALIFORNIA STREET, 12TH FLOOR    SAN FRANCISCO, CA 94104

TEL 415.875.2300    FAX 415.281.1350    WWW.FENWICK.COM

June 12, 2008

LAURENCE F. PULGRAM

EMAIL LPULGRAM@FENWICK.COM
DIRECT DIAL (415) 875-2390

Magistrate Judge Bernard Zimmerman
United States District Court, Northern District of California
Courtroom G, 15th Floor
450 Golden Gate Avenue,
San Francisco, CA 94102

   Re: *SuccessFactors, Inc. v. Softscape, Inc.,*  Case No. CV 08 1376 CW

Dear Judge Zimmerman:

  This responds to Mr. Ratinoff's June 11 request for a telephone conference. It is hard to grasp the purpose for that letter, other than to attempt to throw mud in response to SuccessFactors' request for the Court's assistance. We will respond to the issues raised, as best we understand them.

  1. <u>Time Urgency for Production of Initial Documents</u>. Softscape contends that SuccessFactors is "harassing" Softscape by requesting immediate production of initial documents that Softscape itself acknowledges must be produced. It is no secret why prompt production is essential. Softscape is still denying that it can be held responsible for disseminating the Presentation, is failing to produce even the obviously available documents, and is holding out disputes over the scope of documents it will produce. It will necessarily take SuccessFactors many months to put together the puzzle—requiring sequential productions, meet and confers, motions to compel, depositions, and access to hard drives to recover deleted files. Softscape has already run three months off the clock. It now proposes a delay of at least a month and a half more. It suggests *initial* production by August 1—the same deadline it has proposed for amending the complaint—so documents held until then could not be used for amendments. The parties have proposed an aggressive date of November 28 as the discovery cutoff, and there can be no illusion that a day less will be needed to pierce the obstacles Softscape is raising.

  2. <u>Scope of Discovery</u>. Softscape rails against discovery beyond "the narrow issues of the creation and dissemination of the allegedly defamatory document and the truth of the matters asserted therein," but it has barely begun production of even that narrow swath. Nor has Softscape sought any initial limitation on scope of discovery in the CMC statement. Indeed, Softscape's own discovery has focused on damages, a topic far outside these "narrow issues."

  3. <u>Delays Attributed to Change in Counsel</u>. During the six weeks the Mintz firm has been counsel, and while Softscape found time to file a new lawsuit in Massachusetts, Mintz has propounded multiple written discovery requests, sent dozens of letters and emails demanding to obtain discovery, and yet failed even to *initiate* term searching of documents. This is not because the documents had not been collected. Pursuant to Court order, Softscape filed declarations on April 30, 2008, confirming that documents had by then been sequestered and preserved. The same vendor, FTI, has been Softscape's e-discovery provider since at least April 7, but apparently has never been allowed to push the button to trigger the searches.

  4. <u>Delays in Agreement to Search Terms</u>. On May 1, SuccessFactors proposed terms for Softscape to search for electronically. Without letting on that no search was occurring, Softscape responded with a counterproposal only a full month later, on June 5. Its response invited

Magistrate Judge Bernard Zimmerman
June 12, 2008
Page 2

SuccessFactors to identify up to 10 additional terms, which it did the next day. But Softscape continued the stall. Without identifying a single objectionable term, Softscape wrote that it needed to "confirm the relevancy" of terms, but then refused to meet and confer until June 11. At the June 11 meet and confer, Softscape still had not identified a single objectionable term, yet counsel has still refused to commence *any* searching on *any* terms, stating merely that he needed to confer with his client. There is nothing "harassing" about requests that such inexcusable delay be remedied by prompt production.

     5.     Purported "Onslaught" of Demands. In an important case like this, it is not surprising that informal communications about discovery happen every day.[1] Significantly, SuccessFactors has not issued a new discovery request in almost two months—since April 18. Softscape claims that six communications once requested documents on a single day. This apparently counts emails and backup phone messages, placed to multiple Mintz contacts when no one would respond, seeking promised, but unreleased documents on the eve of travel to a 30(b)(6) deposition in Boston. In that context, taking 24 hours to respond would make no sense. In the ordinary course, SuccessFactors would be delighted to receive a response within 24 hours.

     6.     Subpoena. SuccessFactors' ultimate red herring is a complaint about a subpoena to Mr. Kurzner, who is the critical witness described (under seal) in the fourth bullet point in SuccessFactors' June 9 letter to the Court. SuccessFactors called a Mr. Kurzner who it found writing about this lawsuit on the internet as an employee of Accenture. The first question asked was whether he was affiliated with Softscape, and when told he was, SuccessFactors' counsel immediately ended the call.[2] The next day, SuccessFactors' counsel contacted Softscape's and asked whether counsel (who had already spoken to Kurzner) would (i) accept service of a subpoena for the key documents in Kurzner's possession, and (ii) ensure those documents would be preserved. A copy of the subpoena to Kurzner was delivered to counsel fifteen minutes later. Several hours after that, Softscape's counsel responded, declining to state whether he would accept service, but expressly asserting that *Softscape did not have control of Mr. Kurzner's personal documents*. Only after that response, which left Kurzner's documents at risk, did SuccessFactors' counsel attempt to serve him personally. Even then, SuccessFactors advised in writing three times that it would prefer *not* to hand serve Mr. Kurzner if counsel would accept service, but it was only after two days that Softscape's counsel finally agreed to do so.

     For all of these reasons, none of the issues raised has merit.

                                               Respectfully,

                                               FENWICK & WEST LLP

                                               Laurence F. Pulgram

---

[1] Back and forth has multiplied because Softscape blanketed what little it has produced with "Outside Attorneys Eyes Only" designations. Softscape recently redesignated some of its written discovery, but this time consuming issue (of Softscape's own making) will persist until Softscape stops improper designations of confidentiality.

[2] This contact complied with Rule 2-100, which limits contacts with persons if "known to be represented by another counsel." Mr. Ratinoff acknowledged by email on June 4, 2008 (12:26 p.m.) that "what you describe to be the circumstances of the ex parte communication may not have violated the letter of Rule 2-100 . . . ."