1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  LIWEN A. MAH (CSB No. 239033)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone:   (415) 875-2300
5  Facsimile:   (415) 281-1350

6  PATRICK E. PREMO (CSB No. 184915)
   ppremo@fenwick.com
7  HENRY Z. CARBAJAL III (CSB No. 237951)
   hcarbajal@fenwick.com
8  DENNIS M. FAIGAL (CSB No. 252829)
   dfaigal@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, CA  94041
11 Telephone:   (650) 988-8500
   Facsimile:   (650) 938-5200
12
   Attorneys for Plaintiff
13 SUCCESSFACTORS, INC.

14              UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16                  OAKLAND DIVISION

17

18 SUCCESSFACTORS, INC. a Delaware          Case No. C-08-1376 CW (BZ)
   corporation,
19                                          **DECLARATION OF HENRY Z. CARBAJAL III IN**
                    Plaintiff,              **SUPPORT OF PLAINTIFF SUCCESSFACTORS,**
20                                          **INC.'S MOTION TO COMPEL PRODUCTION OF**
            v.                              **DOCUMENTS, FURTHER INTERROGATORY**
21                                          **ANSWERS AND PROPER PRIVILEGE LOGS**
   SOFTSCAPE, INC., a Delaware
22 corporation; and DOES 1-10,              Date:      September 3, 2008
                                            Time:      10:00 a.m.
23                  Defendants.             Judge:     Hon. Bernard Zimmerman
                                            Place:     Courtroom G, 15th Floor
24
                                            Date of Filing    July 30, 2008
25                                          Trial Date:       May 11, 2009

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    I, Henry Z. Carbajal III, declare as follows:

2    1.    I am an attorney with the law firm of Fenwick & West LLP, counsel to Plaintiff

3    SuccessFactors, Inc. ("SuccessFactors") and I make this declaration in support of Plaintiff

4    SuccessFactors, Inc.'s Motion to Compel Production of Documents, Further Interrogatory

5    Answers and Proper Privilege Logs.  I make the following statements based upon my personal

6    knowledge, and, if called upon to testify, would testify competently to them.

7    2.    Discovery in the present action opened on March 27, 2008, the day Judge Wilken

8    presided over the hearing on SuccessFactors' motion for a preliminary injunction.  During that

9    hearing, Defendant Softscape, Inc.'s ("Softscape") counsel, Jessica Grant, represented that

10    discovery would be forthcoming on the pressing issue of whether and how the libelous "The

11    Naked Truth" Presentation emanated from Softscape.

12    3.    Despite overtures from Softscape's counsel, discovery was not forthcoming.  I am

13    informed that Softscape produced no documents in April 2008, 867 documents in May 2008 and

14    8 documents in June 2008.  Notably, during hearings before the Court at a May 8 discovery

15    conference, a June 11, 2008 letter to Magistrate Judge Zimmerman, the June 17, 2008 Case

16    Management Conference and, most recently, the July 3, 2008 discovery conference, Softscape's

17    counsel made similar representations that its document production was forthcoming.  It also bears

18    noting that of the small number of documents produced, many were not produced in their native

19    format as the parties previously agreed, thus omitting crucial metadata.

20    4.    After the July 3, 2008 discovery conference, on July 7, 2008 the Court issued its

21    Third Discovery Order stating that "[a]ll document production must be completed by August 1,

22    2008, except production of documents designated by the plaintiff as tier 1 for the six specified

23    individuals, which must be completed by July 15, 2008."

24    5.    Beginning on July 15, 2008 and continuing for more than a week after, Softscape

25    issued a few miniscule productions ranging from approximately 150 to 250 documents, with

26    many not produced in their native format.  At the present time, Softscape has apparently not

27    completed the production ordered by the Court for July 15.

28    / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

6.    On March 28, 2008, the day after the preliminary injunction hearing, SuccessFactors served its First Set of Requests for the Production of Documents (Nos. 1-16). Softscape served initial responses to SuccessFactors' first set of requests on May 1, 2008. Counsel for both parties met and conferred in person on May 9, 2008 regarding Softscape's responses. Softscape thereafter served amended responses to the first set of document requests on May 14, 2008.

7.    On April 4, 2008, SuccessFactors served its Second Set of Requests for the Production of Documents (Nos. 17-43). Softscape served initial responses to the second set of requests on May 4, 2008. Counsel for both parties met and conferred in person on May 15, 2008 on the second set of requests, and on additional disputes from SuccessFactors' first set of document requests. On May 19, 2008, Softscape served amended responses to the second set of requests. An additional meet and confer session took place on May 27, 2008 regarding SuccessFactors' second set of document requests. Another in-person meet and confer session took place on June 4, 2008 on some of the subjects of the document requests, for example production of versions of the Presentation under SuccessFactors' Document Request No. 1.

8.    On April 11, 2008, SuccessFactors served its First Set of Interrogatories (Nos. 1-19). Softscape served its responses to the first set of interrogatories on May 12, 2008. Softscape subsequently served amended responses to the interrogatories on May 23, 2008.

9.    After a round of letter briefs in June 2008 largely regarding document production, the Court held its discovery conference, and issued its July 7, 2008 Order, requiring the parties' lead trial counsel to meet and confer on all then-pending discovery disputes by July 11, 2008. For disputes remaining unresolved, except as to scope and timing of document production, the parties were given leave to file motions to compel.

10.    I, along with my colleague Laurence Pulgram, attended an in-person meet and confer session as counsel for SuccessFactors at Fenwick & West LLP's offices in San Francisco. Robert Taylor, in person, and Jeffrey Ratinoff, via telephone, attended as counsel for Softscape. The parties met and conferred for approximately three hours, but were unable to discuss all pending disputed issues falling within the scope of the Court's July 7, 2008 Order. Thus, the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    parties subsequently agreed to meet and confer in person on residual disputed issues on July 17,

2    2008 at Softscape's counsel's offices in Palo Alto.  I also attended this meet and confer session

3    for multiple hours with my colleague Laurence Pulgram, as counsel for SuccessFactors.  Robert

4    Taylor and Jeffrey Ratinoff attended on behalf of Softscape.  Despite these substantial meet and

5    confer efforts, the parties were unable to resolve all disputes, prompting the instant motion.

6    **Issues Discussed During the July 10, 2008 Meet and Confer Session**

7         11.    At the July 10, 2008 meet and confer session, the parties discussed the following

8    issues included in the instant motion:  SuccessFactors raised Softscape's response to Interrogatory

9    No. 7 regarding access to SuccessFactors' proprietary sales demo accounts.  Softscape had

10   restricted its response to pertain only to SuccessFactors' ACE 275 sales demo and creation of the

11   Presentation.  Softscape's counsel refused to lift this limitation, but requested until July 15, 2008

12   to confer with its client.  Softscape ultimately notified SuccessFactors by letter dated July 15,

13   2008 that it would retain its response as written.

14        12.    SuccessFactors raised Softscape's response to Document Request No. 2 regarding

15   database information on potential or intended recipients of the Presentation, sales and marketing

16   efforts directed at Presentation recipients, internal communications regarding Presentation

17   recipients, and communications about the Presentation.  Softscape's counsel refused to produce

18   this information.  Softscape has flatly refused to produce the requested documents regarding

19   potential or intended recipients of the Presentation.  Softscape refused to do an across the board

20   search of its customer databases, or even a search of databases other than its primary customer

21   database, instead promising only to produce some sort of cross reference list of "hits" between the

22   John Anonymous e-mail list and its primary customer database.  (Softscape has not yet delivered

23   this "hit" list.)  Softscape also refused to produce documents regarding sales and marketing

24   efforts directed at Presentation recipients unless SuccessFactors first identified recipients with

25   which it had a prospective economic relationship with which it claimed had been interfered.

26   Softscape further refused to produce internal communications regarding Presentation recipients.

27   Softscape's counsel requested until July 15, 2008 to confer with its client as to its final position.

28   ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Softscape ultimately notified SuccessFactors by letter dated July 15, 2008 that it would indeed

2    retain its response as written.

3         13.    SuccessFactors raised Softscape's response to Document Request Nos. 4 and 5

4    regarding the production of press releases and related documents under those document requests.

5    SuccessFactors asked whether Softscape would produce communications regarding its press

6    releases, and particularly those regarding its press release documents concerning the Presentation.

7    Softscape refused to produce this information under Document Request Nos. 4 and 5.

8    SuccessFactors specifically asked whether Softscape intended to produce e-mails Softscape sent

9    to customers regarding press releases regarding the Presentation.  Softscape's counsel advised

10   that it intended to withhold such e-mails it had sent to customers, for example, March 14, 2008 e-

11   mails sent by Mr. Watkins and Mr. Vatcher to unidentified customers, and would not agree that

12   these fell within the scope of documents that Softscape had agreed to produce.

13        14.    SuccessFactors raised Softscape's response to Document Request No. 6 regarding

14   communications between Softscape and specific SuccessFactors customers and communications

15   between Softscape and SuccessFactors' current or former employees.  Softscape claimed it had

16   initially interpreted the request as calling for improbable three-way communications between (i)

17   Softscape, (ii) specific customers and (iii) SuccessFactors' current/former employees, but

18   dropped this objection during the parties' conference.  However, Softscape refused to drop its

19   artificial limitation of the request to communications relating only to the Presentation.

20        15.    SuccessFactors raised Softscape's response to Document Request No. 7 regarding

21   documents created or modified after February 2007 concerning SuccessFactors.  Softscape had

22   originally asserted a time restriction of January 1, 2008 to the present for the documents

23   requested, but subsequently agreed to produce documents dating back to February 1, 2007.

24   However, Softscape refused to drop its artificial limitation of the request to documents relating

25   only to the Presentation.  Softscape's counsel requested until July 15, 2008 to confer with its

26   client as to its final position.  Softscape ultimately notified SuccessFactors by letter dated July 15,

27   2008 that it would retain its limitation as written.

28   / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

16.    SuccessFactors raised Softscape's response to Document Request No. 8 regarding documents concerning or showing Softscape's computers' access to SuccessFactors' online resources.  Softscape had originally asserted a time restriction of January 1, 2008 to the present for the documents requested, but subsequently agreed to produce documents dating back to February 1, 2007.  However, Softscape refused to drop its artificial limitations regarding the February 1, 2007 date as well as its limitation of the request to documents relating only to the Presentation.  Softscape's counsel requested until July 15, 2008 to confer with its client as to its final position.  Softscape ultimately notified SuccessFactors by letter dated July 15, 2008 that it would retain its limitations as written.

17.    SuccessFactors raised Softscape's response to Document Request No. 15 regarding documents concerning Softscape's procurement and use of SuccessFactors' trademarks or PowerPoint templates.  Softscape attempted to limit the request to procurement and use of SuccessFactors' trademarks and templates in creating the Presentation, and did not agree to lift this restriction.

18.    SuccessFactors raised Softscape's response to Document Request No. 28 regarding documents concerning recipients of documents or information provided by SuccessFactors to New Millennium Shoe ("NMS").  Softscape refused to produce documents concerning recipients of *information* and refused to remove its limitations of the request to documents relating to the proposal obtained from Jorge Corrales of SuccessFactors and the Presentation.  Softscape's counsel requested until July 15, 2008 to confer with its client as to its final position.  Softscape ultimately notified SuccessFactors by letter dated July 15, 2008 that it would retain its limitations as written.

19.    SuccessFactors raised Softscape's response to Document Request No. 29 regarding documents concerning commentary, discussion or analysis of any documents or information provided by SuccessFactors to NMS.  Softscape refused to remove its limitations of the request to documents relating to the proposal obtained from Jorge Corrales of SuccessFactors and the Presentation.  Softscape's counsel requested until July 15, 2008 to confer with its client as

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  to its final position.  Softscape ultimately notified SuccessFactors by letter dated July 15, 2008

2  that it would retain its limitations as written.

3        20.      SuccessFactors raised Softscape's response to Document Request No. 42

4  regarding communications between Ely Valls' hotmail account and Softscape CEO Dave Watkins

5  or Softscape from January 1, 2007 to the present.  Softscape had interposed limitations on the

6  request to communications from February 1, 2007 to the present, and also limited the request to

7  the Presentation and SuccessFactors' ACE 275 sales demo.  As Ely Valls is Dave Watkins' sister-

8  in-law, SuccessFactors proposed a compromise to exclude communications of a purely personal

9  nature.  Softscape refused this offer and retained its other limitations.  Notwithstanding this

10  impasse, the parties discussed this request again on July 17, 2008.

11  **Issues Discussed During the July 17, 2008 Meet and Confer Session**

12        21.      At the July 17, 2008 meet and confer session, the parties discussed the following

13  issues included in the instant motion:  SuccessFactors raised Softscape's response to Document

14  Request No. 1 regarding documents concerning the genesis, creation, review, or revision of the

15  Presentation.  SuccessFactors particularly raised the issues of production of log file information,

16  file location information and metadata regarding versions of the Presentation, which had not

17  previously been produced.  Softscape's counsel requested until July 21, 2008 to confer with its

18  client as to its final position.  Softscape requested more information from SuccessFactors as to

19  what SuccessFactors wanted by an e-mail dated July 21, 2008.  SuccessFactors responded by e-

20  mail on July 22, 2008, further explaining its request with respect to log files and metadata, and

21  identifying specific types of such information that should be available for production from

22  Softscape's server or other locations.  Softscape replied by e-mail on July 25, 2008 vaguely

23  indicating that some of the information specified by SuccessFactors did not exist, and not denying

24  the existence of other file records, but asserting other file directory information created during the

25  collection of documents for this litigation was work-product and indicating the balance would

26  simply not be produced pursuant to boilerplate objections.  At bottom, Softscape did not agree to

27  produce any log file, server records, system records or metadata requested as responsive to

28  Document Request No. 1.

Fenwick & West LLP
Attorneys At Law
Mountain View

Decl. of Carbajal III ISO Pl.'s MTC Prod.           - 7 -           Case No. C-08-1376 CW (BZ)
of Docs., Further Rog. Answers and
Proper Privilege Logs

22.    SuccessFactors raised Softscape's response to Document Request No. 17 regarding documents concerning actual or planned Softscape press releases regarding this action. The parties discussed a compromise to alleviate Softscape's concerns regarding overbreadth. Under the compromise, the request would be construed to remove the phrase "but not limited to" from the requests.  SuccessFactors also agreed to forego the request's call for "file histories." Softscape's counsel requested until July 22, 2008 to confirm its agreement to the compromise. On July 22, 2008, Softscape notified SuccessFactors via email that it agreed to most of the compromise, but inexplicably refused to produce any responsive documents dated after the preliminary injunction hearing.  Additionally, the parties agreed on July 10, 2008 that Softscape would log alleged privileged and work product communications with in-house counsel regarding its investigation concerning John Anonymous through March 27, 2008.  Given their probative nature and likely disagreement over privileged status, SuccessFactors requested that Softscape log documents withheld concerning its actual or planned press releases, under Document Request No. 17, through March 27, 2008.  Softscape did not agree to log withheld documents for this request.

23.    SuccessFactors raised Softscape's response to Document Request Nos. 22-25 regarding communications from January 1, 2008 to the present, between select employees, Dennis Martinek, Rick Vatcher, Dave Watkins and Susan Mohr, respectively, and actual and prospective customers of Softscape.  Softscape had previously asserted and maintained its imposed limitations on the request to communications relating only to the Presentation. Moreover, Softscape stated it would only produce communications as to 15 specific entities, which were identified by SuccessFactors in an interrogatory response related to SuccessFactors' claim of interference with prospective economic advantage.  SuccessFactors proposed to narrow these requests to include communications regarding SuccessFactors, the Presentation, its contents, this litigation, and Presentation recipients, including those on the John Anonymous address list. Softscape refused this proposal.

24.    SuccessFactors raised Softscape's response to Document Request No. 32 regarding deals made and related communications between Softscape and actual or prospective customers after January 1, 2008.  Softscape initially declined to produce any documents

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    responsive to this request.  During the meet and confer session, SuccessFactors offered to further

2    limit the time duration of the request to February 19, 2008 (the time when Softscape most

3    recently gained access to the password protected demo environment) to the present, in order to

4    alleviate Softscape's concerns regarding burden and overbreadth.  Softscape refused this

5    compromise, and indicated that it would only agree to produce documents limited to 15 entities

6    that SuccessFactors identified in an interrogatory response related to SuccessFactors' claim of

7    interference with prospective economic advantage, and production would also be subject to a time

8    limitation from March 4 to the present.

9        25.    Although the parties did not specifically discuss Softscape's response to Document

10   Request No. 13 on July 17, 2008 due to time constraints, the request and limitations imposed by

11   Softscape are similar to Document Request No. 32.  Request No. 13 pertains to documents

12   concerning deals made and the negotiating history between Softscape and Presentation recipients

13   or entities mentioned in the Presentation.  Softscape had previously indicated in a June 24, 2008

14   letter it saw no reason to produce responsive documents dated prior to March 4, 2008.  It also

15   indicated it was construing the request as dependent on SuccessFactors' identification of specific

16   lost sales.  These mirror Softscape's artificial limitations to Document Request No. 32, which

17   Softscape maintained.  Thus, Softscape's refusal to comply with Document Request No. 32 is

18   also a refusal to comply with Document Request No. 13.

19       26.    SuccessFactors again raised Softscape's response to Document Request No. 42

20   regarding communications between Ely Valls' hotmail account and Softscape CEO Dave Watkins

21   or Softscape from January 1, 2007 to the present.  Again, SuccessFactors offered to eliminate

22   communications of a purely personal nature from the production.  Softscape refused this offer.

23   However, SuccessFactors also discussed a possible compromise where Softscape would produce

24   communications between Ely Valls' hotmail account and Softscape or Dave Watkins, limited to

25   those relating in any way to Softscape's business, including any competition or competitors of

26   Softscape, or the NMS website.  Softscape requested until July 22, 2008 to confer with its client

27   as to its final position.  Softscape notified SuccessFactors via e-mail dated July 22, 2008 that it

28   would only agree to produce Ely Valls' e-mails relating to facts contained or statements made in

Fenwick & West LLP
Attorneys At Law
Mountain View

Decl. of Carbajal III ISO Pl.'s MTC Prod.
of Docs., Further Rog. Answers and
Proper Privilege Logs                                - 9 -                    Case No. C-08-1376 CW (BZ)

1  the Presentation, access to SuccessFactors' ACE 275 sales demo, and SuccessFactors. Thus,

2  Softscape has refused to comply with Document Request No. 42.

3       27.    SuccessFactors raised the issue of information improperly withheld from

4  Softscape's produced mobile and corporate phone records. Pursuant to Softscape's Third Set of

5  Document Requests, including Document Request Nos. 44-48, and subsequent meet and confer

6  efforts, Softscape has produced limited mobile phone records for nine specific employees, as well

7  as corporate phone records, showing calls between the dates of March 4 and March 5, 2008.

8  Softscape produced these limited records on June 20, 2008 (mobile phone records), July 17, 2008

9  (corporate phone records) and July 25, 2008 (mobile phone records), respectively. Each

10  production of records has had call information heavily redacted, either entirely (based on

11  relevance grounds) or partially to remove the telephone number of any non-Softscape employee.

12  The productions of June 20 included a privilege log noting reasons for the redaction of certain

13  telephone numbers. Softscape provided an updated log to SuccessFactors during the July 17,

14  2008 meet and confer session. The corporate phone records produced on July 17, 2008 list

15  independent reasons for redaction. Softscape cited only three reasons for redaction within its

16  privilege logs: Right to Privacy, Confidential Human Resources Information and Trade

17  Secret/Confidential and Proprietary Business Information (or an equivalent confidentiality

18  assertion as to customer or marketing information). During the meet and confer session, to

19  balance privacy concerns, SuccessFactors proposed that it forego the identification of any

20  employee's family members' calls, with the exception of the Watkins family. SuccessFactors

21  further proposed that Softscape omit the phone *numbers* of any non-employee party within its

22  produced records but supply only the names of companies and their representatives or "friends"

23  that communicated with the selected Softscape employees where applicable. Softscape requested

24  until July 22, 2008 to confer with its client as to its final position. Softscape notified

25  SuccessFactors via e-mail dated July 22, 2008 that it refused to identify the names of employees'

26  "friends" in the phone records, and pledged to obtain a final answer on identification of company

27  and representative names by the next morning. At the time of this declaration, Softscape has not

28  / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   given its final position on identifying the names of companies and their representatives for

2   applicable phone calls.

3          28.     During the course of these contentious discovery proceedings, SuccessFactors has

4   obtained information that Softscape CEO Dave Watkins, before falsely posing as NMS to access

5   SuccessFactors' website, had also previously broken into SuccessFactors' web environment on

6   another occasion in 2005.

7          29.     Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of David

8   Watkins in Opposition to Plaintiff's Motion to Strike, dated March 26, 2008.

9          30.     Attached hereto as **Exhibit 2** is a true and correct copy of excerpts from the

10  deposition transcript of David Watkins, dated May 30, 2008.

11         31.     Attached hereto as **Exhibit 3** is a true and correct copy of excerpts from the

12  deposition transcript of David Watkins, dated May 29, 2008.

13         32.     Attached hereto as **Exhibit 4** is a true and correct copy of Plaintiff's First Set of

14  Requests for Production of Documents and Things, dated March 28, 2008.

15         33.     Attached hereto as **Exhibit 5** is a true and correct copy of Defendant's Response to

16  Plaintiff's First Set of Requests for Production of Documents and Things, dated May 1, 2008.

17         34.     Attached hereto as **Exhibit 6** is a true and correct copy Defendant's Amended

18  Responses and Objections to Plaintiff's Set of Requests for Production of Documents and Things,

19  dated May 14, 2008.

20         35.     Attached hereto as **Exhibit 7** is a true and correct copy Plaintiff's Second Set of

21  Requests for Production of Documents and Things, dated April 4, 2008.

22         36.     Attached hereto as **Exhibit 8** is a true and correct copy Defendant's Response to

23  Plaintiff's Second Set of Requests for Production of Documents and Things, dated May 5, 2008.

24         37.     Attached hereto as **Exhibit 9** is a true and correct copy Defendant's Amended

25  Responses to Plaintiff's Second Set of Requests for Production of Documents and Things, dated

26  May 19, 2008.

27         38.     Attached hereto as **Exhibit 10** is a true and correct copy of Plaintiff's First Set of

28  Interrogatories, dated April 11, 2008.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

39.    Attached hereto as **Exhibit 11** is a true and correct copy Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, dated May 12, 2008.

40.    Attached hereto as **Exhibit 12** is a true and correct copy Defendant's Amended Responses and Objections to Plaintiff's First Set of Interrogatories, dated May 23, 2008.

41.    Attached hereto as **Exhibit 13** is a true and correct copy of a hearing transcript of proceedings before the Honorable Judge Wilken, dated March 27, 2008 (Docket Number 71).

42.    Attached hereto as **Exhibit 14** is a true and correct copy a hearing transcript of the proceedings before the Honorable Judge Wilken, dated June 17, 2008 (Docket Number 164).

43.    Attached hereto as **Exhibit 15** is a true and correct copy of a Softscape production document numbered SSP002583.

44.    Attached hereto as **Exhibit 16** is a true and correct copy of a Softscape production document numbered SSP002439.

45.    Attached hereto as **Exhibit 17** is a true and correct copy of a Softscape production document numbered SSP012453.

46.    Attached hereto as **Exhibit 18** is a true and correct copy of a Softscape production document numbered SSP009047.

47.    Attached hereto as **Exhibit 19** is a true and correct copy of an email string between Jeffrey Ratinoff and myself, dated July 25, 2008, with an embedded email from myself to Bryan Sinclair dated July 22, 2008.

48.    Attached hereto as **Exhibit 20** is a true and correct copy of a letter from Ben Wagner to Liwen Mah, dated June 24, 2008.

49.    Attached hereto as **Exhibit 21** is a true and correct copy of a letter from Jeffrey Ratinoff to Henry Carbajal, dated June 20, 2008.

50.    Attached hereto as **Exhibit 22** is a true and correct copy of an email string between Bryan Sinclair and Henry Carbajal, dated July 22, 2008.

51.    Attached hereto as **Exhibit 23** is a true and correct copy of a Softscape press release, dated March 31, 2008.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    52.    Attached hereto as **Exhibit 24** is a true and correct copy of a letter from Liwen

2    Mah to Jeffrey Ratinoff, dated June 14, 2008.

3    53.    Attached hereto as **Exhibit 25** is a true and correct copy of a letter from Jeffrey

4    Ratinoff to Liwen Mah, dated July 9, 2008.

5    54.    Attached hereto as **Exhibit 26** is a true and correct copy of Softscape press release,

6    dated March 14, 2008.

7    55.    Attached hereto as **Exhibit 27** is a true and correct copy of a Softscape Privilege

8    Log, dated July 17, 2008.

9    56.    Attached hereto as **Exhibit 28** is a true and correct copy of a Softscape production

10   document numbered SSHC00654.

11   57.    Attached hereto as **Exhibit 29** is a true and correct copy of a letter from Jeffrey

12   Ratinoff to Patrick Premo, dated June 20, 2008.

13   58.    Attached hereto as **Exhibit 30** is a true and correct copy of a letter from Jeffrey

14   Ratinoff to Henry Carbajal, dated July 25, 2008.

15   59.    Attached hereto as **Exhibit 31** is a true and correct copy of a letter from Patrick

16   Premo to Bryan Sinclair, dated June 27, 2008.

17

18   I declare under penalty of perjury under the laws of the State of California and the United

19   States of America that the foregoing is true and correct.  Executed this 30th of July 2008 at

20   Mountain View, California.

21                                                  **/s/ Henry Z. Carbajal III**

22                                                  Henry Z. Carbajal III

23

24

25

26

27

28

DECL. OF CARBAJAL III ISO PL.'S MTC PROD.          - 13 -          CASE NO. C-08-1376 CW (BZ)
OF DOCS., FURTHER ROG. ANSWERS AND
PROPER PRIVILEGE LOGS

# EXHIBIT 1

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   lpulgram@fenwick.com
2  ALBERT L. SIEBER (CSB NO. 233482)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone: (415) 875-2300
5  Facsimile:  (415) 281-1350

6  PATRICK E. PREMO (CSB NO. 184915)
   ppremo@fenwick.com
7  HENRY Z. CARBAJAL III (CSB No. 237951)
   hcarbajal@fenwick.com
8  DENNIS M. FAIGAL (CSB NO. 252829)
   dfaigal@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, CA  94041
11 Telephone:    (650) 988-8500
   Facsimile:    (650) 938-5200

12
   Attorneys for Plaintiff
13 SUCCESSFACTORS, INC.

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                          OAKLAND DIVISION
17

18 SUCCESSFACTORS, INC., a Delaware        Case No. CV 08-1376 CW
   corporation,
19                                          **MANUAL FILING NOTICE**
                    Plaintiff,
20                                          Date:       September 3, 2008
   v.                                       Time:       10:00 a.m.
21                                          Courtroom:  G, 15th Floor
   SOFTSCAPE, INC., a Delaware              Judge:      Hon. Bernard Zimmerman
22 corporation; and DOES 1-10, inclusive,
                                            Date of Filing: July 30, 2008
23                  Defendants.             Trial Date:     May 11, 2009

24

25 **RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
           THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26         COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
           ANSWERS AND PROPER PRIVILEGE LOGS**

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2    Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5    web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11    media

12    __X__    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15    Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                            By:_____/s/ Patrick Premo_____
                                                        Patrick Premo
18

19                                            Attorneys for Plaintiff
                                              SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION


-----------------------------------x

SUCCESSFACTORS, INC., a Delaware

corporation,

                    Plaintiff,

                                        Case No.

vs.                                     CV 08 1376 CW (BZ)


SOFTSCAPE, INC., a Delaware             Vol. II

corporation; DOES 1-10, inclusive,

                    Defendants.

-----------------------------------x



          VIDEOTAPED DEPOSITION OF DAVID V. WATKINS, a

     witness called by and on behalf of the Plaintiff,

     taken pursuant to Rule 30 of the Federal Rules of

     Civil Procedure, before James A. Scally, RMR, CRR, a

     Notary Public in and for the Commonwealth of

     Massachusetts, at the offices of Bromberg & Sunstein

     LLP, 125 Summer Street, Boston, Massachusetts, on

     Friday, May 30, 2008, commencing at 9:16 a.m.







1     1 ███████████████████████

    ████████████████████████████

    ███ ████████████████

    ███ █████████████

    ███ ███

    ███ █████████████████████████

  ████

    ███ ███████████████

    ███ ████████████████████

  ████████████████████████████

  ███

    ███ █████████████████████

  ███████████████████████

    ███ ██████████

    ███ ███████████████

16     Q.    Can you be more specific, please?

17     A.    No.

18     Q.  2 ████████████████████████

  ███████████████████████████

  ████████████████████

    ███ ███████████████████

    ███ ████████████████████

  ████████████████████████████

  ████████████████████

25          MR. DAVIDS:  Objection.



1    Q.    ▮ ███████████████████████████

███████████████████████

██ ████████████████████████

██ ████████████████████████

██ █████████████████████████████

██████████████████████████

██ ██████████████████████

██ █████████████████████████████

██ ██████████████████████

10   Q.    What organization?

11   A.    Softscape.

12   Q.    And when he attended this dinner, was it in New

13   York?

14   A.    I believe so, correct.

15   Q.    Was it called a people connect dinner?

16   A.    I don't remember.

17   Q.    What do you understand happened at that dinner?

18   A.    I don't, actually.

19   Q.    What do you know about Larry Kurzner's attendance

20   of it?

21   A.    That he went to it.

22   Q.    Was this for prospective customers?

23   A.    I don't know why Larry was there.

24   Q.    How did he manage to get into the people connect

25   dinner for SuccessFactors?

1      A.   He was part of Accenture.

2      Q.   Accenture?

3      A.   At the time.

4      Q.   He was part of Accenture at the time, and he is

5   now?

6      A.   He's part of Softscape.

7      Q.   When was he hired?

8           MR. DAVIDS:  Objection.

9      A.   Don't recall a specific date.

10     Q.   Was it in March of 2008?

11     A.   I don't remember.

12     Q.   Was he -- well, it was after he attended the

13  people connect event, correct?

14     A.   I don't recall when that event was, and I don't

15  remember when he was hired, so I don't know.

16          MR. DAVIDS:  Did you give us the date

17          of that dinner?

18          MR. PULGRAM:  I did not give you the

19          date of that dinner.

20     Q.   But I wanted to know from you whether Mr. Kurzner

21  went before or after he was employed by Softscape.

22     A.   I don't know.

23     Q.   He could have gone while he was a Softscape

24  employee pretending to still be at Accenture?

25          MR. DAVIDS:  Objection.

1    A.    I don't have the dates.

2    Q.    I understand you don't have the dates.

3    A.    So I can't respond.

4    Q.    It's possible that that happened; you can't --

5          MR. DAVIDS:  Objection.

6    Q.    -- deny that that's a possibility?

7          MR. DAVIDS:  Objection.

8    A.    I don't have the dates.

9    Q.    Did you communicate with Larry Kurzner about that

10   dinner before he attended it?

11   A.    I don't remember.

12   Q.    Did you communicate with anybody in your team

13   about his attendance at that dinner?

14   A.    I don't recall.

15   Q.    Prior to that dinner, was Larry Kurzner in

16   negotiations or discussions with Softscape to become an

17   employee?

18         MR. DAVIDS:  Objection.

19   A.    I don't remember.

20   Q.    What was his job at Accenture?

21   A.    Actually, I don't know the official role that he

22   had at Accenture.

23   Q.    What is your best understanding, sir?

24   A.    At one point he negotiated our contract with

25   Accenture.



```
1        Q.   So he was a purchaser of software at least in

2   part?

3        A.   I don't know.

4        Q.   Was he in charge of implementation there?

5        A.   I don't know.

6        Q.   What is his role now at Softscape?  Tell me again.

7
```

```
25                 MR. DAVIDS:  Wait a second.  Before
```

1     he answers these questions, can you tell me

2     where in the deposition notice what their

3     strategic planning for the future in terms

4     of territories has to do with any of your

5     categories?

6          MR. PULGRAM:  It has to do with

7     dissemination of the presentation.

8  

10         MR. DAVIDS:  Are you talking about

11    now?

12  

14         MR. DAVIDS:  I'm going to object to

15    that.  I'm not going to let him answer

16    that.  I'll take that up with the judge.

17    If you want to know what Softscape's

18    strategy is out in the field about what

19    areas they deem to be important or not,

20    that has absolutely nothing to do with this

21    notice.

22  

1    ▮1 ████████████

2              MR. DAVIDS:  I'll object.  I'll let

3         you answer that one question to move on.

4    ▮2 ████████████████████

         ██████████████████████████████

         ████████████████████

7              MR. DAVIDS:  Objection.

8    ▮3 ██████████████████████

         ████████████████████

         ██████████████████████████████

         ████████

         ██████████████████████████████

         ████████████████████

14             MR. DAVIDS:  I'll object.  I'll let

15        you answer that one question, and then

16        that's it on this topic, if you can answer

17        that.

18   A.   ▮4 ██████████████████████████

         ████████

20   Q.   Did Mr. Kurzner provide the list of the attendees

21   at the dinner?

22   A.   I don't recall specifically.

23   Q.   What's your most -- your best recollection, sir?

24   ▮5 ████████████████

         ████  ████████████

1      A.   I don't know.

2      Q.   Did you get a copy of it?

3      A.   I may have.

4      Q.   Do you have a copy still?

5      A.   I don't know.

6      Q.   When you say you may have, are you uncertain about

7  that?

8      A.   I get things from people all the time.  It's quite

9  possible that I've gotten it.

10     Q.   Are you uncertain about that?

11     A.   It's quite possible.  I actually don't know.

12     Q.   What did you do with it?

13     A.   I don't recall what I did with it.

14     Q.   Who besides Mr. Kurzner at Softscape had the list?

15          MR. DAVIDS:  Objection.

16     A.   I don't know.

17     Q.   How big was the list?

18     A.   I don't recall.

19     Q.   Did you have discussions internally about how to

20  use the list?

21     A.   I don't remember.

22     Q.   Did you have e-mails about how to use the list?

23     A.   How to use the list?

24     Q.   Yes.

25     A.   I don't know.

1           Yes, if you'd take a break.

2               MR. DAVIDS:  We'll call you back into

3       the room.

4   BY MR. PULGRAM:

5       Q.   We've marked as Exhibit 21 the document production

6   by Google.  You had it last night to look at, correct?

7       A.   I did.

8       Q.   ████████████████████████████████████████

    ██████████████████████████████████████████████████████

    █████████████████

11      A.   No.

12      Q.   Well, there are so many, you couldn't get them all

13  in the first -- in the address line.  If you look, the

14  first chunk is from page 1661 to 1664.  Do you see that?

15      A.   Correct.  Do you mean the page numbers, the Bates

16  stamps?

17      Q.   Yes.

18      A.   Yes.  Yep.

19      Q.   ██████████████████████████████████████████

    ████████████████████████████████████████████

    ████████████████

22      A.   Correct.

23      Q.   ████████████████████████████████████████

    ███████████████████████████████████████████████████████

    ██████████████

```
1        A.    █
         █
         █

4        A.    That's the part starting on page 1725, do you

5   mean?

6        Q.    Well --

7        A.    Sorry, 1724?

8        █
         █
         █
         █
         █

13       A.    What page are you on?

14       Q.    1726.

15       A.    Okay.

16       █
         █
         █
         █
         █

21       A.    I have no idea.

22             MR. DAVIDS:  Wait.  Just so I'm

23       clear, are you talking about all the way to

24       the end of the list on 1727?

25             MR. PULGRAM:  Well, obviously, there
```

1          are the sales addresses.  I don't think

2          those people attended the SuccessFactors

3          dinner.

4                  THE WITNESS:  You'd be surprised.

5                  MR. PULGRAM:  I was talking about --

6          and I said primarily.

7      BY MR. PULGRAM:

8          Q.   So as the corporate designee of Softscape --

9          A.   Yep.

10

1     information?  A person?

2              MR. DAVIDS:  Who could be.

3     A.   Who could be, a person?  Is that the question?

4              MR. DAVIDS:  He'll ask again.

5              THE WITNESS:  Sorry.

6     BY MR. PULGRAM:

7     [1] ████████████████████████████████████

8     ████████████████████████████████████████

9     Faust's responsibilities?

10             MR. DAVIDS:  Objection.

11    [2] ██████████████████████████████

██████████████████████

██ ████████████████████████████

████████████████████████████████████

████████████████████████████████████

16             MR. DAVIDS:  Objection.

17    [3] ██████████████████████████████

██████████████████████

██ ████████████████████████████████

████████████████████████████████████████

██████████████████████████

22             MR. DAVIDS:  Objection.

23    [4] ██████████████████████████████████

████████████

██ ████ ██████



        MR. DAVIDS:  Objection.

        MR. DAVIDS:  Objection.



17    A.    I don't recall a specific name.

18    Q.    Anyone else?

22                 MR. DAVIDS:  Objection.

# EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION


---------------------------------x

SUCCESSFACTORS, INC., a Delaware

corporation,

                    Plaintiff,

                                        Case No.

vs.                                     CV 08 1376 CW (BZ)


SOFTSCAPE, INC., a Delaware

corporation; DOES 1-10, inclusive,

                    Defendants.

---------------------------------x



        VIDEOTAPED DEPOSITION OF DAVID V. WATKINS, a

    witness called by and on behalf of the Plaintiff,

    taken pursuant to Rule 30 of the Federal Rules of

    Civil Procedure, before James A. Scally, RMR, CRR, a

    Notary Public in and for the Commonwealth of

    Massachusetts, at the offices of Bromberg & Sunstein

    LLP, 125 Summer Street, Boston, Massachusetts, on

    Thursday, May 29, 2008, commencing at 9:16 a.m.

1    A.    I had a PowerPoint presentation I would have

2    printed to pdf.

3    Q.    Okay.  So this PowerPoint, where did it exist on

4    the computers at Softscape?

5    A.    ████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

███ █████████████████████████████████

████████████████████████████████

██ ████████████

██ ██████████████

██ ████████████████

14   Q.    Is it still there?

15   A.    Yes.

16   Q.    Is it still available in the format that you had

17   at 8:12 p.m. on March 3rd?

18   A.    To the best of my knowledge, I think we've hidden

19   it so that it can't be referenced, but we've left it and

20   preserved it.

21   Q.    And does that --

22   A.    But I don't recall if it was -- I mean I don't

23   know if was exactly -- if it's exactly this version that's

24   on that sales resource center, but I know that there is a

25   version there, whatever was there at the time we were

1

16   SuccessFactors employee.

17        Q.   Can you spell her name, please?

18        A.   I don't know specifically, but it's phonetic,

19   Swendowski.

20        Q.   Is she still an employee --

21        A.   To the best of my knowledge, that's her.

22        Q.   Is she still an employee of Softscape?

23        A.   No, she's not.

24        Q.   How did she come to give a PowerPoint on that

25   template to Softscape?

1    A.    To the best of my knowledge, I am -- I am actually

2    not sure if it's been produced, but I know it has been

3    produced.  I don't know whether it's been distributed.

4    Q.    Produced meaning given to your lawyers?

5    A.    Correct.

6    Q.    Distributed being given to us?

7    A.    Correct.  I do not know that specifically.

8    Q.    Did you receive that presentation soon before

9    generating The Naked Truth document or at some

10   substantially earlier time?

11   A.    To the best of my knowledge, it was earlier that I

12   would have -- would have received that.

13   Q.    So you had it in your files?

14   A.    Correct.

15   Q.    Did you yourself take that template and load copy

16   on to it?

17            MR. DAVIDS:  Objection.

18   A.    I took -- what did I do with the template?  Is

19   that what you're asking?

20   Q.    Well, you had a presentation.

21   A.    Right.

22   Q.    And the presentation was on a template.

23   A.    Right.

24   Q.    And that was SuccessFactors' work.

25   A.    Correct.

1    Q.    -- in Exhibit 5.

2    A.    Yes.

3    Q.    Okay.  What is that page, 6272001?

4    A.    I don't know specifically how that relates, but I

5    believe it's probably -- it's probably a copy of the

6    information on their -- on their website.

7    Q.    As of that date?

8    A.    As of that date.  Would have been the date that it

9    would have been captured.

10    Q.    Did you collect that information?

11    A.    To the best of my knowledge, yes.  It could have

12    also come out of an e-mail; I don't recall specifically.

13    Q.    Did you use this in your calculation of retention

14    numbers?

15    A.    Yes, I did.

16    Q.    For The Naked Truth presentation?

17    A.    I used that for the retention numbers that are in

18    this Excel file spreadsheet, which is what I'm talking

19    about, which was also, parts of that were copied and pasted

20    in the PowerPoint.

21    Q.    Okay.  What is the tab referred to as original?

22    What does that mean?  That's a multipage excerpt of this

23    spreadsheet within Exhibit 5 labeled "Original" at the

24    bottom.

25    MR. DAVIDS:  Where is that located in

1     the package?

2          MR. PULGRAM:   It's about 15 pages

3     from the end, roughly.

4     A.   █████████████████████████████

█████████████████████████████████████

6     produced off of a public website.

7     Q.   When was it gathered?

8     A.   When was what gathered?

9     Q.   This information.

10    A.   Probably this year.

11    Q.   By whom?

12    A.   Actually, gathered -- from a gathering

13    perspective, I don't actually know when it was physically

14    gathered from their customers, but I know that when I

15    looked at it from their PowerPoint, from their webinar, as

16    well as their website, would have been this year.  And it

17    would have been me.  But I don't know actually the genesis

18    of how they gathered it, whomever authored this.

19    Q.   You don't know who authored the original tab?

20    A.   Actually, the person who presented this, portions

21    of it at least, were Robert, because that was who had the

22    ███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

1    Q.    What I'm trying to understand specifically --

2    A.    Uh-huh.

3    ▮1 ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

██ ████████████

7    Q.    And the other is one particular webinar; is that

8    correct?

9    A.    Correct.

10   Q.    Okay.  And what was the date of that webinar?

11   A.    I don't know specifically.

12   Q.    Was it in 2004?

13   A.    I don't know.

14   Q.    This --

15   A.    I'm assuming that it was probably 2004, because

16   ▮2 ██████████████████████████████

17   Q.    Can you explain to me -- okay.  Who collected the

18   names from that webinar?

19   A.    I did.

20   Q.    Did you attend the webinar?

21   A.    This was an online recorded webinar that you can

22   get in the public domain.  It's just watching it.  So it's

23   not -- it wasn't a live one.  It's just out there on the

24   Internet.

25   Q.    Right.  And did you have to log in to watch it?

1  A. No.

2  Q. Did you have to give any name or information?

3  A. Nope.

4  Q. The -- so you watched it, and then did you make

5 this list or did you assign someone else to make this list?

6 Did you make a screen shot?  How did you make the list?

7  A. This list, I made the list.

8  Q. By hand?

9  A. Correct.

10  Q. Just wrote down the names of all the companies

11 that were in there?

12  A. Every single one on the PowerPoint slide.

13  Q. You froze the frame --

14  A. And webinar.

15  Q. -- and then --

16  A. No.  Just literally just paused it.

17  Q. Okay.  What does the column on this tab

18 "Original," the column labeled "Time to Implement" mean?

19  A. Just other information that we could gather and

20 find.

21  Q. About?

22  A. They actually had on this -- on this webinar, they

23 had literally a slide that would say "Time to Implement,"

24 and they would brag about how fast or how slow it took them

25 to actually implement things.  And all it was was recording

1    correct.

2         Q.    Were you comparing it to the 2005 column?

3         A.    No, because there was obviously nothing in the

4    2005 column in this particular example.

5                   MR. PULGRAM:  Those are my questions

6              before the lunch break.

7                   THE VIDEOGRAPHER:  Going off the

8              record.  This marks the end of videotape

9              number 3 in the deposition of Softscape,

10             Inc., Rule 30(b)(6) designee David V.

11             Watkins.  We're going off the record.  The

12             time is 1:10.

13                  (Recess.)

14                  THE VIDEOGRAPHER:  We're back on the

15             record.  This marks the beginning of

16             videotape number 4 in the deposition of

17             Softscape, Inc., Rule 30(b)(6) designee

18             David V. Watkins.  The time is 2:10.

19   BY MR. PULGRAM:

20        Q.    Good afternoon.

21        A.    Hello.

22        Q.    Do you have today at Softscape actual copies of

23   the PowerPoints, web sites, and webinars that were used to

24   compile your list of 2005 customers for SuccessFactors?

25        A.    I -- what I have at my disposal is the content

1    that's in the spreadsheet, the -- the various tabs.  I

2    ▉

    ▉

4    got copies of the website, the list of customers from

5    October, and then the Q1 '08 at some point in time.

6      Q.    October of what year?

7      A.    2007.

8      Q.    Do you have copies of the website that was used

9    for compiling the list of 2005 customers, or are you just

10   relying on the preexisting versions of the spreadsheet that

11   were rolled up into the summary?

12     A.    Let's see.  The -- I have the -- I have one page

13   ▉

    ▉

    ▉

    ▉

    ▉

    ▉

    ▉

    ▉

    ▉

    ▉

23   multimedia one.  I don't know an exact date.

24     Q.    Was it in 2004 or 2005 or some other time?

25     A.    I don't know.



1    March time frame.

2        Q.    Can you be more specific, please?

3        A.    No, I can't.

4              MR. PULGRAM:  I don't have time to

5        address all of that right now, so I want to

6        shift for a moment to New Millennium Shoe.

7        We will come back to the customer campaign

8        either tomorrow or when we have the rest of

9        the documents about it.

10       Q.    What is New Millenium Shoe?

11       A.    It's a shoe store.

12       Q.    Store?

13       A.    Correct.

14       Q.    One store?

15       A.    It was three retail stores.  Two and a half retail

16   stores.

17       Q.    Where is it located?

18       A.    It's located -- it was located in Puerto Rico.

19       Q.    It's now one store?

20       A.    It's actually now -- we've closed the retail

21   operations.

22       Q.    Is there any operation remaining?

23       ████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████████



1    Q.    When were the retail stores closed?

2    A.    Sometime in 2007.

1   **1** ████████████████████████████████████████
    ███████████████
    ████████████
    ████████████████
5   **2** ████████████████
    ████████████████
    ████████████████████████
    ████████████████
    ████████████████████
    ██████████████████████████
    ████████████████████████
    ████████████████████████
    ██████████████████████████
    ████████████████
    ████████████████████████
    ██████████████████
    ██████████████████████████████
    ███████████████████████
    ████████████████████████████████
20  Q.    Does it engage in Internet sales?

21  A.    It did.

22  Q.    When?

23  A.    In the two -- in the probably mid-2000 time frame.

24  It's quite some time ago they tried to do it.

25  **3** ████████████████████████████████



MR. DAVIDS:  In that login?

Q.

MR. DAVIDS:  Objection.

A.    I don't recall.

Q.    Did you log in to the New Millennium Shoe website

account at NSI from your home?

A.    During what time period?

Q.    During January of 2008.

A.    I don't recall specifically logging in in January

2008.  But if there would be -- if there was a potential

login, it most probably it was from me.

Q.

Q.    Okay.  How did it come about that New Millennium

1  Shoe contacted SuccessFactors?

2      A.    I asked Ely Ann, Ely, to actually make an e-mail

3  inquiry and a phone call to gain access to their -- to

4  actually get -- to have the ability to actually participate

5  in their trial program.

6      Q.    When did you ask her to do that?

7      A.    Probably in the November time frame, maybe in

8  October.  Somewhere in that vicinity.

9      Q.    And when did she do so?

10              MR. DAVIDS:  Objection.

11     A.    Do so what?

12     Q.    Did she contact SuccessFactors?

13     A.    I believe she attempted to contact them in the

14  winter of 2007.

15     Q.    Do you have an understanding of when she

16  succeeded?

17     A.    Somewhere between December and I think February.

18     Q.    Do you have any reason to disbelieve Mr.

19  Corrales's declaration that Ely Valls contacted

20  SuccessFactors on January 29th, 2008?

21     A.    Do I have what?

22     Q.    Any reason to disbelieve that.

23     A.    Disbelieve that she contacted him in January of

24  2008.

25     Q.    January 29th, 2008.

1  A. For the trial?

2  Q. For the trial version, as you call it.

3  A. I don't recall specifically.

4

15  Q. Now, when -- do you differentiate the trial

16 version from the ACE demo site?

17  A. I -- I don't differentiate anything.  I've got a

18 password and user ID to a trial version.

19  Q. Was the password and user ID e-mailed to you?

20  A. It was e-mailed to Ely at New Millennium Shoe.

21  Q. Was the trial version password sent in response to

22 an e-mail request or after some oral communications?

23  A. You know, the e-mail requests were back in 2007.

24 So I think the final -- the final information was sent via

25 e-mail.  And I'm sure that they -- there was

1    Q.    Did you discuss this plan with Hank Watkins?

2    A.    What plan?

3    Q.    What plan.  The plan to use New Millennium as a

4    shell to gain access to a trial version of your

5    competitor's software.

6              MR. DAVIDS:  Objection.

7    A.    I didn't have a discussion about a shell with Hank

8    Watkins.

9    Q.    Did you have a discussion with Hank Watkins about

10   using New Millennium Shoe as a means for you, as the CEO of

11   SuccessFactors' competitor, to gain access to its trial

12   version?

13   A.    No, I did not.

14   Q.    Did you have a discussion with any of the other

15   shareholders of the company?

16   A.    No, I did not.

17   Q.    Did you, sir, believe that if you had disclosed

18   that it was you, the CEO of Softscape, who was asking for a

19   trial version, that SuccessFactors would have given it to

20   you?

21   A.    They would not have given it to me, correct.

22   Q.    Did Ely Valls ever log in with you?

23   A.    No.

24   Q.    She just gave you the information and off you

25   went?

1      A.    No.

2      Q.    Don't know that term?

3      A.    I do not know that term.

4      Q.    You weren't familiar with that from the HP

5   pretexting scandal?

6      A.    I don't know what that is.

7      Q.    Okay.  Now, did you obtain -- attend two

8   demonstrations by Jorge Corrales of the software, one in

9   Spanish and one in English?

10      A.    Yes, I did.

11      Q.    Was anyone else present for those presentations?

12      A.    My wife.

13      Q.    Anyone else?

14      A.    No.

15      Q.    So did your wife pretend to be Ely?

16      A.    Yes.

17      Q.    And for both presentations?

18      A.    Yes.

19      Q.    Did your wife also pretend to be Ely for other

20   telephone calls with SuccessFactors?

21      A.    No, I don't believe so.

22      Q.    Did Ely herself ever contact SuccessFactors

23   orally?

24      A.    I believe so, yes.

25      Q.    What occasions are you aware of?

1     A.   I don't recall.  I believe I was, yes.

2     Q.   And your wife pretended to be Ely pretending to be

3 interested in buying the software?

4     A.   That's correct.

5     Q.   And then your wife -- you were sitting there in

6 the room with them?

7     A.   Yes, I was.

8     Q.   Watching the same screen?

9     A.   Yes.

10     Q.   And was that from your house?

11     A.   That was from my house.

12     Q.   Then the next occasion, did your wife come down to

13 the office?

14     A.   She came into the office, correct.

15     Q.   And you guys sat there and you pretended to be

16 who?

17     A.   Jorge, I don't remember what we used as his last

18 name.

19     Q.   Cruz?

20     A.   I believe that was what it was.

21     Q.   Actually, it was Javier Cruz, correct?

22     A.   Correct.

23     Q.   And you told Mr. Corrales that you were what?

24     A.   I don't recall specifically what I told him I was.

25     Q.   How did you explain to him that there was a man on

1    the phone with Ely?

2        A.    Just that it was another employee at New

3    Millennium Shoe.

4        Q.    Weren't you represented to have been a consultant

5    for New Millennium Shoe?

6        A.    I don't recall specifically.

7        Q.    And wasn't that the way by which you could have

8    such detailed knowledge and ask such detailed questions?

9        A.    No, I don't believe that was the reason.

10       Q.    Were you on the website -- strike that.

11             Were you in the password-protected account the day

12   before the first demonstration?

13       A.    I don't remember the specific days, but the odds

14   are if somebody entered the account, it would have been me.

15       Q.    And were you reviewing it to prepare questions to

16   be presented to Mr. Corrales?

17       A.    I was reviewing it for intellectual property.

18       Q.    For intellectual property.

19       A.    Correct.

20       Q.    What do you mean by that, sir?

21       A.    Because I believed SuccessFactors misappropriated

22   my IP.

23       Q.    So that was before the first demo, correct?

24       A.    What was before the first demo?

25       Q.    This review, because you thought that

1     A.   No.

2     Q.   Did you go on the password-protected site again

3  after Mr. Corrales's second presentation?

4     A.   I attempted to.

5     Q.   In fact, you were successful, weren't you?

6     A.   No, I was not.  Not to the best of my knowledge.

7  At some point after that demonstration, I was prevented

8  from going in.

9           MR. PULGRAM:  We're going to change

10         the tape, go for a few more minutes, and

11         then we'll call it a day.

12           THE VIDEOGRAPHER:  Going off the

13         record.  This marks the end of tape number

14         5 in the deposition of Softscape, Inc.,

15         Rule 30(b)(6) designee David V. Watkins.

16         We're going off the record.  The time is

17         5:10 p.m.

18         (Recess.)

19           THE VIDEOGRAPHER:  We're back on the

20         record.  This marks the beginning of

21         videotape number 6 in the deposition of

22         Softscape Inc., Rule 30(b)(6) designee

23         David V. Watkins.  The time is 5:12.

24  BY MR. PULGRAM:

25     Q.   Would you look at the declaration of Mr. Matheson

 1    which we've marked as Exhibit 13.  Turn to page 5, please.

 2    It describes logins to the ACE sales demo on February 19th

 3    at 8:00 a.m., 9:00 a.m., 2:00 p.m., and 3:00 p.m.  Was that

 4    you?

 5        A.    Most likely, yes.

 6        Q.    That's from the Softscape headquarters.  He

 7    describes access on February 21st for most of the day

 8    starting at 8:00 a.m.  That was you also?

 9              MR. DAVIDS:  You said it was from the

10         Softscape headquarters?

11              MR. PULGRAM:  Yes.

12        A.    It was accessed by the Softscape headquarters for

13    most of the day starting at 8:00 a.m. EST.

14        Q.    Yes.  Was that you?

15        A.    On February 21?  I don't recall specifically, but

16    most likely it was.

17        Q.    The next entry -- well, let me stick with that one

18    for a second.

19              That was the same day as the second demo, correct?

20        A.    I don't recall, but it was about that same day.

21        Q.    Well, you were on pretty much the whole day before

22    the second demo started, correct?

23        A.    I don't remember specifically, but it sounds about

24    right.

25        Q.    Okay.  And the record reflects the second demo was

1    on February 21st.

2            Let's go down to paragraph 15.  That IP address,

3    24.34.56.79, that is your brother Rick's house, correct?

4        A.    I believe so.

5        Q.    And this reflects that the password-protected

6    account was accessed at 7:00 p.m. on February 18, the night

7    before the first demo, correct?

8        A.    It says on February 18th it was accessed -- it was

9    accessed at 7:00 p.m. EST.

10       Q.    Was that you?

11       A.    I -- I am not understanding -- I'm just trying to

12   answer your question specifically.  Most -- most likely it

13   was me, but I'm trying to understand what your specific

14   question -- you've got a couple of IP addresses here.

15   You've got the 98 one and the 24 one, and you've got dates.

16   So what are you specifically asking?

17       Q.    I'm looking at paragraph 15.  Are you?

18       A.    Yes, I am.

19       Q.    Okay.  Paragraph 15 refers to the .79 IP address,

20   correct?

21       A.    It does.

22       Q.    Which we established was Rick Watkins.  And it

23   refers to access at 7:00 p.m. on the 18th, the day before

24   the first demo.  And my question is:  Was that you?

25       A.    To the best of my knowledge, yes.

1    Q.    Why were you accessing it from Rick Watkins'?

2    A.    I was showing him.

3    Q.    And did you make notes at that time?

4    A.    No.

5    Q.    Do you have any notes from any of the times that

6    you accessed?

7    A.    No.

8    Q.    Immediately after one of your accesses, you sent

9    around a batch of information to be included in the knock-

10   off sheet, didn't you?

11   A.    I did.

12   Q.    And that was based on what you had seen?

13   A.    That was based on what I had seen.

14   Q.    That was right after the second demonstration; is

15   that correct?

16   A.    I don't recall specifically, but it was somewhere

17   around there.

18   Q.    And it was at about 2:00 in the morning, wasn't

19   it?

20   A.    I don't recall the specific time, but that may

21   have been the case.

22   Q.    The access from Rick Watkins on February 20th at

23   2:00 a.m. Eastern Standard Time, described in paragraph 15,

24   were you there at 2:00 a.m.?

25   A.    Most probably, yes.

1    Q.   You think he might have said, "Sure.   Fine.   Let
2  me give you the tour"?
3              MR. DAVIDS:   Objection.
4    A.   I don't know what Jorge Corrales would have said.
5    Q.   As you sat there at that time on the phone with
6  him, you understood completely well that he would never
7  have given you one demonstration, let alone two, had he
8  known you were the CEO.   Wasn't that your understanding?
9              MR. DAVIDS:   Objection.
10    A.   Can you please repeat the question.
11             MR. PULGRAM:   Read it back, please.
12             (Question read.)
13    A.   The CEO of Softscape?
14    Q.   Yes.
15    A.   If I told him I was the CEO of Softscape, he
16  probably would not have given me a demonstration.
17    Q.   You understood that at the time?
18    A.   I understood that at the time.   I didn't ask Jorge
19  Corrales that, so I didn't understand what he would have
20  thought.
21    Q.   Well, at that time, as you sat there using a fake
22  name, you understood that had you given your real name, you
23  wouldn't have gotten the demo?
24             MR. DAVIDS:   Objection.
25    A.   I do not know if Jorge Corrales knew who I was.

1

2    Q.    Anyone else?

3    A.    No.  I don't recall anybody else.

4    Q.    Was this posted to the SRC?

5    A.    No, I don't even think I -- I gave this to

6    Christopher.  I actually don't think I should -- I gave it

7    to anybody.  I -- I don't recall giving this -- this to

8    anybody.

9    Q.    Two of the pages from this proposal appear in the

10   presentation, correct?

11   A.    Correct.

12   Q.    Did you cut and paste them into The Naked Truth

13   document?

14   A.    Yes, I did.

15   Q.    Were there any discussions on the phone between

16   you and Mr. -- strike that.

17   Were there any discussions on the phone with Mr.

18   Corrales about the possibility of getting a proposal?

19   A.    I don't recall specifically, but I -- I don't

20   remember.

21   (Discussion off the record.)

22   Q.    Mr. Corrales has submitted a declaration in this

23   action that this proposal was delivered because Ely Valls

24   told him -- the person he thought to be Ely Valls told him

25   that she was making her decision in the next two days.  Was

# EXHIBIT 4

1   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   ALBERT L. SIEBER (CSB No. 233482)
    asieber@fenwick.com
3   LIWEN A. MAH (CSB No. 239033)
    lmah@fenwick.com
4   FENWICK & WEST LLP
    555 California Street, 12th Floor
5   San Francisco, CA 94104
    Telephone: (415) 875-2300
6   Facsimile:   (415) 281-1350

7   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
8   DENNIS M. FAIGAL (CSB NO. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA 94041
11  Telephone:    (650) 988-8500
    Facsimile:    (650) 938-5200
12
    Attorneys for Plaintiff SUCCESSFACTORS, INC.
13

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                  OAKLAND DIVISION

18

19  SUCCESSFACTORS, INC., a Delaware        Case No. CV 08-1376 CW
    corporation,
                                            **PLAINTIFF'S FIRST SET OF REQUESTS**
20              Plaintiff,                   **FOR PRODUCTION OF DOCUMENTS AND**
                                            **THINGS (NOS. 1 – 16)**
21         v.

22  SOFTSCAPE, INC., a Delaware
    corporation,
23
                Defendant.
24

25         Pursuant to the Court's order permitting the parties to initiate discovery and Rules 26 and

26  34 of the Federal Rules of Civil Procedure, SuccessFactors requests that Defendant Softscape,

27  Inc. ("Softscape") respond in writing to each of the following Requests and produce the

28  documents and things requested for inspection and copying, in accordance with the definitions

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   and instructions set forth below, at the offices of Fenwick & West LLP, 555 California Street,

2   Suite 1200, San Francisco, California 94104, within the time period permitted by the Federal

3   Rules of Civil Procedure.

4                                          **DEFINITIONS**

5        1.      The terms "YOU," "YOUR," "DEFENDANT," or "SOFTSCAPE" mean and

6   include, collectively and/or individually, Softscape, Inc., and its parents, subsidiaries, affiliates,

7   predecessors or successor companies, if any, and its current and former officers, directors,

8   employees, consultants, attorneys, authorized agents, sales representatives, distributors, dealers,

9   direct and indirect contractors, and/or all other PERSONS acting or purporting to act on its behalf.

10       2.      The terms "PLAINTIFF" or "SUCCESSFACTORS" mean and include,

11  collectively and/or individually, SuccessFactors, Inc., and its parents, subsidiaries, affiliates,

12  corporate divisions, predecessors or successor companies, if any, and its current and former

13  officers, directors, employees, consultants, attorneys, authorized agents, sales representatives,

14  distributors, dealers, direct and indirect contractors, and/or all other PERSONS acting or

15  purporting to act on its behalf.

16       3.      The terms "PERSON" or "PERSONS" shall include both natural persons, corporate

17  or other business entities, and all other forms of legal entities, and shall include, but is not limited

18  to, the following:  corporations, partnerships, joint ventures, associations, business organizations,

19  trade organizations, standards organizations, and sole proprietorships.

20       4.      The terms "DOCUMENT" or "DOCUMENTS" have the broadest meaning

21  accorded that term by Fed. R. Civ. P. 34(a) and includes, but is not limited to, all of the items

22  defined in Fed. R. Evid. 1001, and all preliminary and final drafts of any such item.  The terms

23  shall include, but not be limited to, all written, electronic, phonic, graphic, and recorded matter of

24  every type and description and every tangible thing that is or has been in YOUR possession,

25  custody, or control, to which YOU have access or of which YOU have knowledge.

26  "DOCUMENT(S)" shall also include, but shall not be limited to, the following items, whether

27  printed or recorded or reproduced by hand:  agreements, contracts, leases, communications

28  (including intra-company communications), electronic mail, data from Personal Digital Assistants

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  (including handheld computers, "smart phones," such as the palmOne™ Treo© and other similar

2  devices and pagers), correspondence, postings on intranet or internet forums or websites (such as

3  web pages and web logs or blogs), faxes, telegrams, cables, telexes, teletype messages, memoranda,

4  records, books, diaries, notebooks calendars (paper, electronic and otherwise), telephone and other

5  logs, telephone and other bills, voicemail and transcriptions thereof, recorded distributions,

6  forecasts, statistical statements, accounts, invoices, purchase orders, receipts, billing records, tapes,

7  expense vouchers, minutes, summaries and other records of meetings, conferences, negotiations,

8  conversations, investigations and interviews, sales brochures and literature, advertisements, price

9  lists, trade letters, press releases, stenographic, handwritten and any other notes, projections,

10  working papers, checks (front and back), check stubs and receipts, models, surveys, devices,

11  pictures, photographs, films, computer records, data compilations, and voice and video recordings.

12  "DOCUMENT(S)" shall not be limited in any way as to the form of storage (such as paper,

13  microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, flash memory drive, or

14  other storage device).  A draft or non-identical copy is a separate document within the meaning of

15  this term.

16      5.    The terms "COMMUNICATION" or "COMMUNICATIONS" refer to any

17  exchange of information by any means of transmission and the sending or receipt of information of

18  any kind by or through any means, including but not limited to speech, writings, documents,

19  language (machine, foreign or otherwise) of any kind, computer electronics or electronic data,

20  sound, radio or video signals, telecommunications, telephone, teletype, facsimile, telegram,

21  microfilm, microfiche, photographic film of all types or other media of any kind.  The terms

22  "COMMUNICATION" and "COMMUNICATIONS" also include, without limitation, all

23  meetings, notices, requests, response, demands, complaints, press, publicity or trade releases, and

24  postings on intranet or internet forums or websites (such as web pages and web logs or blogs).

25      6.    "PRESENTATION" means the document shown as Exhibit 1 to the Declaration of

26  Robert Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary Restraining

27  Order and Order to Show Cause re Preliminary Injunction, including all components, formats,

28  versions, portions, notes, and version data thereof.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    / / /

2        7.      SUCCESSFACTORS' TRADEMARKS means the name SUCCESSFACTORS

3    and the logos registered with the United States Patent and Trademark Office with Serial Numbers

4    78660874, 78946750, 78706535, and 77248286.

5        8.      The term "CONCERNING" means pertaining to, mentioning, commenting,

6    describing, analyzing, dealing with, resulting from, constituting, including, comprising, consisting

7    of, containing, referring to, reflecting, discussing, showing, stating, explaining, contradicting,

8    providing context to, evidencing, concerning, or recording a particular subject in whole or in part,

9    either directly or indirectly, or being in any way logically or factually connected with the matter

10   discussed or identified.

11       9.      The terms "or" and "and" shall be read in the conjunctive and in the disjunctive

12   wherever they appear, and neither of these words shall be interpreted to limit the scope of these

13   Requests.

14       10.     The words "any," "all," and "each" shall be construed as "all and each."

15       11.     The use of a verb in any tense shall be construed as the use of the verb in all other

16   tenses.

17       12.     The singular form of any word shall be deemed to include the plural.  The plural

18   form of any word shall be deemed to include the singular.

19                                  **INSTRUCTIONS**

20       1.      In responding to the following requests, furnish all available DOCUMENTS,

21   including documents in the possession, custody, or control of any of your attorneys, directors,

22   officers, agents, employees, representatives, associates, investigators or division affiliates,

23   partnerships, parents or subsidiaries, and persons under your control, not merely documents in your

24   direct possession.

25       2.      All DOCUMENTS shall be organized and produced pursuant to Rule 34(b) of the

26   Federal Rules of Civil Procedure.

27       3.      Electronic records and computerized information must be produced in an intelligible

28   format, together with a description of the system from which they were derived sufficient to permit

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fenwick & West LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  rendering the records and information intelligible. Electronic information must be produced in

2  native format.

3       4.    If YOU are unable to comply with a demand for any DOCUMENT in full, YOU are

4  requested to specify, pursuant to Federal Rule of Civil Procedure 34, whether YOUR inability to

5  comply is because the DOCUMENT has never existed, has been destroyed, has been lost,

6  misplaced or stolen, and/or has never been, or is no longer in YOUR possession, custody or control.

7  The statement shall set forth the name and address of any PERSON or organization known or

8  believed by YOU to have possession, custody, or control of the DOCUMENT.

9       5.    If any information requested is claimed to be privileged, immune from discovery or

10  otherwise not discoverable, YOU are requested to provide all information falling within the scope

11  of the document request which is discoverable, and for each item of information contained in a

12  document to which a claim of privilege is made, YOU must identify such document in a privilege

13  and/or redaction log pursuant to Federal Rule of Civil Procedure 26(b)(5), such identification to

14  include at least the following:

15         (1)    the basis on which the privilege is claimed;

16         (2)    the names and positions of the author of the document and all other persons

17              participating in the preparation of the document;

18         (3)    the name and position of each individual or other person to whom the

19              document, or a copy thereof, was sent or otherwise disclosed;

20         (4)    where not apparent, the relationship of the author, writer, sender, initiator,

21              addressee or any other recipient with each other;

22         (5)    the date of creation or transmittal indicated on each document, or an

23              estimate of that date, indicated as such, if no date appears on the document;

24         (6)    a description of any accompanying material transmitted with or attached to

25              such document;

26         (7)    the number of pages in such document;

27         (8)    the particular document request to which such document is responsive; and

28  / / /

1           (9)    the general subject matter and whether any business or non-legal matter is

2                   contained or discussed in such document.

3        6.    Each Request for DOCUMENTS seeks production of all DOCUMENTS described

4    along with any attachments, drafts, and non-identical copies in any language whatsoever, in the

5    possession, custody or control of YOU or YOUR respective agents or all available information,

6    including such information as becomes available to YOU after YOUR answers hereto are served.

7        7.    Unless otherwise specified, each Request for DOCUMENTS seeks production of

8    all DOCUMENTS created or modified on or after January 1, 2007.

9    **DOCUMENT REQUESTS**

10   **DOCUMENT REQUEST NO. 1:**

11       ALL DOCUMENTS CONCERNING the genesis, creation, review, or revision of the

12   PRESENTATION, including but not limited to any components, formats, versions, portions,

13   edits, memoranda, notes, e-mails, embedded objects, file histories, version data, or document

14   management system logs.

15   **DOCUMENT REQUEST NO. 2:**

16       ALL DOCUMENTS CONCERNING potential, intended, or actual recipients of the

17   PRESENTATION or of any COMMUNICATIONS about the PRESENTATION, including but not

18   limited to lists of recipients, sales or marketing efforts directed at those recipients, and

19   communications involving SOFTSCAPE's employees, customers, or other third parties about the

20   recipients.

21   **DOCUMENT REQUEST NO. 3:**

22       ALL DOCUMENTS CONCERNING any facts received from SUCCESSFACTORS'

23   actual or potential customers and included in the PRESENTATION, or the compilation of such

24   facts as described on page 2 of the PRESENTATION.

25   **DOCUMENT REQUEST NO. 4:**

26       ALL DOCUMENTS CONCERNING any assertions in the PRESENTATION, including

27   but not limited to DOCUMENTS that support or refute those assertions.

28   / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **DOCUMENT REQUEST NO. 5:**

2         ALL COMMUNICATIONS CONCERNING the PRESENTATION, including but not

3    limited to COMMUNICATIONS between or involving SOFTSCAPE employees, its customers,

4    or current or former SUCCESSFACTORS employees.

5    **DOCUMENT REQUEST NO. 6:**

6         ALL COMMUNICATIONS between SOFTSCAPE and Sears, Regions Bank, Intelsat,

7    David Sinkfield, ICMA Retirement, Harris-Williams, and any current or former

8    SUCCESSFACTORS employee or consultant regarding SUCCESSFACTORS, its products,

9    services, employees, business, or actual or prospective customers.

10   **DOCUMENT REQUEST NO. 7:**

11        ALL DOCUMENTS created or modified after February 2007 CONCERNING

12   SUCCESSFACTORS, its products, services, employees, business, or actual or prospective

13   customers, including but not limited to all materials obtained from SUCCESSFACTORS'

14   website, online customer community, webinars, or online demonstration environments, including

15   but not limited to copies of webpages or the content therein.

16   **DOCUMENT REQUEST NO. 8:**

17        ALL DOCUMENTS CONCERNING or showing access from any SOFTSCAPE

18   computer to SUCCESSFACTORS's website, online customer community, or online

19   demonstration environments, including but not limited to DOCUMENTS CONCERNING web

20   browser history files, system logs, user names, passwords, user "ACE275," or any copy of a

21   SUCCESSFACTOR webpage or its contents.

22   **DOCUMENT REQUEST NO. 9:**

23        ALL DOCUMENTS CONCERNING the user name "John Anonymous" or associated

24   e-mail address "hcmknowledge2008a@gmail.com" to the extent that they mention the

25   PRESENTATION or SOFTSCAPE, SUCCESSFACTORS, or their products, services,

26   employees, business, or actual or prospective customers.

27   **DOCUMENT REQUEST NO. 10:**

28        A true and accurate bit for bit copy of the data storage media for any computer used by

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  David Watkins for work concerning SOFTSCAPE or SUCCESSFACTORS.

2  **DOCUMENT REQUEST NO. 11:**

3      A true and accurate bit for bit copy of the data storage media for any computer used by

4  Dennis Martinek for work concerning SOFTSCAPE or SUCCESSFACTORS.

5  **DOCUMENT REQUEST NO. 12:**

6      A true and accurate bit for bit copy of the data storage media for any computer that was

7  involved in the creation, modification, collection of information for, sharing, or e-mailing of the

8  PRESENTATION.

9  **DOCUMENT REQUEST NO. 13:**

10      ALL DOCUMENTS CONCERNING contracts, licenses, or agreements, whether actual

11  or prospective, between SOFTSCAPE and any recipients of the PRESENTATION or any

12  SUCCESSFACTORS customers mentioned in the PRESENTATION.

13  **DOCUMENT REQUEST NO. 14:**

14      ALL DOCUMENTS CONCERNING the relationship of Javier Cruz, Ely Valls, or New

15  Millenium Shoe or New Millennium Shoe with David Watkins, SOFTSCAPE or

16  SUCCESSFACTORS, including but not limited to COMMUNICATIONS among any of them.

17  **DOCUMENT REQUEST NO. 15:**

18      ALL DOCUMENTS CONCERNING SOFTSCAPE's procurement, copying, or use of

19  SUCCESSFACTORS' TRADEMARKS or PowerPoint templates.

20  **DOCUMENT REQUEST NO. 16:**

21      ALL DOCUMENTS reflecting articles of incorporation, bylaws, corporate registration,

22  and domain name registration for New Millenium Shoe.

23

24  Dated:  March 28, 2008                    FENWICK & WEST LLP

25                                  By:  _____

26                                      Patrick E. Premo
                                        Attorneys for Plaintiff SUCCESSFACTORS, INC.

27  1282989

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 5

1  JESSICA L. GRANT (SBN 178138)
   JAYESH HINES-SHAH (SBN 214256)
2  JONATHAN A. PATCHEN (SBN 237346)
   TAYLOR & COMPANY LAW OFFICES, LLP
3  One Ferry Building, Suite 355
   San Francisco, California 94111
4  Telephone: (415) 788-8200
   Facsimile: (415) 788-8208
5  E-mail: jgrant@tcolaw.com
   E-mail: jhinesshah@tcolaw.com
6  E-mail: jpatchen@tcolaw.com

7  Attorneys for Defendant SOFTSCAPE, INC.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  OAKLAND DIVISION

12

13  SUCCESSFACTORS, INC.,                    Case No.: C-08-1376 (CW)

14          Plaintiff,                       **DEFENDANT SOFTSCAPE, INC.'S
                                             RESPONSE TO PLAINTIFF'S FIRST SET
15  v.                                       OF REQUESTS FOR PRODUCTION OF
                                             DOCUMENTS AND THINGS**
16  SOFTSCAPE, INC.,

17          Defendant.

18

19

20

21

22

23

24

25

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  PROPOUNDING PARTY:    Plaintiff SUCCESSFACTORS, INC.

2  RESPONDING PARTY:    Defendant SOFTSCAPE, INC.

3  SET NO.:    One (1)

4       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant

5  SOFTSCAPE, INC. ("Softscape") hereby responds to the First Set Requests for Production of

6  Documents ("Requests") served by Plaintiff SUCCESSFACTORS, INC. ("SuccessFactors"), as

7  follows:

8       **<u>GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION</u>**

9       The following general objections apply to each separately numbered document request

10  contained in these Requests, and are incorporated by this reference, to the extent applicable, into

11  each specific response, as if set forth in full.

12       1.    Softscape objects to each request to the extent it purports to seek the production of

13  documents that are protected by the attorney-client privilege, work product doctrine, common

14  interest privilege, and/or any other applicable privilege.  The inadvertent production of any

15  privileged document is not to be deemed a waiver of privilege, and Softscape reserves the right to

16  object to the introduction or any other use of any privileged or protected documents that may be

17  inadvertently produced.  Any agreement to produce documents responsive to a request is not an

18  acknowledgment that any such documents exist.

19       2.    Softscape objects to each request to the extent it purports to seek the production of

20  documents that are protected by privacy rights under the California or United States Constitutions

21  or state or federal law, or by any other confidentiality protections.

22       3.    Softscape objects to each request to the extent it seeks documents outside of

23  Softscape's possession, custody or control.

24       4.    Softscape objects to each request to the extent it purports to seek the production of

25  documents that are not relevant to the subject matter of the underlying action, and not reasonably

26  calculated to lead to discovery of admissible evidence.

27       5.    Softscape objects to each request as overbroad, unduly burdensome, not relevant to

28  the subject matter of the underlying action, and not reasonably calculated to lead to discovery of

TAYLOR & CO.
LAW OFFICES, LLP

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO.  C-08-1376 (CW)

1  admissible evidence, to the extent the request seeks production of documents that were created

2  before January 1, 2008, the first date of factual allegations against Softscape.

3       6.     Softscape objects that the Requests seek to have Softscape furnish information and

4  identify documents that are a matter of the public record, and therefore, are equally available to the

5  propounding party as they are to Softscape.

6       7.     Softscape objects that the Requests seek to have Softscape furnish information and

7  identify documents that are proprietary to Softscape and contain confidential or trade secret

8  information.

9       8.     Softscape objects to the extent that the Requests purport to impose on Softscape

10  obligations or responsibilities in excess of those imposed by the Federal Rules of Civil Procedure,

11  the applicable Local Rules, any other applicable rules, case law, statutes governing the proper

12  scope of discovery, or applicable Court orders.

13       9.     Softscape objects that the definition of "PRESENTATION" in these Requests is

14  overbroad, compound, and unduly burdensome.  In responding to these Requests, Softscape will

15  interpret the term "PRESENTATION" to mean the document attached as Exhibit 1 to the

16  Declaration of Robert Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary

17  Restraining Order and Order to Show Cause re Preliminary Injunction, filed March 11, 2008,

18  bearing control numbers SF00000001-SF00000043.

19       10.     At this early stage, Softscape has not completed its investigation of facts, witnesses

20  or documents relating to this case; has not completed discovery in this action; has not completed

21  its analysis of available data; and has not completed its preparations for the preliminary injunction

22  hearing.  Thus, although a good faith effort has been made to conduct a diligent search and to

23  supply pertinent documents when they have been requested, and a reasonable inquiry has been

24  made in an effort to comply with these Requests, it has not been possible in some instances to

25  make unqualified responses.  Further, the responses are necessarily made without prejudice to

26  Softscape's rights to produce evidence of any subsequently discovered facts, witnesses or

27  documents.  Softscape provides its responses based on its understanding of the claims as set forth

28

TAYLOR & CO.
LAW OFFICES, LLP

2.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  in the pleadings currently on file in this case, as of the date these responses are made, and has

2  furnished such information as is presently available to it.

3

4  **RESPONSES TO REQUEST FOR PRODUCTION**

5  **REQUEST FOR PRODUCTION NO. 1:**

6      ALL DOCUMENTS CONCERNING the genesis, creation, review or revision of the

7  PRESENTATION, including but not limited to any components, formats, versions, portions, edits,

8  memoranda, notes, e-mails, embedded objects, file histories, version data, or document

9  management system logs.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

11      Softscape objects to this request to the extent it calls for the production of material

12  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

13  objects to this request to the extent that it calls for confidential, proprietary information.

14      Subject to the foregoing specific and general objections, Softscape will produce non-

15  privileged relevant, responsive documents in its possession, custody or control that are related to

16  the creation, modification and dissemination of the PRESENTATION.

17  **REQUEST FOR PRODUCTION NO. 2:**

18      ALL DOCUMENTS CONCERNING potential, intended, or actual recipients of the

19  PRESENTATION or of any COMMUNICATIONS about the PRESENTATION, including but

20  not limited to lists of recipients, sales or marketing efforts directed at those recipients, and

21  communications involving SOFTSCAPE's employees, customers, or other third parties about the

22  recipients.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

24      Softscape objects to this request to the extent it calls for the production of material

25  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

26  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

27  further objects to this request because it is overbroad as to both time and scope, rendering a

28  response unduly burdensome.  To the extent this request seeks documents unrelated to the

TAYLOR & CO.
LAW OFFICES, LLP

3.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  PRESENTATION, Softscape also objects.

2      Subject to the foregoing specific and general objections, Softscape will produce non-

3  privileged relevant, responsive documents in its possession, custody or control that are related to

4  the creation, modification and dissemination of the PRESENTATION.

5  **REQUEST FOR PRODUCTION NO. 3:**

6      ALL DOCUMENTS CONCERNING any facts received from SUCCESSFACTORS'

7  actual or potential customers and included in the PRESENTATION, or in the compilation of such

8  facts as described on page 2 of the PRESENTATION.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

10      Softscape objects to this request to the extent it calls for the production of material

11  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

12  objects to this request to the extent that it calls for confidential, proprietary information.

13      Subject to the foregoing specific and general objections, Softscape will produce non-

14  privileged relevant, responsive documents in its possession, custody or control that are related to

15  the creation, modification and dissemination of the PRESENTATION.

16  **REQUEST FOR PRODUCTION NO. 4:**

17      ALL DOCUMENTS CONCERNING any assertions in the PRESENTATION, including

18  but not limited to DOCUMENTS that support or refute those assertions.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

20      Softscape objects to this request to the extent it calls for the production of material

21  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

22  objects to this request to the extent that it calls for confidential, proprietary information.

23      Subject to the foregoing specific and general objections, Softscape will produce non-

24  privileged relevant, responsive documents in its possession, custody or control that are related to

25  the creation, modification and dissemination of the PRESENTATION.

26  **REQUEST FOR PRODUCTION NO. 5:**

27      ALL COMMUNICATIONS CONCERNING the PRESENTATION, including but not

28  limited to COMMUNICATIONS between or involving SOFTSCAPE employees, its customers, or

TAYLOR & CO.
LAW OFFICES, LLP

4.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  current or former SUCCESSFACTORS employees.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

3       Softscape objects to this request to the extent it calls for the production of material

4  protected by attorney-client privilege or the attorney work product doctrine. Softscape further

5  objects to this request to the extent that it calls for confidential, proprietary information.

6       Subject to the foregoing specific and general objections, Softscape will produce non-

7  privileged relevant, responsive documents in its possession, custody or control that are related to

8  the creation, modification and dissemination of the PRESENTATION.

9  **REQUEST FOR PRODUCTION NO. 6:**

10       ALL COMMUNICATIONS between SOFTSCAPE and Sears, Regions Bank, Intelsat,

11  David Sinkfield, ICMA Retirement, Harris-Williams, and any current or former

12  SUCCESSFACTORS employee or consultant regarding SUCCESSFACTORS, its products,

13  services, employees, business, or actual or prospective customers.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

15       Softscape objects to this request to the extent it calls for the production of material

16  protected by attorney-client privilege or the attorney work product doctrine. Softscape further

17  objects to this request to the extent that it calls for confidential, proprietary information. Softscape

18  further objects to this request because it is compound, vague, and overbroad as to both time and

19  scope, rendering a response unduly burdensome. To the extent this request seeks documents

20  unrelated to the PRESENTATION, Softscape also objects. Softscape further objects to this

21  request on the grounds that it is vague and ambiguous because it requires Softscape to speculate

22  about the identity of SuccessFactors' "prospective customers" or its "current or former"

23  employees.

24       Subject to the foregoing specific and general objections, Softscape will produce non-

25  privileged relevant, responsive documents in its possession, custody or control that are related to

26  the creation, modification and dissemination of the PRESENTATION.

27  **REQUEST FOR PRODUCTION NO. 7:**

28       ALL DOCUMENTS created or modified after February 2007 CONCERNING

TAYLOR & CO.
LAW OFFICES, LLP

5.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  SUCCESSFACTORS, its products, services, employees, business, or actual or prospective

2  customers, including but not limited to all materials obtained from SUCCESSFACTORS' website,

3  online customer community, webinars, or online demonstration environments, including but not

4  limited to copies of webpages or the content therein.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

6        Softscape objects to this request to the extent it calls for the production of material

7  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

8  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

9  further objects to this request because it is overbroad as to both time and scope, rendering a

10 response unduly burdensome.  The Complaint alleges that Softscape's purported unauthorized

11 access of its online demonstration environment occurred sometime after January 2008.  To the

12 extent this request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

13 demonstration environments, which are the subject of this action, Softscape also objects.

14 Softscape further objects to this request on the grounds that it is vague and ambiguous because it

15 requires Softscape to speculate about the identity of SuccessFactors' "prospective customers" or

16 "employees."

17       Subject to the foregoing specific and general objections, Softscape will produce non-

18 privileged relevant, responsive documents in its possession, custody or control that are related to

19 SuccessFactors' online demonstration environments.

20 **REQUEST FOR PRODUCTION NO. 8:**

21       ALL DOCUMENTS CONCERNING or showing access from any SOFTSCAPE computer

22 to SUCCESSFACTORS's [sic] website, online customer community, or online demonstration

23 environments, including but not limited to DOCUMENTS CONCERNING web browser history

24 files, system logs, user names, passwords, user "ACE275," or any copy of a SUCCESSFACTOR

25 webpage or its contents.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

27       Softscape objects to this request to the extent it calls for the production of material

28 protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

Taylor & Co.
Law Offices, LLP

6.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  objects to this request to the extent that it calls for confidential, proprietary information. Softscape

2  further objects to this request because it is overbroad as to both time and scope, rendering a

3  response unduly burdensome. The Complaint alleges that Softscape's purported unauthorized

4  access of its online demonstration environment occurred sometime after January 2008. To the

5  extent this request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

6  demonstration environments, which are the subject of this action, Softscape also objects. To the

7  extent this request seeks information that is publicly available or that is already in SuccessFactors'

8  possession, Softscape also objects.

9        Subject to the foregoing specific and general objections, Softscape will produce non-

10  privileged relevant, responsive documents in its possession, custody or control that are related to

11  SuccessFactors' online demonstration environments.

12  **REQUEST FOR PRODUCTION NO. 9:**

13        ALL DOCUMENTS CONCERNING the user name "John Anonymous" or associated e-

14  mail address "hemknowledge2008a@gmail.com" to the extent that they mention the

15  PRESENTATION or SOFTSCAPE, SUCCESSFACTORS, or their products, services, employees,

16  business, or actual or prospective customers.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

18        Softscape objects to this request to the extent it calls for the production of material

19  protected by attorney-client privilege or the attorney work product doctrine. Softscape further

20  objects to this request to the extent that it calls for confidential, proprietary information. Softscape

21  further objects to this request because it is overbroad as to both time and scope, rendering a

22  response unduly burdensome. To the extent this request seeks documents unrelated to the

23  PRESENTATION, Softscape also objects. Softscape further objects to this request on the grounds

24  that it is vague and ambiguous because it requires Softscape to speculate about the identity of

25  SuccessFactors' "prospective customers" or "employees."

26        Subject to the foregoing specific and general objections, Softscape will produce non-

27  privileged relevant, responsive documents in its possession, custody or control that are related to

28  the creation, modification and dissemination of the PRESENTATION.

TAYLOR & CO.
LAW OFFICES, LLP

7.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  **REQUEST FOR PRODUCTION NO. 10:**

2      A true and accurate bit for bit copy of the data storage media for any computer used by

3  David Watkins for work concerning SOFTSCAPE or SUCCESSFACTORS.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

5      Softscape objects to this request to the extent it calls for the production of material

6  protected by attorney-client privilege or the attorney work product doctrine. Softscape further

7  objects to this request to the extent that it calls for confidential, proprietary information. Softscape

8  further objects to this request because it is overbroad as to both time and scope, rendering a

9  response unduly burdensome. The Complaint alleges that Softscape's purported unauthorized

10 access of its online demonstration environment occurred sometime after January 2008 and the

11 distribution of the PRESENTATION occurred on or about March 4, 2008. To the extent this

12 request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

13 demonstration environments, which are the subject of this action, Softscape also objects.

14     Softscape further objects to this request to the extent it seeks documents or things that are

15 protected by privacy rights under the California, Massachusetts or United States Constitutions or

16 state or federal law, or by any other confidentiality protections. As Softscape has attested under

17 oath, it has made forensic copies of the computers known to have been used to create, modify or

18 revise the PRESENTATION, and has made forensic copies of the computers known to have

19 accessed SuccessFactor's online demonstration environments. There is no requirement under the

20 Federal Rules of Civil Procedure that these forensic copies be turned over to SuccessFactors.

21 **REQUEST FOR PRODUCTION NO. 11:**

22     A true and accurate bit for bit copy of the data storage media for any computer used by

23 Dennis Martinek for work concerning SOFTSCAPE or SUCCESSFACTORS.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

25     Softscape objects to this request to the extent it calls for the production of material

26 protected by attorney-client privilege or the attorney work product doctrine. Softscape further

27 objects to this request to the extent that it calls for confidential, proprietary information. Softscape

28 further objects to this request because it is overbroad as to both time and scope, rendering a

TAYLOR & CO.
LAW OFFICES, LLP

8.

1  response unduly burdensome.  The Complaint alleges that Softscape's purported unauthorized

2  access of its online demonstration environment occurred sometime after January 2008 and the

3  distribution of the PRESENTATION occurred on or about March 4, 2008.  To the extent this

4  request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

5  demonstration environments, which are the subject of this action, Softscape also objects.

6       Softscape further objects to this request to the extent it seeks documents or things that are

7  protected by privacy rights under the California, Massachusetts or United States Constitutions or

8  state or federal law, or by any other confidentiality protections.  As Softscape has attested under

9  oath, it has made forensic copies of the computers known to have been used to create, modify or

10 revise the PRESENTATION, and has made forensic copies of the computers known to have

11 accessed SuccessFactor's online demonstration environments.  There is no requirement under the

12 Federal Rules of Civil Procedure that these forensic copies be turned over to SuccessFactors.

13 **REQUEST FOR PRODUCTION NO. 12:**

14      A true and accurate bit for bit copy of the data storage for any computer that was involved

15 in the creation, modification, collection of information for, sharing, or e-mailing of the

16 PRESENTATION.

17 **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

18      Softscape objects to this request to the extent it calls for the production of material

19 protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

20 objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

21 further objects to this request because it is overbroad as to both time and scope, rendering a

22 response unduly burdensome.  The Complaint alleges that Softscape's purported unauthorized

23 access of its online demonstration environment occurred sometime after January 2008 and the

24 distribution of the PRESENTATION occurred on or about March 4, 2008.  To the extent this

25 request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

26 demonstration environments, which are the subject of this action, Softscape also objects.

27      Softscape further objects to this request to the extent it seeks documents or things that are

28 protected by privacy rights under the California, Massachusetts or United States Constitutions or

TAYLOR & CO.
LAW OFFICES, LLP

9.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  state or federal law, or by any other confidentiality protections.  As Softscape has attested under

2  oath, it has made forensic copies of the computers known to have been used to create, modify or

3  revise the PRESENTATION, and has made forensic copies of the computers known to have

4  accessed SuccessFactor's online demonstration environments.  There is no requirement under the

5  Federal Rules of Civil Procedure that these forensic copies be turned over to SuccessFactors.

6  **REQUEST FOR PRODUCTION NO. 13:**

7      ALL DOCUMENTS CONCERNING contracts, licenses, or agreements, whether actual or

8  prospective, between SOFTSCAPE and any recipients of the PRESENTATION or any

9  SUCCESSFACTORS customers mentioned in the PRESENTATION.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

11      Softscape objects to this request to the extent it calls for the production of material

12  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

13  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

14  further objects to this request because it is overbroad as to both time and scope, rendering a

15  response unduly burdensome.  The Complaint alleges that the distribution of the

16  PRESENTATION occurred on or about March 4, 2008.  Softscape further objects to this request

17  on the grounds that it seeks documents that are entirely unrelated to the PRESENTATION.

18  Documents concerning Softscape's customers, including any contracts, licenses or agreements

19  with any such customers, are irrelevant to the subject matter of this case.

20  **REQUEST FOR PRODUCTION NO. 14:**

21      ALL DOCUMENTS CONCERNING the relationship of Javier Cruz, Ely Valls, or New

22  Millenium Shoe or New Millennium Shoe with David Watkins, SOFTSCAPE or

23  SUCCESSFACTORS, including but not limited to COMMUNICATIONS among any of them.

24  **RESPONSE FOR REQUEST FOR PRODUCTION NO. 14:**

25      Softscape objects to this request to the extent it calls for the production of material

26  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

27  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

28  further objects to this request because it is overbroad as to both time and scope, rendering a

TAYLOR & CO.
LAW OFFICES, LLP

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO.  C-08-1376 (CW)

1  response unduly burdensome.  The Complaint alleges that Softscape's purported unauthorized

2  access of its online demonstration environment occurred sometime after January 2008 and the

3  distribution of the PRESENTATION occurred on or about March 4, 2008.  To the extent this

4  request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

5  demonstration environments, which are the subject of this action, Softscape also objects.

6      Subject to the foregoing specific and general objections, Softscape will produce non-

7  privileged relevant, responsive documents in its possession, custody or control that are related to

8  the creation, modification and dissemination of the PRESENTATION, and SuccessFactors' online

9  demonstration environments.

10  **REQUEST FOR PRODUCTION NO. 15:**

11      ALL DOCUMENTS CONCERNING SOFTSCAPE's procurement, copying, or use of

12  SUCCESSFACTORS' TRADEMARKS or PowerPoint templates.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

14      Softscape objects to this request to the extent it calls for the production of material

15  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

16  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

17  further objects to this request because it is overbroad as to both time and scope, rendering a

18  response unduly burdensome.  The Complaint alleges that Softscape's purported unauthorized

19  access of its online demonstration environment occurred sometime after January 2008 and the

20  distribution of the PRESENTATION occurred on or about March 4, 2008.  To the extent this

21  request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

22  demonstration environments, which are the subject of this action, Softscape also objects.

23      Subject to the foregoing specific and general objections, Softscape will produce non-

24  privileged relevant, responsive documents in its possession, custody or control that are related to

25  the creation, modification and dissemination of the PRESENTATION, and SuccessFactors' online

26  demonstration environments.

27  **REQUEST FOR PRODUCTION NO. 16:**

28      ALL DOCUMENTS reflecting articles of incorporation, bylaws, corporate registration,

TAYLOR & CO.
LAW OFFICES, LLP

11.

1 | and domain name registration for New Millenium Shoe.

2 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

3 | Softscape objects to this request to the extent it calls for the production of material

4 | protected by attorney-client privilege or the attorney work product doctrine. Softscape further

5 | objects to this request to the extent that it calls for confidential, proprietary information. Softscape

6 | further objects to this request because it is overbroad as to both time and scope, rendering a

7 | response unduly burdensome. The Complaint alleges that Softscape's purported unauthorized

8 | access of its online demonstration environment occurred sometime after January 2008 and the

9 | distribution of the PRESENTATION occurred on or about March 4, 2008. To the extent this

10 | request seeks documents unrelated to the PRESENTATION or SuccessFactor's online

11 | demonstration environments, which are the subject of this action, Softscape also objects.

12 | Softscape further objects to this request to the extent it seeks documents that are outside the scope

13 | of a Rule 34 request to a party. This request seeks documents in the possession, custody and

14 | control of a third party witness, which requires a subpoena directed to that witness under Rule 45.

15 |

16 | Dated: May 1, 2008

TAYLOR & COMPANY LAW OFFICES, LLP

By: _____
    Jessica L. Grant
Attorneys for Defendant SOFTSCAPE, INC.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1

## PROOF OF SERVICE

2        At the time of service, I was over 18 years of age and not a party to this action. I am

3 employed in the County of San Francisco, State of California. My business address is One Ferry

4 Building, Suite 355.

5        On May 1, 2008, I served true copies of the following document(s) described as

6 **DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF**

7 **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** on the interested parties

8 in this action as follows:

9 **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be

10 sent from e-mail address jlim@tcolaw.com to the person at the e-mail address listed below. I did

11 not receive, within a reasonable time after the transmission, any electronic message or other

12 indication that the transmission was unsuccessful.

13                Mr. Patrick E. Premo
                 Fenwick & West LLP
14               801 California Street
                 Mountain View, CA  94041
15               E-Mail: ppremo@fenwick.com

16               **Counsel for SuccessFactors**

17 **BY PERSONAL SERVICE:** I caused the foregoing documents to be served by hand on the

18 following individual as indicated on the "Declaration of Personal Service" attached hereto as

19 Exhibit A. The person who delivered a true and correct copy of such documents to the person

20 identified below is identified in Exhibit A attached hereto.

21

22               Mr. Laurence F. Pulgram
                 Fenwick & West LLP
                 555 California Street, 12th Floor
23               San Francisco, CA 94104

24               **Counsel for SuccessFactors**

25

26

27

28

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO.  C-08-1376 (CW)

1    I declare under penalty of perjury, under the laws of the United States of America, that the

2    foregoing is true and correct and that I am employed in the office of a member of the bar of this

3    Court at whose direction the service was made.

4    Executed on May 1, 2008, at San Francisco, California.

5

6                                                  _____

7                                          Jennifer M. Lim

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

14.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO.  C-08-1376 (CW)

**EXHIBIT A**

**DECLARATION OF PERSONAL SERVICE**

I, Michael J. Portman, declare as follows:

      1.      I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is Taylor & Company Law Offices, LLP, One Ferry Building, Suite 355, San Francisco, California 94111.

      2.      On May 1, 2008, I served counsel for plaintiff SuccessFactors, Inc., Laurence F. Pulgram of Fenwick & West, LLP, by personally delivering a true and correct copy of the documents described below in a sealed envelope, with the name and address of the person served shown on the envelope:

**DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed on May 1, 2008, at San Francisco, California.

_____
Michael J. Portman

TAYLOR & CO.
LAW OFFICES, LLP

# EXHIBIT 6

1  ROBERT P. TAYLOR (SBN 46046)
   Email: rptaylor@mintz.com
2  BRYAN J. SINCLAIR (SBN 205885)
   Email: bsinclair@mintz.com
3  JEFFREY M. RATINOFF (SBN 197241)
   Email: jratinoff@mintz.com
4  MINTZ LEVIN COHN FERRIS GLOVSKY AND
   POPEO, PC
5  1400 Page Mill Road
   Palo Alto, California  94304-1124
6  Telephone:  (650) 251-7700
   Facsimile:  (650) 251-7739
7

8  Attorneys for Defendant,
   SOFTSCAPE, INC.
9

10               UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    OAKLAND DIVISION

13 SUCCESSFACTORS, INC, a Delaware          Case No. CV 08-1376 CW (BZx)
   corporation,
14                                          **DEFENDANT SOFTSCAPE, INC.'S**
                                            **AMENDED RESPONSES AND**
15            Plaintiff,                     **OBJECTIONS TO PLAINTIFF'S FIRST**
                                            **SET OF REQUESTS FOR**
16      vs.                                 **PRODUCTION OF DOCUMENTS AND**
                                            **THINGS**
17 SOFTSCAPE, INC., a Delaware corporation,
   and DOES 1-10, inclusive,
18
              Defendants.
19

20      PROPOUNDING PARTY:    Plaintiff SUCCESSFACTORS, INC.

21      RESPONDING PARTY:     Defendant SOFTSCAPE, INC.

22      SET NO.:              One (1) - Amended Responses

23      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant

24 SOFTSCAPE, INC. ("Softscape") hereby responds to the First Set Requests for Production of

25 Documents ("Requests") served by Plaintiff SUCCESSFACTORS, INC. ("SuccessFactors"), as

26 follows:

27 / / /

28 / / /

- 1 -

DEF'S AMENDED RESPONSES AND OBJECTIONS TO PL.'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS;    Case No. CV 08-1376 CW (BZx)

1

**GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION**

2      The following general objections apply to each separately numbered document request

3 contained in these Requests, and are incorporated by this reference, to the extent applicable, into

4 each specific response, as if set forth in full.

5      1.     Softscape objects to each request to the extent it purports to seek the production of

6 documents that are protected by the attorney-client privilege, work product doctrine, common

7 interest privilege, and/or any other applicable privilege.  The inadvertent production of any

8 privileged document is not to be deemed a waiver of privilege, and Softscape reserves the right to

9 object to the introduction or any other use of any privileged or protected documents that may be

10 inadvertently produced.  Any agreement to produce documents responsive to a request is not an

11 acknowledgment that any such documents exist.

12      2.     Softscape objects to each request to the extent it purports to seek the production of

13 documents that are protected by privacy rights under the California or United States Constitutions

14 or state or federal law, or by any other confidentiality protections.

15      3.     Softscape objects to each request to the extent it seeks documents outside of

16 Softscape's possession, custody or control.

17      4.     Softscape objects to each request to the extent it purports to seek the production of

18 documents that are not relevant to the subject matter of the underlying action, and not reasonably

19 calculated to lead to discovery of admissible evidence.

20      5.     Softscape objects to each request as overbroad, unduly burdensome, not relevant to

21 the subject matter of the underlying action, and not reasonably calculated to lead to discovery of

22 admissible evidence, to the extent the request seeks production of documents that were created

23 before January 1, 2008, the first date of factual allegations against Softscape.

24      6.     Softscape objects that the Requests seek to have Softscape furnish information and

25 identify documents that are a matter of the public record, and therefore, are equally available to the

26 propounding party as they are to Softscape.

27      7.     Softscape objects that the Requests seek to have Softscape furnish information and

28 identify documents that are proprietary to Softscape and contain confidential or trade secret

- 2 -

1 | information.

2 |      8.     Softscape objects to the extent that the Requests purport to impose on Softscape

3 | obligations or responsibilities in excess of those imposed by the Federal Rules of Civil Procedure,

4 | the applicable Local Rules, any other applicable rules, case law, statutes governing the proper scope

5 | of discovery, or applicable Court orders.

6 |      9.     Softscape objects that the definition of "PRESENTATION" in these Requests is

7 | overbroad, compound, and unduly burdensome. In responding to these Requests, Softscape will

8 | interpret the term "PRESENTATION" to mean the document attached as Exhibit 1 to the

9 | Declaration of Robert Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary

10 | Restraining Order and Order to Show Cause re Preliminary Injunction, filed March 11, 2008,

11 | bearing control numbers SF00000001-SF00000043.

12 |      10.    At this early stage, Softscape has not completed its investigation of facts, witnesses

13 | or documents relating to this case; has not completed discovery in this action; has not completed its

14 | analysis of available data; and has not completed its preparations for the preliminary injunction

15 | hearing. Thus, although a good faith effort has been made to conduct a diligent search and to

16 | supply pertinent documents when they have been requested, and a reasonable inquiry has been

17 | made in an effort to comply with these Requests, it has not been possible in some instances to make

18 | unqualified responses. Further, the responses are necessarily made without prejudice to Softscape's

19 | rights to produce evidence of any subsequently discovered facts, witnesses or documents. Softscape

20 | provides its responses based on its understanding of the claims as set forth in the pleadings currently

21 | on file in this case, as of the date these responses are made, and has furnished such information as is

22 | presently available to it.

23 | **RESPONSES TO REQUEST FOR PRODUCTION**

24 | **REQUEST FOR PRODUCTION NO. 1:**

25 |      ALL DOCUMENTS CONCERNING the genesis, creation, review or revision of the

26 | PRESENTATION, including but not limited to any components, formats, versions, portions, edits,

27 | memoranda, notes, e-mails, embedded objects, file histories, version data, or document management

28 | system logs.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

2      Softscape objects to this request to the extent it calls for the production of material protected

3  by attorney-client privilege or the attorney work product doctrine.

4      Subject to the foregoing specific and general objections, Softscape will produce non-

5  privileged relevant, responsive documents in its possession, custody or control that are related to the

6  genesis, creation, review or revision of the PRESENTATION.

7  **REQUEST FOR PRODUCTION NO. 2:**

8      ALL DOCUMENTS CONCERNING potential, intended, or actual recipients of the

9  PRESENTATION or of any COMMUNICATIONS about the PRESENTATION, including but not

10  limited to lists of recipients, sales or marketing efforts directed at those recipients, and

11  communications involving SOFTSCAPE's employees, customers, or other third parties about the

12  recipients.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

14      Softscape objects to this request to the extent it calls for the production of material protected

15  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

16  request to the extent that it calls for third party confidential, proprietary information.

17      Subject to the foregoing specific and general objections, Softscape will produce non-

18  privileged relevant, responsive documents in its possession, custody or control dated between

19  January 1, 2008 and the present relating to communications about the PRESENTATION with any

20  recipients of the PRESENTATION.

21  **REQUEST FOR PRODUCTION NO. 3:**

22      ALL DOCUMENTS CONCERNING any facts received from SUCCESSFACTORS' actual

23  or potential customers and included in the PRESENTATION, or in the compilation of such facts as

24  described on page 2 of the PRESENTATION.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

26      Softscape objects to this request to the extent it calls for the production of material protected

27  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

28  request to the extent that it calls for third party confidential, proprietary information.

- 4 -

1    Subject to the foregoing specific and general objections, Softscape will produce non-

2  privileged relevant, responsive documents in its possession, custody or control that are related to

3  any facts included in the PRESENTATION.

4  **REQUEST FOR PRODUCTION NO. 4:**

5    ALL DOCUMENTS CONCERNING any assertions in the PRESENTATION, including but

6  not limited to DOCUMENTS that support or refute those assertions.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

8    Softscape objects to this request to the extent it calls for the production of material protected

9  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

10  request to the extent that it calls for third party confidential, proprietary information.

11    Subject to the foregoing specific and general objections, Softscape will produce non-

12  privileged relevant, responsive documents in its possession, custody or control that are related to

13  any assertions in the PRESENTATION and/or which support or refute those assertions.

14  **REQUEST FOR PRODUCTION NO. 5:**

15    ALL COMMUNICATIONS CONCERNING the PRESENTATION, including but not

16  limited to COMMUNICATIONS between or involving SOFTSCAPE employees, its customers, or

17  current or former SUCCESSFACTORS employees.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

19    Softscape objects to this request to the extent it calls for the production of material protected

20  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

21  request to the extent that it calls for third party confidential, proprietary information.

22    Subject to the foregoing specific and general objections, Softscape will produce non-

23  privileged relevant, responsive documents in its possession, custody or control that are related to

24  any communications concerning the PRESENTATION.

25  **REQUEST FOR PRODUCTION NO. 6:**

26    ALL COMMUNICATIONS between SOFTSCAPE and Sears, Regions Bank, Intelsat,

27  David Sinkfield, ICMA Retirement, Harris-Williams, and any current or former

28  SUCCESSFACTORS employee or consultant regarding SUCCESSFACTORS, its products,

- 5 -

1  services, employees, business, or actual or prospective customers.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

3      Softscape objects to this request to the extent it calls for the production of material protected

4  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

5  request to the extent that it calls for third party confidential, proprietary information. Softscape

6  further objects to this request on the grounds that it is vague and ambiguous because it requires

7  Softscape to speculate about the identity of SuccessFactors' "prospective customers" or its "current

8  or former" employees.

9      Subject to the foregoing specific and general objections, Softscape will produce non-

10  privileged relevant, responsive documents in its possession, custody or control that are related to

11  communications between SOFTSCAPE and Sears, Regions Bank, Intelsat, David Sinkfield, ICMA

12  Retirement, Harris-Williams, and any known current or former SUCCESSFACTORS employee or

13  consultant regarding any facts appearing in the PRESENTATION.

14  **REQUEST FOR PRODUCTION NO. 7:**

15      ALL DOCUMENTS created or modified after February 2007 CONCERNING

16  SUCCESSFACTORS, its products, services, employees, business, or actual or prospective

17  customers, including but not limited to all materials obtained from SUCCESSFACTORS' website,

18  online customer community, webinars, or online demonstration environments, including but not

19  limited to copies of webpages or the content therein.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

21      Softscape objects to this request to the extent it calls for the production of material protected

22  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

23  request because it is overbroad as to both time and scope, rendering a response unduly burdensome.

24  Softscape further objects to this request on the grounds that it is vague and ambiguous because it

25  requires Softscape to speculate about the identity of SuccessFactors' "prospective customers" or

26  "employees."

27      Subject to the foregoing specific and general objections, Softscape will produce non-

28  privileged relevant, responsive documents in its possession, custody or control dated between

- 6 -

1 January 1, 2008 and the present that are reflected in or related to any facts or other information

2 contained in the PRESENTATION and/or all materials obtained from SUCCESSFACTORS'

3 website, online customer community, webinars, or online demonstration environments, or copies of

4 webpages or the content therein that is related to the PRESENTATION.

5 **REQUEST FOR PRODUCTION NO. 8:**

6      ALL DOCUMENTS CONCERNING or showing access from any SOFTSCAPE computer

7 to SUCCESSFACTORS's [sic] website, online customer community, or online demonstration

8 environments, including but not limited to DOCUMENTS CONCERNING web browser history

9 files, system logs, user names, passwords, user "ACE275," or any copy of a SUCCESSFACTOR

10 webpage or its contents.

11 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

12      Softscape objects to this request to the extent it calls for the production of material protected

13 by attorney-client privilege or the attorney work product doctrine.

14      Subject to the foregoing specific and general objections, Softscape will produce non-

15 privileged relevant, responsive documents in its possession, custody or control dated between

16 January 1, 2008 and the present that are related to access from any SOFTSCAPE computer to

17 SUCCESSFACTORS' website, online customer community, or online demonstration environments,

18 including but not limited to documents relating to web browser history files, system logs, user

19 names, passwords, user "ACE275," or any copy of a SUCCESSFACTOR webpage or its contents

20 insofar as such access was related to the PRESENTATION.

21 **REQUEST FOR PRODUCTION NO. 9:**

22      ALL DOCUMENTS CONCERNING the user name "John Anonymous" or associated e-

23 mail address "hemknowledge2008a@gmail.com" to the extent that they mention the

24 PRESENTATION or SOFTSCAPE, SUCCESSFACTORS, or their products, services, employees,

25 business, or actual or prospective customers.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

27      Softscape objects to this request to the extent it calls for the production of material protected

28 by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

- 7 -

1   request on the grounds that it is vague and ambiguous because it requires Softscape to speculate

2   about the identity of SuccessFactors' "prospective customers" or "employees."

3         Subject to the foregoing specific and general objections, Softscape will produce non-

4   privileged relevant, responsive documents in its possession, custody or control that are related to the

5   user name "John Anonymous" or associated e-mail address "hemknowledge2008a@gmail.com" to

6   the extent that they mention the PRESENTATION or SOFTSCAPE, SUCCESSFACTORS, or their

7   products, services, employees, business, or actual or prospective customers.

8   **REQUEST FOR PRODUCTION NO. 10:**

9         A true and accurate bit for bit copy of the data storage media for any computer used by

10  David Watkins for work concerning SOFTSCAPE or SUCCESSFACTORS.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

12        Softscape objects to this request to the extent it calls for the production of material protected

13  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

14  request to the extent that it calls for confidential, proprietary information.  Softscape further objects

15  to this request because it is overbroad as to both time and scope, rendering a response unduly

16  burdensome.  The Complaint alleges that Softscape's purported unauthorized access of its online

17  demonstration environment occurred sometime after January 2008 and the distribution of the

18  PRESENTATION occurred on or about March 4, 2008.  To the extent this request seeks documents

19  unrelated to the PRESENTATION or SuccessFactor's online demonstration environments, which

20  are the subject of this action, Softscape also objects.

21        Softscape further objects to this request to the extent it seeks documents or things that are

22  protected by privacy rights under the California, Massachusetts or United States Constitutions or

23  state or federal law, or by any other confidentiality protections.  As Softscape has attested under

24  oath, it has made forensic copies of the computers known to have been used to create, modify or

25  revise the PRESENTATION, and has made forensic copies of the computers known to have

26  accessed SuccessFactor's online demonstration environments.  There is no requirement under the

27  Federal Rules of Civil Procedure that these forensic copies be turned over to SuccessFactors.

28  / / /

1  **REQUEST FOR PRODUCTION NO. 11:**

2      A true and accurate bit for bit copy of the data storage media for any computer used by

3  Dennis Martinek for work concerning SOFTSCAPE or SUCCESSFACTORS.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

5      Softscape objects to this request to the extent it calls for the production of material protected

6  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

7  request to the extent that it calls for confidential, proprietary information.  Softscape further objects

8  to this request because it is overbroad as to both time and scope, rendering a response unduly

9  burdensome.  The Complaint alleges that Softscape's purported unauthorized access of its online

10  demonstration environment occurred sometime after January 2008 and the distribution of the

11  PRESENTATION occurred on or about March 4, 2008.  To the extent this request seeks documents

12  unrelated to the PRESENTATION or SuccessFactor's online demonstration environments, which

13  are the subject of this action, Softscape also objects.

14      Softscape further objects to this request to the extent it seeks documents or things that are

15  protected by privacy rights under the California, Massachusetts or United States Constitutions or

16  state or federal law, or by any other confidentiality protections.  As Softscape has attested under

17  oath, it has made forensic copies of the computers known to have been used to create, modify or

18  revise the PRESENTATION, and has made forensic copies of the computers known to have

19  accessed SuccessFactor's online demonstration environments.  There is no requirement under the

20  Federal Rules of Civil Procedure that these forensic copies be turned over to SuccessFactors.

21  **REQUEST FOR PRODUCTION NO. 12:**

22      A true and accurate bit for bit copy of the data storage for any computer that was involved in

23  the creation, modification, collection of information for, sharing, or e-mailing of the

24  PRESENTATION.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

26      Softscape objects to this request to the extent it calls for the production of material protected

27  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

28  request to the extent that it calls for confidential, proprietary information.  Softscape further objects

- 9 -

DEF'S AMENDED RESPONSES AND OBJECTIONS TO PL.'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS;    Case No. CV 08-1376 CW (BZx)

1  to this request because it is overbroad as to both time and scope, rendering a response unduly

2  burdensome.  The Complaint alleges that Softscape's purported unauthorized access of its online

3  demonstration environment occurred sometime after January 2008 and the distribution of the

4  PRESENTATION occurred on or about March 4, 2008.  To the extent this request seeks documents

5  unrelated to the PRESENTATION or SuccessFactor's online demonstration environments, which

6  are the subject of this action, Softscape also objects.

7     Softscape further objects to this request to the extent it seeks documents or things that are

8  protected by privacy rights under the California, Massachusetts or United States Constitutions or

9  state or federal law, or by any other confidentiality protections.  As Softscape has attested under

10  oath, it has made forensic copies of the computers known to have been used to create, modify or

11  revise the PRESENTATION, and has made forensic copies of the computers known to have

12  accessed SuccessFactor's online demonstration environments.  There is no requirement under the

13  Federal Rules of Civil Procedure that these forensic copies be turned over to SuccessFactors.

14  **REQUEST FOR PRODUCTION NO. 13:**

15     ALL DOCUMENTS CONCERNING contracts, licenses, or agreements, whether actual or

16  prospective, between SOFTSCAPE and any recipients of the PRESENTATION or any

17  SUCCESSFACTORS customers mentioned in the PRESENTATION.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

19     Softscape objects to this request to the extent it calls for the production of material protected

20  by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

21  request to the extent that it calls for the production of third party confidential, proprietary

22  information.  Softscape further objects to this request because it is overbroad as to both time and

23  scope, rendering a response unduly burdensome.

24     Subject to the foregoing specific and general objections, Softscape will produce non-

25  privileged relevant, responsive documents in its possession, custody or control that constitute

26  contracts, licenses, or agreements with an effective date later than March 4, 2008 between

27  SOFTSCAPE and any recipients of the PRESENTATION or any SUCCESSFACTORS customers

28  mentioned in the PRESENTATION.

- 10 -

1   **REQUEST FOR PRODUCTION NO. 14:**

2      ALL DOCUMENTS CONCERNING the relationship of Javier Cruz, Ely Valls, or New

3   Millenium Shoe or New Millennium Shoe with David Watkins, SOFTSCAPE or

4   SUCCESSFACTORS, including but not limited to COMMUNICATIONS among any of them.

5   **RESPONSE FOR REQUEST FOR PRODUCTION NO. 14:**

6      Softscape objects to this request to the extent it calls for the production of material protected

7   by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this

8   request to the extent that it calls for third party confidential, proprietary information. Softscape

9   further objects to this request because it is overbroad as to both time and scope, rendering a

10   response unduly burdensome. The Complaint alleges that Softscape's purported unauthorized

11   access of its online demonstration environment occurred sometime after January 2008 and the

12   distribution of the PRESENTATION occurred on or about March 4, 2008.

13      Subject to the foregoing specific and general objections, Softscape will produce non-

14   privileged relevant, responsive documents in its possession, custody or control that are related to the

15   relationship of Javier Cruz, Ely Valls, or New Millenium Shoe or New Millennium Shoe with

16   David Watkins or SOFTSCAPE related to the creation of the PRESENTATION.

17   **REQUEST FOR PRODUCTION NO. 15:**

18      ALL DOCUMENTS CONCERNING SOFTSCAPE's procurement, copying, or use of   '

19   SUCCESSFACTORS' TRADEMARKS or PowerPoint templates.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

21      Softscape objects to this request to the extent it calls for the production of material protected

22   by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this

23   request because it is overbroad as to both time and scope, rendering a response unduly burdensome.

24   The Complaint alleges that Softscape's purported unauthorized access of its online demonstration

25   environment occurred sometime after January 2008 and the distribution of the PRESENTATION

26   occurred on or about March 4, 2008.

27      Subject to the foregoing specific and general objections, Softscape will produce non-

28   privileged relevant, responsive documents in its possession, custody or control that are related to

- 11 -

1    SOFTSCAPE's procurement, copying, or use of SUCCESSFACTORS' TRADEMARKS or

2    PowerPoint templates in connection with the creation of the PRESENTATION.

3    **REQUEST FOR PRODUCTION NO. 16:**

4          ALL DOCUMENTS reflecting articles of incorporation, bylaws, corporate registration, and

5    domain name registration for New Millenium Shoe.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

7          Softscape objects to this request to the extent it calls for the production of material protected

8    by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this

9    request to the extent that it calls for third party confidential, proprietary information. Softscape

10   further objects to this request to the extent it seeks documents that are outside the scope of a Rule 34

11   request to a party. This request seeks documents in the possession, custody and control of a third

12   party witness, which requires a subpoena directed to that witness under Rule 45.

13   Dated: May 14, 2008       MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC

14

15

16         By: BRYAN J. SINCLAIR

17             Attorneys for Defendant,
               SOFTSCAPE, INC.

18

19

20

21

22

23

24

25

26

27

28

- 12 -

1

**PROOF OF SERVICE**

2      At the time of service, I was over 18 years of age and not a party to this action.  I am

3 employed in the County of Santa Clara, State of California.  My business address is 1400 Page Mill

4 Road, Palo Alto, California 94304.

5      On May 14, 2008, I served true copies of the following document(s) described as

6 **DEFENDANT SOFTSCAPE, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S**

7 **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** on the

8 interested parties in this action as follows:

9 **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be

10 sent from e-mail address akava@mintz.com to the person at the e-mail address listed below.  I did

11 not receive, within a reasonable time after the transmission, any electronic message or other

12 indication that the transmission was unsuccessful.

13           Mr. Patrick E. Premo
          Fenwick & West LLP
14           801 California Street
          Mountain View, CA  94041
15           E-Mail: ppremo@fenwick.com

16           **Counsel for SuccessFactors**

17      I declare under penalty of perjury, under the laws of the United States of America, that the

18 foregoing is true and correct and that I am employed in the office of a member of the bar of this

19 Court at whose direction the service was made.

20      Executed on May 14, 2008, at Palo Alto, California.

21

22      _____

23           Alice P. Kava

24

25

26

27

28

- 13 -

# EXHIBIT 7

1   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   ALBERT L. SIEBER (CSB No. 233482)
    asieber@fenwick.com
3   LIWEN A. MAH (CSB No. 239033)
    lmah@fenwick.com
4   FENWICK & WEST LLP
    555 California Street, 12th Floor
5   San Francisco, CA 94104
    Telephone: (415) 875-2300
6   Facsimile:  (415) 281-1350

7   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
8   DENNIS M. FAIGAL (CSB No. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA 94041
11  Telephone:    (650) 988-8500
    Facsimile:    (650) 938-5200

12
    Attorneys for Plaintiff SUCCESSFACTORS, INC.
13

14                  UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                      OAKLAND DIVISION

17

18
    SUCCESSFACTORS, INC., a Delaware       Case No. CV 08-1376 CW
19  corporation,
                                           **PLAINTIFF'S SECOND SET OF REQUESTS**
20              Plaintiff,                 **FOR PRODUCTION OF DOCUMENTS AND**
                                           **THINGS (NOS. 17 - 43)**
21         v.

22  SOFTSCAPE, INC., a Delaware
    corporation,
23
                Defendant.
24

25        Pursuant to the Court's order permitting the parties to initiate discovery and Rules 26 and

26  34 of the Federal Rules of Civil Procedure, SuccessFactors requests that Defendant Softscape,

27  Inc. ("Softscape") respond in writing to each of the following Requests and produce the

28  documents and things requested for inspection and copying, in accordance with the definitions

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   and instructions set forth below, at the offices of Fenwick & West LLP, 555 California Street,

2   Suite 1200, San Francisco, California 94104, within the time period permitted by the Federal

3   Rules of Civil Procedure.

4                                    **DEFINITIONS**

5       1.    The terms "YOU," "YOUR," "DEFENDANT," or "SOFTSCAPE" mean and

6   include, collectively and/or individually, Softscape, Inc., and its parents, subsidiaries, affiliates,

7   predecessors or successor companies, if any, and its current and former officers, directors,

8   employees, consultants, attorneys, authorized agents, sales representatives, distributors, dealers,

9   direct and indirect contractors, and/or all other PERSONS acting or purporting to act on its behalf.

10      2.    The terms "PLAINTIFF" or "SUCCESSFACTORS" mean and include,

11  collectively and/or individually, SuccessFactors, Inc., and its parents, subsidiaries, affiliates,

12  corporate divisions, predecessors or successor companies, if any, and its current and former

13  officers, directors, employees, consultants, attorneys, authorized agents, sales representatives,

14  distributors, dealers, direct and indirect contractors, and/or all other PERSONS acting or

15  purporting to act on its behalf.

16      3.    The terms "PERSON" or "PERSONS" shall include both natural persons, corporate

17  or other business entities, and all other forms of legal entities, and shall include, but is not limited

18  to, the following:  corporations, partnerships, joint ventures, associations, business organizations,

19  trade organizations, standards organizations, and sole proprietorships.

20      4.    The terms "DOCUMENT" or "DOCUMENTS" have the broadest meaning

21  accorded that term by Fed. R. Civ. P. 34(a) and includes, but is not limited to, all of the items

22  defined in Fed. R. Evid. 1001, and all preliminary and final drafts of any such item.  The terms

23  shall include, but not be limited to, all written, electronic, phonic, graphic, and recorded matter of

24  every type and description and every tangible thing that is or has been in YOUR possession,

25  custody, or control, to which YOU have access or of which YOU have knowledge.

26  "DOCUMENT(S)" shall also include, but shall not be limited to, the following items, whether

27  printed or recorded or reproduced by hand:  agreements, contracts, leases, communications

28  (including intra-company communications), electronic mail, data from Personal Digital Assistants

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    (including handheld computers, "smart phones," such as the palmOne™ Treo© and other similar

2    devices and pagers), correspondence, postings on intranet or internet forums or websites (such as

3    web pages and web logs or blogs), faxes, telegrams, cables, telexes, teletype messages, memoranda,

4    records, books, diaries, notebooks calendars (paper, electronic and otherwise), telephone and other

5    logs, telephone and other bills, voicemail and transcriptions thereof, recorded distributions,

6    forecasts, statistical statements, accounts, invoices, purchase orders, receipts, billing records, tapes,

7    expense vouchers, minutes, summaries and other records of meetings, conferences, negotiations,

8    conversations, investigations and interviews, sales brochures and literature, advertisements, price

9    lists, trade letters, press releases, stenographic, handwritten and any other notes, projections,

10   working papers, checks (front and back), check stubs and receipts, models, surveys, devices,

11   pictures, photographs, films, computer records, data compilations, and voice and video recordings.

12   "DOCUMENT(S)" shall not be limited in any way as to the form of storage (such as paper,

13   microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, flash memory drive, or

14   other storage device).  A draft or non-identical copy is a separate document within the meaning of

15   this term.

16        5.    The terms "COMMUNICATION" or "COMMUNICATIONS" refer to any

17   exchange of information by any means of transmission and the sending or receipt of information of

18   any kind by or through any means, including but not limited to speech, writings, documents,

19   language (machine, foreign or otherwise) of any kind, computer electronics or electronic data,

20   sound, radio or video signals, telecommunications, telephone, teletype, facsimile, telegram,

21   microfilm, microfiche, photographic film of all types or other media of any kind.  The terms

22   "COMMUNICATION" and "COMMUNICATIONS" also include, without limitation, all

23   meetings, notices, requests, response, demands, complaints, press, publicity or trade releases, and

24   postings on intranet or internet forums or websites (such as web pages and web logs or blogs).

25        6.    "PRESENTATION" means the document shown as Exhibit 1 to the Declaration of

26   Robert Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary Restraining

27   Order and Order to Show Cause re Preliminary Injunction, including all components, formats,

28   versions, portions, notes, and version data thereof.

1       7.     SUCCESSFACTORS' TRADEMARKS means the name SUCCESSFACTORS

2   and the logos registered with the United States Patent and Trademark Office with Serial Numbers

3   78660874, 78946750, 78706535, and 77248286.

4       8.     The term "CONCERNING" means pertaining to, mentioning, commenting,

5   describing, analyzing, dealing with, resulting from, constituting, including, comprising, consisting

6   of, containing, referring to, reflecting, discussing, showing, stating, explaining, contradicting,

7   providing context to, evidencing, concerning, or recording a particular subject in whole or in part,

8   either directly or indirectly, or being in any way logically or factually connected with the matter

9   discussed or identified.

10      9.     The terms "or" and "and" shall be read in the conjunctive and in the disjunctive

11  wherever they appear, and neither of these words shall be interpreted to limit the scope of these

12  Requests.

13      10.    The words "any," "all," and "each" shall be construed as "all and each."

14      11.    The use of a verb in any tense shall be construed as the use of the verb in all other

15  tenses.

16      12.    The singular form of any word shall be deemed to include the plural.  The plural

17  form of any word shall be deemed to include the singular.

18                                **INSTRUCTIONS**

19      1.     In responding to the following requests, furnish all available DOCUMENTS,

20  including documents in the possession, custody, or control of any of your attorneys, directors,

21  officers, agents, employees, representatives, associates, investigators or division affiliates,

22  partnerships, parents or subsidiaries, and persons under your control, not merely documents in your

23  direct possession.

24      2.     All DOCUMENTS shall be organized and produced pursuant to Rule 34(b) of the

25  Federal Rules of Civil Procedure.

26      3.     Electronic records and computerized information must be produced in an intelligible

27  format, together with a description of the system from which they were derived sufficient to permit

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    rendering the records and information intelligible.  Electronic information must be produced in

2    native format.

3        4.    If YOU are unable to comply with a demand for any DOCUMENT in full, YOU are

4    requested to specify, pursuant to Federal Rule of Civil Procedure 34, whether YOUR inability to

5    comply is because the DOCUMENT has never existed, has been destroyed, has been lost,

6    misplaced or stolen, and/or has never been, or is no longer in YOUR possession, custody or control.

7    The statement shall set forth the name and address of any PERSON or organization known or

8    believed by YOU to have possession, custody, or control of the DOCUMENT.

9        5.    If any information requested is claimed to be privileged, immune from discovery or

10    otherwise not discoverable, YOU are requested to provide all information falling within the scope

11    of the document request which is discoverable, and for each item of information contained in a

12    document to which a claim of privilege is made, YOU must identify such document in a privilege

13    and/or redaction log pursuant to Federal Rule of Civil Procedure 26(b)(5), such identification to

14    include at least the following:

15            (1)    the basis on which the privilege is claimed;

16            (2)    the names and positions of the author of the document and all other persons

17                participating in the preparation of the document;

18            (3)    the name and position of each individual or other person to whom the

19                document, or a copy thereof, was sent or otherwise disclosed;

20            (4)    where not apparent, the relationship of the author, writer, sender, initiator,

21                addressee or any other recipient with each other;

22            (5)    the date of creation or transmittal indicated on each document, or an

23                estimate of that date, indicated as such, if no date appears on the document;

24            (6)    a description of any accompanying material transmitted with or attached to

25                such document;

26            (7)    the number of pages in such document;

27            (8)    the particular document request to which such document is responsive; and

28    / / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      (9)     the general subject matter and whether any business or non-legal matter is

2      contained or discussed in such document.

3      6.     Each Request for DOCUMENTS seeks production of all DOCUMENTS described

4  along with any attachments, drafts, and non-identical copies in any language whatsoever, in the

5  possession, custody or control of YOU or YOUR respective agents or all available information,

6  including such information as becomes available to YOU after YOUR answers hereto are served.

7      7.     Unless otherwise specified, each Request for DOCUMENTS seeks production of

8  all DOCUMENTS created or modified on or after January 1, 2007.

9               **DOCUMENT REQUESTS**

10  **DOCUMENT REQUEST NO. 17:**

11      ALL DOCUMENTS CONCERNING actual or planned press releases by SOFTSCAPE

12  regarding this action, including but not limited to any version, portion, edits, memoranda, notes,

13  e-mails, file histories, and metadata.

14  **DOCUMENT REQUEST NO. 18:**

15      ALL DOCUMENTS CONCERNING SOFTSCAPE's interviews or investigations about

16  the PRESENTATION, its creation or development, or its actual or planned dissemination.

17  **DOCUMENT REQUEST NO. 19:**

18      DOCUMENTS sufficient to show a list of SOFTSCAPE's actual and prospective

19  customers as of March 4, 2008.

20  **DOCUMENT REQUEST NO. 20:**

21      ALL DOCUMENTS CONCERNING COMMUNICATIONS from January 1, 2008 to

22  present with any of the persons or entities reflected in the e-mail addresses shown in Exhibit B to

23  the Declaration of Liwen Mah in Support of SuccessFactors' Motion for Administrative Relief to

24  File Materials Recently Produced by Google Inc. (Docket No. 55).

25  **DOCUMENT REQUEST NO. 21:**

26      ALL COMMUNICATIONS from January 1, 2008 to present involving the e-mail address

27  mwest@softscape.com with or regarding any actual or prospective customers of SOFTSCAPE.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **DOCUMENT REQUEST NO. 22:**

2    ALL COMMUNICATIONS from January 1, 2008 to present involving Dennis Martinek

3    with or regarding any actual or prospective customers of SOFTSCAPE, including but not limited

4    to e-mails involving the e-mail address, wildgracks@yahoo.com.

5    **DOCUMENT REQUEST NO. 23:**

6    ALL COMMUNICATIONS from January 1, 2008 to present involving Rick Vatcher with

7    or regarding any actual or prospective customers of SOFTSCAPE.

8    **DOCUMENT REQUEST NO. 24:**

9    ALL COMMUNICATIONS from January 1, 2008 to present involving Dave Watkins

10   with or regarding any actual or prospective customers of SOFTSCAPE.

11   **DOCUMENT REQUEST NO. 25:**

12   ALL COMMUNICATIONS from January 1, 2008 to present involving Susan Mohr with

13   or regarding any actual or prospective customers of SOFTSCAPE.

14   **DOCUMENT REQUEST NO. 26:**

15   ALL COMMUNICATIONS from January 1, 2008 to present between SOFTSCAPE and

16   wildgracks@yahoo.com.

17   **DOCUMENT REQUEST NO. 27:**

18   ALL COMMUNICATIONS from January 1, 2008 to present between SOFTSCAPE and

19   William Hurly or William Hurley, including but not limited to COMMUNICATIONS involving

20   williamhurly@hotmail.com.

21   **DOCUMENT REQUEST NO. 28:**

22   ALL DOCUMENTS CONCERNING recipients of any DOCUMENTS or information

23   that SUCCESSFACTORS provided to New Millenium Shoe, Ely Valls, or Javier Cruz, including

24   but not limited to the proposal that SUCCESSFACTORS prepared for New Millenium Shoe,

25   which was attached as Exhibit 3 to the Declaration of Jorge Corrales in Support of Preliminary

26   Injunction and Expedited Discovery (Dkt. No. 53).

27

28

1  **DOCUMENT REQUEST NO. 29:**

2      ALL DOCUMENTS CONCERNING commentary, discussion, or analysis of any

3  DOCUMENTS or information that SUCCESSFACTORS provided to New Millenium Shoe, Ely

4  Valls, or Javier Cruz, including but not limited to the proposal that SUCCESSFACTORS

5  prepared for New Millenium Shoe.

6  **DOCUMENT REQUEST NO. 30:**

7      ALL DOCUMENTS CONCERNING access between SOFTSCAPE servers or computers

8  and Courtyard Marriott or the IP address **74.94.170.178**, including but not limited to

9  COMMUNICATIONS between the same.

10  **DOCUMENT REQUEST NO. 31:**

11      ALL DOCUMENTS CONCERNING the Courtyard Marriott in Waltham, Massachusetts,

12  including but not limited to travel itineraries, accounts payable, billing records, expense

13  reimbursements, calendar entries, and COMMUNICATIONS between SOFTSCAPE and

14  Courtyard Marriott.

15  **DOCUMENT REQUEST NO. 32:**

16      All memoranda of understanding, licenses, proposals, communications setting forth

17  proposals or orders, invoices, or purchase orders between SOFTSCAPE and its actual or

18  prospective customers after January 1, 2008.

19  **DOCUMENT REQUEST NO. 33:**

20      ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

21  the IP address **65.96.237.54**, including but not limited to COMMUNICATIONS between the

22  same.

23  **DOCUMENT REQUEST NO. 34:**

24      ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

25  the IP address **65.96.233.62**, including but not limited to COMMUNICATIONS between the

26  same.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **DOCUMENT REQUEST NO. 35:**

2        ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

3    the IP address **62.140.137.160**, including but not limited to COMMUNICATIONS between the

4    same.

5    **DOCUMENT REQUEST NO. 36:**

6        ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

7    the IP address **217.118.122.88**, including but not limited to COMMUNICATIONS between the

8    same.

9    **DOCUMENT REQUEST NO. 37:**

10        ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

11    the IP address **82.108.171.66**, including but not limited to COMMUNICATIONS between the

12    same.

13    **DOCUMENT REQUEST NO. 38:**

14        ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

15    the IP address **24.34.56.79**, including but not limited to COMMUNICATIONS between the same.

16    **DOCUMENT REQUEST NO. 39:**

17        ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

18    the IP address **98.216.168.122**, including but not limited to COMMUNICATIONS between the

19    same.

20    **DOCUMENT REQUEST NO. 40:**

21        DOCUMENTS sufficient to identify the persons who receive e-mails sent to

22    sales@softscape.com on March 4, 2008.

23    **DOCUMENT REQUEST NO. 41:**

24        ALL DOCUMENTS CONCERNING changes to the www.newmilleniumshoe.com

25    website in or after November 2007, including but not limited to COMMUNICATIONS involving

26    Dave Watkins or SOFTSCAPE regarding the website.

27

28

1  **DOCUMENT REQUEST NO. 42:**

2      ALL COMMUNICATIONS between vallsely@hotmail.com, on the one hand, and Dave

3  Watkins or SOFTSCAPE, on the other hand, from January 1, 2007 to present.

4  **DOCUMENT REQUEST NO. 43:**

5      DOCUMENTS supporting YOUR claim that "the Presentation was intended for

6  Softscape's internal use only" and "was marked and saved electronically on the company's

7  server, and this treatment of the Presentation was repeatedly emphasized to the Softscape sales

8  force both orally and in writing," as set forth in Paragraph 8 of the Declaration of David Watkins

9  In Opposition to Plaintiff's Motion to Strike and in Response to Order to Show Cause dated

10  03.26.08 ("Watkins Decl.").

11

12  Dated: April 4, 2008                          FENWICK & WEST LLP

13

14                                      By: _____

15                                          Patrick E. Premo
                                            Attorneys for Plaintiff SUCCESSFACTORS, INC.

16  1283327

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 8

1  JESSICA L. GRANT (SBN 178138)
   JAYESH HINES-SHAH (SBN 214256)
2  JONATHAN A. PATCHEN (SBN 237346)
   TAYLOR & COMPANY LAW OFFICES, LLP
3  One Ferry Building, Suite 355
   San Francisco, California 94111
4  Telephone: (415) 788-8200
   Facsimile: (415) 788-8208
5  E-mail: jgrant@tcolaw.com
   E-mail: jhinesshah@tcolaw.com
6  E-mail: jpatchen@tcolaw.com

7  Attorneys for Defendant SOFTSCAPE, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

13  SUCCESSFACTORS, INC.,                  Case No.: C-08-1376 (CW)

14          Plaintiff,                     **DEFENDANT SOFTSCAPE, INC.'S
                                           RESPONSE TO PLAINTIFF'S SECOND
15  v.                                     SET OF REQUESTS FOR PRODUCTION
                                           OF DOCUMENTS AND THINGS**
16  SOFTSCAPE, INC.,

17          Defendant.

18

19

20

21

22

23

24

25

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1   PROPOUNDING PARTY:   Plaintiff SUCCESSFACTORS, INC.

2   RESPONDING PARTY:   Defendant SOFTSCAPE, INC.

3   SET NO.:   Two (2)

4       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant

5   SOFTSCAPE, INC. ("Softscape") hereby responds to the Second Set Requests for Production of

6   Documents ("Requests") served by Plaintiff SUCCESSFACTORS, INC. ("SuccessFactors"), as

7   follows:

8       **GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION**

9       The following general objections apply to each separately numbered document request

10  contained in these requests, and are incorporated by this reference, to the extent applicable, into

11  each specific response, as if set forth in full.

12      1.      Softscape objects to each request to the extent it purports to seek the production of

13  documents that are protected by the attorney-client privilege, work product doctrine, common

14  interest privilege, and/or any other applicable privilege.  The inadvertent production of any

15  privileged document is not to be deemed a waiver of privilege, and Softscape reserves the right to

16  object to the introduction or any other use of any privileged or protected documents that may be

17  inadvertently produced.  Any agreement to produce documents responsive to a request is not an

18  acknowledgment that any such documents exist.

19      2.      Softscape objects to each request to the extent it purports to seek the production of

20  documents that are protected by privacy rights under the California or United States Constitutions

21  or state or federal law, or by any other confidentiality protections.

22      3.      Softscape objects to each request to the extent it seeks documents outside of

23  Softscape's possession, custody or control.

24      4.      Softscape objects to each request to the extent it purports to seek the production of

25  documents that are not relevant to the subject matter of the underlying action, and not reasonably

26  calculated to lead to discovery of admissible evidence.

27      5.      Softscape objects to each request as overbroad, unduly burdensome, not relevant to

28  the subject matter of the underlying action, and not reasonably calculated to lead to discovery of

TAYLOR & CO.
LAW OFFICES, LLP

1.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1 | admissible evidence, to the extent the request seeks production of documents that were created

2 | before January 1, 2008, the first date of factual allegations against Softscape.

3 |   6.    Softscape objects to these requests to the extent they seek to have Softscape furnish

4 | information and identify documents that are a matter of the public record, and therefore, are

5 | equally available to the propounding party as they are to Softscape.

6 |   7.    Softscape objects to these requests to the extent they seek to have Softscape furnish

7 | information and identify documents that are proprietary to Softscape and contain confidential or

8 | trade secret information.

9 |   8.    Softscape objects to these requests to the extent they purport to impose on

10 | Softscape obligations or responsibilities in excess of those imposed by the Federal Rules of Civil

11 | Procedure, the applicable Local Rules of this Court, any other applicable rules, case law, statutes

12 | governing the proper scope of discovery, or applicable Court orders.

13 |   9.    The definition of "PRESENTATION" as used in these requests is overbroad,

14 | compound, and unduly burdensome.  In responding to these requests, Softscape will interpret the

15 | term "PRESENTATION" to mean the document attached as Exhibit 1 to the Declaration of Robert

16 | Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary Restraining Order and

17 | Order to Show Cause re Preliminary Injunction, filed March 11, 2008, bearing control numbers

18 | SF00000001-SF00000043.

19 |   10.    At this early stage, Softscape has not completed its investigation of facts, witnesses

20 | or documents relating to this case; has not completed discovery in this action; has not completed

21 | its analysis of available data; and has not completed its preparations for the preliminary injunction

22 | hearing.  Thus, although a good faith effort has been made to conduct a diligent search and to

23 | supply pertinent documents when they have been requested, and a reasonable inquiry has been

24 | made in an effort to comply with these requests, it has not been possible in some instances to make

25 | unqualified responses.  Further, the responses are necessarily made without prejudice to

26 | Softscape's rights to produce evidence of any subsequently discovered facts, witnesses or

27 | documents.  Softscape provides its responses based on its understanding of the claims as set forth

28 |

TAYLOR & CO.
LAW OFFICES, LLP

2.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  in the pleadings currently on file in this case, as of the date these responses are made, and has

2  furnished such information as is presently available to it.

3  **RESPONSES TO REQUEST FOR PRODUCTION**

4  **REQUEST FOR PRODUCTION NO. 17:**

5      ALL DOCUMENTS CONCERNING actual or planned press releases by SOFTSCAPE

6  regarding this action, including but not limited to any version, portion, edits, memoranda, notes, e-

7  mails, file histories, and metadata.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

9      Softscape objects to this request to the extent it calls for the production of material

10  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

11  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

12  also objects to this request on the grounds that it is not reasonably calculated to lead to the

13  discovery of admissible evidence.  Softscape further objects to this request because it is overbroad

14  as to both time and scope, rendering a response unduly burdensome.  To the extent this request

15  seeks documents unrelated to the PRESENTATION or SuccessFactors' online demonstration

16  environments, which are the subject of this action, Softscape also objects.  To the extent that this

17  requests seeks documents that are available to the public, the requested documents are equally

18  available to SuccessFactors.

19  **REQUEST FOR PRODUCTION NO. 18:**

20      ALL DOCUMENTS CONCERNING SOFTSCAPE's interviews or investigations about

21  the PRESENTATION, its creation or development, or its actual or planned dissemination.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

23      Softscape objects to this request to the extent it calls for the production of material

24  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

25  objects to this request to the extent that it calls for confidential, proprietary information.

26      Subject to the foregoing specific and general objections, Softscape will produce non-

27  privileged relevant, responsive documents in its possession, custody or control that are related to

28  the creation, modification and dissemination of the PRESENTATION.

TAYLOR & CO.
LAW OFFICES, LLP

3.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1   **REQUEST FOR PRODUCTION NO. 19:**

2       DOCUMENTS sufficient to show a list of SOFTSCAPE's actual and prospective

3   customers as of March 4, 2008.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

5       Softscape objects to this request to the extent it calls for the production of material

6   protected by attorney-client privilege or the attorney work product doctrine. Softscape further

7   objects to this request to the extent that it calls for confidential, proprietary information. Softscape

8   also objects to this request on the grounds that it is not reasonably calculated to lead to the

9   discovery of admissible evidence. Softscape further objects to this request because it is overbroad

10   as to both time and scope, rendering a response unduly burdensome. To the extent this request

11   seeks documents unrelated to the PRESENTATION or SuccessFactors' online demonstration

12   environments, which are the subject of this action, Softscape also objects.

13   **REQUEST FOR PRODUCTION NO. 20:**

14       ALL DOCUMENTS CONCERNING COMMUNICATIONS from January 1, 2008 to

15   present with any of the persons or entities reflected in the e-mail addresses shown in Exhibit B to

16   the Declaration of Liwen Mah in Support of SuccessFactors' Motion for Administrative Relief to

17   File Materials Recently Produced by Google Inc. (Docket No. 55).

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

19       Softscape objects to this request to the extent it calls for the production of material

20   protected by attorney-client privilege or the attorney work product doctrine. Softscape further

21   objects to this request to the extent that it calls for confidential, proprietary information. Softscape

22   also objects to this request on the grounds that it is not reasonably calculated to lead to the

23   discovery of admissible evidence. Softscape further objects to this request because it is overbroad

24   as to both time and scope, rendering a response unduly burdensome. To the extent this request

25   seeks documents unrelated to the PRESENTATION or SuccessFactors' online demonstration

26   environments, which are the subject of this action, Softscape also objects.

27

28

TAYLOR & CO.
LAW OFFICES, LLP

4.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

**REQUEST FOR PRODUCTION NO. 21:**

ALL COMMUNICATIONS from January 1, 2008 to present involving the e-mail address mwest@softscape.com with or regarding any actual or prospective customers of SOFTSCAPE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Softscape objects to this request to the extent it calls for the production of material protected by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this request to the extent that it calls for confidential, proprietary information. To the extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

Subject to the foregoing specific and general objections, Softscape will produce non-privileged relevant, responsive documents in its possession, custody or control that are related to the creation, modification and dissemination of the PRESENTATION.

**REQUEST FOR PRODUCTION NO. 22:**

ALL COMMUNICATIONS from January 1, 2008 to present involving Dennis Martinek with or regarding any actual or prospective customers of SOFTSCAPE, including but not limited to e-mails involving the e-mail address, wildgracks@yahoo.com.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Softscape objects to this request to the extent it calls for the production of material protected by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this request to the extent that it calls for confidential, proprietary information. To the extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

Subject to the foregoing specific and general objections, Softscape will produce non-privileged relevant, responsive documents in its possession, custody or control that are related to the creation, modification and dissemination of the PRESENTATION.

**REQUEST FOR PRODUCTION NO. 23:**

ALL COMMUNICATIONS from January 1, 2008 to present involving Rick Vatcher with or regarding any actual or prospective customers of SOFTSCAPE.

Taylor & Co.
Law Offices, LLP

5.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

2       Softscape objects to this request to the extent it calls for the production of material

3   protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

4   objects to this request to the extent that it calls for confidential, proprietary information.  To the

5   extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

6       Subject to the foregoing specific and general objections, Softscape will produce non-

7   privileged relevant, responsive documents in its possession, custody or control that are related to

8   the creation, modification and dissemination of the PRESENTATION.

9   **REQUEST FOR PRODUCTION NO. 24:**

10      ALL COMMUNICATIONS from January 1, 2008 to present involving Dave Watkins with

11  or regarding any actual or prospective customers of SOFTSCAPE.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

13      Softscape objects to this request to the extent it calls for the production of material

14  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

15  objects to this request to the extent that it calls for confidential, proprietary information.  To the

16  extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

17      Subject to the foregoing specific and general objections, Softscape will produce non-

18  privileged relevant, responsive documents in its possession, custody or control that are related to

19  the creation, modification and dissemination of the PRESENTATION.

20  **REQUEST FOR PRODUCTION NO. 25:**

21      ALL COMMUNICATIONS from January 1, 2008 to present involving Susan Mohr with

22  or regarding any actual or prospective customers of SOFTSCAPE.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

24      Softscape objects to this request to the extent it calls for the production of material

25  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

26  objects to this request to the extent that it calls for confidential, proprietary information.  To the

27  extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

28      Subject to the foregoing specific and general objections, Softscape will produce non-

TAYLOR & CO.
LAW OFFICES, LLP

6.

1  privileged relevant, responsive documents in its possession, custody or control that are related to

2  the creation, modification and dissemination of the PRESENTATION.

3  **REQUEST FOR PRODUCTION NO. 26:**

4      ALL COMMUNICATIONS from January 1, 2008 to present between SOFTSCAPE and

5  wildgracks@yahoo.com.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

7      Softscape objects to this request to the extent it calls for the production of material

8  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

9  objects to this request to the extent that it calls for confidential, proprietary information.  To the

10  extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

11      Subject to the foregoing specific and general objections, Softscape will produce non-

12  privileged relevant, responsive documents in its possession, custody or control that are related to

13  the creation, modification and dissemination of the PRESENTATION.

14  **REQUEST FOR PRODUCTION NO. 27:**

15      ALL COMMUNICATION from January 1, 2008 to present between SOFTSCAPE and

16  William Hurly or William Hurley, including but not limited to COMMUNICATIONS involving

17  williamhurly@hotmail.com.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

19      Softscape objects to this request to the extent it calls for the production of material

20  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

21  objects to this request to the extent that it calls for confidential, proprietary information.  To the

22  extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

23      Subject to the foregoing specific and general objections, Softscape will produce non-

24  privileged relevant, responsive documents in its possession, custody or control that are related to

25  the creation, modification and dissemination of the PRESENTATION.

26  **REQUEST FOR PRODUCTION NO. 28:**

27      ALL DOCUMENTS CONCERNING recipients of any DOCUMENTS or information that

28  SUCCESSFACTORS provided to New Millenium Shoe, Ely Valls, or Javier Cruz, including but

TAYLOR & CO.
LAW OFFICES, LLP

7.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  not limited to the proposal that SUCCESSFACTORS prepared for New Millenium Shoe, which

2  was attached as Exhibit 3 to the Declaration of Jorge Corrales in Support of Preliminary Injunction

3  and Expedited Discovery (Dkt. No. 53).

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

5        Softscape objects to this request to the extent it calls for the production of material

6  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

7  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

8  further objects to this request because it is overbroad as to both time and scope, rendering a

9  response unduly burdensome.  To the extent this request seeks documents unrelated to the

10  PRESENTATION or SuccessFactors' online demonstration environments, which are the subject

11  of this action, Softscape also objects.

12        Subject to the foregoing specific and general objections, Softscape will produce non-

13  privileged relevant, responsive documents in its possession, custody or control that are related to

14  SuccessFactors' online demonstration environment.

15  **REQUEST FOR PRODUCTION NO. 29:**

16        ALL DOCUMENTS CONCERNING commentary, discussion, or analysis of any

17  DOCUMENTS or information that SUCCESSFACTORS provided to New Millenium Shoe, Ely

18  Valls, or Javier Cruz, including but not limited to the proposal that SUCCESSFACTORS prepared

19  for New Millenium Shoe.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

21        Softscape objects to this request to the extent it calls for the production of material

22  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

23  objects to this request to the extent that it calls for confidential, proprietary information.

24        Subject to the foregoing specific and general objections, Softscape will produce non-

25  privileged relevant, responsive documents in its possession, custody or control that are related to

26  SuccessFactors' online demonstration environment.

27

28

TAYLOR & CO.
LAW OFFICES, LLP

8.

1 **REQUEST FOR PRODUCTION NO. 30:**

2     ALL DOCUMENTS CONCERNING access between SOFTSCAPE servers or computers

3 and Courtyard Marriott or the IP address **74.94.170.178**, including but not limited to

4 COMMUNICATIONS between the same.

5 **RESPONSE FOR REQUEST FOR PRODUCTION NO. 30:**

6     Softscape objects to this request to the extent it calls for the production of material

7 protected by attorney-client privilege or the attorney work product doctrine. Softscape further

8 objects to this request to the extent that it calls for confidential, proprietary information. Softscape

9 further objects to this request because it is overbroad as to both time and scope, rendering a

10 response unduly burdensome. To the extent this request seeks documents unrelated to the

11 PRESENTATION or SuccessFactors' online demonstration environments, which are the subject

12 of this action, Softscape also objects. To the extent that this request seeks documents that are

13 equally available to and already in SuccessFactors' possession by way of its third party subpoena

14 to the Courtyard Marriott in Waltham, Massachusetts, Softscape also objects.

15     Subject to the foregoing specific and general objections, Softscape will produce non-

16 privileged relevant, responsive documents in its possession, custody or control concerning access

17 between Softscape IP addresses and the Courtyard Marriott in Waltham, Massachusetts, or IP

18 address 74.94.170.178, on March 4, 2008.

19 **REQUEST FOR PRODUCTION NO. 31:**

20     ALL DOCUMENTS CONCERNING the Courtyard Marriott in Waltham, Massachusetts,

21 including but not limited to travel itineraries, accounts payable, billing records, expense

22 reimbursements, calendar entries, and COMMUNICATIONS between SOFTSCAPE and

23 Courtyard Marriott.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

25     Softscape objects to this request to the extent it calls for the production of material

26 protected by attorney-client privilege or the attorney work product doctrine. Softscape further

27 objects to this request to the extent that it calls for confidential, proprietary information. Softscape

28 further objects to this request because it is overbroad as to both time and scope, rendering a

TAYLOR & CO.
LAW OFFICES, LLP

9.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1  response unduly burdensome.  To the extent this request seeks documents unrelated to the

2  PRESENTATION or SuccessFactors' online demonstration environments, which are the subject

3  of this action, Softscape also objects.  To the extent that this requests seeks documents that are

4  equally available to and already in SuccessFactors' possession by way of its third party subpoena

5  to the Courtyard Marriott in Waltham, Massachusetts, Softscape also objects.

6      Subject to the foregoing specific and general objections, Softscape will produce non-

7  privileged relevant, responsive documents in its possession, custody or control concerning

8  communications between Softscape IP addresses and the Courtyard Marriott in Waltham,

9  Massachusetts, including travel itineraries, accounts payable, billing records, expense

10 reimbursements and calendar entries referencing or indicating contact with the Courtyard Marriott

11 in Waltham, Massachusetts during the period March 3 - 4, 2008.

12 **REQUEST FOR PRODUCTION NO. 32:**

13     All memoranda of understanding, licenses, proposals, communications setting forth

14 proposals or orders, invoices, or purchase orders between SOFTSCAPE and its actual or

15 prospective customers after January 1, 2008.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

17     Softscape objects to this request to the extent it calls for the production of material

18 protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

19 objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

20 also objects to this request on the grounds that it is not reasonably calculated to lead to the

21 discovery of admissible evidence.  Softscape further objects to this request because it is overbroad

22 as to both time and scope, rendering a response unduly burdensome.  To the extent this request

23 seeks documents unrelated to the PRESENTATION or SuccessFactors' online demonstration

24 environments, which are the subject of this action, Softscape also objects.

25 **REQUEST FOR PRODUCTION NO. 33:**

26     ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

27 the IP address **65.96.237.54**, including but not limited to COMMUNICATIONS between the

28 same.

TAYLOR & CO.
LAW OFFICES, LLP

10.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

2         Softscape objects to this request to the extent it calls for the production of material

3    protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

4    objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

5    further objects to this request because it is overbroad as to both time and scope, rendering a

6    response unduly burdensome.  Softscape further objects to this requests as irrelevant, rendering a

7    response unduly burdensome.  To the extent this request seeks all internet communications

8    between Softscape and the home of Softscape's CEO, Softscape also objects.  To the extent that

9    this requests seeks documents that are equally available to and already in SuccessFactors'

10   possession by way of its third party subpoena to Comcast, Softscape also objects.

11        Subject to the foregoing specific and general objections, Softscape will produce non-

12   privileged relevant, responsive documents in its possession, custody or control concerning access

13   between Softscape IP addresses and the IP address 69.96.237.54 on March 3 and 4, 2008, to the

14   extent such records exist.

15   **REQUEST FOR PRODUCTION NO. 34:**

16        ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

17   the IP address **65.96.233.62**, including but not limited to COMMUNICATIONS between the

18   same.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

20        Softscape objects to this request to the extent it calls for the production of material

21   protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

22   objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

23   further objects to this request because it is overbroad as to both time and scope, rendering a

24   response unduly burdensome.  To the extent this request seeks all internet communications

25   between Softscape and the home of Softscape's CEO, the request is grossly overbroad and

26   irrelevant.  To the extent that this requests seeks documents that are equally available to and

27   already in SuccessFactors' possession by way of its third party subpoena to Comcast, Softscape

28   also objects.

Taylor & Co.
Law Offices, LLP

11.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1    Subject to the foregoing specific and general objections, Softscape will produce non-

2   privileged relevant, responsive documents in its possession, custody or control concerning access

3   between Softscape IP addresses and the IP address 69.96.233.62 on March 3 and 4, 2008, to the

4   extent such records exist.

5   **REQUEST FOR PRODUCTION NO. 35:**

6    ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

7   the IP address **62.140.137.160**, including but not limited to COMMUNICATIONS between the

8   same.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

10    Softscape objects to this request to the extent it calls for the production of material

11   protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

12   objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

13   further objects to this request because it is overbroad as to both time and scope, rendering a

14   response unduly burdensome.  To the extent this request seeks all internet communications

15   between Softscape and an internet address or mobile device in the United Kingdom, the request is

16   grossly overbroad and irrelevant.

17    Subject to the foregoing specific and general objections, Softscape will produce non-

18   privileged relevant, responsive documents in its possession, custody or control concerning access

19   between Softscape IP addresses and the IP address 62.140.137.160 on March 3 and 4, 2008, to the

20   extent such records exist.

21   **REQUEST FOR PRODUCTION NO. 36:**

22    ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

23   the IP address **217.118.122.88**, including but not limited to COMMUNICATIONS between the

24   same.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

26    Softscape objects to this request to the extent it calls for the production of material

27   protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

28   objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

TAYLOR & CO.
LAW OFFICES, LLP

12.

1   further objects to this request because it is overbroad as to both time and scope, rendering a

2   response unduly burdensome.  To the extent this request seeks all internet communications

3   between Softscape and a local IP service in London, England, the request is grossly overbroad and

4   irrelevant.

5          Subject to the foregoing specific and general objections, Softscape will produce non-

6   privileged relevant, responsive documents in its possession, custody or control concerning access

7   between Softscape IP addresses and the IP address 217.118.122.88 on March 3 and 4, 2008, to the

8   extent such records exist.

9   **REQUEST FOR PRODUCTION NO. 37:**

10          ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

11  the IP address **82.108.171.66**, including but not limited to COMMUNICATIONS between the

12  same.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

14          Softscape objects to this request to the extent it calls for the production of material

15  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

16  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

17  further objects to this request because it is overbroad as to both time and scope, rendering a

18  response unduly burdensome.  To the extent this request seeks all internet communications

19  between Softscape's London office and its Massachusetts headquarters, the request is grossly

20  overbroad and irrelevant.

21          Subject to the foregoing specific and general objections, Softscape will produce non-

22  privileged relevant, responsive documents in its possession, custody or control concerning access

23  between Softscape IP addresses and the IP address 82.108.171.66 on March 3 and 4, 2008, to the

24  extent such records exist.

25  **REQUEST FOR PRODUCTION NO. 38:**

26          ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from

27  the IP address **24.34.56.79**, including but not limited to COMMUNICATIONS between the same.

28

TAYLOR & CO.
LAW OFFICES, LLP

13.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Softscape objects to this request to the extent it calls for the production of material protected by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this request to the extent that it calls for confidential, proprietary information. Softscape further objects to this request because it is overbroad as to both time and scope, rendering a response unduly burdensome. To the extent this request seeks all internet communications between Softscape and the home of Softscape's Chief Technology Officer, the request is grossly overbroad and irrelevant. To the extent that this requests seeks documents that are equally available to and already in SuccessFactors' possession by way of its third party subpoena to Comcast, Softscape also objects.

Subject to the foregoing specific and general objections, Softscape will produce non-privileged relevant, responsive documents in its possession, custody or control concerning access between Softscape IP addresses and the IP address 24.34.56.79 on March 3 and 4, 2008, to the extent such records exist.

**REQUEST FOR PRODUCTION NO. 39:**

ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the IP address **98.216.168.122**, including but not limited to COMMUNICATIONS between the same.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Softscape objects to this request to the extent it calls for the production of material protected by attorney-client privilege or the attorney work product doctrine. Softscape further objects to this request to the extent that it calls for confidential, proprietary information. Softscape further objects to this request because it is overbroad as to both time and scope, rendering a response unduly burdensome. To the extent this request seeks all internet communications between Softscape and the home of Softscape's CEO, the request is grossly overbroad and irrelevant. To the extent that this requests seeks documents that are equally available to and already in SuccessFactors' possession by way of its third party subpoena to Comcast, Softscape also objects.

TAYLOR & CO.
LAW OFFICES, LLP

14.

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1    Subject to the foregoing specific and general objections, Softscape will produce non-

2    privileged relevant, responsive documents in its possession, custody or control concerning access

3    between Softscape IP addresses and the IP address 98.216.168.122 on March 3 and 4, 2008, to the

4    extent such records exist.

5    **REQUEST FOR PRODUCTION NO. 40:**

6    DOCUMENTS sufficient to identify the persons who receive e-mails sent to

7    sales@softscape.com on March 4, 2008.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

9    Softscape objects to this request to the extent it calls for the production of material

10   protected by attorney-client privilege or the attorney work product doctrine. Softscape further

11   objects to this request to the extent that it calls for confidential, proprietary information. To the

12   extent this request seeks documents unrelated to the PRESENTATION, Softscape also objects.

13   Subject to the foregoing specific and general objections, Softscape will produce non-

14   privileged relevant, responsive documents in its possession, custody or control.

15   **REQUEST FOR PRODUCTION NO. 41:**

16   ALL DOCUMENTS CONCERNING changes to the www.newmilleniumshoe.com

17   website in or after November 2007, including but not limited to COMMUNICATIONS involving

18   Dave Watkins or SOFTSCAPE regarding the website.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

20   Softscape objects to this request to the extent it calls for the production of material

21   protected by attorney-client privilege or the attorney work product doctrine. Softscape further

22   objects to this request to the extent that it calls for confidential, proprietary information. Softscape

23   further objects to this request because it is overbroad as to both time and scope, rendering a

24   response unduly burdensome. The Complaint alleges that Softscape's purported unauthorized

25   access of its online demonstration environment occurred sometime after January 2008 and the

26   distribution of the PRESENTATION occurred on or about March 4, 2008. To the extent this

27   request seeks documents unrelated to the PRESENTATION or SuccessFactors' online

28   demonstration environments, which are the subject of this action, Softscape also objects.

TAYLOR & CO.
LAW OFFICES, LLP

15.

1  Softscape further objects to this request to the extent it seeks documents that are outside the scope

2  of a Rule 34 request to a party.  This request seeks documents in the possession, custody and

3  control of a third party witness, which requires a subpoena directed to that witness under Rule 45.

4  **REQUEST FOR PRODUCTION NO. 42:**

5      ALL COMMUNICATIONS between vallsely@hotmail.com, on the one hand, and Dave

6  Watkins or SOFTSCAPE, on the other hand, from January 1, 2007 to present.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

8      Softscape objects to this request to the extent it calls for the production of material

9  protected by attorney-client privilege or the attorney work product doctrine.  Softscape further

10  objects to this request to the extent that it calls for confidential, proprietary information.  Softscape

11  further objects to this request because it is overbroad as to both time and scope, rendering a

12  response unduly burdensome.  The Complaint alleges that Softscape's purported unauthorized

13  access of its online demonstration environment occurred sometime after January 2008 and the

14  distribution of the PRESENTATION occurred on or about March 4, 2008.  To the extent this

15  request seeks documents unrelated to the PRESENTATION or SuccessFactors' online

16  demonstration environments, which are the subject of this action, Softscape also objects.

17      Subject to the foregoing specific and general objections, Softscape will produce non-

18  privileged relevant, responsive documents in its possession, custody or control that are related to

19  the creation, modification and dissemination of the PRESENTATION, and SuccessFactors' online

20  demonstration environments.

21  **REQUEST FOR PRODUCTION NO. 43:**

22      DOCUMENTS supporting YOUR claim that "the Presentation was intended for

23  Softscape's internal use only" and "was marked and saved electronically on the company's server,

24  and this treatment of the Presentation was repeatedly emphasized to the Softscape sales force both

25  orally and in writing," as set forth in Paragraph 8 of the Declaration of David Watkins In

26  Opposition to Plaintiff's Motion to Strike and in Response to Order to Show Cause dated 03.26.08

27  ("Watkins Decl.").

28

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

2        Softscape objects to this request to the extent it calls for the production of material

3  protected by attorney-client privilege or the attorney work product doctrine. Softscape further

4  objects to this request to the extent that it calls for confidential, proprietary information.

5        Subject to the foregoing specific and general objections, Softscape will produce non-

6  privileged relevant, responsive documents in its possession, custody or control that are related to

7  the creation, modification and dissemination of the PRESENTATION, and SuccessFactors' online

8  demonstration environments.

9

10  Dated: May 5, 2008               TAYLOR & COMPANY LAW OFFICES, LLP

11

12                            By: _____

13                                  Jessica L. Grant

14                    Attorneys for Defendant SOFTSCAPE, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1

**PROOF OF SERVICE**

2      At the time of service, I was over 18 years of age and not a party to this action. I am

3 employed in the County of San Francisco, State of California. My business address is One Ferry

4 Building, Suite 355, San Francisco, California 94111.

5      On May 5, 2008, I served true copies of the following document(s) described as

6 **DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF**

7 **REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** on the interested parties

8 in this action as follows:

9
10
11

> Mr. Laurence F. Pulgram
> Fenwick & West LLP
> 555 California Street, 12th Floor
> San Francisco, CA 94104

12

13 ☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed above and placed the envelope for collection and mailing,
14 following our ordinary business practices. I am readily familiar with Taylor & Company's
practice for collecting and processing correspondence for mailing. On the same day that
15 the correspondence is placed for collection and mailing, it is deposited in the ordinary
course of business with the United States Postal Service, in a sealed envelope with postage
16 fully prepaid.

17 ☐ **BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax
numbers listed above. The telephone number of the sending facsimile machine was
18 (415) 788-8208. No error was reported by the fax machine that I used.

19 ☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the
document(s) to be sent from e-mail address jlim@tcolaw.com to the persons at the e-mail
20 addresses listed above. I did not receive, within a reasonable time after the transmission,
any electronic message or other indication that the transmission was unsuccessful.

21 ☐ **BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package
provided by the overnight service carrier and addressed to the persons at the addresses
22 listed above. I placed the envelope or package for collection and overnight delivery at an
office or a regularly utilized drop box of the overnight service carrier or delivered such
23 document(s) to a courier or driver authorized by the overnight service carrier to receive
documents.
24

25 ☒ **BY PERSONAL SERVICE:** I personally delivered the document(s) to the person being
at the addresses listed above. (1) For a party represented by an attorney, delivery was
26 made to the attorney or at the attorney's office by leaving the documents in an envelope or
package clearly labeled to identify the attorney being served with a receptionist or an
27 individual in charge of the office. (2) For a party, delivery was made to the party or by
leaving the documents at the party's residence with some person not less than 18 years of
28 age between the hours of eight in the morning and six in the evening.

TAYLOR & CO.
LAW OFFICES, LLP

18.
DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS: CASE NO. C-08-1376 (CW)

1    ☐    **BY PERSONAL SERVICE:** I personally delivered the document(s) directly to the person(s) being served.

2

3    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

5    Executed on May 5, 2008, at San Francisco, California.

6

7                                        Steven D. Day

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SOFTSCAPE, INC.'S RESPONSE TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS: CASE NO.  C-08-1376 (CW)

# EXHIBIT 9

1  ROBERT P. TAYLOR (SBN 46046)
   Email: rptaylor@mintz.com
2  BRYAN J. SINCLAIR (SBN 205885)
   Email: bsinclair@mintz.com
3  JEFFREY M. RATINOFF (SBN 197241)
   Email: jratinoff@mintz.com
4  MINTZ LEVIN COHN FERRIS GLOVSKY AND
   POPEO, PC
5  1400 Page Mill Road
   Palo Alto, California  94304-1124
6  Telephone:  (650) 251-7700
   Facsimile:   (650) 251-7739
7

8  Attorneys for Defendant,
   SOFTSCAPE, INC.
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          OAKLAND DIVISION

13  SUCCESSFACTORS, INC, a Delaware          Case No. CV 08-1376 CW (BZx)
    corporation,
14                                           **DEFENDANT SOFTSCAPE, INC.'S**
                                             **AMENDED RESPONSES TO**
15              Plaintiff,                    **PLAINTIFF'S SECOND SET OF**
                                             **REQUESTS FOR PRODUCTION OF**
16       vs.                                  **DOCUMENTS AND THINGS**

17  SOFTSCAPE, INC., a Delaware corporation,
    and DOES 1-10, inclusive,
18
                Defendants.
19

20       PROPOUNDING PARTY:    Plaintiff SUCCESSFACTORS, INC.

21       RESPONDING PARTY:     Defendant SOFTSCAPE, INC.

22       SET NO.:              Two (2) - Amended Responses

23  Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant SOFTSCAPE, INC.

24  ("Softscape") hereby responds to the Second Set Requests for Production of Documents

25  ("Requests") served by Plaintiff SUCCESSFACTORS, INC. ("SuccessFactors"), as follows:

26            **GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION**

27       The following general objections apply to each separately numbered document request

28  contained in these requests, and are incorporated by this reference, to the extent applicable, into

                                    - 1 -

1  each specific response, as if set forth in full.

2      1.      Softscape objects to each request to the extent it purports to seek the production of

3  documents that are protected by the attorney-client privilege, work product doctrine, common

4  interest privilege, and/or any other applicable privilege.  The inadvertent production of any

5  privileged document is not to be deemed a waiver of privilege, and Softscape reserves the right to

6  object to the introduction or any other use of any privileged or protected documents that may be

7  inadvertently produced.  Any agreement to produce documents responsive to a request is not an

8  acknowledgment that any such documents exist.

9      2.      Softscape objects to each request to the extent it purports to seek the production of

10  documents that are protected by privacy rights under the California or United States Constitutions

11  or state or federal law, or by any other confidentiality protections.

12      3.      Softscape objects to each request to the extent it seeks documents outside of

13  Softscape's possession, custody or control.

14      4.      Softscape objects to each request to the extent it purports to seek the production of

15  documents that are not relevant to the subject matter of the underlying action, and not reasonably

16  calculated to lead to discovery of admissible evidence.

17      5.      Softscape objects to each request as overbroad, unduly burdensome, not relevant to

18  the subject matter of the underlying action, and not reasonably calculated to lead to discovery of

19  admissible evidence, to the extent the request seeks production of documents that were created

20  before January 1, 2008, the first date of factual allegations against Softscape.

21      6.      Softscape objects to these requests to the extent they seek to have Softscape furnish

22  information and identify documents that are a matter of the public record, and therefore, are equally

23  available to the propounding party as they are to Softscape.

24      7.      Softscape objects to these requests to the extent they seek to have Softscape furnish

25  information and identify documents that are proprietary to Softscape and contain confidential or

26  trade secret information.

27      8.      Softscape objects to these requests to the extent they purport to impose on Softscape

28  obligations or responsibilities in excess of those imposed by the Federal Rules of Civil Procedure,

- 2 -

1  the applicable Local Rules of this Court, any other applicable rules, case law, statutes governing the

2  proper scope of discovery, or applicable Court orders.

3       9.     The definition of "PRESENTATION" as used in these requests is overbroad,

4  compound, and unduly burdensome.  In responding to these requests, Softscape will interpret the

5  term "PRESENTATION" to mean the document attached as Exhibit 1 to the Declaration of Robert

6  Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary Restraining Order and

7  Order to Show Cause re Preliminary Injunction, filed March 11, 2008, bearing control numbers

8  SF00000001-SF00000043.

9       10.    At this early stage, Softscape has not completed its investigation of facts, witnesses

10  or documents relating to this case; has not completed discovery in this action; has not completed its

11  analysis of available data; and has not completed its preparations for the preliminary injunction

12  hearing.  Thus, although a good faith effort has been made to conduct a diligent search and to

13  supply pertinent documents when they have been requested, and a reasonable inquiry has been

14  made in an effort to comply with these requests, it has not been possible in some instances to make

15  unqualified responses.  Further, the responses are necessarily made without prejudice to Softscape's

16  rights to produce evidence of any subsequently discovered facts, witnesses or documents.  Softscape

17  provides its responses based on its understanding of the claims as set forth in the pleadings currently

18  on file in this case, as of the date these responses are made, and has furnished such information as is

19  presently available to it.

20       **RESPONSES TO REQUEST FOR PRODUCTION**

21  **REQUEST FOR PRODUCTION NO. 17:**

22       ALL DOCUMENTS CONCERNING actual or planned press releases by SOFTSCAPE

23  regarding this action, including but not limited to any version, portion, edits, memoranda, notes, e-

24  mails, file histories, and metadata.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

26       Softscape objects to this request to the extent it calls for the production of material protected

27  by attorney-client privilege or the attorney work product doctrine.  Subject to the foregoing specific

28  and general objections, Softscape will produce non-privileged and/or non-work product relevant,

- 3 -

1  responsive documents in its possession, custody or control that contain actual or planned press

2  releases by SOFTSCAPE regarding this action.

3  **REQUEST FOR PRODUCTION NO. 18:**

4      ALL DOCUMENTS CONCERNING SOFTSCAPE's interviews or investigations about the

5  PRESENTATION, its creation or development, or its actual or planned dissemination.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

7      Softscape objects to this request to the extent it calls for the production of material protected

8  by attorney-client privilege or the attorney work product doctrine.

9      Subject to the foregoing specific and general objections, Softscape will produce non-

10 privileged and/or non-work product relevant, responsive documents in its possession, custody or

11 control that are related to interviews or investigations about the PRESENTATION, its creation or

12 development, or its actual or planned dissemination.

13 **REQUEST FOR PRODUCTION NO. 19:**

14     DOCUMENTS sufficient to show a list of SOFTSCAPE's actual and prospective customers

15 as of March 4, 2008.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

17     Softscape objects to this request to the extent it calls for the production of material protected

18 by attorney-client privilege or the attorney work product doctrine.  Softscape further objects to this

19 request to the extent that it calls for confidential, proprietary information.  Softscape also objects to

20 this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible

21 evidence.

22 **REQUEST FOR PRODUCTION NO. 20:**

23     ALL DOCUMENTS CONCERNING COMMUNICATIONS from January 1, 2008 to

24 present with any of the persons or entities reflected in the e-mail addresses shown in Exhibit B to

25 the Declaration of Liwen Mah in Support of SuccessFactors' Motion for Administrative Relief to

26 File Materials Recently Produced by Google Inc. (Docket No. 55).

27 **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

28     Softscape objects to this request to the extent it calls for the production of material protected

- 4 -

1  by attorney-client privilege or the attorney work product doctrine.  Due to the potential undue

2  burden of searching for, collecting, and reviewing a substantial amount of information that such a

3  search could reveal, Softscape will inquire as to the cost of performing such an extensive search and

4  meet and confer further on this Request No. 20.

5  **REQUEST FOR PRODUCTION NO. 21:**

6      ALL COMMUNICATIONS from January 1, 2008 to present involving the e-mail address

7  mwest@softscape.com with or regarding any actual or prospective customers of SOFTSCAPE.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

9      Softscape objects to this request to the extent it calls for the production of material protected

10  by attorney-client privilege or the attorney work product doctrine.

11      Subject to the foregoing specific and general objections, Softscape will produce non-

12  privileged relevant, responsive documents in its possession, custody or control that are

13  communications from January 1, 2008 to present involving the e-mail address

14  mwest@softscape.com with or regarding any actual or prospective customers of SOFTSCAPE

15  relating to the PRESENTATION or any facts contained or statements made in the

16  PRESENTATION.

17  **REQUEST FOR PRODUCTION NO. 22:**

18      ALL COMMUNICATIONS from January 1, 2008 to present involving Dennis Martinek

19  with or regarding any actual or prospective customers of SOFTSCAPE, including but not limited to

20  e-mails involving the e-mail address, wildgracks@yahoo.com.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

22      Softscape objects to this request to the extent it calls for the production of material protected

23  by attorney-client privilege or the attorney work product doctrine.

24      Subject to the foregoing specific and general objections, Softscape will produce non-

25  privileged relevant, responsive documents in its possession, custody or control that are

26  communications from January 1, 2008 to present involving Dennis Martinek with or regarding any

27  actual or prospective customers of SOFTSCAPE relating to the PRESENTATION or any facts

28  contained or statements made in the PRESENTATION, including but not limited to e-mails

- 5 -

1  involving the e-mail address, wildgracks@yahoo.com.

2  **REQUEST FOR PRODUCTION NO. 23:**

3      ALL COMMUNICATIONS from January 1, 2008 to present involving Rick Vatcher with or

4  regarding any actual or prospective customers of SOFTSCAPE.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

6      Softscape objects to this request to the extent it calls for the production of material protected

7  by attorney-client privilege or the attorney work product doctrine.

8      Subject to the foregoing specific and general objections, Softscape will produce non-

9  privileged relevant, responsive documents in its possession, custody or control that are

10 communications from January 1, 2008 to present involving Rick Vatcher with or regarding any

11 actual or prospective customers of SOFTSCAPE relating to the PRESENTATION or any facts

12 contained or statements made in the PRESENTATION.

13 **REQUEST FOR PRODUCTION NO. 24:**

14     ALL COMMUNICATIONS from January 1, 2008 to present involving Dave Watkins with

15 or regarding any actual or prospective customers of SOFTSCAPE.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

17     Softscape objects to this request to the extent it calls for the production of material protected

18 by attorney-client privilege or the attorney work product doctrine.

19     Subject to the foregoing specific and general objections, Softscape will produce non-

20 privileged relevant, responsive documents in its possession, custody or control that are

21 communications from January 1, 2008 to present involving Dave Watkins with or regarding any

22 actual or prospective customers of SOFTSCAPE relating to the PRESENTATION or any facts

23 contained or statements made in the PRESENTATION.

24 **REQUEST FOR PRODUCTION NO. 25:**

25     ALL COMMUNICATIONS from January 1, 2008 to present involving Susan Mohr with or

26 regarding any actual or prospective customers of SOFTSCAPE.

27 **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

28     Softscape objects to this request to the extent it calls for the production of material protected

- 6 -

1  by attorney-client privilege or the attorney work product doctrine.

2      Subject to the foregoing specific and general objections, Softscape will produce non-

3  privileged relevant, responsive documents in its possession, custody or control that are

4  communications from January 1, 2008 to present involving Susan Mohr with or regarding any

5  actual or prospective customers of SOFTSCAPE relating to the PRESENTATION or any facts

6  contained or statements made in the PRESENTATION.

7  **REQUEST FOR PRODUCTION NO. 26:**

8      ALL COMMUNICATIONS from January 1, 2008 to present between SOFTSCAPE and

9  wildgracks@yahoo.com.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

11      Softscape objects to this request to the extent it calls for the production of material protected

12  by attorney-client privilege or the attorney work product doctrine.

13      Subject to the foregoing specific and general objections, Softscape will produce non-

14  privileged relevant, responsive documents in its possession, custody or control that are

15  communications from January 1, 2008 to present between wildgracks@yahoo.com relating to the

16  PRESENTATION or any facts contained or statements made in the PRESENTATION.

17  **REQUEST FOR PRODUCTION NO. 27:**

18      ALL COMMUNICATION from January 1, 2008 to present between SOFTSCAPE and

19  William Hurly or William Hurley, including but not limited to COMMUNICATIONS involving

20  williamhurly@hotmail.com.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

22      Softscape objects to this request to the extent it calls for the production of material protected

23  by attorney-client privilege or the attorney work product doctrine.

24      Subject to the foregoing specific and general objections, Softscape will produce non-

25  privileged relevant, responsive documents in its possession, custody or control that are

26  communications from January 1, 2008 to present between SOFTSCAPE and William Hurly or

27  William Hurley, including but not limited to COMMUNICATIONS involving

28  williamhurly@hotmail.com relating to the PRESENTATION or any facts contained or statements

- 7 -

1  made in the PRESENTATION.

2  **REQUEST FOR PRODUCTION NO. 28:**

3      ALL DOCUMENTS CONCERNING recipients of any DOCUMENTS or information that

4  SUCCESSFACTORS provided to New Millenium Shoe, Ely Valls, or Javier Cruz, including but

5  not limited to the proposal that SUCCESSFACTORS prepared for New Millenium Shoe, which was

6  attached as Exhibit 3 to the Declaration of Jorge Corrales in Support of Preliminary Injunction and

7  Expedited Discovery (Dkt. No. 53).

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

9      Softscape objects to this request to the extent it calls for the production of material protected

10  by attorney-client privilege or the attorney work product doctrine.

11     Subject to the foregoing specific and general objections, Softscape will produce non-

12  privileged relevant, responsive documents in its possession, custody or control that are related to

13  recipients of any documents that SUCCESSFACTORS provided to New Millenium Shoe, Ely

14  Valls, or Javier Cruz relating to the SUCCESSFACTORS' proposal or the PRESENTATION or

15  any facts contained or statements made in the PRESENTATION.

16  **REQUEST FOR PRODUCTION NO. 29:**

17     ALL DOCUMENTS CONCERNING commentary, discussion, or analysis of any

18  DOCUMENTS or information that SUCCESSFACTORS provided to New Millenium Shoe, Ely

19  Valls, or Javier Cruz, including but not limited to the proposal that SUCCESSFACTORS prepared

20  for New Millenium Shoe.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

22     Softscape objects to this request to the extent it calls for the production of material protected

23  by attorney-client privilege or the attorney work product doctrine.

24     Subject to the foregoing specific and general objections, Softscape will produce non-

25  privileged relevant, responsive documents in its possession, custody or control that are related to

26  commentary, discussion, or analysis of any documents or information that SUCCESSFACTORS

27  provided to New Millenium Shoe, Ely Valls, or Javier Cruz relating to the SUCCESSFACTORS'

28  proposal or the PRESENTATION or any facts contained or statements made in the

- 8 -

1  PRESENTATION.

2  **REQUEST FOR PRODUCTION NO. 30**:

3      ALL DOCUMENTS CONCERNING access between SOFTSCAPE servers or computers

4  and Courtyard Marriott or the IP address **74.94.170.178**, including but not limited to

5  COMMUNICATIONS between the same.

6  **RESPONSE FOR REQUEST FOR PRODUCTION NO. 30**:

7      Softscape objects to this request to the extent it calls for the production of material protected

8  by attorney-client privilege or the attorney work product doctrine.

9      Subject to the foregoing specific and general objections, Softscape will produce non-

10  privileged relevant, responsive documents in its possession, custody or control concerning access

11  between Softscape IP addresses and the Courtyard Marriott in Waltham, Massachusetts, or IP

12  address 74.94.170.178, between February 1, 2007 and March 4, 2008 relating to the

13  PRESENTATION or any facts contained or statements made in the PRESENTATION.

14  **REQUEST FOR PRODUCTION NO. 31**:

15      ALL DOCUMENTS CONCERNING the Courtyard Marriott in Waltham, Massachusetts,

16  including but not limited to travel itineraries, accounts payable, billing records, expense

17  reimbursements, calendar entries, and COMMUNICATIONS between SOFTSCAPE and Courtyard

18  Marriott.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31**:

20      Softscape objects to this request to the extent it calls for the production of material protected

21  by attorney-client privilege or the attorney work product doctrine.

22      Subject to the foregoing specific and general objections, Softscape will produce non-

23  privileged relevant, responsive documents in its possession, custody or control concerning

24  communications between Softscape IP addresses and the Courtyard Marriott in Waltham,

25  Massachusetts, including travel itineraries, accounts payable, billing records, expense

26  reimbursements and calendar entries referencing or indicating contact with the Courtyard Marriott

27  in Waltham, Massachusetts during the period between January 1, 2008 and March 4, 2008.

28  / / /

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS;   Case No. CV 08-1376 CW (BZx)

1 | **REQUEST FOR PRODUCTION NO. 32:**

2 | All memoranda of understanding, licenses, proposals, communications setting forth

3 | proposals or orders, invoices, or purchase orders between SOFTSCAPE and its actual or

4 | prospective customers after January 1, 2008.

5 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

6 | Softscape objects to this request to the extent it calls for the production of material protected

7 | by attorney-client privilege or the attorney work product doctrine.  Softscape also objects to this

8 | request on the grounds that it is not reasonably calculated to lead to the discovery of admissible

9 | evidence.

10 | **REQUEST FOR PRODUCTION NO. 33:**

11 | ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

12 | IP address **65.96.237.54**, including but not limited to COMMUNICATIONS between the same.

13 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

14 | Softscape objects to this request to the extent it calls for the production of material protected

15 | by attorney-client privilege or the attorney work product doctrine.

16 | Subject to the foregoing specific and general objections, Softscape will produce non-

17 | privileged relevant, responsive documents in its possession, custody or control concerning access

18 | between Softscape IP addresses and the IP address 69.96.237.54 between February 1, 2007 and

19 | March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

20 | PRESENTATION.

21 | **REQUEST FOR PRODUCTION NO. 34:**

22 | ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

23 | IP address **65.96.233.62**, including but not limited to COMMUNICATIONS between the same.

24 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

25 | Softscape objects to this request to the extent it calls for the production of material protected

26 | by attorney-client privilege or the attorney work product doctrine.

27 | Subject to the foregoing specific and general objections, Softscape will produce non-

28 | privileged relevant, responsive documents in its possession, custody or control concerning access

- 10 -

1  between Softscape IP addresses and the IP address 69.96.233.62 between February 1, 2007 and

2  March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

3  PRESENTATION.

4  **REQUEST FOR PRODUCTION NO. 35:**

5      ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

6  IP address **62.140.137.160**, including but not limited to COMMUNICATIONS between the same.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

8      Softscape objects to this request to the extent it calls for the production of material protected

9  by attorney-client privilege or the attorney work product doctrine.

10      Subject to the foregoing specific and general objections, Softscape will produce non-

11  privileged relevant, responsive documents in its possession, custody or control concerning access

12  between Softscape IP addresses and the IP address 62.140.137.160 between February 1, 2007 and

13  March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

14  PRESENTATION.

15  **REQUEST FOR PRODUCTION NO. 36:**

16      ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

17  IP address **217.118.122.88**, including but not limited to COMMUNICATIONS between the same.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

19      Softscape objects to this request to the extent it calls for the production of material protected

20  by attorney-client privilege or the attorney work product doctrine.

21      Subject to the foregoing specific and general objections, Softscape will produce non-

22  privileged relevant, responsive documents in its possession, custody or control concerning access

23  between Softscape IP addresses and the IP address 217.118.122.88 between February 1, 2007 and

24  March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

25  PRESENTATION.

26  **REQUEST FOR PRODUCTION NO. 37:**

27      ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

28  IP address **82.108.171.66**, including but not limited to COMMUNICATIONS between the same.

- 11 -

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS;   Case No. CV 08-1376 CW (BZx)

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

2      Softscape objects to this request to the extent it calls for the production of material protected

3  by attorney-client privilege or the attorney work product doctrine.

4      Subject to the foregoing specific and general objections, Softscape will produce non-

5  privileged relevant, responsive documents in its possession, custody or control concerning access

6  between Softscape IP addresses and the IP address 82.108.171.66 between February 1, 2007 and

7  March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

8  PRESENTATION.

9  **REQUEST FOR PRODUCTION NO. 38:**

10     ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

11 IP address **24.34.56.79**, including but not limited to COMMUNICATIONS between the same.

12 **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

13     Softscape objects to this request to the extent it calls for the production of material protected

14 by attorney-client privilege or the attorney work product doctrine.

15     Subject to the foregoing specific and general objections, Softscape will produce non-

16 privileged relevant, responsive documents in its possession, custody or control concerning access

17 between Softscape IP addresses and the IP address 24.34.56.79 between February 1, 2007 and

18 March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

19 PRESENTATION.

20 **REQUEST FOR PRODUCTION NO. 39:**

21     ALL DOCUMENTS CONCERNING access to SOFTSCAPE servers or computers from the

22 IP address **98.216.168.122**, including but not limited to COMMUNICATIONS between the same.

23 **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

24     Softscape objects to this request to the extent it calls for the production of material protected

25 by attorney-client privilege or the attorney work product doctrine.

26     Subject to the foregoing specific and general objections, Softscape will produce non-

27 privileged relevant, responsive documents in its possession, custody or control concerning access

28 between Softscape IP addresses and the IP address 98.216.168.122 between February 1, 2007 and

- 12 -

1  March 4, 2008 relating to the PRESENTATION or any facts contained or statements made in the

2  PRESENTATION.

3  **REQUEST FOR PRODUCTION NO. 40:**

4       DOCUMENTS sufficient to identify the persons who receive e-mails sent to

5  sales@softscape.com on March 4, 2008.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

7       Softscape objects to this request to the extent it calls for the production of material protected

8  by attorney-client privilege or the attorney work product doctrine.

9       Subject to the foregoing specific and general objections, Softscape will produce non-

10  privileged relevant, responsive documents in its possession, custody or control sufficient to identify

11  the persons who receive e-mails sent to sales@softscape.com on March 4, 2008.

12  **REQUEST FOR PRODUCTION NO. 41:**

13       ALL DOCUMENTS CONCERNING changes to the www.newmilleniumshoe.com website

14  in or after November 2007, including but not limited to COMMUNICATIONS involving Dave

15  Watkins or SOFTSCAPE regarding the website.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

17       Softscape objects to this request to the extent it calls for the production of material protected

18  by attorney-client privilege or the attorney work product doctrine.

19       Subject to the foregoing specific and general objections, Softscape will produce non-

20  privileged relevant, responsive documents in its possession, custody or control documents relating

21  to changes Dave Watkins or Softscape made to the www.newmilleniumshoe.com website in or after

22  November 2007.

23  **REQUEST FOR PRODUCTION NO. 42:**

24       ALL COMMUNICATIONS between vallsely@hotmail.com, on the one hand, and Dave

25  Watkins or SOFTSCAPE, on the other hand, from January 1, 2007 to present.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

27       Softscape objects to this request to the extent it calls for the production of material protected

28  by attorney-client privilege or the attorney work product doctrine.

- 13 -

1    Subject to the foregoing specific and general objections, Softscape will produce non-

2 privileged relevant, responsive documents in its possession, custody or control reflecting

3 communications between vallsely@hotmail.com, on the one hand, and Dave Watkins or

4 SOFTSCAPE, on the other hand, from February 1, 2007 and the present relating to the

5 PRESENTATION, any facts contained or statements made in the PRESENTATION, or access to

6 the ACE 275 Sales Demo.

7 **REQUEST FOR PRODUCTION NO. 43:**

8    DOCUMENTS supporting YOUR claim that "the Presentation was intended for Softscape's

9 internal use only" and "was marked and saved electronically on the company's server, and this

10 treatment of the Presentation was repeatedly emphasized to the Softscape sales force both orally and

11 in writing," as set forth in Paragraph 8 of the Declaration of David Watkins In Opposition to

12 Plaintiff's Motion to Strike and in Response to Order to Show Cause dated 03.26.08 ("Watkins

13 Decl.").

14 **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

15    Softscape objects to this request to the extent it calls for the production of material protected

16 by attorney-client privilege or the attorney work product doctrine.

17    Subject to the foregoing specific and general objections, Softscape will produce non-

18 privileged relevant, responsive documents in its possession, custody or control that support

19 Softscape's claim that "the Presentation was intended for Softscape's internal use only" and "was

20 marked and saved electronically on the company's server, and this treatment of the Presentation was

21 repeatedly emphasized to the Softscape sales force both orally and in writing," as set forth in

22 Paragraph 8 of the Declaration of David Watkins In Opposition to Plaintiff's Motion to Strike and

23 in Response to Order to Show Cause dated 03.26.08 ("Watkins Decl.").

24 Dated:  May 19, 2008        MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC

25

26                     By:  BRYAN J. SINCLAIR

27                         Attorneys for Defendant,
                          SOFTSCAPE, INC.

28

- 14 -

1

**PROOF OF SERVICE**

2       At the time of service, I was over 18 years of age and not a party to this action.  I am

3   employed in the County of Santa Clara, State of California.  My business address is 1400 Page Mill

4   Road, Palo Alto, California 94304.

5       On May 19, 2008, I served a true copy of the following document described as

6   **DEFENDANT SOFTSCAPE, INC.'S AMENDED RESPONSES TO PLAINTIFF'S SECOND**

7   **SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** on the

8   interested parties in this action as follows:

9   **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document to be sent

10  from e-mail address sburde@mintz.com to the person at the e-mail address listed below.  I did not

11  receive, within a reasonable time after the transmission, any electronic message or other indication

12  that the transmission was unsuccessful.

13              Mr. Patrick E. Premo
            Fenwick & West LLP
14              801 California Street
            Mountain View, CA  94041
15              E-Mail: ppremo@fenwick.com

16              **Counsel for SuccessFactors**

17      I declare under penalty of perjury, under the laws of the United States of America, that the

18  foregoing is true and correct and that I am employed in the office of a member of the bar of this

19  Court at whose direction the service was made.

20      Executed on May 19, 2008, at Palo Alto, California.

21

22                                  _Samantha Burde_

23                                  Samantha Burde

24

25  4331757v.2

26

27

28

- 15 -

DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS;   Case No. CV 08-1376 CW (BZx)

# EXHIBIT 10

LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
ALBERT L. SIEBER (CSB No. 233482)
asieber@fenwick.com
LIWEN A. MAH (CSB No. 239033)
lmah@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

PATRICK E. PREMO (CSB NO. 184915)
ppremo@fenwick.com
DENNIS M. FAIGAL (CSB NO. 252829)
dfaigal@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:    (650) 988-8500
Facsimile:     (650) 938-5200

Attorneys for Plaintiff SUCCESSFACTORS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUCCESSFACTORS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOFTSCAPE, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 08-1376 CW<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-19)** |

Pursuant to the Court's order permitting the parties to immediately initiate discovery and Rules 26 and 33 of the Federal Rules of Civil Procedure, SuccessFactors requests that Defendant Softscape, Inc. ("Softscape") respond in writing to each of the following Interrogatories within thirty days after service, in accordance with the definitions and instructions set forth below.

1

## DEFINITIONS

2      1.      The terms "YOU," "YOUR," "DEFENDANT," or "SOFTSCAPE" mean and

3  include, collectively and/or individually, Softscape, Inc., and its parents, subsidiaries, affiliates,

4  predecessors or successor companies, if any, and its current and former officers, directors,

5  employees, consultants, attorneys, authorized agents, sales representatives, distributors, dealers,

6  direct and indirect contractors, and/or all other PERSONS acting or purporting to act on its behalf.

7      2.      The terms "PLAINTIFF" or "SUCCESSFACTORS" mean and include,

8  collectively and/or individually, SuccessFactors, Inc., and its parents, subsidiaries, affiliates,

9  corporate divisions, predecessors or successor companies, if any, and its current and former

10  officers, directors, employees, consultants, attorneys, authorized agents, sales representatives,

11  distributors, dealers, direct and indirect contractors, and/or all other PERSONS acting or

12  purporting to act on its behalf.

13      3.      The terms "PERSON" or "PERSONS" shall include both natural persons, corporate

14  or other business entities, and all other forms of legal entities, and shall include, but is not limited

15  to, the following:  corporations, partnerships, joint ventures, associations, business organizations,

16  trade organizations, standards organizations, and sole proprietorships.

17      4.      The terms "DOCUMENT" or "DOCUMENTS" have the broadest meaning

18  accorded that term by Fed. R. Civ. P. 34(a) and includes, but is not limited to, all of the items

19  defined in Fed. R. Evid. 1001, and all preliminary and final drafts of any such item.  The terms

20  shall include, but not be limited to, all written, electronic, phonic, graphic, and recorded matter of

21  every type and description and every tangible thing that is or has been in YOUR possession,

22  custody, or control, to which YOU have access or of which YOU have knowledge.

23  "DOCUMENT(S)" shall also include, but shall not be limited to, the following items, whether

24  printed or recorded or reproduced by hand:  agreements, contracts, leases, communications

25  (including intra-company communications), electronic mail, data from Personal Digital Assistants

26  (including handheld computers, "smart phones," such as the palmOne$^{TM}$ Treo© and other similar

27  devices and pagers), correspondence, postings on intranet or internet forums or websites (such as

28  web pages and web logs or blogs), faxes, telegrams, cables, telexes, teletype messages, memoranda,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    records, books, diaries, notebooks calendars (paper, electronic and otherwise), telephone and other

2    logs, telephone and other bills, voicemail and transcriptions thereof, recorded distributions,

3    forecasts, statistical statements, accounts, invoices, purchase orders, receipts, billing records, tapes,

4    expense vouchers, minutes, summaries and other records of meetings, conferences, negotiations,

5    conversations, investigations and interviews, sales brochures and literature, advertisements, price

6    lists, trade letters, press releases, stenographic, handwritten and any other notes, projections,

7    working papers, checks (front and back), check stubs and receipts, models, surveys, devices,

8    pictures, photographs, films, computer records, data compilations, and voice and video recordings.

9    "DOCUMENT(S)" shall not be limited in any way as to the form of storage (such as paper,

10   microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, flash memory drive, or

11   other storage device).  A draft or non-identical copy is a separate document within the meaning of

12   this term.

13       5.      The terms "COMMUNICATION" or "COMMUNICATIONS" refer to any

14   exchange of information by any means of transmission and the sending or receipt of information of

15   any kind by or through any means, including but not limited to speech, writings, documents,

16   language (machine, foreign or otherwise) of any kind, computer electronics or electronic data,

17   sound, radio or video signals, telecommunications, telephone, teletype, facsimile, telegram,

18   microfilm, microfiche, photographic film of all types or other media of any kind.  The terms

19   "COMMUNICATION" and "COMMUNICATIONS" also include, without limitation, all

20   meetings, notices, requests, response, demands, complaints, press, publicity or trade releases, and

21   postings on intranet or internet forums or websites (such as web pages and web logs or blogs).

22       6.      "PRESENTATION" means the document shown as Exhibit 1 to the Declaration of

23   Robert Bernshteyn in Support of Plaintiff's Ex Parte Application for a Temporary Restraining

24   Order and Order to Show Cause re Preliminary Injunction, including all components, formats,

25   versions, portions, notes, and version data thereof.

26       7.      SUCCESSFACTORS' EVENTS means SUCCESSFACTORS sponsored or

27   hosted events for its sales representatives, distributors, and/or actual or prospective customers,

28   including, for example, SUCCESSFACTORS' PeopleConnect events.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8. The term "CONCERNING" means pertaining to, mentioning, commenting, describing, analyzing, dealing with, resulting from, constituting, including, comprising, consisting of, containing, referring to, reflecting, discussing, showing, stating, explaining, contradicting, providing context to, evidencing, concerning, or recording a particular subject in whole or in part, either directly or indirectly, or being in any way logically or factually connected with the matter discussed or identified.

9. The term "IDENTIFY" means:

   i. when referring to a natural person, the person's complete true name; nicknames and pseudonyms; job title and employer; present or last known residential or business address, telephone numbers, and e-mail addresses; and the person's relationship to the DEFENDANT.

   ii. when referring to a business, legal, or governmental entity or association, the name and city of the main office;

   iii. when referring to a product or thing, the title, version or release number, any code or project name, or other name by which it has been referred, and a general description of the product or thing;

   iv. when referring to documents, the production number or type of document, its general nature and subject matter, date of creation, all author(s), addressee(s), and recipient(s), location, and URLs in the case of webpages.

10. The terms "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests.

11. The words "any," "all," and "each" shall be construed as "all and each."

12. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

13. The singular form of any word shall be deemed to include the plural. The plural form of any word shall be deemed to include the singular.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**INSTRUCTIONS**

2    1.    In answering the following interrogatories, furnish all available information,

3    including information in the possession, custody, or control of any of YOUR attorneys, directors,

4    officers, agents, employees, representatives, associates, investigators or division affiliates,

5    partnerships, parents or subsidiaries, and PERSONS under YOUR control, who have the best

6    knowledge, not merely information of which YOU have personal knowledge.

7    2.    If YOU cannot fully respond to the following interrogatories after exercising due

8    diligence to secure the information requested thereby, so state, please so state and answer each

9    such interrogatory to the fullest extent YOU deem possible, specify the portion of each

10    interrogatory that YOU claim to be unable to answer fully and completely, state the facts upon

11    which YOU rely to support YOUR contention that YOU are unable to answer the interrogatory

12    fully and completely, and state what knowledge, information or belief YOU have concerning the

13    unanswered portion of each such interrogatory.

14    3.    If, in answering these interrogatories, YOU claim there is any ambiguity in either a

15    particular interrogatory or a definition or an instruction, such claim is not a basis for refusing to

16    respond, but rather YOU must state as part of YOUR response the language deemed to be

17    ambiguous and the interpretation YOU chose or used in responding to the particular

18    interrogatory.

19    4.    If you are producing DOCUMENTS in connection with these interrogatories,

20    selection of DOCUMENTS from the files and other sources and the numbering of such

21    DOCUMENTS must ensure that the source of each DOCUMENT may be determined, if

22    necessary. DOCUMENTS attached to each other shall not be separated. All DOCUMENTS shall

23    be organized and produced pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.

24    Electronic records and computerized information must be produced in an intelligible format,

25    together with a description of the system from which they originated sufficient to permit

26    rendering the records and information intelligible.  SOURCE CODE must be produced in native

27    format, capable of being compiled and executed.  Other electronic information must, if not

28    produced in native format, be produced in an electronically searchable format.  To the extent

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    YOU do not produce in native format, SUN reserves the right to request native format production

2    as to particular documents as to which such format is necessary.

3         5.    Should YOU seek to withhold any information based on some limitation of

4    discovery (including, but not limited to, a claim of privilege) applicable to any communication or

5    meeting, please provide all non-privileged information falling within the scope of the

6    interrogatory.  For each item of information contained in a DOCUMENT to which a claim of

7    privilege is made, identify such DOCUMENT with sufficient particularity, pursuant to Federal

8    Rule of Civil Procedure 26(b)(5), for purposes of a motion to compel, such identification to

9    provide at least the following:

10           (1)    the privilege asserted and its factual basis;

11           (2)    the names and positions of the author of the DOCUMENT and all other

12                PERSONS participating in the preparation of the DOCUMENT;

13           (3)    the name and position of each individual or other PERSON to whom the

14                DOCUMENT, or a copy, was sent or otherwise disclosed;

15           (4)    where not apparent, the relationship of the author, writer, sender, initiator,

16                addressee or any other recipient with each other;

17           (5)    the date of creation or transmittal indicated on each DOCUMENT, or an

18                estimate of that date, indicated as such, if no date appears on the document;

19           (6)    a description of any accompanying material transmitted with or attached to

20                such DOCUMENT;

21           (7)    the number of pages in such DOCUMENT;

22           (8)    the particular Interrogatory to which such DOCUMENT is responsive; and

23           (9)    the general subject matter and whether any business or non-legal matter is

24                contained or discussed in such DOCUMENT.

25        For each COMMUNICATION or meeting claimed to be privileged,

26           (1)    state the privilege asserted and its factual basis;

27           (2)    identify all PERSONS and/or individuals involved in the

28                COMMUNICATION or present for all or any portion of the meeting;

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1        (3)    state the relationship of the author, writer, sender, initiator, addressee or

2                   any other recipient with each other;

3        (4)    state the date and place of the COMMUNICATION or meeting;

4        (5)    identify all DOCUMENTS CONCERNING the COMMUNICATION or

5    meeting, state whether each such DOCUMENT predates, postdates or is contemporaneous with

6    the communication or meeting, and identify all recipients of each such DOCUMENT.

7        6.    If a DOCUMENT once existed and has subsequently been lost, destroyed, or is

8    otherwise missing, please IDENTIFY the DOCUMENT and state the details concerning the loss

9    of such DOCUMENT.

10       7.    To the fullest extent permitted by Rule 26(e) of the Federal Rules of Civil

11   Procedure, YOUR obligation to respond to these interrogatories is continuing, with responses to

12   be supplemented to include subsequently acquired information.

13       8.    If YOU object to any portion or aspect of any Interrogatory, provide all

14   information responsive to the portion to which YOU do not object.

15   **INTERROGATORIES**

16   **INTERROGATORY NO. 1**

17       Describe in detail, separately, all facts CONCERNING the participation of each and every

18   PERSON who assisted in the planning, creation, design, review, revision, transmission, or use of

19   the PRESENTATION.

20   **INTERROGATORY NO. 2**

21       Describe in detail all facts CONCERNING YOUR claim that the PRESENTATION was

22   intended for SOFTSCAPE's *"internal* use only," as described in Paragraph 8 of the Declaration

23   of David Watkins in Opposition to Plaintiff's Motion to Strike, Docket No. 58, including but not

24   limited to how it was so designated for internal use and when, and what specific "employment

25   and business policies" forbade the dissemination or use of the PRESENTATION and the

26   information therein.

27   **INTERROGATORY NO. 3**

28       IDENTIFY all PERSONS who received a copy of the PRESENTATION, including

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    whether each PERSON is or was YOUR employee, agent, partner, reseller, customer or prospect.

2    **INTERROGATORY NO. 4**

3          Describe in detail all facts CONCERNING YOUR claim that each Softscape employee

4    who received a copy of the PRESENTATION "credibly denied disseminating the

5    PRESENTATION outside the company," as described in Paragraph 10(c) of the Declaration of

6    David Watkins in Opposition to Plaintiff's Motion to Strike, Docket No. 58.

7    **INTERROGATORY NO. 5**

8          Describe all COMMUNICATIONS between SOFTSCAPE, on the one hand, and New

9    Millenium Shoe or Ely Valls, on the other hand, regarding SUCCESSFACTORS, any sales

10   demos performed by SUCCESSFACTORS for New Millenium Shoe, and/or the

11   PRESENTATION.

12   **INTERROGATORY NO. 6**

13         IDENTIFY all facts regarding Javier Cruz's relationship to SOFTSCAPE,

14   SUCCESSFACTORS, and/or New Millenium Shoe Company.

15   **INTERROGATORY NO. 7**

16         IDENTIFY all PERSONS (within Softscape and externally) who accessed a

17   SUCCESSFACTORS' sales demo account, including but not limited to ACE275.

18   **INTERROGATORY NO. 8**

19         Describe in detail all facts CONCERNING how any PERSON identified in response to

20   Interrogatory No. 7, learned or acquired the user name and password for any

21   SUCCESSFACTORS sales demo account, including but not limited to ACE275.

22   **INTERROGATORY NO. 9**

23         IDENTIFY and describe all SUCCESSFACTORS EVENTS or demonstrations YOU

24   attended, heard, or viewed since January 2006, including but not limited to a description of who

25   attended, dates of attendance and what information was obtained by YOU.

26   **INTERROGATORY NO. 10**

27         Other than the PRESENTATION, IDENTIFY any other presentation, white papers,

28   competitive analyses or assessments, positioning papers, marketing or business plans, that YOU

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   have created since January 2006 that describe, analyze, or critique YOUR competitor's products

2   or services.

3   **INTERROGATORY NO. 11**

4       IDENTIFY all "current and former SuccessFactors customers" that were the "sources of

5   information" for statements made in the PRESENTATION, as claimed in Paragraph 5 of the

6   Declaration of David Watkins in Opposition to Plaintiff's Motion to Strike, Docket No. 58.

7   **INTERROGATORY NO. 12**

8       For each of the PRESENTATION's facts that YOU contend YOU received or inferred

9   from SUCCESSFACTORS' current or former customers, describe in detail how YOU received or

10  inferred the fact, including but not limited to a description of which customer was the source of

11  the fact and when.

12  **INTERROGATORY NO. 13**

13      State all facts in support of YOUR claim that "63% of their Customers left

14  [SuccessFactors] by 2008," as claimed in slide 3 of the PRESENTATION.

15  **INTERROGATORY NO. 14**

16      State all facts in support of YOUR claim regarding "failed implementations" and

17  purportedly "lost customers" as set forth in slides 5-6 and 8-12 of the PRESENTATION.

18  **INTERROGATORY NO. 15**

19      Describe in detail all computers or data storage media, including home computers of

20  SOFTSCAPE employees or consultants, that YOU have sought to preserve, including but not

21  limited to a description of the owners, possessors, or users of such computers or data storage

22  media, and whether it has been successfully and completely preserved.

23  **INTERROGATORY NO. 16**

24      IDENTIFY all known computers or data storage media that have at any time had a copy

25  of the PRESENTATION, whether in whole or in part, including any copy only in volatile

26  memory.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTERROGATORY NO. 17**

IDENTIFY all facts CONCERNING YOUR allegation that SUCCESSFACTORS "consented to and acquiesced" to conduct at issue in SUCCESSFACTORS' COMPLAINT, as alleged in YOUR Second Affirmative Defense.

**INTERROGATORY NO. 18**

IDENTIFY all facts CONCERNING YOUR Fourteenth Affirmative Defense that SOFTSCAPE is not liable "for any act or omission of any subordinate," including the name and identify of any such subordinate.

**INTERROGATORY NO. 19**

IDENTIFY all facts CONCERNING YOUR Sixteenth Affirmative Defense that "any non-truthful statement in the Presentation was not material."

Dated:  April 11, 2008                          FENWICK & WEST LLP

By: _____
Patrick E. Premo
Attorneys for Plaintiff SUCCESSFACTORS, INC.

1283645

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   ALBERT L. SIEBER (CSB No. 233482)
    asieber@fewick.com
3   LIWEN A. MAH (CSB No. 239033)
    lmah@fenwick.com
4   FENWICK & WEST LLP
    555 California Street, 12th Floor
5   San Francisco, CA 94104
    Telephone: (415) 875-2300
6   Facsimile:  (415) 281-1350

7   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
8   DENNIS M. FAIGAL (CSB NO. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA 94041
11  Telephone:    (650) 988-8500
    Facsimile:    (650) 938-5200

12
    Attorneys for Plaintiff SUCCESSFACTORS, INC.
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                  OAKLAND DIVISION

17

18  SUCCESSFACTORS, INC., a Delaware          Case No. CV 08 1376 CW
    corporation,
19                                            **CERTIFICATE OF SERVICE**
                   Plaintiff,
20
    v.
21
    SOFTSCAPE, INC., a Delaware
22  corporation; and DOES 1-10, inclusive,

23                 Defendants.

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# CERTIFICATE OF SERVICE

The undersigned declares that:

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to this action. My business address is 801 California Street, Mountain View, CA 94041.

On the date set forth below, I served the attached:

**PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-19)**

on the party in the subject action by placing a true copy thereof as indicated below, addressed as follows:

> Jessica L. Grant, Esq.
> Jonathan A. Patchen, Esq.
> Taylor & Company Law Offices LLP
> One Ferry Building, Suite 355
> San Francisco, CA  94111
> jgrant@tcolaw.com
> jpatchen@tcolaw.com

☐ **U.S. MAIL:** I am familiar with our business practices for collecting and processing of mail for the United States Postal Service. Mail placed by me within the office for collection for the United States Postal Service would normally be deposited with the United States Postal Services that day in the ordinary course of business. The envelope(s) bearing the address(es) above was sealed and placed for collection and mailing on the date below following our ordinary business practices.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand on the office(s) of the addressee(s).

☐ **BY FEDERAL EXPRESS:** I caused such envelope(s) to be delivered to Federal Express for overnight courier service to the office(s) of the addressee(s).

☒ **BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by electronic mail to the addressee(s).

☐ **BY FACSIMILE:** I caused a copy of such document(s) to be sent via facsimile transmission to the office(s) of the party(s) stated above and was transmitted without error.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on April 11, 2008 at Mountain View, California.

_Kathleen J. Nelson_
Kathleen J. Nelson

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# EXHIBIT 11

1    LAURENCE F. PULGRAM (CSB NO. 115163)
     lpulgram@fenwick.com
2    ALBERT L. SIEBER (CSB NO. 233482)
     lmah@fenwick.com
3    FENWICK & WEST LLP
     555 California Street, 12th Floor
4    San Francisco, CA  94104
     Telephone: (415) 875-2300
5    Facsimile:  (415) 281-1350

6    PATRICK E. PREMO (CSB NO. 184915)
     ppremo@fenwick.com
7    HENRY Z. CARBAJAL III (CSB No. 237951)
     hcarbajal@fenwick.com
8    DENNIS M. FAIGAL (CSB NO. 252829)
     dfaigal@fenwick.com
9    FENWICK & WEST LLP
     Silicon Valley Center
10   801 California Street
     Mountain View, CA  94041
11   Telephone:    (650) 988-8500
     Facsimile:    (650) 938-5200

12
     Attorneys for Plaintiff
13   SUCCESSFACTORS, INC.

14

15                          UNITED STATES DISTRICT COURT

16                        NORTHERN DISTRICT OF CALIFORNIA

                                    OAKLAND DIVISION
17

18   SUCCESSFACTORS, INC., a Delaware        Case No. CV 08-1376 CW
     corporation,
19                                           **MANUAL FILING NOTICE**
                     Plaintiff,
20                                           Date:        September 3, 2008
     v.                                      Time:        10:00 a.m.
21                                           Courtroom:   G, 15th Floor
     SOFTSCAPE, INC., a Delaware             Judge:       Hon. Bernard Zimmerman
22   corporation; and DOES 1-10, inclusive,
                                             Date of Filing: July 30, 2008
23                   Defendants.             Trial Date:    May 11, 2009

24

25   **RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
            THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26          COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
            ANSWERS AND PROPER PRIVILEGE LOGS**

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2  Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5  web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11  media

12    __X__    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15  Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                          By: _____/s/ Patrick Premo_____

18                                               Patrick Premo

19                                          Attorneys for Plaintiff
                                            SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

# EXHIBIT 12

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   lpulgram@fenwick.com
2  ALBERT L. SIEBER (CSB NO. 233482)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone: (415) 875-2300
5  Facsimile:  (415) 281-1350

6  PATRICK E. PREMO (CSB NO. 184915)
   ppremo@fenwick.com
7  HENRY Z. CARBAJAL III (CSB No. 237951)
   hcarbajal@fenwick.com
8  DENNIS M. FAIGAL (CSB NO. 252829)
   dfaigal@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, CA  94041
11 Telephone:     (650) 988-8500
   Facsimile:     (650) 938-5200
12
   Attorneys for Plaintiff
13 SUCCESSFACTORS, INC.

14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

                          OAKLAND DIVISION
17

18 SUCCESSFACTORS, INC., a Delaware          Case No. CV 08-1376 CW
   corporation,
19                                           **MANUAL FILING NOTICE**
                   Plaintiff,
20                                           Date:        September 3, 2008
   v.                                        Time:        10:00 a.m.
21                                           Courtroom:   G, 15th Floor
   SOFTSCAPE, INC., a Delaware               Judge:       Hon. Bernard Zimmerman
22 corporation; and DOES 1-10, inclusive,
                                             Date of Filing: July 30, 2008
23                 Defendants.               Trial Date:     May 11, 2009

24

25 RE:    **CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
          THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26        COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
          ANSWERS AND PROPER PRIVILEGE LOGS**
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   This filing is in paper or physical form only, and is being maintained in the case file in the

2   Clerk's office.

3   If you are a participant on this case, this filing will be served in hard-copy shortly.

4   For information on retrieving this filing directly from the court, please see the court's main

5   web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6   This filing was not efiled for the following reason(s):

7   _____   Voluminous Document (PDF file size larger than efiling system allowances)

8   _____   Unable to Scan Documents

9   _____   Physical Object (description): _____

10   _____   Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11   media

12   ___X___   Item Under Seal

13   _____   Conformance with the Judicial Conference Privacy Policy (General Order 53).

14   _____   Other (description): _____

15   Dated: July 30, 2008                     FENWICK & WEST LLP

16

17                                         By:_____/s/ Patrick Premo_____

18                                                        Patrick Premo

19                                         Attorneys for Plaintiff
                                          SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

SUCCESSFACTORS, INC., A    )

DELAWARE CORPORATION,     )

                        )

       PLAINTIFF,     )

                        )

 VS.              )      NO. C 08-1376CW

                        )

SOFTSCAPE, INC., A       )

DELAWARE CORPORATION, AND   )     PAGES 1 -  50

DOES 1-10, INCLUSIVE,     )

                        )

       DEFENDANTS.    )     OAKLAND, CALIFORNIA

_____)      THURSDAY, MARCH 31, 2008

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:      FENWICK & WEST

               555 CALIFORNIA STREET, 12TH FLOOR

               SAN FRANCISCO, CALIFORNIA  94104

          BY:  PATRICK E. PREMO

               LAURENCE F. PULGRAM, ATTORNEYS AT LAW

FOR DEFENDANTS.      TAYLOR & CO. LAW OFFICES

               1050 MARINA VILLAGE PARKWAY, SUITE 101

               ALAMEDA, CALIFORNIA  94501

          BY:  JESSICA L. GRANT

               JONATHAN A. PATCHEN, ATTORNEYS AT LAW

REPORTED BY:      RAYNEE H. MERCADO, CSR NO. 8258

1   THURSDAY, MARCH 27, 2008                    2:14 P.M.

2          P R O C E E D I N G S

3          THE CLERK:  CALLING THE MATTER OF THE SUCCESSFACTORS

4   VERSUS SOFTSCAPE, CIVIL ACTION NO. C08-1376.

5          COUNSEL, PLEASE COME FORWARD, STATE YOUR APPEARANCE

6   FOR THE RECORD.

7          MR. PULGRAM:  GOOD AFTERNOON, YOUR HONOR.  LAURENCE

8   PULGRAM, FENWICK & WEST, FOR PLAINTIFF SUCCESSFACTORS.

9          WITH ME IS PATRICK PREMO.

10          THE COURT:  WHY DON'T YOU TAKE THAT PODIUM THERE.

11          MS. GRANT:  GOOD MORNING -- GOOD AFTERNOON.

12          JESSICA GRANT FROM TAYLOR & COMPANY ON BEHALF OF

13   SOFTSCAPE.  AND I ALSO HAVE JONATHAN PATCHEN WITH ME.

14          THE COURT:  ALL RIGHT.  WELL, THIS IS ON FOR

15   PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SUBSEQUENT TO

16   THE T.R.O. THAT WAS ENTERED PREVIOUSLY AND ALSO PLAINTIFF'S

17   MOTION FOR EXPEDITED DISCOVERY.  I'M INCLINED TO CONTINUE THE

18   T.R.O. IN EFFECT AND CONVERT IT TO A PRELIMINARY INJUNCTION.

19          YOU MAKE TWO GOOD POINTS ABOUT THE LANGUAGE OF IT,

20   BOTH OF WHICH HAVE BEEN RESPONDED TO ADEQUATELY BY THE PLAINTIF

21   IN TERMS OF THE DISTRIBUTING THE TRADEMARK INTERNALLY VERSUS

22   EXTERNALLY AND ALSO FALSELY REPRESENTING TO BE A THIRD PARTY

23   WHEN YOU SAY THINGS, WHICH WAS THE ACTIVITY THAT YOUR CLIENT

24   ENGAGED IN THAT I FOUND ENJOINABLE.

25          AND THE WAY I PHRASED IT, I SUPPOSE, COULD BE

1    INTERPRETED SOME OTHER WAY, BUT IT WAS INTENDED TO BE NOT

2    MASQUERADING AS SOMEONE ELSE WHEN YOU SAY THINGS.

3        MS. GRANT:  RIGHT.  I THINK WE UNDERSTOOD THAT THAT

4    WAS THE COURT'S INTENTION.  IT'S JUST THE WAY THAT THE LANGUAGE

5    READS RIGHT NOW, IT DOESN'T CONVEY THAT.  AND IT WOULD ARGUABLY

6    PROHIBIT ENTIRELY LAWFUL TESTIMONIALS FROM CUSTOMERS, INDUSTRY

7    ANALYSTS.

8        THE COURT:  YEAH.  IF YOU GET SOME TESTIMONIALS FROM

9    THEIR CUSTOMERS AND YOU CAN GIVE A NAME OF SOMEBODY WHO'S GOING

10   TO VERIFY THAT THEY SAID THAT, NO PROBLEM.

11       MS. GRANT:  RIGHT, NO --

12       THE COURT:  BUT IF YOU'RE GOING TO PRETEND TO BE

13   SOMEBODY AND SAY THINGS THAT NOBODY EVER SAID, THAT'S A PROBLEM.

14       MS. GRANT:  WHAT I MEANT TO SAY IS I THINK THE WAY

15   THAT THE -- PRONG 3 OF THE T.R.O. IS WRITTEN RIGHT NOW, IT WOULD

16   ACTUALLY -- IF WE GOT A CUSTOMER --

17       THE COURT:  RIGHT, I UNDERSTAND.

18           (SIMULTANEOUS COLLOQUY.)

19       MS. GRANT:  -- ANALYST WAS COMPLIMENTING US, WE STILL

20   COULD NOT UNDER THE CURRENT T.R.O. PUT THAT ON OUR WEBSITE --

21       THE COURT:  YEAH, I UNDERSTAND YOUR POINT, AND I WILL

22   CHANGE THE LANGUAGE AS THE PLAINTIFF SUGGESTS.

23       I'M INCLINED TO ADD TO THE T.R.O. AN INJUNCTION WITH

24   RESPECT TO CERTAIN OF THE STATEMENTS.  I RECOGNIZE THAT

25   STATEMENTS OF OPINION, STATEMENTS THAT CAN'T REALLY BE PROVED

1    TRUE OR FALSE CAN'T BE ENJOINED BECAUSE IT WOULD BE A FIRST

2    AMENDMENT VIOLATION AND SO ON, BUT STATEMENTS THAT ARE CLEARLY

3    PROVABLE EASILY AS FACTS, BE THEY TRUE OR FALSE, THAT YOU

4    HAVEN'T PROVED ARE TRUE, THEN THERE'S NO REASON NOT TO ENJOIN

5    YOUR FURTHER STATEMENT OF THEM.

6        AND I MUST SAY I'M NOT AT ALL IMPRESSED BY A PRESS

7    RELEASE THAT SEEMS TO REAFFIRM THE TRUTH OF STATEMENTS THAT YOU

8    DON'T HAVE ANY REASON TO BELIEVE ARE TRUE.  SO I THINK YOU NEED

9    TO HAVE SOME TALKS WITH YOUR CLIENT ABOUT BUSINESS PRACTICES

10   HERE.

11       MS. GRANT:  OKAY, YOUR HONOR.

12       THE COURT:  BUT -- SO ANYWAY, OF THE STATEMENTS THAT

13   YOU SUGGEST SHOULD BE IN THERE, SOME I THINK COULD BE ENJOINED

14   AND OTHERS COULD NOT BE.  AND I DON'T WANT TO GO THROUGH THEM

15   ONE BY ONE.  I'LL JUST USE MY JUDGMENT WHEN I'VE PUT OUT THE

16   ORDER.

17       WITH RESPECT TO DISCOVERY, I'M INCLINED TO -- WELL,

18   WHAT I'M REALLY GOING TO DO IS JUST OPEN UP DISCOVERY, PERIOD.

19   YOU CAN MAKE YOUR INITIAL DISCLOSURES MAYBE NEXT WEEK.  YOU CAN

20   HAVE YOUR DISCOVERY CONFERENCE NEXT WEEK.  WE CAN JUST MOVE UP

21   THE WHOLE REGULAR FORMAL DISCOVERY.  AND IN TERMS OF ANYTHING --

22   I THINK IF DISCOVERY IS OPENED, YOU CAN JUST TAKE WHAT YOU NEED

23   THAT WAY RATHER THAN --

24       MR. PULGRAM:  WHEN YOU NEED IT.

25       THE COURT:  -- NECESSARILY NEEDING ANYTHING

1    PARTICULAR EXPEDITED.

2        MR. PULGRAM:  I BELIEVE THAT'S A GOOD APPROACH, YOUR

3    HONOR, BECAUSE THE MORE INFORMATION THAT WE GET, THE MORE WE

4    FIND THERE ARE LEADS TO FOLLOW THAT AREN'T NECESSARILY SPELLED

5    OUT EXPLICITLY IN THIS REQUEST OR THAT.

6        THE COURT:  I MEAN, I THINK THE THINGS THAT NEED TO

7    BE GOTTEN QUICKLY ARE INFORMATION ABOUT WHO DID ACCESS THEIR --

8    THE PROTECTED PORTIONS OF THEIR WEBSITE AND USE THAT INFORMATION

9    TO CREATE THIS PRESENTATION.

10       MS. GRANT:  MAY I --

11       THE COURT:  SOMEBODY CREATED IT, AND WE DON'T KNOW

12   WHO THAT WAS OR HOW THEY GOT THEIR ACCESS.

13       MS. GRANT:  MAY I BE HEARD ON THAT ACTUALLY?  I THINK

14   THAT INFORMATION IS BEFORE YOU.  THE C.E.O., DAVE WATKINS,

15   ACCESSED THE DEMONSTRATION, AND I JUST REALLY WANT TO STRESS

16   SOMETHING.  THIS IS NOT A PROTECTED WEBSITE.

17       THE COURT:  NO, I KNOW THERE'S CERTAIN PARTS OF IT,

18   THOUGH, THAT ARE --

19       MS. GRANT:  NO.

20       THE COURT:  -- PASSWORD PROTECTED.

21       MS. GRANT:  HE ONLY ACCESSED ONE THING, WHICH WAS A

22   DEMO, LIKE A MARKETING DEMONSTRATION, A LITTLE SLIVER OF HOW

23   THEIR PRODUCT WORKS.  HE HAD A USER I.D, AND HE HAD A PASSWORD

24   THAT WAS PROVIDED.  HE'S A C.E.O. FROM ANOTHER COMPANY.  AND

25   THAT PASSWORD WAS PROVIDED TO THE OTHER COMPANY.

1     IMPORTANTLY, SUCCESSFACTORS PUT NO RESTRICTIONS, NONE

2    WHATSOEVER, ON THE USE OR DISCLOSURE OF THAT PASSWORD.  HE

3    SIMPLY ENTERED IN THE USER NAME, ENTERED IN THE PASSWORD, DID

4    THE DEMONSTRATION.

5     HE TOOK A FEW SCREEN SHOTS, THAT'S IT, A FEW OF THE

6    SCREEN SHOTS THAT ARE IN THE PRESENTATION, BUT THERE IS NOTHING

7    ON THE SUCCESSFACTORS DEMONSTRATION, WHICH IS ACCESSIBLE TO THE

8    PUBLIC, IT'S THE SAME ONE THEY USE AT A TRADE SHOW.  THERE'S NO

9    NDA.  THERE'S NOTHING LIKE WHEN YOU GO ON THE WEBSITE, AND YOU

10   CLICK "I AGREE TO THESE TERMS AND CONDITIONS."  THERE'S NOTHING,

11   THERE'S NO RESTRICTIONS WHATEVER ON THE USE AND DISCLOSURE OF

12   THAT INFORMATION.

13    SO THIS ISN'T A SITUATION -- THEY PUT A LOT OF

14   HYPERBOLE IN THE BRIEF TO MAKE IT SOUND LIKE IT'S SOMETHING

15   VICIOUS AND SINISTER THAT WE DID HERE.  TO BE CLEAR, HE SIMPLY

16   ACCESSED A MARKETING DEMO.  HE DID NOT SNEAK IN THE BACK DOOR

17   AND HACK THROUGH THEIR COMPUTER.  HE DIDN'T CHANGE OR ALTER

18   ANYTHING.  HE SIMPLY USED THE DEMONSTRATION IN EXACTLY THE WAY

19   IT WAS DESIGNED, MUCH LIKE A RESTAURANT CRITIC WHO CONCEALS HIS

20   IDENTITY, USES THE RESTAURANT, EXACTLY THE WAY -- IN THE MANNER

21   IT WAS INTENDED.

22    THE COURT:  WELL, I GUESS THE PLAINTIFF CAN SPEAK TO

23   THIS, BUT MY IMPRESSION FROM THE PAPERS WERE THAT THERE WERE

24   THREE PARTICULAR AREAS THAT THEY COULD SEE HAD BEEN ACCESSED,

25   NOT JUST ONE.

1          AND I DON'T KNOW IF YOU'RE SAYING YOUR C.E.O. GOT

2    THIS LOG-IN AND PASSWORD FROM THE C.E.O. OF ANOTHER COMPANY WHC

3    IS A CUSTOMER OF THEIRS OR GOT IT FROM THIS L.A. PERSON WHO

4    MASQUERADED AS A CUSTOMER.

5          MS. GRANT:  DAVE WATKINS IS THE C.E.O. OF SOFTSCAPE.

6    HE'S ALSO THE C.E.O. OF NEW MILLENNIUM SHOE COMPANY.

7          MR. PULGRAM:  OH, MY GOD.

8    I'M SORRY.

9          MS. GRANT:  EXCUSE ME.

10          THE COURT:  THERE IS SUCH A THING?

11          MS. GRANT:  YES, THAT'S A REAL COMPANY.

12          SO THEY ASKED FOR THE PASSWORD.  THEY GAVE IT TO HIM.

13          THE COURT:  WAIT.  THEY WHO?

14          MS. GRANT:  NEW MILLENNIUM SHOE COMPANY.  ELY.

15          THE COURT:  THIS ELY.

16          MS. GRANT:  ELY, WHO IS A REAL PERSON, WHO IS A REAL

17    EMPLOYEE THERE.

18          THE COURT:  OF THE SHOE COMPANY.

19          MS. GRANT:  OF THE COMPANY.

20          THE COURT:  BUT NOT OF SOFTSCAPE.

21          MS. GRANT:  NO, BUT THERE IS -- IT'S VERY IMPORTANT.

22    THERE'S NO RESTRICTION WHATSOEVER ON THE USE OF THAT PASSWORD.

23    FOR INSTANCE, SOMETIMES WHEN YOU GET A PASSWORD --

24          THE COURT:  I'M SORRY.  I STILL HAVEN'T GOTTEN THE

25    FACTS DOWN.  SO THIS PERSON ELLIE (PHONETIC) OR ELI (PHONETIC).

1        MS. GRANT:  ELY.

2        THE COURT:  ELY.

3        OKAY.  SO ELY IS THE C.E.O. OF NEW MILLENNIUM SHOES?

4            (SIMULTANEOUS COLLOQUY.)

5        THE COURT:  NO, WATKINS IS THE C --

6        MS. GRANT:  AND ELY IS AN EMPLOYEE --

7            (SIMULTANEOUS COLLOQUY.)

8        THE COURT:  OF NEW MILLENNIUM, NOT OF SOFTSCAPE.

9        MS. GRANT:  CORRECT.  SO --

10        THE COURT:  SO ELY WENT AND POSED AS A PERSON

11    INTERESTED IN PURCHASING THIS SOFTWARE FOR NEW MILLENNIUM?

12        MS. GRANT:  CORRECT.

13        THE COURT:  IN THE COURSE OF THAT GOT THE LOG-IN AND

14    PASSWORD.

15        MS. GRANT:  CORRECT.

16        THE COURT:  AND THEN GAVE IT TO WATKINS.

17        MS. GRANT:  CORRECT.

18        THE COURT:  FOR THE PURPOSE OF ACCESSING INFORMATION

19    THAT COULD BE ACCESSED ONLY BY SOMEONE WHO THE PLAINTIFF THOUG

20    WAS A CUSTOMER.

21        MS. GRANT:  A PROSPECTIVE CUSTOMER.

22        THE COURT:  PROSPECTIVE CUSTOMER.

23        MS. GRANT:  BUT IMPORTANTLY, YOUR HONOR, IF THEY

24    REALLY WANTED TO RESTRICT THE USE TO PROSPECTIVE CUSTOMERS, THE

25    COULD PUT -- WHEN THEY SEND YOU THE EMAIL WITH THE USER NAME AND

1    PASSWORD, THEY COULD SAY THIS IS ONLY FOR THIS PARTICULAR

2    PERSON, CANNOT BE SHARED OR DISCLOSED TO ANYONE ELSE, AS OTHER

3    COMPANIES DO.

4        AND, IN FACT, ON OUR DEMO, WE HAVE A NONDISCLOSURE

5    AGREEMENT.  WE SPECIFICALLY RESTRICT USE TO THAT PARTICULAR

6    PERSON.  IT CANNOT BE SHARED WITH ANYONE ELSE.  CANNOT BE

7    DISCLOSED.

8        THE COURT:  RIGHT.  I'M SURE THEY'LL DO SO NOW THAT

9    THEY'VE SEEN WHAT YOU CAN DO WITHOUT THAT.

10        MS. GRANT:  BUT, YOUR HONOR, THERE'S NOTHING WRONGFUL

11    ABOUT -- THIS WAS COMPLETELY AUTHORIZED ACCESS.  IT'S NO

12    DIFFERENT THAN THE RESTAURANT CRITIC, WHO DOES CONCEAL HIS TRUE

13    IDENTITY SO HE'S NOT DISCOVERED AND CAN WRITE AN OPINION, AND

14    IT'S NOT A TRESPASS BECAUSE HE'S USING THE RESTAURANT IN EXACTLY

15    THE MANNER IN WHICH IT WAS INTENDED.

16        HERE, THE DEMONSTRATION -- HE JUST SIMPLY DID A

17    DEMONSTRATION.  THAT'S ALL HE DID.  HE DID NOT CAUSE ANY DAMAGE

18    TO THE SYSTEM.  HE DID NOT CHANGE ANY DATA.  THERE WAS NO

19    CORRUPTION OR INTERRUPTION OF SERVICE LIKE THESE CASES UNDER THE

20    CFAA YOU NORMALLY SEE.  AND ALTHOUGH --

21        THE COURT:  BUT THEY SAY THERE WERE THREE DIFFERENT

22    AREAS.  AND YOU'RE SEEMING TO SAY THERE WAS ONLY ONE.

23        MS. GRANT:  RIGHT.  HE ABSOLUTELY ONLY USED THE DEMO.

24    AND THAT'S VERY --

25        THE COURT:  THAT SEEMS TO BE A DISPUTED FACT.

1       MS. GRANT:  AND IT'S VERY DIFFERENT THAN THE

2    PRESENTATION.  HE DID CREATE THE PRESENTATION AS HIS DECLARATION

3    ATTESTS TO.  THE -- BUT HE USED IT FROM ALL THESE DIFFERENT

4    PUBLIC SOURCES.  THE MAIN ONE WAS ACTUALLY THEIR WEBSITE, THEIR

5    PUBLIC WEBSITE, AND TRADE SHOWS, WHICH ARE PUBLIC, AND WEBINARS,

6    WHICH ARE PUBLIC.

7       AND HE PIECED TOGETHER, ALONG WITH OTHER PEOPLE IN

8    THE COMPANY, ALL OF THIS INFORMATION, SOME OF WHICH WERE FROM

9    CUSTOMER TESTIMONIALS.  THE POINT IS OF THE ENTIRE PRESENTATION,

10   WHICH IS 43 PAGES, THEY ONLY TALK ABOUT TEN STATEMENTS THAT THEY

11   CLAIM IS FALSE.  AND I THINK AN INJUNCTION AT THIS POINT --

12   REALLY, I DON'T SEE THE IRREPARABLE INJURY WHEN IT'S VERY CLEAR

13   THAT SOFTSCAPE HAS NEVER BEEN TIED TO THIS.  AND I JUST --

14       IF YOU'LL BEAR WITH ME FOR ONE MINUTE, YOUR HONOR.

15       THE COURT:  I DIDN'T MEAN TO OPEN THIS UP FOR

16   BROAD --

17           (SIMULTANEOUS COLLOQUY.)

18       THE COURT:  -- ARGUMENT FROM YOU.  I HAD A COUPLE OF

19   COMMENTS I WANTED TO MAKE ABOUT MY INCLINATION AND A COUPLE OF

20   QUESTIONS I WANT TO ASK, AND THEN I WILL TURN TO YOU FOR

21   ARGUMENT, BUT YOU'RE SORT OF JUMPING THE GUN.

22           (SIMULTANEOUS COLLOQUY.)

23       THE COURT:  THE DISCOVERY AREAS IS WHAT I WAS GETTING

24   TO THAT I'M CONCERNED ABOUT ARE WHO GOT THE ACCESS AND HOW, AND

25   WHO WROTE IT AND HOW.  I GUESS SOME OF THAT IS NOW KNOWN.  AND

1    THEN IT'S ONE THING TO RETAIN DOCUMENTS THAT ARE ON COMPUTERS,

2    BUT I ALSO KNOW GENERALLY THAT COMPUTERS HAVE MYSTERIOUS WAYS

3    RETAINING INFORMATION ABOUT HOW THINGS HAPPENED AND WHAT

4    HAPPENED IN NON-TRANSPARENT WAYS.

5         AND SO RETAINING DOCUMENTS ISN'T ENOUGH TO RETAIN

6    SORT OF META DATA KINDS OF THINGS THAT MIGHT RESIDE ON COMPUTERS

7    THAT MIGHT BE EPHEMERAL.  SO I'M CONCERNED ABOUT SOME KIND OF

8    EVIDENCE PRESERVATION OR DISCOVERY THAT WOULD ADDRESS THAT

9    PROBLEM IN TERMS OF TRACKING DOWN WHO REALLY OPENED THIS GMAIL

10   ACCOUNT, WHO REALLY SENT IT OUT ON THAT ACCOUNT, AND WHO ALL GOT

11   IT, I GUESS, IS ANOTHER.

12        MS. GRANT:  AND WE DO HAVE THAT INFORMATION FROM

13   GOOGLE, YOUR HONOR.  THE PAPERS THAT THEY FILED LAST NIGHT --

14        THE COURT:  WELL, SOME HOTEL, BUT WE DON'T KNOW WHO

15   WAS IN THERE.

16        MS. GRANT:  THE PROBLEM IS THEY ONLY GAVE YOU HALF

17   THE STORY, AND IT WAS VERY MISLEADING, WHAT THEY FILED LAST

18   NIGHT.  THAT WASN'T ALL OF GOOGLE'S RESPONSE.

19        THE EMAIL ACCOUNT THAT WAS CREATED WAS NOT CREATED IN

20   MASSACHUSETTS.  IT WAS CREATED IN SINGAPORE.  AND IT WAS CREATED

21   IN SINGAPORE, AND THE ACTUAL TRANSMISSION OF THE PRESENTATION

22   WAS DONE FROM THE SINGAPORE IP ADDRESS.  THEY DID NOT GIVE YOU

23   THAT INFORMATION.

24        THEN A WEEK LATER, THERE WAS A LOG-IN IN

25   MASSACHUSETTS, AND A WEEK AFTER THAT, THERE WAS ANOTHER ONE IN

1    CHINA.  BUT THE CRITICAL ONE, THE CRITICAL ONE WHERE THIS

2    EMANATED FROM, WAS SINGAPORE.  WE DON'T HAVE AN OFFICE IN

3    SINGAPORE.  THEY DO.

4         THIS COULD BE A DISGRUNTLED EMPLOYEE WHO SENT IT OUT

5    TO -- TO HARM SUCCESSFACTORS.  'CAUSE IT CERTAINLY DOESN'T INURE

6    TO OUR BENEFIT, QUITE FRANKLY.

7         I JUST THINK THAT THEY DID NOT PROVIDE YOU WITH

8    GOOGLE'S RESPONSE TO THE SUBPOENA.  THEY TRIED TO MAKE IT LOOK

9    LIKE THIS CAME FROM MASSACHUSETTS, FROM US AGAIN, WHEN, IN FACT,

10   IT DIDN'T.  IT CAME FROM SINGAPORE.

11        THE COURT:  OKAY.

12        MS. GRANT:  SO I JUST THINK THAT THERE'S BEEN A LOT

13   OF HYPERBOLE AND MISLEADING INFORMATION TO THIS COURT.  WE DO

14   KNOW WHERE IT CAME FROM.  IT CAME FROM SINGAPORE.  THAT'S WHERE

15   THE IP ADDRESS -- ALL OF THIS CAME FROM SINGAPORE.

16        THE COURT:  WELL, SINGAPORE'S A BIG PLACE, AND

17   THERE'S A LOT OF PEOPLE.

18        MS. GRANT:  BUT WE DON'T --

19             (SIMULTANEOUS COLLOQUY.)

20        MR. PULGRAM:  WHILE WE'RE ON THIS POINT -- I'LL

21   RESPOND WHENEVER YOUR HONOR GIVES ME AN OPPORTUNITY.

22        THE COURT:  OKAY.

23        MR. PULGRAM:  BUT --

24        THE COURT:  LET ME JUST SEE IF I HAD ANY OTHER

25   QUESTIONS.

1       OH, THERE'S -- I FORGET WHO IT WAS.  SOMEBODY SEEMED

2    TO USE SOME FEDERAL CIRCUIT CITES.  IS THERE ANY REASON THIS

3    WOULD GO TO THE FEDERAL CIRCUIT?  IT WOULD TO THE NINTH CIRCUIT,

4    WOULDN'T IT?  IT'S NOT A PATENT.

5       MR. PULGRAM:  CORRECT.

6       THE COURT:  YOU BOTH AGREE THIS WOULD GO TO THE NINTH

7    CIRCUIT, NOT THE FEDERAL --

8       MS. GRANT:  I AGREE.

9       THE COURT:  OKAY.

10      MS. GRANT:  YOUR HONOR, BEFORE I FORGET, I DO WANT

11   YOU TO KNOW THAT THE COMPUTERS THAT ARE AT ISSUE HAVE ALL BEEN

12   MIRROR-IMAGED.

13      THE COURT:  OKAY.  GOOD.  WELL, "AT ISSUE" WE DON'T

14   KNOW WHAT THAT MEANS.

15      MS. GRANT:  WELL, OF ANYONE WHO HAD ACCESS TO -- WHO

16   CREATED THE PRESENTATION.  I MEAN, OBVIOUSLY, WE HAVE NO IDEA

17   WHO DISSEMINATED IT.  I MEAN, THAT'S UNDISPUTED.  NO ONE KNOWS.

18      BUT IN TERMS OF INTERNALLY WHO CREATED IT, ALL OF

19   THOSE COMPUTERS ARE UNDER LOCK AND KEY IN TERMS OF THE IMAGES.

20   AND THEN MR. WATKINS, WHO ACCESSED THE DEMO, HIS HOME COMPUTER

21   AND HIS BUSINESS COMPUTER HAVE -- THAT'S ALL UNDER LOCK AND KEY,

22   AND THOSE IMAGES ARE BEING PRESERVED.

23      THE COURT:  OKAY.  ALL RIGHT.

24      SO JUST STICKING WITH THE DISCOVERY FOR A MINUTE,

25   THEN, IS IT YOUR VIEW THAT IF WE SIMPLY MOVED UP THE DATE FOR

1    THE INITIAL DISCLOSURES AND THE INITIAL CONFERENCE AND THE

2    OPENING OF FORMAL DISCOVERY, THAT THAT WOULD BE ADEQUATE FOR

3    YOUR PURPOSES?

4        MR. PULGRAM:  YOUR HONOR, WE WOULD LIKE TO GET A

5    SPECIFIC ORDER WITH RESPECT TO PRESERVATION OF COMPUTERS AS

6    FOLLOWS.  THEY HAVE STATED THAT THEY HAVE NO WAY -- NO

7    CENTRALIZED WAY OF DETERMINING WHO ACCESSED THE PRESENTATION C

8    THEIR SITE.  THEY DON'T HAVE A LOG ON THE SERVER THAT CONTROLS

9    ACCESS TO THAT DOCUMENT, WHICH MEANS THAT THE ONLY PLACE TO FINI

10   OUT WHO GOT IT AND WHEN AND HOW WAS TO LOOK AT THE INDIVIDUAL

11   COMPUTERS OF THOSE PEOPLE WHO DID GET.

12       SO IT WE THINK THAT WE NEED TO PRESERVE THE EVIDENCE

13   ON THE COMPUTERS OF EVERYBODY WHO GOT A COPY OF THIS

14   PRESENTATION.  THEY'VE IDENTIFIED SOME.  I DON'T --

15       THE COURT:  YOU'RE TALKING ABOUT THEIR INTERNAL

16   COMPUTERS, OR THE CUT -- OR THE OUTSIDE PEOPLE --

17       MR. PULGRAM:  I'M TALKING ABOUT THE PEOPLE IN THE

18   DEFENDANT.

19       THE COURT:  OKAY.

20       MR. PULGRAM:  BECAUSE UNLIKE A TYPICAL SITUATION

21   WHERE YOU HAVE A DOCS OPEN OR HUMMINGBIRD OR SOME OTHER

22   WORD-PROCESSING SYSTEM WHERE YOU CAN SEE ACCESSES AND CHANGE

23   THEY'VE ASSERTED THAT THEY DON'T HAVE THAT.

24       THEY'VE ASSERTED THAT THERE'S NO WAY TO TRACK WHO

25   LOGGED IN, MADE A COPY OF THE DOCUMENT AND TOOK IT AWAY.  THE

1    WAY THAT WE HAVE TO DO THAT, IF THEY DON'T HAVE THAT CENTRALIZED

2    DATA SOURCE, IS TO PRESERVE THE INDIVIDUAL COMPUTERS OF THE

3    PEOPLE WHO GOT IT.

4         SOME OF THOSE, IT SOUNDS LIKE --

5         THE COURT:  YOU DON'T KNOW WHO GOT IT.

6         MR. PULGRAM:  NO, THEY DO.  I'M TALKING HERE

7    INTERNALLY.  I'M TALKING ABOUT PEOPLE INTERNAL AT SOFTSCAPE.

8    ANYBODY WHO GOT A COPY OF THIS WILL HAVE A RECORD IN THEIR

9    REGISTRY OR OTHER PLACES WHERE YOU CAN FIND THE META DATA, THAT

10   THEY WENT TO THIS PLACE, AND THEY COPIED THIS DOCUMENT AT THIS

11   TIME AND THE THINGS THAT THEY, THEN, DID WITH IT.

12        SO WHAT I'M SAYING IS, UNFORTUNATELY, IF THEY, AS

13   THEY SAY, DON'T HAVE A CENTRALIZED PLACE THAT TRACKS THAT, THE

14   PLACE THAT YOU HAVE TO DO IT IS AT THE INDIVIDUAL LOCATION OF

15   THE PEOPLE WHO GOT THIS DOCUMENT.

16        THE COURT:  AND HOW MANY PEOPLE WOULD WE BE TALKING

17   ABOUT?

18        MR. PULGRAM:  I DO NOT KNOW.  WE HAVEN'T BEEN TOLD

19   THAT.  IT'S ONE OF THE MANY THINGS THAT WE HAVEN'T BEEN TOLD

20   YET.  WE HAVEN'T BEEN TOLD -- IT NOW HAS BEEN ANNOUNCED

21   YESTERDAY THAT DAVE WATKINS ACTUALLY WROTE THIS PRESENTATION.

22   THAT'S THE FIRST THAT WE HEARD ABOUT IT.  SO WE DON'T KNOW HOW

23   MANY PEOPLE THERE ARE, AND I THINK THAT THEY --

24        ACTUALLY, IT'S INCUMBENT UPON THEM TO PRESERVE THIS

25   EVIDENCE SO WE CAN SEE WHO GOT IT.  THIS IS THE WAY WE'RE GOING

1    TO FIGURE OUT HOW IT GOT OUT.  OBVIOUSLY, IT GOT OUT OF THE

2    COMPANY.  IT WAS IN THE COMPANY AND SOMEONE LET IT OUT ON

3    PURPOSE, BY ACCIDENT -- THEY CAN MAKE WHATEVER ARGUMENTS THEY

4    WANT ABOUT THIS.  THIS WAS A SALES DOCUMENT DISTRIBUTED BY

5    SALESPEOPLE TO MAKE A SALE.

6        WE HAVE TO BE ABLE TO FIGURE THAT OUT, AND THE ONLY

7    WAY WE CAN DO THAT IS BY PRESERVING THOSE RECORDS, SO THAT IS

8    ONE POINT ON THE EVIDENCE PRESERVATION.

9        THE OTHER POINT THAT I THINK IN TERMS OF TIMING OF

10   THIS DISCOVERY IS, I DO THINK THAT IT'S APPROPRIATE TO GIVE

11   IMMEDIATE ACCESS TO THE DOCUMENTS REFLECTING THE CREATION OF TH

12   DOCUMENTS.  THEY HAVE BEEN SEQUESTERED, ACCORDING TO THE

13   DEFENDANTS.  IT WOULD BE APPROPRIATE TO HAVE THEM PRODUCED

14   WITHIN A SHORT PERIOD OF TIME WITHOUT ANY LONG-TERM FIGHTING

15   OVER WHETHER OR NOT WE'RE GOING TO GET IT, WITHOUT 30 DAYS' WAIT

16   BEFORE OBJECTIONS, BEFORE NEGOTIATIONS, BEFORE DELIVERY.  YOU

17   KNOW HOW IT WORKS.  WE ALL KNOW HOW IT WORKS.

18       THE COURT:  WHAT IS IT YOU'RE SAYING AGAIN THAT YOU

19   WANT?

20       MR. PULGRAM:  THERE, I'M TALKING ABOUT THE DOCUMENTS

21   THAT REFLECT THE CREATION, THE CHANGES, AND THE COMMUNICATIONS

22   INTERNALLY ABOUT THE PRESENTATION.

23       THE COURT:  WELL, I'M STILL NOT FOLLOWING.  SO

24   WATKINS GETS SOME DOCUMENTS ON HIS COMPUTER, AND HE CUTS AND

25   PASTES AND DOES THINGS WITH THEM ON HIS COMPUTER, AND THEN HE

1    CREATES A DOCUMENT.

2        WHAT IS IT THAT YOU WANT IN THAT PROCESS?

3        MR. PULGRAM:  SO HE ALSO WORKS WITH ELY VALLS,

4    SUPPOSEDLY SOME INDEPENDENT COMPANY WHO HAS A ONE-PAGE WEBSI

5    TO SELL SHOES.  HE ALSO, WE BELIEVE, WORKED WITH A GUY NAMED

6    MARTIN NECK, WHOSE NAME APPEARS IN OUR LOG OF VISITORS.

7        WE HAVE FOUR DIFFERENT IP ADDRESSES ASSOCIATED WITH

8    SOFTSCAPE THAT HAVE ACCESSED THIS PASSWORD-PROTECTED ACCOUNT

9    THAT INCLUDES ENGLAND, AND I WOULD DARE SAY THERE'S NOT A

10   SOFTSCAPE IN ENGLAND WHO WORKS FOR MILLENNIUM SHOE, TWO HOME I

11   ADDRESSES THAT HAVE NOT YET BEEN IDENTIFIED FOR US BY COMCAST.

12   AND THE FOURTH PLACE THAT ACCESSED THE PASSWORD-PROTECTED PAF

13   OF THE SITE IS SOFTSCAPE'S OWN HEADQUARTERS.

14       SO WE KNOW THAT THERE ARE A NUMBER OF PEOPLE WHO ARE

15   INVOLVED IN THE CREATION OF THIS DOCUMENT.  IT'S NOT JUST --

16   MR. WATKINS HAS SAID THAT HE WAS ONE OF THE CREATORS.

17       SECOND --

18       THE COURT:  SO WHAT ARE YOU -- I'M NOT STILL CLEAR ON

19   WHAT IT IS YOU WANT ABOUT THAT.

20       MR. PULGRAM:  WHAT I WANT ARE THE DOCUMENTS THAT

21   REFLECT THE CREATION AND AMENDMENT TO AND COMMUNICATIONS ABOU

22   THE PRESENTATION WITHIN THE COMPANY.

23       THE COURT:  OKAY.

24       I MEAN -- ALL RIGHT.  I GUESS --

25       MR. PULGRAM:  I UNDERSTAND.

1      THE COURT:  -- UNDERSTAND WHAT YOU'RE SAYING.

2      MR. PULGRAM:  RIGHT, RIGHT, RIGHT.  SO --

3      THE COURT:  SO WHAT ELSE?

4      MR. PULGRAM:  THE -- WE DO WANT THE DOCUMENTS ABOUT

5  THE CONNECTION BETWEEN ELY VALLS AND HER PURPORTED CONSULTANT

6  WE BELIEVE THAT'S VERY IMPORTANT TO THIS -- THE OVERALL SCHEME

7  THAT WE HAVE SEEN UNFOLDING HERE.

8      IN ADDITION TO GETTING TO THAT PASSWORD-PROTECTED

9  SITE, WHICH A COMPETITOR KNOWS DOGGONE WELL IS NOT A

10  PASSWORD-PROTECTED SITE FOR THEM TO GET INTO.  WHAT IS THE

11  PASSWORD FOR?  NOT TO LET IN YOUR COMPETITOR.

12      SO IN ADDITION TO THAT, WHAT THEY WERE ABLE TO GET,

13  BY SETTING UP THIS COMPANY MILLENNIUM SHOE, IS A CONFIDENTIAL

14  SALES PROPOSAL WHICH THEY THEN ALSO EXCERPTED AND PUT INTO THE

15  PRESENTATION, A EXACT DUPLICATE OF A CHART THAT HAD BEEN

16  PREPARED IN THE CONFIDENTIAL SALES PROPOSAL.

17      SO WE HAVE NOT JUST "I WENT INTO A CORNER OF THE

18  WEBSITE USING A PASSWORD" BUT POSING -- NEVER IDENTIFYING THAT

19  THIS WAS SOFTSCAPE, NEVER IDENTIFYING THAT IT WAS DAVE WATKINS,

20  BUT ELY VALLS SAYING "I'VE GOT TO HAVE THIS WITHIN TWO DAYS

21  BECAUSE I'M MAKING MY PURCHASE DECISION.  I NEED TO HAVE YOUR

22  PROPOSAL."  TAKE THE PROPOSAL.  SHE GETS IT.  GIVES IT TO DAVE.

23  DAVE AND/OR WHOEVER ELSE CUTS IT UP AND PUTS IT INTO THE

24  PRESENTATION.

25      SO WE NEED THE COMMUNICATIONS WITH ELY VALLS, WITH

1    THE OTHERS THAT WE HAVE IDENTIFIED BY NAME, MILLENNIUM SHOE,

2    ET CETERA, IN OUR DOCUMENT REQUEST.  WE THINK THAT THAT'S

3    SOMETHING THAT SHOULD BE FORTHCOMING IMMEDIATELY AND WITHOUT A

4    BUNCH OF OBJECTIONS AND NEGOTIATIONS.  IT'S VERY OBVIOUSLY

5    RELEVANT TO WHAT'S HAPPENED HERE.

6         THE COURT:  OKAY.

7         YOUR HONOR, MAY I BE HEARD ON THAT?

8         THE COURT:  WELL, YEAH, I MEAN, MAYBE WE SHOULD JUST

9    HAVE A DEPOSITION OF WATKINS AND --

10        MR. PULGRAM:  OH, ABSOLUTELY.  WE'D LIKE TO GET THE

11   DOCUMENTS AND THEN DO THE DEPOSITION.  OBVIOUSLY, I ASSUME HE'S

12   THE 30(B)(6) WITNESS IF HE'S AT THE CENTER OF THIS.

13        THE COURT:  OKAY.  SO YOUR THIRD CATEGORY, AGAIN, IS

14   WHAT THAT'S DIFFERENT FROM YOUR SECOND CATEGORY?

15        MR. PULGRAM:  OF THE MATERIALS THAT I WANTED?  SO I

16   WANTED THE --

17        THE COURT:  JUST --

18        MR. PULGRAM:  I'M TRYING TO KEEP TRACK OF THEM IN THE

19   WAY THAT YOUR HONOR IS.

20        WE WANTED THE COMMUNICATIONS INTERNALLY ABOUT THE

21   PREPARATIONS OF THE --

22        THE COURT:  RIGHT.  THAT WAS THE SECOND CATEGORY.

23        MR. PULGRAM:  THAT'S THE SECOND.  AND THE THIRD WAS

24   THE COMMUNICATIONS WITH ELY VALLS WITH --

25        THE COURT:  WELL, THAT'S THE SAME AS THIS --

1       MR. PULGRAM:  -- WITH MR. CRUZ.

2       (SIMULTANEOUS COLLOQUY.)

3       THE COURT:  -- SECOND -- YOU'RE TALKING ABOUT WRITTEN

4    COMMUNICATIONS.

5       MR. PULGRAM:  EXACTLY.  WITH MR. CRUZ.

6       THE COURT:  WHO'S MR. CRUZ?

7       MR. PULGRAM:  MR. CRUZ WAS THE PURPORTED CONSULTANT

8    WHO WAS ALLOWED --

9       THE COURT:  OH.

10       MR. PULGRAM:  -- TO LOG IN AND WHO PARTICIPATED IN

11    THE SALES MEETINGS, PURPORTEDLY.

12       THE COURT:  SO THAT'S STILL IN THE CATEGORY OF

13    DOCUMENTS REGARDING THE PREPARATION OF THE PRESENTATION.

14       MR. PULGRAM:  IT IS WITH -- IT IS ALSO WITH PEOPLE

15    OUTSIDE THE COMPANY, I GUESS, IS THE DIFFERENCE.

16       IN OTHER WORDS, THE PEOPLE INSIDE THE COMPANY WORKED

17    ON THE DOCUMENT.  I WANTED TO MAKE SURE THAT WE ALSO HAVE THE

18    PEOPLE OUTSIDE LIKE MS. VALLS AND MR. CRUZ.

19       THE COURT:  OKAY.

20       ALL RIGHT.  WELL, MAYBE I SHOULD JUST TELL YOU

21    WHICH --

22       OKAY.  SO THAT'S MY INCLINATION.  SO EACH OF YOU MAY

23    ADDRESS BRIEFLY WHAT YOUR PROBLEM IS WITH WHAT I'VE SAID I'M

24    INCLINED TO DO.

25       MS. GRANT:  WELL, I'LL WORK BACKWARDS FROM THE

1    EXPEDITED DISCOVERY.  FIRST OF ALL, I THINK WHAT HE JUST SAID

2    WAS ALL MERITS DISCOVERY --

3         THE COURT:  IT DOESN'T MATTER.

4         MS. GRANT:  WELL, I DON'T SEE THE BASIS FOR A --

5         THE COURT:  IT'S NOT --

6         MS. GRANT:  WELL, IT WOULD BE BECAUSE -- WE HAVEN'T

7    EVEN ANSWERED YET.  SO IT'S MOVING EVERYTHING -- YOU KNOW, I

8    THINK THE LAST DAY TO DO THE RULE 26F CONFERENCE IS MAY 27TH.

9    SO IT'S ACTUALLY --

10        IF WE DO IT NEXT WEEK, I MEAN, INITIAL DISCLOSURES

11   AND EVERYTHING, THAT'S ACTUALLY -- TO BE HONEST, IT'S A BURDEN

12   FOR US.  I MEAN, TO DO ALL OF THAT IN A WEEK.  WE HAVE A HUGE

13   COMPANY WITH OFFICES ALL OVER THE WORLD, TO TRY AND GO AND GET

14   ALL OF THESE DOCUMENTS AS I MENTIONED, MR. WATKINS CREATED THIS

15   DOCUMENT WITH OTHER PEOPLE IN THE COMPANY OVER A YEAR, LONG

16   PERIOD.

17        SO THIS IS GOING TO PAST HARM.  IT DOESN'T HAVE

18   ANYTHING TO DO WITH FUTURE IRREPARABLE INJURY, WHICH THEY

19   HAVEN'T EVEN ESTABLISHED IRREPARABLE INJURY.  BUT I JUST DON'T

20   SEE HOW THINGS GOING TO WHAT HE DID OVER THE LAST YEAR, IT IS

21   MERITS DISCOVERY.  AND I'M NOT SURE I UNDERSTAND THE BASIS FOR

22   EXPEDITING THAT AND MOVING AWAY FROM JUST THE REGULAR RULE 26

23   DISCOVERY.

24        YOU HAD MENTIONED THAT YOU WERE CONCERNED MORE IN

25   TERMS OF EXPEDITING THINGS ABOUT WHO DID THIS, SO IT'S NOT

1   REALLY LIKE WHO CREATED THE PRESENTATION, IT'S WHO DISSEMINATED

2   IT, AND AS I MENTIONED, YOU KNOW, THE SUBPOENAS FROM GOOGLE HAVE

3   SHOWN IT'S SOMEWHERE -- ORIGINATED SOMEWHERE IN SINGAPORE.  WE

4   HAVE MIRROR-IMAGED THE INFORMATION THAT -- FROM PEOPLE WHO

5   HELPED CREATE THE DOCUMENTS.

6        BUT WE HAVE DONE EVERYTHING WE CAN INTERNALLY TO TRY

7   AND FIGURE OUT WHO GOT THIS -- WHO DISSEMINATED IT.  COUNSEL'S

8   INCORRECT.  THIS ACTUALLY WAS SENT OUT ON A WEB, SO IT'S NOT

9   LIKE A BUNCH OF PEOPLE GOT IT ON THEIR COMPUTERS.  IT WAS MADE

10  ACCESSED THROUGHOUT THE COMPANY THROUGH THE WEB, SO EVEN --

11       THE COURT:  THE WORLDWIDE WEB OR INTERNET?

12       MS. GRANT:  THE INTERNET.

13       THE COURT:  INTRANET.

14       MS. GRANT:  INTRANET, YES, YOUR HONOR.

15       SO EVEN IF WE WENT AROUND AND MIRROR-IMAGED ALL OF

16  OUR -- THE SALES FORCE AROUND THE WORLD, WHICH WOULD BE

17  INCREDIBLY BURDENSOME AND COSTLY, IT WOULDN'T SHOW ANYTHING

18  BECAUSE THEY DIDN'T GET IT ON THEIR COMPUTER.  THE ONLY WAY THEY

19  WOULD HAVE BEEN ABLE TO GET IT IS TO ACTUALLY CHECK IT OUT OF

20  THE SERVER.  AND, UNFORTUNATELY, WE DON'T HAVE -- THE COMPANY

21  DOES NOT HAVE THAT TYPE OF CAPABILITY TO SEE WHO CHECKED THIS

22  PARTICULAR DOCUMENT OUT.  SO --

23       THE COURT:  HOW DO YOU KNOW THAT?

24       MS. GRANT:  BECAUSE I -- THE COMPANY TALKED TO THEIR

25  I.T. PEOPLE.  AND THAT WAS ONE OF FIRST QUESTIONS I ASKED, IS,

Hearing Transcript re: Preliminary Injunction (J. Wilken)  3/27/2008  2:14:00 PM

1    DON'T YOU HAVE SOMETHING THAT YOU CAN SEE WHO CHECKS -- YOU

2    KNOW, LIKE CHECK IT OUT LIKE A LIBRARY, AND THEY SAID WE

3    DON'T -- WE DON'T HAVE THAT CAPABILITY.  SO THAT WAS MY NUMBER

4    ONE QUESTION WHEN I FIRST STARTED WORKING ON THIS CASE.

5        THE COURT:  WELL, THEN HOW CAN IT BE SHOWN WHO WITHIN

6    THE COMPANY ACCESSED THAT DOCUMENT?

7        MS. GRANT:  BECAUSE -- IT CAN'T.  THE ONLY PEOPLE WHO

8    ACCESSED IT WERE DAVE WATKINS AND A TINY GROUP OF PEOPLE IN

9    TERMS OF THE COMPANY.  IN TERMS OF WHO GOT IT, IT WAS MADE

10   AVAILABLE GLOBALLY THROUGH OUR INTRANET ON THE INTERNET.

11       THE COURT:  RIGHT.  BUT HOW CAN IT BE SHOWN WHO

12   VIEWED IT OR DOWNLOADED IT?

13       MS. GRANT:  IT CAN'T BE.  THAT'S THE WHOLE POINT.

14       THE COURT:  WELL, ALL RIGHT.

15       MS. GRANT:  SO THE DISCOVERY THAT HE'S GOING FOR --

16   WE'RE GOING TO GO THROUGH A TREMENDOUS AMOUNT OF BURDEN AND

17   EXPENSE FOR SOMETHING THAT CANNOT EVEN BE SHOWN.

18       THE COURT:  WELL, IT'S -- I'M NOT SURE THAT IT CAN'T

19   BE.  WHAT, YOU'RE SAYING THAT EVEN ON THE COMPUTER OF THE PERSON

20   WHO DOWNLOADED IT, IT WOULDN'T SHOW?

21       MS. GRANT:  IT COULD SHOW, FOR INSTANCE,

22   MR. WATKINS --

23       THE COURT:  NO, NOT HIM.  LET'S SAY I'M JOE SALESMAN

24   IN MASSACHUSETTS, AND I LOOKED -- LOGGED ON THE INTRANET AND I

25   LOOKED AT IT AND I DOWNLOADED IT TO MY COMPUTER, AND I

1    DELETED --

2        MS. GRANT:  YOU CAN'T DOWNLOAD IT.  THAT'S THE POINT.

3        IF IT HAD BEEN SOMETHING THAT YOU COULD HAVE

4    DOWNLOADED ONTO THE COMPUTER, I ABSOLUTELY AGREE WITH YOUR

5    HONOR.  THERE WOULD BE A WAY TO FORENSICALLY GO BACK AND SEE WH

6    IT WAS.

7        BUT SIMPLY LOOKING AT IT ON THE WEB THROUGH THE

8    INTRANET, WATCHING IT, THE POWERPOINT AS IT GOES ALONG -- THEY

9    DIDN'T DOWNLOAD IT.  IT WAS SOMETHING THAT WAS, LIKE --

10       THE COURT:  HOW WOULD THEY GET IT?

11       MS. GRANT:  THEY DIDN'T GET IT.

12       THE COURT:  HOW DO THEY GET IT?

13       MS. GRANT:  THEY DID NOT GET IT.  THAT'S WHAT I'M

14   TRYING TO SAY.  THERE WAS ONLY A SMALL GROUP --

15       THE COURT:  COULD THEY PRINT A COPY?

16       MS. GRANT:  THEY COULD HAVE PRINTED A COPY, BUT THEY

17   DID NOT DOWNLOAD IT.

18       THE COURT:  AND WOULDN'T IT SHOW ON THEIR COMPUTER

19   THAT THEY PRINTED IT?

20       MS. GRANT:  I DO NOT BELIEVE SO.

21       THE COURT:  WELL, I THINK WE DO NEED, THEN, TO FIND

22   OUT HOW THAT -- WHETHER THAT WOULD SHOW UP.

23       MS. GRANT:  RIGHT.  AND I --

24       THE COURT:  EVEN IF YOU CAN'T DOWNLOAD, YOU CAN,

25   LIKE, RIGHT CLICK AND PASTE IT AND COPY IT ON TO A .PDF OR

1    SOMETHING LIKE THAT.

2        MS. GRANT:  UNFORTUNATELY, FROM MY UNDERSTANDING FROM

3    TALKING TO THE COMPANY'S I.T., THE -- JUST DOING EXACTLY WHAT

4    YOU JUST SAID, THERE IS NO WAY WITH OUR COMPANY'S COMPUTER

5    SYSTEMS TO TRACE THAT.  IF YOU WANT TO DO A 30(B)(6) ON THAT,

6    THAT'S FINE.  I UNDERSTAND THE EXPEDITED NATURE OF THAT.

7        BUT GOING BACK IN TIME TO ALL THE WAYS THAT DAVE AND

8    HIS TEAM GOT THIS PIECE OF INFORMATION AND THAT PIECE OF

9    INFORMATION TO CREATE IT, I DON'T SEE THAT, WHICH IS TRULY

10   MERITS DISCOVERY, GOES TO PAST HARM.  I DON'T NECESSARILY SEE

11   THE EXPEDITED NATURE OF THAT, BECAUSE THAT'S GOING TO BE A HUGE

12   UNDERTAKING.  I COMPLETELY UNDERSTAND THE NATURE FOR EXPEDITED

13   DISCOVERY ON HOW DID THIS GET OUT OF THE COMPANY.

14       BELIEVE IT OR NOT, WE ARE VERY INTERESTED IN DOING

15   THIS.  THIS WAS NOT SOMETHING THAT WAS AUTHORIZED BY OUR

16   COMPANY.  IT BLEW UP IN OUR FACE.  AND, YOU KNOW, WHEN DAVE DID

17   ACCESS THEIR COMPUTER, IT'S PRETTY OBVIOUS.  IT WAS HIM.  I

18   MEAN, HE DIDN'T DO ANYTHING.  HE ACCESSED IT.  HE DIDN'T CREATE

19   A FAKE NAME OR A FAKE ADDRESS.  THIS PERSON, WHOEVER THEY DID,

20   WENT TO A LOT OF TROUBLE TO CONCEAL HIS OR HER IDENTITY.

21       AND, REALLY, IN TERMS OF THE MERITS OF THIS CASE,

22   HOLDING SOFTSCAPE RESPONSIBLE UNDER RESPONDEAT SUPERIOR, YOU

23   HAVE TO SHOW IT WAS AN EMPLOYEE AND IT WAS WITHIN THE COURSE AND

24   SCOPE.  AND I WOULD SUBMIT THAT DOING SOMETHING WITH A FAKE

25   NAME, FAKE EMAIL ADDRESS, AFTER HOURS, AND GOING TO ALL THESE --

1    SINGAPORE AND EVERYTHING ELSE IS CLEARLY NOT FORESEEABLE TO THE

2    COMPANY AND NOT WITHIN THE COURSE.  AND SO THEIR CLAIMS FAIL --

3    NOT EVEN GETTING TO THE MERITS OF THEIR CLAIM.  IT FAILS ON THAT

4    THRESHOLD QUESTION ALONE.

5         WE HAVE DONE EVERYTHING -- WE ARE DOING EVERYTHING WE

6    CAN TO TRY AND FIGURE THIS OUT BECAUSE, OBVIOUSLY, WE DON'T WANT

7    IT TO HAPPEN AGAIN.  THIS COMPANY HAS USED THESE TYPES OF

8    PRESENTATIONS IN THE PAST.  THIS HAS NEVER EVER HAPPENED, AND WE

9    DON'T KNOW HOW IT HAPPENED, AND WE'RE DOING EVERYTHING WE CAN TO

10   FIND OUT.

11        THE COURT:  ALL RIGHT.  DID YOU HAVE ANYTHING ELSE

12   YOU WANTED TO SAY --

13        MS. GRANT:  I THINK --

14        THE COURT:  -- ON THESE POINTS?

15        MS. GRANT:  -- IN TERMS OF THE T.R.O., OF COURSE, WE

16   WERE GOING TO ASK FOR IT TO BE DISSOLVED BECAUSE I DON'T THINK

17   THERE'S ANY THREAT OF IRREPARABLE INJURY.  THIS IS A SINGLE,

18   ISOLATED EVENT, WHICH THIS COURT HAS RECOGNIZED IS NOT ENOUGH TO

19   GIVE RISE TO A PRELIMINARY INJUNCTION.  IT DEALS SOLELY WITH

20   PAST HARM AND --

21        THE COURT:  WELL, I MIGHT HAVE HAD MORE SYMPATHY WITH

22   THAT ARGUMENT IF IT HADN'T BEEN FOR YOUR PRESS RELEASE WHICH

23   AFFIRMED THE TRUTH OF THINGS, SOME OF WHICH PRETTY CLEARLY

24   AREN'T TRUE, OR AT LEAST YOU HAVE NO REASON TO BELIEVE THEY ARE

25   TRUE.

1      SO IT SEEMS TO ME YOU KIND OF CONTINUED IT AND ARE

2  STILL CONTINUING IT SO --

3      MS. GRANT:  WELL, I WILL SAY, YOUR HONOR, THAT THE

4  C.E.O. FEELS VERY STRONGLY -- THESE ARE BITTER COMPETITORS, AND

5  HE FEELS VERY STRONGLY, AS IS EVIDENCED IN HIS DECLARATION, THAT

6  THESE STATEMENTS -- THE TEN -- AND, AGAIN, I THINK IT'S REALLY

7  IMPORTANT TO TALK ABOUT -- IT'S -- OF 43 PAGES, THEY'VE ONLY

8  IDENTIFIED THAT THEY CLAIM ARE FALSE OR MISLEADING.  AND OF

9  THOSE, SOME OF THEM ARE --

10      THE COURT:  SO TEN ISN'T SO MANY FALSE STATEMENTS TO

11  MAKE ABOUT SOMEBODY?

12      MS. GRANT:  BUT WHEN YOU ACTUALLY LOOK THROUGH THEM,

13  YOUR HONOR --

14      THE COURT:  SOUNDS LIKE A LOT TO ME.

15      MS. GRANT:  ONE OF THEM SAID SEARS ABANDONED A

16  PROJECT AFTER SIX MONTHS.  THEY REBUTTED IT BY SAYING SEARS IS A

17  LOYAL CUSTOMER.  THAT ACTUALLY IS NOT SAYING THAT SEARS DID NOT

18  ABANDON THAT PROJECT AFTER SIX MONTHS.  ANOTHER ONE --

19      THE COURT:  AND HOW DO YOU KNOW THEY DID?

20      MS. GRANT:  BECAUSE THAT WAS WHAT WAS REPORTED TO OUR

21  C.E.O. FROM THE CUSTOMER.

22      THE COURT:  BY WHO?

23      MS. GRANT:  FROM THE CUSTOMER.

24      THE COURT:  WHO?

25      MS. GRANT:  SOMEONE AT SEARS.

1      THE COURT:  WHO?

2      MS. GRANT:  I DON'T OFF THE TOP OF MY HEAD KNOW WHO

3    IT IS.  I APOLOGIZE, YOUR HONOR.

4      THE SECOND ONE I JUST WANT TO POINT OUT IS THEY SAY

5    THIS PAGE HAS A LOT OF DATA THAT YOU HAVE TO SCROLL THROUGH.

6    IT'S CONFUSING.  I MEAN, THAT'S AN OPINION.  I MEAN, THESE ARE

7    THINGS THAT ARE ACTUALLY NOT EVEN RISING -- THEY MADE IT SOUND

8    LIKE THIS WAS VICIOUS, SINISTER THINGS, VERY TOXIC.  BUT WHEN

9    YOU ACTUALLY JUST SIT DOWN AND READ THE PRESENTATION --

10      THE COURT:  I HAVE.  IT'S A LOT ABOUT THE

11    FUNCTIONALITY AND CAPABILITY, AND THAT'S WHY 98 PERCENT IS --

12    THEY DON'T EVEN CHALLENGE.

13      SO OF THE 10, I MEAN, UNDER THIS COURT'S RULING IN

14    J.K. HARRIS -- WE HAVE A DECLARATION THAT REFUTES EACH ONE OF

15    THE STATEMENTS THAT CLAIMS --

16      THE COURT:  NOT REALLY.  HE SAYS HE BELIEVED THEM,

17    BUT HE DOESN'T SAY WHAT HIS BASIS FOR HIS BELIEF IS.

18      MS. GRANT:  FOR WHICH STATEMENT?  I MEAN, I THOUGHT

19    HE ACTUALLY DID FOR EACH STATEMENT SAY --

20      THE COURT:  I DON'T THINK SO.

21      MS. GRANT:  -- WHY HE BELIEVES IT'S TRUE.

22      THE COURT:  THE FACT THAT THERE'S A LIST OF CUSTOMERS

23    ONE DAY AND A DIFFERENT LIST THE NEXT DAY DOESN'T NECESSARILY

24    MEAN THAT THEY LOST THOSE CUSTOMERS.

25      IT MIGHT MEAN THAT ARE THEY REVISED THEIR LIST TO PUT

1    ONES THAT THEY THOUGHT WERE MORE IMPRESSIVE OR WHATEVER ELSE,

2    IT'S --

3         MS. LEVINE:  FAIR ENOUGH.

4         THE COURT:  -- REASONABLE INFERENCE.

5         MS. GRANT:  IT'S QUANTITATIVE.  HE BASICALLY LOOKED

6    ON ONE AND THERE WAS 20, LET'S SAY AND THE NEXT DAY THERE WAS

7    18.  HE'D MADE AN OPINION THAT THAT -- THAT THEY HAD LOST

8    CUSTOMERS.  AND -- I MEAN, IT'S AN OPINION.  IT'S NOT A

9    MISLEADING -- IT'S NOT A FALSE STATEMENT OF FACT.

10        THE COURT:  BUT STATED AS A FACT.

11        MS. GRANT:  OKAY.  I ACTUALLY THINK OF IT AS AN

12   OPINION, BUT OBVIOUSLY, WE THINK ABOUT IT DIFFERENTLY.  BUT I

13   THINK THE IMPORTANT THING IS THAT THERE'S NO THREAT OF

14   IRREPARABLE INJURY.  HE'S NOT -- HE HAS SENT AN EMAIL ACTUALLY

15   BEYOND THAT.  IT'S EXHIBIT B TO HIS DECLARATION.  WHERE HE SENT

16   AN EMAIL TO ALL EMPLOYEES ON MONDAY AFFIRMING AND REEMPHASIZING

17   THAT UNDER NO CIRCUMSTANCES SHOULD THIS INTERNAL DOCUMENT BE

18   USED OUTSIDE OF SOFTSCAPE.

19        THE COURT:  YOU SAY AFFIRMING OR REAFFIRMING WHICH

20   IMPLIES THAT THERE WAS SOME SUCH INSTRUCTION EARLIER, BUT THAT

21   INSTRUCTION --

22            (SIMULTANEOUS COLLOQUY.)

23        MS. GRANT:  -- CONFIRMING THERE ARE --

24        THE COURT:  YOU KNOW, IT'S REAL HARD FOR THE COURT

25   REPORTER TO KEEP WRITING DOWN WHAT I'M SAYING IF YOU START

1    TALKING WHILE I'M STILL TALKING.

2           (SIMULTANEOUS COLLOQUY.)

3           THE COURT:  SHE'LL TRY TO WRITE WHAT I SAY AND NOT

4    WHAT YOU SAY, BUT IT MAKES IT HARD FOR HER TO HEAR WHAT I'M

5    SAYING.

6           SO I DIDN'T SEE ANYTHING CONTEMPORANEOUS WHEN IT WAS

7    FIRST DISTRIBUTED SAYING, PLEASE DON'T DISTRIBUTE THIS OUTSIDE

8    THE COMPANY.  AND, FRANKLY, IT'S NOT THE SORT OF THING THAT

9    LOOKS LIKE AN INTERNAL DOCUMENT.

10          WHY WOULD YOU MAKE IT ON THEIR TEMPLATE?  WHY WOULD

11   YOU PUT THEIR TRADEMARK ON SOMETHING YOU WERE SHOWING TO YOUR

12   EMPLOYEES?  WHY WOULD YOU WRITE IT AS THOUGH IT WERE IN THE

13   THIRD PERSON?  WHY WOULD IT BE ALL THESE GRAPHICS TO IMPRESS

14   YOUR OWN SALESPEOPLE?  I MEAN, IT JUST LOOKS LIKE SOMETHING

15   THAT'S PREPARED TO GO OUTSIDE.  AND IF YOU'RE GOING TO WRITE

16   SOMETHING THAT WOULD BE BAD FOR YOU IF IT DID GO OUTSIDE AND

17   THEN NOT UNDERTAKE THE KINDS OF CONTROLS THAT ARE NECESSARY TO

18   STOP IT FROM GOING OUTSIDE, WHICH THEY CLEARLY DIDN'T BECAUSE

19   WHOEVER DID THIS WAS AN EMPLOYEE OF YOURS, THAT IS OF CONCERN.

20          MS. GRANT:  FAIR ENOUGH, YOUR HONOR.  I DON'T THINK

21   THERE'S ANY EVIDENCE THAT IT'S A SOFTSCAPE EMPLOYEE.

22          THE COURT:  WHO ELSE HAD ACCESS TO IT?

23          MS. GRANT:  SOMEONE COULD HAVE -- IT COULD HAVE BEEN

24   A FORMER SOFTSCAPE EMPLOYEE THAT LEFT THE COMPANY AND NOW WOR

25   FOR SUCCESSFACTORS.  SOMEONE COULD --

1     THE COURT:  -- GOT ON TO YOUR INTRANET HOW?

2     MS. GRANT:  YOUR HONOR, THERE COULD BE -- I COULD

3     SPECULATE A VARIETY OF WAYS.  IT COULD HAVE BEEN ON DAVE

4     WATKINS' DESK.  A JANITOR COULD HAVE PICKED IT UP.  THERE ARE A

5     LOT OF WAYS WE COULD SPECULATE, AND I'M NOT GOING TO SIT HERE

6     AND TRY AND THINK OF THEM ALL WHEN WE DON'T ACTUALLY HAVE THE

7     EVIDENCE.

8          BUT WHAT I THINK IS IMPORTANT IS THAT THERE IS NO

9     THREAT, ABSENT THE PRESS RELEASE, WHICH YOU AND I MIGHT -- MIGHT

10    THINK THAT WASN'T A GOOD IDEA, BUT HE FEELS VERY STRONGLY ABOUT

11    HIS COMPANY.  IT'S A SMALL, PRIVATELY HELD COMPANY UP AGAINST A

12    BIG PUBLIC COMPANY.  THEY'RE SPENDING LOTS OF MONEY TO TRY AND

13    DRIVE THEM OUT OF THE MARKETPLACE.  AND HE FEELS VERY STRONGLY

14    THAT HE NEEDS TO DEFEND HIMSELF.

15         AND SO WHILE YOU AND I MIGHT DISAGREE ABOUT HIS PR

16    STRATEGY -- AND I WILL CERTAINLY PASS ALONG YOUR COMMENTS,

17    BELIEVE ME -- I DON'T THINK THAT THAT INDICATES A THREAT OF

18    CONTINUING OR ONGOING INJURY WHEN HE SPECIFICALLY TOLD THE SALES

19    FORCE "UNDER NO CIRCUMSTANCES SHOULD THIS EVER BE USED OUTSIDE

20    THE COMPANY."  WHAT HE'S REAFFIRMING IS IT'S AN INTERNAL

21    DOCUMENT, WHICH IS HOW THEY'VE ALWAYS TALKED ABOUT IT, NOT JUST

22    THIS DOCUMENT BUT OTHER ONES THAT PRECEDED THIS ABOUT ALL THEIR

23    COMPETITORS.

24         AND I KNOW, AGAIN, IT MIGHT SEEM STRANGE TO YOU OR TO

25    ME THAT THEY WOULD DO THESE TYPES OF PRESENTATIONS.  THAT IS HIS

1   WAY OF MOTIVATING HIS SALES FORCE, WHO FEEL VERY MUCH ATTACKED

2   BY THIS COMPANY.

3       AND, AGAIN, I MIGHT CHOOSE TO DO IT DIFFERENTLY, BUT

4   JUST LIKE THE 1-800-CONTACTS, THE USE OF ANOTHER COMPANY'S LOGO

5   OR TRADEMARK FOR INTERNAL DOES NOT -- IS NOT A VIOLATION OF THE

6   LAW.  AND THIS WAS A PURELY INTERNAL DOCUMENT THAT REGRETTABLY

7   WAS LEAKED OR SOMEHOW GOT OUT OF THE COMPANY.

8       SO I JUST -- YOU KNOW, I DON'T SEE THE BASIS FOR

9   IRREPARABLE HARM UNDER THIS COURT'S PRIOR RULINGS IN J.K.

10  HARRIS, AND I WOULD JUST SUBMIT THAT THE T.R.O. SHOULD ACTUALLY

11  BE DISSOLVED OR SIGNIFICANTLY NARROWED.  BECAUSE EACH TIME YOU

12  DO THE T.R.O. OR A PRELIMINARY INJUNCTION, THEY DO PRESS

13  RELEASES TRUMPETING YOUR RULINGS TO TRY AND USE IT TO A

14  COMPETITIVE ADVANTAGE.

15      SO THAT'S -- TO BE HONEST, THAT'S -- WAS THE -- I

16  THINK, THE GENESIS OF THE PRESS RELEASE WAS TO COUNTER THE ONE

17  WHERE THEY TRUMPETED, YOU KNOW, AH HA, THAT OUR CLIENT HAD

18  VIOLATED THE LAW AND ALL OF THESE THINGS THAT WERE IN THEIR

19  PRESS RELEASE.

20      THE COURT:  OKAY.  DID YOU WANT TO RESPOND BRIEFLY?

21      MR. PULGRAM:  I WILL BRIEFLY.

22      FOR OUR PERSPECTIVE, THIS ISN'T ABOUT BITTER

23  COMPETITORS OR OUR EVER HAVING ATTACKED ANYONE.  WE WERE

24  VICTIMIZED BY AN ATTACK.

25      I WANT TO TALK ABOUT DISCOVERY FIRST.  THIS IS THE

1    EMAIL THAT WAS SENT OUT A FEW MINUTES BEFORE THE T.R.O. PAPER

2    WAS FILED BUT NOT DELIVERED TO YOUR HONOR WHEN THEY OPPOSED TH

3    T.R.O., AND THIS IS WHERE THEY TOLD THE SALESPEOPLE THE

4    INFORMATION CONTAINED IN THE DOCUMENT SHOULD BE USED JUDICIOUSL

5    IN COMPETITIVE SITUATION AS REQUIRED.  THIS HAS NEVER BEEN

6    RESCINDED.  THIS IS STANDING ORDERS AT THE COMPANY.  THEY ARE

7    USED THIS AS A SCRIPT TO SELL.

8         AND WHY DO I SAY IT MATTERS FOR DISCOVERY?

9         BECAUSE THEY HAVE TO BE ABLE TO SEE THE SCRIPT?  THEY

10   HAVE TO BE ABLE TO HAVE IT IN ORDER TO BE ABLE TO SELL OFF OF IT

11   AND TO MAKE THESE FALSE STATEMENTS THAT 63 PERCENT OF OUR

12   CUSTOMERS HAVE LEFT.

13        SO MY --

14        THE COURT:  THEY DO HAVE IT.  IT'S ON THEIR INTRANET,

15   I GUESS.

16        MR. PULGRAM:  IT'S ON THEIR INTRANET, AND YET IT

17   CAN'T BE DOWNLOADED, THEY SAY.  IT CAN'T BE PRINTED, THEY SAY.

18   YOU HAVE TO BE ON THE INTRANET WHENEVER YOU'RE IN THE

19   CONVERSATION WITH THE CUSTOMER.  THIS MAY BE TRUE.

20        BUT THIS IS WHAT I ASK WITH RESPECT TO DISCOVERY:  I

21   WOULD LIKE A DIRECTION THAT THE PARTIES MEET AND CONFER AND THAT

22   THEY DISCLOSE HOW AND WHERE THESE MATERIALS ARE STORED, BY WHA

23   SORT OF TECHNOLOGY SO THAT WE CAN LOOK AND SAY, OH, IT'S A

24   MICROSOFT SHAREPOINT.  WE CAN FIND OUT WHETHER OR NOT THERE

25   ACTUALLY IS SOME SORT OF RECORD THAT MIGHT PRESERVE WHO ACCESS

1  IT AND WHY.  WHAT KIND OF RECORD WOULD BE GENERATED BY THOSE

2  ACCESSING IT.

3       SO I BELIEVE IT'S APPROPRIATE OFF THE BAT IN ORDER TO

4  PRESERVE DISCOVERY TO FIND OUT HOW YOU FIND THIS INFORMATION AND

5  USE IT TO -- TO IDENTIFY HOW THIS MATERIAL IS STORED AND HOW

6  IT'S MADE AVAILABLE.  AND THAT WOULD INCLUDE ALL PROCESSES BY

7  WHICH THIS HAS HAPPENED WITHIN THE COMPANY.

8       FROM THAT, WE SHOULD BE ABLE TO IDENTIFY WHETHER

9  THERE'S FURTHER PRESERVATION EFFORTS THAT ARE NEEDED.

10       SECOND, WE AGREE, OF COURSE, WITH THE PRESS RELEASE

11  POINT.  AND IN PARTICULAR, WHAT WAS STRIKING TO US WAS THAT

12  AFTER THE PRESS RELEASE WENT OUT, AN EMAIL WENT OUT TO THE

13  CUSTOMERS THAT ATTACHED THE REFERENCE TO THE PRESS RELEASE SO

14  THAT -- YOUR HONOR, WE NOW KNOW 776 EMAIL ADDRESSES RECEIVED

15  THIS -- THIS -- THAT'S THE NUMBER THAT WE GOT FROM GOOGLE.  776

16  DIFFERENT EMAIL ADDRESSES OF INDIVIDUAL SALESPEOPLE.

17       AND IF YOU LOOK AT EXHIBIT B TO THE SUPPLEMENTAL THAT

18  WE'VE TURNED IN WHICH WAS THE GOOGLE PRODUCTION, THAT'S WHAT YO

19  SEE.  THERE WAS A REFERENCE THAT THE ACCOUNT WAS OPENED IN

20  SINGAPORE, AND THAT'S TRUE.  THE GOOGLE -- THE GMAIL ACCOUNT WAS

21  INITIALLY OPENED BY AN IP ADDRESS PURPORTING TO BE FROM

22  SINGAPORE.

23       BUT, AS YOU MAY KNOW, YOU CAN SPOOF OR USE PROXIES TO

24  CLAIM AN IP ADDRESS THAT YOU'RE NOT ACTUALLY USING.  WHAT WE

25  KNOW IS THAT AT 10:02 ON THE NIGHT THAT THESE EMAILS WERE SENT

1    OUT AT 9:51 AND 9:54, THE ADDRESS LIST WAS SO BIG YOU COULDN'T

2    DO IT ALL AT ONCE.

3        AT 10:02, THERE'S A LOG-IN FROM THE MARRIOTT,

4    10 MILES FROM THEIR CORPORATE HEADQUARTERS.  NOW, IT WAS -- THE

5    GMAIL WAS PURPORTEDLY SET UP -- JUST THE ACCOUNT SET UP IN

6    SINGAPORE THROUGH ONE IP.  BUT SOMEBODY AT THAT IP ADDRESS TEN

7    MINUTES LATER KNEW TO GO THERE.  AND WHETHER IT WAS THE SAME

8    PERSON HAVING SPOOFED AN IP ADDRESS IN SINGAPORE OR JUST BEING

9    COMPLICIT, THAT'S THE INFORMATION THAT WE THINK WE'RE ENTITLED

10   TO FIND OUT.

11       WITH RESPECT TO THE -- THE ASPECTS OF WHETHER OR NOT

12   HIS DECLARATION ACTUALLY HAS ANY PERSONAL KNOWLEDGE, WE DO

13   BELIEVE THAT IT LACKS PERSONAL KNOWLEDGE.  MR. WATKINS IS

14   OBVIOUSLY A SAVVY PERSON.  HE IS NOT THE C.E.O. OF

15   SUCCESSFACTORS.  HE DOES NOT KNOW WHAT SUCCESSFACTORS DOES.  I

16   IS NOT THE C.E.O. OF, SUCCESSFACTORS' CUSTOMERS.  HE DOES NOT

17   KNOW WHAT THOSE CUSTOMERS THINK.  HE CANNOT, BY SIMPLY SAYING "I

18   HAVE PERSONAL KNOWLEDGE," SOMEHOW TAKE AWAY AND RAISE NOW AN

19   ARGUMENT ABOUT THE FALSITY OF THESE STATEMENTS.

20       AND I WOULD MAKE ONE PARTICULAR POINT ABOUT THAT.

21   HIS DECLARATION CAME IN NINE DAYS AFTER YOUR HONOR HAD ORDERED

22   THEIR RESPONSE, ALMOST A WEEK AFTER OUR REPLY BRIEF HAD BEEN

23   FILED.  WITHOUT ANY EXPLANATION WHY THE AUTHOR WHO FINALLY IS

24   PREPARED TO CONCEDE, BECAUSE HE'S BEEN CAUGHT, THAT HE'S THE

25   AUTHOR OF THIS PRESENTATION WITHOUT ANY EXPLANATION FOR WHY HE

1    COULDN'T PUT IN A DECLARATION ON TIME.

2        TO EVEN CONSIDER THAT DECLARATION WOULD BE

3    FUNDAMENTALLY UNFAIR BECAUSE WE'VE HAD NO OPPORTUNITY EITHER AS

4    A LEGAL OR AS A FACTUAL MATTER TO RESPOND TO IT.  WE PUT IN

5    EVIDENTIARY OBJECTIONS BECAUSE WE NEED TO PRESERVE -- WE THINK

6    THAT THEY'RE WELL TAKEN -- BUT THE DECLARATION SHOULDN'T BE

7    CONSIDERED AT ALL.  THAT PARTICULAR ARGUMENT WAS WAIVED

8    SPECIFICALLY IN THEIR OPPOSITION AT PAGE 12, LINE 19, WHERE THEY

9    SAID, "ALTHOUGH SUCCESSFACTORS SPEND CONSIDERABLE EFFORT TRYIN

10   TO DEMONSTRATE THAT THE PRESENTATION IS FALSE, THAT ISSUE IS

11   IRRELEVANT FOR PURPOSES OF DETERMINING WHETHER A PRELIMINARY

12   INJUNCTION SHOULD ISSUE."

13       FALSITY IS NOT -- SHOULD NOT BE AT ISSUE BECAUSE IT

14   WAS RAISED AT 6:24 LAST NIGHT FOR THE FIRST TIME IN THIS CASE.

15   AND IT WOULDN'T BE FAIR TO EVEN PARSE THAT DECLARATION FOR WHAT

16   IS OR IS NOT WITHIN HIS PERSONAL KNOWLEDGE.

17       WHAT -- WHAT THIS PRESENTATION REMINDS ME OF IS THE

18   SWIFT BOATS (SIC) CAMPAIGN WHERE NEGATIVE ADVERTISING WAS

19   TARGETED AND RUN ONLY A FEW TIMES AFTER ALL IN THE ELECTION

20   CAMPAIGN FOUR YEARS AGO.  BUT IT WAS REPEATED OVER AND OVER IN

21   THE MEDIA.  IT WAS VERIFIED BY THOSE PEOPLE AGAIN AND AGAIN.  IT

22   WAS RECIRCULATED AND ORALLY TRANSMITTED CONTINUALLY --

23   CONTINUOUSLY.  AND THE ONGOING DAMAGE FROM THAT TO GOODWILL AN

24   TO YOUR PROSPECTS IS IMPOSSIBLE TO RECOVER FROM.

25       THIS IS IRREPARABLE HARM, AS HAS BEEN RECOGNIZED IN

1    ALL THE CASES WHERE GOODWILL IS AT STAKE.  AND OUR GOODWILL IS

2    DIRECTLY AT STAKE AS A RESULT OF THE SORTS OF CHALLENGES TO

3    INTEGRITY AND CUSTOMER SATISFACTION.

4        I WOULD -- I DON'T THINK THAT WE HAVE ANY DISPUTE

5    ULTIMATELY AS TO WHETHER OR NOT THERE'S A COMPUTER FRAUD AND

6    ABUSE ACT CLAIM.  THERE'S A CLAIM THAT'S PASSWORD-PROTECTED SITE

7    BUT NOTHING IN THE RECORD HERE.

8        THE TESTIMONY OF COUNSEL TODAY DOESN'T -- ISN'T EVEN

9    INCLUDED IN MR. WATKINS' LATE DECLARATION AS TO HOW HE GOT THIS

10   INFORMATION, WHETHER HE'S CHAIRMAN OF SOME COMPANY CALLED

11   MILLENNIUM SHOE.  NONE OF THAT'S BEEN INTRODUCED.

12       ALL WE HAVE ON THE RECORD IS THE FACT THAT IT'S

13   UNDISPUTED THAT SUCCESSFACTORS IP ADDRESS LOGGED INTO OVER AND

14   OVER AGAIN THIS PASSWORD-PROTECTED SITE.

15       WE -- I WOULD FINALLY TALK BRIEFLY ABOUT THE SCOPE OF

16   INJUNCTION BECAUSE I THINK IT'S IMPORTANT.  I THINK THAT IT

17   NEEDS TO BE VERY EXPLICIT HERE IN REACHING COMMUNICATION OF THE

18   CONTENT BY ANY MEANS, NOT JUST REPUBLICATION OF THE

19   PRESENTATION.

20       I THINK THAT IT'S IMPORTANT --

21       THE COURT:  WELL, NOT ALL THE CONTENT, ONLY THE FALSE

22   STATEMENTS.

23       MR. PULGRAM:  THE FALSE CONTENT.  EXACTLY.

24       AND BY THE WAY, THE IDEA THAT TEN SLIDES HERE ARE

25   FALSE IS NOT TRUE.  FROM THE OUTSET, WE HAVE SAID THIS ENTIRE

1    PRESENTATION IS, AS A WHOLE, FALSE BECAUSE IT PURPORTS TO HAVE

2    BEEN WRITTEN BY CUSTOMERS RATHER THAN IDENTIFYING ITS TRUE

3    AUTHOR.

4        THE COURT:  WELL, NOT ALL OF IT DOES.

5        MR. PULGRAM:  WELL, THE BEGINNING SAYS THIS HAS BEEN

6    PREPARED AS STATEMENTS BY CUSTOMERS.  AND SO THE OVERALL OUTPU

7    OF IT IS DESCRIBED AS BEING FROM CUSTOMERS.

8        I THINK THE SECOND ASPECT OF INJUNCTIVE RELIEF IS WE

9    THINK IT DOES NEED TO REACH ANY REAFFIRMATION OR ENDORSEMENT OR

10   REFERENCE TO THE PRESENTATION AS A WHOLE OR TO ANY OF THE FALSE

11   CONTENT IN IT.

12       WE THINK, AS IN J.K. HARRIS, NEEDS TO REACH ALL

13   EMPLOYEES AND PERSONS ACTING IN CONCERT.  AND WE THINK THAT IT

14   NEEDS TO BE SERVED ON EMPLOYEES BECAUSE WE DON'T WANT TO COME

15   BACK AND HEAR NEXT TIME ABOUT PEOPLE EITHER CONTINUING TO MAKE

16   THESE STATEMENTS OR ABOUT PEOPLE WHO HAVE BY MISTAKE LET IT OUT

17   AGAIN, THAT THEY DIDN'T KNOW.

18       AND, YOUR HONOR, RULE 65 PROVIDES THAT YOU HAVE THE

19   POWER, AND WE BELIEVE, AS IN J.K. HARRIS, SHOULD ENJOIN ALL

20   THOSE ACTING IN CONCERT WITH THE DEFENDANTS AS WELL AS THEIR

21   EMPLOYEES.

22       WE -- I DON'T THINK THAT IT'S NECESSARY TO BELABOR

23   THE RESPONDEAT SUPERIOR POINT WHERE THERE'S NO EXPLANATION OTH

24   THAN THAT THIS CAME FROM AN EMPLOYEE, WHERE THE -- THE C.E.O. OF

25   THE COMPANY DELIVERED IT TO SALES EMPLOYEES WITHOUT ANY APPAREN

1    RESTRICTIONS THAT WE'VE BEEN ABLE TO GET IN THE RECORD, WHERE IT

2    IS OBVIOUSLY DESIGNED TO FACILITATE SALES.

3        THIS IS NO MORE OUTSIDE THE SCOPE OF THE DUTY OF

4    THESE SALESPEOPLE THAN WHEN A DELIVERY DRIVER DRIVES TOO FAST

5    AGAINST COMPANY POLICY.  SURE, THEY WEREN'T AUTHORIZED TO GO 60

6    IN A 40 ZONE, BUT THEY STILL ARE LIABLE IN RESPONDEAT SUPERIOR.

7        THE SAME'S TRUE WHEN A STOCK BROKER SELLS EXTRA HARD

8    EVEN THOUGH HE'S NOT AUTHORIZED TO TELL FALSEHOODS.  MERRILL

9    LYNCH IS STILL GOING TO BE RESPONSIBLE IN RESPONDEAT SUPERIOR

10   FOR HIS CONDUCT.

11       THE PURPORTED LACK OF AUTHORITY DOESN'T TAKE THIS OUT

12   OF THE SCOPE OF THE DUTY OF THOSE PEOPLE WHO WERE ACTING.

13       IF YOU HAVE ANY OTHER QUESTIONS, I'D BE HAPPY TO

14   ANSWER THEM.

15       THE COURT:  NO.

16       YOU MAY REPLY VERY BRIEFLY.

17       MS. GRANT:  THANK YOU, YOUR HONOR.

18       I JUST WANT TO TALK ABOUT THE CONSTITUTIONAL

19   IMPLICATIONS ABOUT WHAT THEY'RE SEEKING.  FIRST OF ALL, IN THE

20   T.R.O., YOU ACTUALLY, BASED ON THE DECLARATION OF SUSAN MOORE,

21   THE GENERAL COUNSEL, SAYING THAT SOFTSCAPE HAS NO INTENTION TO

22   RELEASE ON THE INTERNET OR OTHERWISE PUBLISH EXTERNALLY THE

23   PRESENTATION, YOU SAID, THEREFORE, THE COURT NEED NOT GRANT

24   PLAINTIFF'S REQUEST THAT THIS ORDER ENJOIN DEFENDANT FROM

25   PUBLISHING, CIRCULATING, EMAIL -- MAKING AVAILABLE OR OTHERWISE

1    DISTRIBUTING THE PRESENTATION.

2         AND I THINK WE ACKNOWLEDGE THAT THIS IS -- THERE'S A

3    LOT OF THINGS IN THIS PRESENTATION.  AND BASED ON THIS COURT'S

4    EARLIER HOLDING IN J.K. HARRIS VS. CASTLE, AN INJUNCTION THAT

5    PROHIBITS UNTRUE, MISLEADING, OR FALSE STATEMENTS IS TOO

6    OVERBROAD.

7         THE COURT:  NO, I'M GOING TO SPECIFY WHICH

8    STATEMENTS --

9         MS. GRANT:  OKAY.

10        THE COURT:  -- HAD NOT BEEN SHOWN TO BE TRUE.

11        MS. GRANT:  RIGHT.  AND I THINK --

12        THE COURT:  AND YOU MAY NOT DISTRIBUTE ANY STATEMENTS

13   THAT ARE FALSE OR THAT YOU CAN'T SHOW ARE TRUE, NO MATTER HOW

14   SINCERELY YOU BELIEVE THEM TO BE TRUE IF THEY'RE STATEMENTS OF

15   FACT.  AND YOU CAN'T SUBMIT SOMETHING THAT PURPORTS TO BE FROM

16   SOMEONE THAT IT ISN'T FROM.

17        MS. GRANT:  I -- UNDERSTOOD.

18        THE COURT:  AND IF I SAY SOMETHING IS FALSE THAT YOU

19   REALLY THINK IS TRUE, AND YOU WANT TO COME OUT AND BRING YOUR

20   GUY FROM SEARS IN AND HAVE THEM CALL HIM AND SAY, "YEAH, HERE'S

21   WHAT I THINK, AND HERE'S WHAT I SAID," YOU KNOW, WE'LL TAKE THAT

22   ONE OFF.

23        MS. GRANT:  OKAY.  I WAS ONLY -- MENTIONED THAT

24   'CAUSE HE -- HE REITERATED HIS REQUEST TO HAVE AN INJUNCTION

25   AGAINST ANY USE OF ANYTHING THAT'S IN THE PRESENTATION.  AND I

1    THINK UNDER J.K. --

2        THE COURT:  NO, I DON'T -- WELL, THAT'S NOT WHAT I

3    UNDERSTOOD HIM TO SAY AND THAT'S NOT WHAT I'LL DO.

4        MS. GRANT:  OKAY.

5        ALSO ABOUT THE WATKINS DECLARATION, THEY MOVED TO

6    STRIKE ALL OF OUR EVIDENCE THAT WAS ATTACHED TO THE DECLARATION

7    OF SUSAN MOORE.  SO, OBVIOUSLY, GIVEN THE EXTRAORDINARY RELIEF

8    SOUGHT AND THE EXPEDITED NATURE OF THE PROCEEDINGS, WE MOVED T

9    PUT ADDITIONAL EVIDENCE THAT WE THOUGHT WAS RELEVANT BEFORE THI

10   COURT.

11       AND IN YOUR HOLDING, I THINK, IN 2002 IN THE METRO

12   CASE, YOU CONSIDERED A SUPPLEMENTAL MEMORANDUM THAT HAD BEEN

13   FILED AFTER THE HEARING EVEN THOUGH IT DIDN'T COMPLY WITH RULE

14   7-3D, AND JUST GIVEN THE EXTRAORDINARY RELIEF HERE AND THE FACT

15   THAT THEY MOVED TO STRIKE, WE'RE ENTITLED TO OPPOSE A MOTION TO

16   STRIKE, AND WE PUT IN EVIDENCE --

17       THE COURT:  I DON'T WANT TO FIGHT ABOUT WHAT EVIDENCE

18   IS WHAT.  I'VE READ EVERYTHING, AND I'M GOING TO DO THE BEST I

19   CAN WITH WHATEVER I SEE, TAKING INTO ACCOUNT HOW LONG PEOPLE HA

20   TO OPPOSE IT AND WHAT IT'S BASED ON AND ALL OF THAT.  I'M NOT

21   GOING TO PARSE OUT EVERY LINE OF EVERY PIECE OF PAPER I GOT.

22       MS. GRANT:  AND WITH REGARD TO THE DISCOVERY, I

23   THINK -- I UNDERSTAND THE NEED FOR EXPEDITED DISCOVERY IN TERMS

24   OF GETTING TO THE BOTTOM OF WHO DID THIS.  AND I AM MORE THAN

25   HAPPY TO WORK WITH THEM TO TRY -- AND WE HAVE NOT -- WE HAVE NOT

1    OPPOSED ANY OF THEIR SUBPOENAS.  WE'VE WORKED -- WE WORKED ALL

2    LAST WEEKEND TRYING TO COME UP WITH PROTECTIVE ORDERS AND

3    EVERYTHING.  WE'VE BEEN WORKING WITH THEM, AND I WILL CONTINUE

4    TO DO SO BECAUSE I DO THINK THAT THAT'S RELEVANT, NOT JUST FOR

5    THE COURT BUT FOR US, TOO.

6        BUT THIS BROADER MERITS DISCOVERY, ABOUT, YOU KNOW,

7    HOW DID THE DOCUMENT GET CREATED -- 'CAUSE REALLY THE ISSUE HERE

8    IS DISSEMINATION.  WHO DISSEMINATED THIS DOCUMENT?  HOW IT WAS

9    CREATED?  AND WHO HE TALKED TO AT SEARS AND ALL OF THESE KIND OF

10   THINGS I THINK ARE REALLY NOT THINGS THAT SHOULD BE ON AN

11   EXPEDITED BASIS EVEN BEFORE WE'VE ANSWERED.

12       SO I WOULD JUST ASK THAT IF WE'RE GOING TO EXPEDITE

13   THE INITIAL DISCLOSURES AND THE 26F CONFERENCE, THAT WE JUST AT

14   LEAST HAVE AN OPPORTUNITY TO RESPOND TO THE COMPLAINT, WHICHEVE

15   WAY WE DECIDE TO RESPOND.  AND THEN SHORTLY THEREAFTER, FOR

16   MERITS-TYPE DISCOVERY, WE COULD MOVE THAT --

17       THE COURT:  WELL, HOW THE DOCUMENT WAS CREATED AND

18   WHO WAS RESPONSIBLE FOR IT IS ALSO SOMETHING THAT COULD

19   DISSIPATE.  ACCESS TO THEIR WEBSITE, WHO HAD ACCESS, HOW WAS IT

20   ACCESSED, WHICH PAGES WERE ACCESSED, AND ALL THOSE SORTS OF

21   THINGS ARE THINGS THAT COULD BE EPHEMERAL.

22       MS. GRANT:  THEN MAYBE THE SOLUTION WOULD BE RATHER

23   THAN SOME -- I'M REALLY THINKING THE DIFFERENCE BETWEEN, LIKE, A

24   30(B)(6) DEPOSITION, WHICH I THINK WOULD ANSWER A LOT OF THESE

25   QUESTIONS, VERSUS, YOU KNOW, A PRODUCTION OF A VOLUMINOUS AMOUI

1    OF DOCUMENTS FROM MANY PEOPLE INCLUDING INITIAL DISCLOSURES.

2        SO MAYBE WE COULD DO IT FIRST BY DEPOSITION AND THEN

3    SAVE THE DOCUMENTS, WHICH I THINK IS GOING TO BE A LOT MORE

4    CUMBERSOME TO DO THAT ON AN EXPEDITED BASIS BEFORE EVEN

5    RESPONDING TO THE COMPLAINT, WHEN REALLY THAT DEALS WITH MOSTLY

6    MERITS.

7        THERE'S NO THREAT THAT THAT'S GOING TO BE DESTROYED.

8    AS I REPRESENTED TO THE COURT, THE BACKUP TAPES ARE BEING --

9    WELL, THAT'S ACTUALLY A DECLARATION.

10        THE BACKUP TAPES HAVE BEEN PULLED OUT OF RECYCLING,

11    AND THE -- ANYONE WHO HELPED CREATE THAT DOCUMENT, THEIR

12    COMPUTERS HAVE BEEN IMAGED, AND THOSE IMAGES ARE UNDER LOCK AN

13    KEY.  SO THERE'S NO DANGER THAT THAT DATA IS GOING TO BE LOSS.

14        THE COURT:  OKAY.

15        WELL, WHAT I'M DEBATING HERE IS WHETHER TO DO INITIAL

16    DISCLOSURES AND MAYBE -- MAYBE WE SHOULD JUST NOT EXPEDITE THE

17    INITIAL DISCLOSURES BUT JUST OPEN UP REGULAR DISCOVERY.  AND

18    THAT WAY YOU COULD DO MORE FOCUSED REGULAR DISCOVERY RATHER T

19    THE BROADER INITIAL DISCLOSURES.  THAT MIGHT BE BETTER FOR THIS

20    SITUATION.

21        MR. PULGRAM:  YOUR HONOR, WE WOULD -- WE WOULD BE

22    OKAY WITH THAT IDEA, AS LONG AS IT WAS UNDERSTOOD THAT THOSE

23    CATEGORIES THAT WE DISCUSSED BEFORE, THOSE THREE OR FOUR

24    CATEGORIES, ARE THINGS THAT ARE GOING TO BE PRODUCED FORTHWITH

25    AND THAT --

1          THE COURT:  YOU CAN PUT IN A DOCUMENT REQUEST, AND

2    WHAT'S THE TURNAROUND ON THAT?  USUALLY 30 DAYS?

3          MR. PULGRAM:  WELL, USUALLY 30 DAYS TO GET YOUR

4    OBJECTIONS TO GET NOTHING.

5          MS. GRANT:  WELL --

6          MR. PULGRAM:  NOW, LET ME TALK FOR A SECOND -- LET ME

7    TALK FOR A SECOND ABOUT PURPORTED COOPERATION HERE.

8          WE'VE BEEN ASKING SINCE THE DAY WE FILED THIS

9    COMPLAINT FOR AN EARLY MEETING TO TALK ABOUT DISCOVERY.  WE'VE

10   BEEN TOLD WE WILL NOT MOVE -- WE WILL NOT MOVE THE EARLY MEETING

11   OF COUNSEL FULL STOP, PERIOD, NO DISCUSSION.  AND THAT IS WHERE

12   WE HAVE BEEN.

13         WE HAVE GOTTEN NO COOPERATION TO TRY TO NARROW IT, TO

14   DO EXPEDITED IN ANY KIND OF WAY.  AND UNTIL THE DISCOURSE HERE

15   TODAY ABOUT WHAT MATERIALS HAVE BEEN PRESERVED AND A RESPONSE

16   ONE LETTER THAT I WROTE ABOUT DAVE WATKINS, WE HADN'T RECEIVED

17   ANY INFORMATION ABOUT WHAT HAD OR HAD NOT BEEN PRESERVED.

18         THE COURT:  OKAY.  WELL, MAYBE WHAT WE SHOULD DO IS

19   HAVE YOU STAY AFTER COURT RIGHT NOW WITH -- AND TALK TO EACH

20   OTHER ABOUT A DISCOVERY PLAN; HAVE YOU MEET TOMORROW IN A MEET

21   AND CONFER WITH YOUR TOP I.T. PERSON, AND YOU CAN BRING SOME

22   EXPERT WHO KNOWS WHAT HUMMINGBIRDS AND THINGS ARE.

23         MR. PULGRAM:  YEP.

24         THE COURT:  AND YOU CAN HAVE AN INFORMAL DISCUSSION

25   WHERE YOUR PERSON DESCRIBES HOW THE WHOLE THING WORKS SO THAT

1    YOU CAN PERHAPS COME UP WITH SOME JOINT PLAN FOR PRESERVING OR

2    DISCOVERING WHAT MIGHT BE EPHEMERAL ON YOUR PEOPLE'S COMPUTERS

3          AND IF YOU AREN'T ABLE TO AGREE ON SOMETHING, THEN

4    YOU'D AT LEAST BE IN A BETTER POSITION TO KNOW WHAT TO ASK FOR

5    IN TERMS OF PRESERVING WHAT MIGHT BE ON THE VARIOUS COMPUTERS.

6          MR. PULGRAM:  I THINK THAT WOULD BE A VERY

7    WORTHWHILE --

8          (SIMULTANEOUS COLLOQUY.)

9          THE COURT:  AND THEN NEXT UP WILL BE -- WE'LL HAVE

10   OUR -- THE REAL MEET-AND-CONFER, A MORE -- MORE FULSOME

11   MEET-AND-CONFER INITIAL MEETING, OR WHATEVER IT IS WE CALL IT.

12   I THINK APRIL 10TH THE PLAINTIFF SUGGESTED IS A PERFECTLY GOOD

13   DATE FOR THAT.

14         AND THE GOAL THERE WOULD BE TO COME UP WITH SOME

15   EARLY DOCUMENT PRODUCTION, MAYBE NOT EVERY LAST DOCUMENT FROM

16   EVERY OUTPOST OF THE COMPANY IN THE WORLD BUT THINGS THAT YOU

17   KNOW ARE GOING TO BE TURNED OVER SOMETIME.

18         YOU MIGHT AS WELL JUST BITE THE BULLET AND TURN THEM

19   OVER NOW, AND THEN SOME EARLY 30(B)(6) DEPOSITIONS OF WATKINS

20   AND ELY AND MAYBE THE I.T. PERSON.

21         MS. GRANT:  AND THIS DISCOVERY GOES BOTH WAYS, 'CAUSE

22   I MEAN, OBVIOUSLY, IT'S CRITICAL TO US TO PROVE THE TRUTH OF

23   SOME OF THIS TO GET SOME DISCOVERY FROM THE OTHER SIDE.

24         THE COURT:  YOU -- DISCOVERY IS OPEN AS OF NOW.  YOU

25   CAN BOTH TAKE --

1          MS. GRANT:  YES.

2          THE COURT:  -- DISCOVERY.

3          MR. PULGRAM:  SO TO RECAP, DISCOVERY'S NOW OPEN, MEET

4    AFTERWARDS TO BEGIN THE DISCUSSIONS OF A DISCOVERY PLAN,

5    TOMORROW WITH I.T. PEOPLE TO UNDERSTAND HOW THE DOCUMENT IS

6    PRESERVED AND AVAILABLE ON THEIR NETWORK AND WHAT RECORDS MAY

7    EXIST AROUND THAT; APRIL 10TH FOR THE FULL 26F CONFERENCE.  AND

8    AT THAT TIME TO TRY TO IDENTIFY PROMPT AREAS THAT WILL BE

9    PRODUCED IMMEDIATELY AND 30(B)(6) AREAS.

10          THE COURT:  RIGHT.

11          MR. PULGRAM:  OKAY.

12          THE COURT:  AND IF SOMEBODY FEELS LIKE THEY'RE

13    GETTING STONEWALLED AT THAT POINT, THEN YOU CAN -- I USUALLY

14    SEND THE DISCOVERY TO A MAGISTRATE JUDGE, BUT I SUPPOSE SINCE I

15    KNOW ABOUT IT, I'D BETTER JUST DO IT MYSELF, SO --

16          MR. PULGRAM:  AS YOU WISH.

17          THE COURT:  -- WHY DON'T EACH OF YOU SUBMIT A

18    FIVE-PAGE BRIEF EXPLAINING WHY YOU WEREN'T ABLE TO REACH A

19    DISCOVERY PLAN, WHAT YOU DID AGREE TO, AND WHAT YOU DIDN'T AGREE

20    TO, THAT YOU THINK YOU ABSOLUTELY NEED ON SOME EXPEDITED BASIS.

21          MS. GRANT:  AND WHEN WOULD YOU LIKE TO HAVE THAT TO

22    BE SUBMITTED?

23          THE COURT:  OH, TWO DAYS AFTER APRIL 10TH.

24          MS. GRANT:  OKAY.

25          I DON'T HAVE A CALENDAR.  IS THAT STILL IN THE

1    WEEKDAY OR --

2        MR. PULGRAM:  THAT'S A MONDAY PROBABLY.

3        MS. GRANT:  YES.

4        MR. PULGRAM:  ACTUALLY, THE 10TH WILL BE A THURSDAY.

5        THE COURT:  SO YOU CAN SUBMIT IT BY MONDAY THE 14TH.

6        MS. GRANT:  OKAY.

7        THE COURT:  AND WHEN I SAY DISCOVERY'S OPEN, I DON'T

8    MEAN LET'S ALL DUMP EACH OTHER WITH THE MOST BURDENSOME THINGS

9    WE CAN THINK OF TO STOP EVERYBODY IN THEIR TRACKS.

10        I'M SAYING BOTH OF YOU START DOING THE THINGS THAT

11    YOU NEED TO DO TO SOLVE THE MOST PRESSING PROBLEMS --

12        MS. GRANT:  RIGHT.

13        THE COURT:  -- WHICH ISN'T TO SAY WE'RE GOING TO

14    SLICE AND DICE AND SAY, OH, THERE IS MERITS, IF SOMEBODY'S THERE

15    BEING ASKED ABOUT SOMETHING, YOU KNOW, WE'RE NOT GOING TO

16    START -- WE DON'T NEED TO START TRYING TO PARSE IT OUT TOO

17    QUICKLY, BUT -- OR TOO FINELY.

18        MS. GRANT:  YES.

19        AND I JUST -- 'CAUSE I WANT THE RECORD TO BE CLEAR IN

20    TERMS OF THE WAY THAT I PRACTICE AND OUR FIRM PRACTICES, WE HAVE

21    BEEN TRYING TO WORK WITH THEM.  ALL I SAID ABOUT THE RULE 26F IS

22    I WANTED TO SEE WHAT THE COURT'S POSITION WAS, AND I THOUGHT

23    WE'D BE IN A BETTER POSITION AFTER THIS HEARING.  THAT WAS WHAT

24    I PUT IN MY LETTER.

25        I ALSO PROPOSED THAT WE SIT DOWN AND TALK ABOUT A

1  MUTUAL DOCUMENT PRESERVATION.  IT GOES BOTH WAYS.  AND WE SIT

2  DOWN -- AND I NEVER GOT A RESPONSE BACK TO THAT LETTER.  SO WHAT

3  I THINK IS EXACTLY WHAT WE'RE WILLING TO DO, WHICH IS TO SIT

4  DOWN WITH THEM AND WORK OUT A SENSIBLE PLAN, OBVIOUSLY WITH THE

5  PRIORITY BEING, YOU KNOW, WHAT WE'VE ALL TALKED ABOUT, IS TRYING

6  TO GET TO THE BOTTOM OF DISCOVERING HOW THIS EMANATED FROM --

7  FROM THE COMPANY, IF IT DID.

8       WE WANT TO KNOW THAT, TOO.  AND WE WILL WORK WITH

9  THEM TO TRY AND PRODUCE, WHETHER IT'S A 30(B)(6) DEPO OR

10  DOCUMENTS, TO COME UP WITH THAT DISCOVERY FIRST, BECAUSE I THINK

11  THAT'S THE MOST PRESSING.

12       THE COURT:  OKAY.

13       MR. PULGRAM:  WELL --

14       THE COURT:  THE OTHER THING YOU MIGHT CONSIDER DOING

15  WITH EACH OTHER IS TALKING ABOUT SETTLING THE CASE IN GENERAL.

16  I MEAN, THIS HAPPENED.  IT'S OVER.  YOU KNOW, I DON'T KNOW THAT

17  YOU NECESSARILY NEED TO SPEND TWO YEARS AND HUNDREDS OF

18  THOUSANDS OF DOLLARS LITIGATING ABOUT THIS PIECE OF PAPER.

19  MAYBE YOU COULD SETTLE IT EARLY AND FIGURE OUT SOME WAY OF

20  RESOLVING IT.

21       MS. GRANT:  THAT'S A GOOD IDEA.

22       MR. PULGRAM:  WE APPRECIATE THAT INFORMATION.  I JUST

23  WANT TO BE CLEAR ON ONE THING.

24       THE COURT:  I ACTUALLY REALLY HAVE TO GO, SO YOU CAN

25  ORDER A TRANSCRIPT.

1     MR. PULGRAM:  THANK YOU, YOUR HONOR.

2     MS. GRANT:  THANK YOU, YOUR HONOR.

3     THE COURT:  OKAY.

4     (PROCEEDINGS WERE CONCLUDED AT 3:09 P.M.)

5          --O0O--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3              CERTIFICATE OF REPORTER

4        I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED

5    STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

6    THAT THE FOREGOING PROCEEDINGS IN C08-1376CW, SUCCESSFACTORS,

7    INC., V. SOFTSCAPE, INC., WERE REPORTED BY ME, A CERTIFIED

8    SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY

9    DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL,

10   COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT

11   THE TIME OF FILING.

12        THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

13   TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THI

14   COURT FILE.

15

16        _____

17        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

18             FRIDAY, APRIL 4, 2008

19

20

21

22

23

24

25

# EXHIBIT 14

1              UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3     DEPARTMENT TWO, OAKLAND, CALIFORNIA CLAUDIA WILKEN, JUDGE

4                          -oOo-

5     SUCCESSFACTORS, INC,            ) C-08-1376
              PLAINTIFF,              ) CASE MANAGEMENT CLIMATE,
6     V.                             ) CONFERENCE
      SOFTSCAPE,                      ) TUESDAY 6/17/08
7           DEFENDANT.                )
      _____)

8

9           REPORTER'S TRANSCRIPT OF PROCEEDINGS

10    APPEARANCES:

11    FOR THE PLAINTIFF:

12    FENWICK & WEST, LLP
      BY:  LAURENCE F. PULGRAM,
13         PATRICK PREMO, ATTORNEYS AT LAW
      555 CALIFORNIA STREET, 12TH FLOOR
14    SAN FRANCISCO, CA  94104
      TEL (415) 875-2300 FAX (415) 281-1350
15    LPULGRAM@FENWICK.COM

16    SILICON VALLEY CENTER
      801 CALIFORNIA STREET
17    MOUNTAIN VIEW, CA  94041
      TEL (650) 988-8500 FAX (650) 938-5200
18    PPREMO@FENWICK.COM

19    FOR THE DEFENDANT:

20    MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, PC
      BY:  ROBERT PAUL TAYLOR,
21         BRYAN J. SINCLAIR, ATTORNEYS AT LAW
      1400 PAGE MILL ROAD
22    PALO ALTO, CA  94304
      TEL (650) 251-7700 FAX (650) 251-7739
23    TAYLORR@HOWREY.COM, BSINCLAIR@MINTZ.COM

24

25    REPORTED BY:  STARR A. WILSON, CSR 2462

1    OAKLAND, CALIFORNIA; TUESDAY, JUNE 17, 2008; DEPARTMENT 2;

2    CLAUDIA WILKEN, JUDGE; 2:45 P.M.

3                          -OOO-

4          **THE CLERK:**  CALLING THE MATTER OF SUCCESSFACTORS

5    VERSUS SOFTSCAPE, CIVIL ACTION NUMBER C-08-1376.

6          COUNSEL, PLEASE COME FORWARD AND STATE YOUR

7    APPEARANCES FOR THE RECORD.

8          **MR. PULGRAM:**  GOOD AFTERNOON, YOUR HONOR.

9    LAURENCE PULGRAM WITH PATRICK PREMO WITH FENWICK & WEST FOR

10   SUCCESSFACTORS.

11         **MR. TAYLOR:**  GOOD AFTERNOON, YOUR HONOR.  ROBERT

12   TAYLOR AND MY PARTNER, BRYAN SINCLAIR, APPEARING FOR THE

13   DEFENDANT, SOFTSCAPE.

14         **THE COURT:**  SO THEY FIRED THEIR FIRST ATTORNEYS

15   AND HIRED NEW ATTORNEYS?

16         **MR. TAYLOR:**  THAT'S CORRECT, YOUR HONOR.

17         **THE COURT:**  OR VISA VERSA.

18         UM, I DON'T USUALLY GET CASE MANAGEMENT STATEMENTS

19   UNDER SEAL.  I GUESS, UM, IF YOU REALLY HAVE TO, YOU CAN

20   SUBMIT -- WHO IS IT THAT SAYS THERE'S SOMETHING SECRET IN

21   HERE?

22         **MR. SINCLAIR:**  OH, THERE WAS --

23         **THE COURT REPORTER:**  I'M SORRY.  YOUR NAME?

24         **MR. SINCLAIR:**   I'M SORRY.  THIS IS BRYAN SINCLAIR

25   FROM SOFTSCAPE.

1          THERE WAS SOME TEST -- ESSENTIALLY

2    CHARACTERIZATION OF TESTIMONY FROM A DEPOSITION THAT WAS

3    DESIGNATED AS UNDER THE PROTECTIVE ORDER.  SO THEY PROPOSED

4    TO PUT LANGUAGE IN.  WE SAID WE DON'T REALLY THINK YOU NEED

5    IT.  BUT IF YOU DO, WE WOULD LIKE THAT TO BE EQUALLY TRUE

6    AND SO IT'S CONSISTENT WITH THE PROTECTIVE ORDER AND THE

7    DEPOSITION TESTIMONY ITSELF.

8          **MR. PULGRAM:**  YOUR HONOR --

9          **MR. SINCLAIR:**  THAT WAS THE MOTIVATION FOR IT AT

10   LEAST.

11         **THE COURT:**  OH.  SO YOU NEED TO FILE SOMETHING

12   THAT JUSTIFIES PUTTING IT UNDER SEAL IN ORDER FOR ME --

13         **MR. SINCLAIR:**  I UNDERSTAND.

14         **THE COURT:**  -- TO LOOK AT IT.

15         **MR. SINCLAIR:**  I'VE DISCUSSED THAT YOU.

16         **THE COURT:**  OKAY.  OR ARE YOU COULD NOT AND JUST

17   LET IT BE FILED.

18         **MR. SINCLAIR:**  OKAY.  WE'LL DO ONE THING OR THE

19   OTHER -- TOMORROW.

20         **THE COURT:**  OKAY.

21         **MR. PULGRAM:**  IT'S -- I DON'T WANT TO GET INTO THE

22   MINUTIA BUT IT'S BEEN A PERSISTENT PROBLEM.  AND PAGE THREE

23   IN ITS ENTIRETY IS WHAT THEY'VE ESSENTIALLY DESIGNATED TO BE

24   UNDER SEAL.  IT'S JUST FACTS OF WHAT HAPPENED.  THERE'S

25   NOTHING TRADE SECRET ABOUT IT.

```
 1          AND WHILE WE'RE WORKING THROUGH THAT WITH THE

 2   MAGISTRATE JUDGE, UM, THE FACT IS THAT AT THIS POINT WE

 3   CAN'T EVEN SHOW THIS TO OUR CLIENT.  AND THAT'S BECAUSE

 4   EVERYTHING HAS BEEN DESIGNATED OUTSIDE COUNSEL ATTORNEYS

 5   EYES ONLY.  NOT EVEN INSIDE COUNSEL.  NOT EVEN CONFIDENTIAL

 6   FOR THE LAWSUIT.  BUT OUTSIDE AEO.  SO WE'RE REALLY STOPPED

 7   IN TERMS OF TRYING TO MOVE THIS LITIGATION FORWARD BY THAT

 8   APPROACH.

 9          THE COURT:  WELL, THE -- IN TERMS OF FILING THINGS

10   UNDER SEAL, WE LOOK WITH A PRETTY CAREFUL EYE ON THAT.  AND

11   THERE HAS TO BE SOME EXTREMELY STRONG SECRECY REQUIRED TO

12   OVERRIDE THE PRESUMPTION THAT THIS IS A PUBLIC COURT AND

13   THAT EVERYTHING THAT GOES ON IN IT IS OPEN TO THE PUBLIC AND

14   THE PRESS.

15          SO I'M NOT SEEING ANYTHING AS I GLANCE AT THIS, IF

16   YOU CAN ENLIGHTEN ME, BUT, YOU KNOW, DON'T JUST DO IT AS AN

17   ABUNDANCE OF CAUTION BECAUSE IT'S NOT GOING TO BE LOOKED AT

18   IN THAT WAY.

19          IN TERMS OF THE DESIGNATIONS THAT PROBABLY THE

20   PROTECTIVE ORDER HAS SOME SORT OF MECHANISM WHERE YOU HAVE

21   TO GO TO COURT AND CONTEST THEIR DESIGNATIONS AND SO ON.

22          MR. PULGRAM:  AND WE'RE GOING TO DO THE SIX TO

23   EIGHT WEEKS THAT IT TAKES TO DO AS LONG AS THEY KEEP DOING

24   IT THAT WAY.  BUT IF -- WE'LL COME TO THAT AS WE GET TO THE

25   SCHEDULE HERE.
```

1          **THE COURT:**  OKAY.

2          **MR. PULGRAM:**  CERTAINLY WE'RE NOT ASKING YOU TO

3    DECIDE THAT ISSUE TODAY.

4          **THE COURT:**  OKAY.

5          UM, SO WHAT ELSE DO WE HAVE HERE?  YOU CAN TAKE A

6    SCHEDULING ORDER AND WE'LL FILL IN THE DATES.  AND ATTACHED

7    TO IT YOU'LL FIND THE ORDER FOR PRETRIAL PREPARATION THAT

8    WILL TELL YOU THE PAPERWORK THAT NEEDS TO BE FILED IN

9    ADVANCE OF PRE-TRIAL CONFERENCE.

10         YOU'LL GET ANOTHER COPY THROUGH E-FILING.

11         SO IT SAYS HERE YOU'RE HAVING DISCOVERY DISPUTES.

12   DEFENDANT IS DISSATISFIED WITH THE CLIENTS.  YOU GOT A

13   DISCOVERY CONFERENCE SCHEDULED FOR YESTERDAY.  HOW DID THAT

14   GO?

15         **MR. PULGRAM:**  IT'S ACTUALLY BEEN MOVED TO JULY 3,

16   YOUR HONOR.

17         **THE COURT:**  OH.  OKAY.  SO YOU'RE GOING TO TRY TO

18   WORK THIS ALL OUT WITH JUDGE ZIMMERMAN?

19         **MR. PULGRAM:**  WE ARE.  AND, UM, I THINK -- THE

20   POINT FOR US IN TERMS OF THE SCHEDULE HERE, AS YOU KNOW, WE

21   PROPOSED COLLECTIVELY, UM, A PROPOSED SCHEDULE THAT IS IN

22   THE CMC STATEMENT.  UM, WE'VE TRIED TO COME UP WITH ONE, I

23   THINK, THAT'S REALISTIC.  BUT AT THE SAME TIME IF DISCOVERY

24   DOESN'T GET MADE, IT IS A VERY AGGRESSIVE SCHEDULE.  UM,

25   NOVEMBER 26 IS THE, UM, STIPULATED DATE FOR FACT DISCOVERY

1    TO CLOSE.  AND THERE ARE TWO REASONS WHY I THINK THAT MAY

2    END UP BEING AGGRESSIVE.  UM, NOT THAT WE WANT TO MOVE IT,

3    BUT I WANT TO CAUTION, UM, THE COURT ABOUT THIS.  ONE IS

4    THAT WE'RE NOT GETTING DOCUMENTS PRODUCED YET.  AND, AGAIN,

5    NOT TO GO INTO THE MINUTIA HERE, BUT WE'RE THREE MONTHS

6    SINCE THE SERVICE OF OUR DOCUMENT REQUESTS.  WE FILED THEM

7    WITH THE COMPLAINT.  AS YOU REMEMBER, YOU AUTHORIZED

8    DISCOVERY TO OPEN ON MARCH 27 WHEN YOU ISSUED THE PI.  UM,

9    WE'RE NOW AT JUNE 16.

10            AND WE WERE TOLD ON FRIDAY THAT THEY HAVE YET TO

11    EVEN RUN THE TERM SEARCHES FOR OVER 90 PERCENT OF THE

12    CUSTODIANS OF THE DOCUMENT.  AND EVEN AS TO THE TEN PERCENT

13    OF THE CUSTODIANS, WE HAVEN'T GOTTEN A FULL PRODUCTION.

14            AND THE SIGNIFICANCE OF THIS, WHAT THAT MEANS IS

15    THAT WE -- WE, SO FAR, DON'T HAVE ANY DOCUMENTS THREE MONTHS

16    INTO THIS.  WE'VE BURNT THREE MONTHS SO FAR.  SO IF -- IF

17    THIS RADICALLY CHANGES, WE CAN GET DISCOVERY DONE BY

18    NOVEMBER 26.

19            BUT IF THIS IS GOING TO BE ONE THAT'S PULLING

20    TEETH OR HAMMERING TONGUE TO GET EVERY SINGLE PIECE OF

21    INFORMATION TO FIGHT EVERY CONFIDENTIALITY DESIGNATION AND

22    SO FORTH, THEN THAT DATE IS GOING TO BE AGGRESSIVE.

23            THERE IS ONE OTHER POINT THAT AFFECTS THAT DATE

24    AND THEREFORE AFFECTS THE WHOLE CALENDAR HERE.  UM, AS THE

25    CMC STATEMENT ALSO SAYS, THERE'S BEEN A SECOND FRONT OPENED

1   BY SOFTSCAPE IN MASSACHUSETTS IN A LAWSUIT THERE.  AND THE

2   LAWSUIT THERE ESSENTIALLY ASSERTS THE SAME CLAIMS AS THEIR

3   UNCLEAN HANDS CLAIMS HERE.

4         UM, THEIR UNCLEAR HANDS ARE DESCRIBED AT PAGE FIVE

5   OF THE CMC AS SUCCESSFACTOR'S EMPLOYEES POSES CUSTOMERS AND

6   GAIN ACCESS UNDER FALSE PRETENSES TO SOFTSCAPE'S SERVERS.

7         UM, AND FURTHER IN HIS DEPOSITION, MR. WATKINS,

8   WHO IS THE GUY WHO ACCESSED OUR PASSWORD PROTECTED ACCOUNTS

9   AND WROTE THE PRESENTATION.  HE SAID THE REASON HE DID THAT

10  WAS BECAUSE HE WANTED TO CHECK AND SEE IF WE WERE TAKING HIS

11  TRADE SECRETS.  AND THEY, THE COMPLAINT IN MASSACHUSETTS

12  CLAIMS WE'VE TAKEN THEIR TRADE SECRETS.

13        SO WE HAVE THIS LAWSUIT BACK THERE.  WE'RE GOING

14  TO TRY MOVE IT HERE.  THEY'RE GOING TO TRY TO NOT MOVE IT

15  HERE.  UM, BUT IF IT COMES HERE, THAT COULD AFFECT WHAT THE

16  PLEADINGS ARE, HOW FAST WE CAN GET DONE WITH DISCOVERY.  AND

17  SO I SAY THAT, ALSO BY WAY OF THINKING AHEAD, TO WHETHER OR

18  NOT THE NOVEMBER 26 DATE, UM, IS ONE WE'LL BE ABLE TO

19  SUCCESSFULLY ACCOMPLISH.

20        **THE COURT:**  OKAY.

21        **MR. PULGRAM:**  I THINK HOLDING OUR FEET TO IT

22  INITIALLY IS A GOOD THING.

23        **THE COURT:**  OKAY.

24        UM, WELL, I ALWAYS HATE TO HAVE LITIGATION

25  PROCEEDING ON TWO FRONTS SO I DON'T KNOW.  I MEAN I COULD

```
1   SEND THIS CASE TO MASSACHUSETTS IF THAT WOULD HELP.  OR IT'S

2   IN STATE COURT IN MASSACHUSETTS, I DON'T KNOW HOW YOU GET IT

3   TO FEDERAL COURT HERE.  IF YOU DO IT SOMEHOW THEN, YES, I

4   WILL RELATE IT AND I WILL CONSOLIDATE IT.

5           MR. TAYLOR:  IT IS IN STATE COURT, YOUR HONOR.

6           MR. PULGRAM:  IT WOULD BE A FORM NONCONVENIENCE

7   TYPE OF ARGUMENT THAT THE EXACT SAME CLAIM IS ALREADY OUT

8   HERE.

9           THE COURT:  YEAH.  THERE IS SOME, I GUESS YOU CAN

10  MOVE TO STAY IT ON THE --

11          MR. PULGRAM:  THAT'S ANOTHER APPROACH.  BUT -- BUT

12  FROM OUR PERSPECTIVE, THOSE REALLY ARE COMPULSORY CROSS

13  COMPLAINTS FOR THIS ACTION.  IF YOU HAVE AN UNCLEAN HANDS

14  DEFENSE HERE.  THE CLAIM THAT THE SAME CONDUCT IS ACTIONABLE

15  SHOULD BE HERE.  AND THAT -- THAT IS A BASIS FOR THIS COURT

16  TO HAVE JURISDICTION OVER.

17          THE COURT:  WELL, IF YOU HAVE SOME MOTION TO MAKE

18  ON THAT, I'LL --

19          MR. PULGRAM:  I DON'T HAVE ONE FOR YOU AT THIS

20  TIME.

21          THE COURT:  NO, I'M SURE YOU DON'T.  IF YOU DO

22  HAVE ONE IN THE FUTURE, I WILL HAVE TO RULE ON IT.

23          BUT IN GENERAL, I THINK IT MAKES SENSE FOR

24  EVERYONE TO HAVE THE LAWSUIT TOGETHER SOMEWHERE, WHETHER

25  IT'S IN STATE OR FEDERAL COURT, WHETHER IT'S HERE OR THERE.
```

```
1              UM, SO, AND THEN AS FAR AS THE DISCOVERY, THAT

2    THAT IS SORT OF DISCONCERTING BECAUSE, AT LEAST WITH PRIOR

3    COUNSEL WE HAD ASSURANCES THAT DISCOVERY WOULD BE

4    FORTHCOMING, THAT DOCUMENTS WOULD BE PRESERVED, AND POSSIBLY

5    EVEN ESSENCE TYPES OF INFORMATION ON COMPUTERS WOULD BE

6    PRESERVED SO I'M --

7              MR. TAYLOR:  YES.

8              THE COURT:  --  CONCERNED TO SEE THAT THAT

9    ATTORNEY WITH WHOM I HAD THAT UNDERSTANDING IS NO LONGER

10   HERE AND DISCOVERY IS NOT FORTHCOMING.

11             MR. SINCLAIR:  WELL, I DON'T -- I WOULD DISAGREE

12   WITH THE CHARACTERIZATION THAT WE'VE PRODUCED NOTHING AND

13   THAT WE'VE DONE NOTHING.

14             WE'VE BEEN COUNSEL OF RECORD IN THE CASE NOW FOR

15   25 COURT DAYS AND MADE MULTIPLE PRODUCTIONS, THE MOST RECENT

16   ONE OF YESTERDAY IN THAT TIME PERIOD.

17             THEY MAY BE DISSATISFIED WITH THE SCOPE OF OUR

18   SPEED WITH WHICH WE CAN SEARCH 1.5 TERABYTES OF DATA AND

19   REVIEW THE INFORMATION AND PRODUCE THE INFORMATION.  BUT ALL

20   OF THE -- ALL OF THE DATA HAS BEEN PRESERVED AND -- AND

21   PROPERLY DONE SO.  IT'S NOW BEEN CONSOLIDATED FROM FOUR

22   LOCATIONS FROM ALL OVER THE WORLD INTO ONE LOCATION FOR EASE

23   OF COUNSEL TO ACTUALLY ACCESS IT WITH CONSULTANTS, PERFORM

24   THE SEARCHES.

25             THE SEARCH TERMS THAT WE'RE AGREEABLE TO THE
```

1   PLAINTIFF HAVE NOW BEEN AGREED TO AS OF YESTERDAY.  SO WE

2   ARE GOING TO RUN THOSE SEARCH TERMS ON AN ORDER OF HALF A

3   DOZEN CUSTODIANS THAT WE LET THEM SELECT TO DO IT IN THE

4   ORDER THAT THEY THOUGHT WAS MOST IMPORTANT.  AND THAT SEARCH

5   IS ONGOING AS WE STAND HERE.  AND WE WILL CONTINUE TO

6   PRODUCE DOCUMENTS EVERY TEN COURT DAYS.  AND WE'VE TOLD THEM

7   THAT REPEATEDLY AND THAT'S WHAT WE'RE DOING.

8           **THE COURT:**  DID YOU SAY YOU HAVEN'T GOT ANY

9   DOCUMENTS YET?

10          **MR. PULGRAM:**  I DID NOT SAY THAT.  I SAID THEY

11  HAVE YET TO RUN THE SEARCH TERMS ON 90 PERCENT OF THE PEOPLE

12  WHO HAVE DOCUMENTS.  AND WHAT THAT MEANS IS, WE SENT THEM A

13  LIST ON MAY 1 OF SEARCH TERMS.  BECAUSE, YOUR HONOR, YOU

14  REQUIRED A STIPULATION, A CERTIFICATION THAT THE RECORDS ARE

15  BEING PRESERVED.  AND YOU GOT ONE FROM THEM ON APRIL 30.  IT

16  SAID WE HAVE ALL THE RECORDS PRESERVED.  ON MAY 1 WE SAID

17  WOULD YOU PLEASE SEARCH THESE TERMS?  SUCCESSFACTORS BEING

18  ONE.  PRESENTATION.  NAKED TRUTH BEING -- YOU KNOW, THE

19  WHOLE LIST OF RELEVANT TERMS.  WE HEARD BACK FROM THEM OVER

20  A MONTH LATER SAYING WE DON'T LIKE YOUR TERMS AND PROPOSING

21  SOME OTHERS.

22          ON -- ON JUNE 6 WE FLIPPED BACK TO THEM.  WE SAID,

23  FINE, YOU SAY WE CAN ADD TEN TERMS TO YOUR TERMS.  WE GAVE

24  THEM TEN TERMS ON JUNE 6.  AND LAST FRIDAY, THEY FINALLY

25  SAID OKAY, OKAY, WE'LL SEARCH, WITH THE HEARING WITH THE

1    MAGISTRATE COMING UP AND YOUR HONOR COMING UP, WE'LL SEARCH

2    THE TERMS THAT YOU WANT.

3           IT REQUIRES PUSHING A BUTTON TO SEARCH THE

4    TERABYTE, IF THAT'S WHAT THEY SAY IT IS, OF DOCUMENTS TO

5    PULL OUT WHAT'S RELEVANT.  AND SINCE MARCH IT HASN'T

6    HAPPENED.

7           SO WE'VE GOTTEN A SCATTERING OF THINGS.  AND TODAY

8    WE DID RECEIVE DOCUMENTS THAT WERE REFERRED TO IN

9    INTERROGATORIES THAT WERE SERVED ON US ON MAY 20, A MONTH

10   AGO.

11          THESE ARE DOCUMENTS REFERRED TO IN THE

12   INTERROGATORIES THAT HAVE BEEN HELD UP FOR A MONTH.

13          SO WE SEE WHAT WE'RE UP AGAINST HERE.  THEY'VE

14   REFERRED TO THOSE DOCUMENTS.  THEY OBVIOUSLY HAVE THEM.

15   THEY OBVIOUSLY KNOW THEY'RE THERE.  THEY GAVE THEM TO US

16   YESTERDAY.  ACTUALLY FEDEXED, SO WE GOT THEM TODAY.

17          UM, SO THIS IS THE GAME THAT'S GOING TO

18   UNFORTUNATELY APPEAR TO BE PLAYED OUT.  AND THAT'S MY

19   CONCERN OVER THE TIME HERE.

20          UM, ONE SUGGESTION I WOULD -- I'M SORRY.  I DIDN'T

21   MEAN --

22          **THE COURT:**  WHY WAS THE DISCOVERY CONFERENCE

23   CONTINUED TO JULY 3?

24          **MR. PULGRAM:**  AT -- AT THAT POINT, UM, THE

25   MAGISTRATE JUDGE, UM, WHO -- YOU MAY KNOW HIS PROCEDURE.

1   MAGISTRATE JUDGE ZIMMERMAN HAS YOU WRITE LETTERS BACK AND

2   FORTH.  AND HE RULED ON A PART OF THE LETTER.  HE ORDERED

3   THEM -- HE ORDERED US MUTUALLY TO AGREE TO SEARCH TERMS BY A

4   DATE CERTAIN.  IT TURNED OUT THEY HAD ACTUALLY AGREED TO

5   THEM THE DAY BEFORE THE HEARING WITH THE JUDGE WAS SUPPOSED

6   TO HAPPEN.

7          UM, AND HE SAID COME BACK ON JULY 3 FOR A FULL

8   CONFERENCE, NOT JUST ON LIMITED SUBJECTS, BUT A FULL

9   DISCOVERY CONFERENCE -- UM, ON JULY 3.  AND HE ALSO ORDERED

10  THAT THE PARTIES ARE TO UNDERSTAND THAT IF THEY OBJECT TO

11  PART OF A REQUEST, THEY STILL HAVE TO PRODUCE ALL THE REST

12  OF IT.  UM, SO I THINK WHAT HE ENVISIONED WAS A BIGGER

13  LATER, UM, DETERMINATION ON DISCOVERY.

14          **THE COURT:**  OKAY.  WELL, --

15          **MR. SINCLAIR:**  I'M CONFIDENT THAT BY THE TIME WE

16  SEE MAGISTRATE ZIMMERMAN ON JULY 3, WE WILL HAVE NOT ONLY

17  PRODUCED SUBSTANTIAL AMOUNT OF INFORMATION, BUT RESOLVED

18  MANY OF THE ISSUES THAT ARE RAISED IN COMPETING LETTER

19  BRIEFS THAT ARE BEFORE HIM RIGHT NOW.

20          **THE COURT:**  OKAY.  WELL, I HOPE THAT'S THE CASE.

21          **MR. SINCLAIR:**  SO DO I.

22          **THE COURT:**  I HAVE TO -- I'LL CALL HIM AND TELL

23  HIM NOT TO DELAY THINGS BUT TO KEEP THIS MOVING.

24          UM, SO I GUESS I CAN SET THE DATES THAT YOU'VE

25  PROPOSED IN THE CHART AT THE END.

1          **MR. SINCLAIR:**  THE ONLY ONE THAT THERE WAS ANY

2   DISPUTE ABOUT IS THE LAST DATE TO AMEND PLEADINGS.  AND WE

3   WEREN'T ABLE TO AGREE ON A FIXED DATE IN AUGUST, ALTHOUGH WE

4   HAVE THE BEGINNING AND END OF AUGUST PROPOSED.

5          **THE COURT:**  YEAH.  WELL, I DON'T THINK THAT MAKES

6   A HUGE DIFFERENCE.  SO LET'S JUST CALL IT AUGUST 29 FOR

7   ADDING ANY ADDITIONAL PARTIES OR CLAIMS.

8          UM, AND WHAT WERE YOU GOING TO DO ABOUT

9   SETTLEMENT?

10         **MR. PULGRAM:**  WE'VE STIPULATED TO STIPULATE TO A

11  JAMS MEDIATOR.

12         **THE COURT:**  OKAY.

13         **MR. PULGRAM:**  UM, TO HAPPEN AT WHAT IS ANTICIPATED

14  TO BE THE CLOSE OF FACT DISCOVERY.

15         **THE COURT:**  OH, WELL, THAT'S NO GOOD.  YOU NEED TO

16  DO THAT SOONER.

17         **MR. SINCLAIR:**  I AGREE, YOUR HONOR.

18         **MR. PULGRAM:**  THE PROBLEM IS WE HAVE NO

19  INFORMATION.  NO IS AN OVERSTATEMENT.  BUT IF WE DON'T HAVE

20  THE STUFF WE'VE ASKED FOR SO WE'RE HAMSTRINGED.

21         **THE COURT:**  OKAY.  WE DON'T WANT TO WAIT UNTIL THE

22  END OF DISCOVERY.  WE CAN WAIT FOR THREE OR FOUR MONTHS IF

23  WE HAVE TO.  BUT THERE'S NO POINT TO WAITING TO THE END OF

24  DISCOVERY TO TRY TO SETTLE THE CASE.

25         **MR. PULGRAM:**  BUT --

1              THE COURT:  WE'LL REFER IT TO PRIVATE MEDIATION

2    FOR A SETTLEMENT CONFERENCE TO BE HELD, HOW ABOUT IN 120

3    DAYS?

4              MR. TAYLOR:  FAIR ENOUGH.

5              THE COURT:  OKAY.  SO --

6              MR. PULGRAM:  MAY I MAKE ONE SUGGESTION IN THAT

7    REGARD?  AND THAT WOULD BE, UM, I THINK IT COULD BE USEFUL

8    RIGHT AFTER THAT TIME, WHICH WOULD BE MID OCTOBER, TO HAVE A

9    CMC TO SEE WHERE WE ARE, TO SEE IF WE'RE ABLE TO ADHERE TO

10   THE DISCOVERY CUFOFF THAT WE HAVE, UM, AND TO TAKE STOCK OF

11   WHAT'S HAPPENED IN MASSACHUSETTS.

12             THE COURT:  WELL, I DON'T WANT TO SET A CONFERENCE

13   FOR NO REASON.  IF YOU NEED SOMETHING, YOU MAKE A MOTION FOR

14   IT.

15             MR. PULGRAM:  VERY WELL.

16             THE COURT:  IF IT HASN'T SETTLED AND YOU WANT TO

17   HAVE ANOTHER SETTLEMENT CONFERENCE, AND THEY WON'T AGREE,

18   THEN FILE A MOTION.  IF THERE'S DISCOVERY PROBLEMS, FILE A

19   MOTION.  IF THERE'S -- IF YOU'RE NOT SUCCESSFUL IN GETTING

20   THESE TWO CASES PUT TOGETHER, THERE WON'T BE ANYTHING I CAN

21   DO ABOUT THAT AT THE STATUS CONFERENCE.  IF THERE'S

22   SOMETHING I CAN DO, FILE A MOTION FOR ME TO DO IT.  AND IF

23   IT'S NOT SOMETHING I CAN DO, THEN THERE WON'T BE ANYTHING I

24   CAN DO ABOUT IT.

25             MR. PULGRAM:  UNDERSTOOD.

```
 1              THE COURT:  I WOULD USUALLY HAVE ANOTHER CMC ON

 2    THE CASE DISPOSITIVE MOTION DATE.  UM, YOU KNOW, AND I'LL

 3    SET THAT IN A MINUTE.  BUT IF YOU NEED SOMETHING IN THE

 4    MEANTIME, JUST FILE A MOTION FOR WHAT -- WHAT IT IS THAT YOU

 5    NEED.

 6              THE FACT DISCOVERY CLOSES ON NOVEMBER 26 OF '08.

 7    OH, THAT PRIVATE MEDIATION WOULD BE DONE BY, UM, OCTOBER 17

 8    OF '08.

 9              UM, IDENTIFY EXPERT WITNESSES NOVEMBER 26 OF '08.

10              EXCHANGE OPENING EXPERT REPORTS DECEMBER 17, '08.

11              REBUTTAL EXPERT REPORTS JANUARY 9, '09.

12              EXPERT DISCOVERY CLOSES JANUARY 23, '09.

13              UM, CASE DISPOSITIVE MOTION CUTOFF MARCH 16, '09.

14              THE CLERK:  THAT'S A MONDAY.

15              THE COURT:  IS THAT A THURSDAY?

16              THE CLERK:  NO, THAT IS A MONDAY.

17              THE COURT:  OKAY.  SO THAT WILL BE MARCH 19.  AND

18    I IMAGINE MAYBE THE CASE OF BOTH OF YOU WOULD BE MAKING CASE

19    DISPOSITIVE MOTIONS.

20              MR. PULGRAM:  AT LEAST IN PART.

21              MR. TAYLOR:  SO IF THE DEFENDANT PLANS ON THAT,

22    YOUR HONOR.

23              THE COURT:  AND DO YOU, WILL YOU BE MAKING SOME?

24              MR. PULGRAM:  WE EXPECT TO.  CERTAIN ISSUES AT

25    LEAST.
```

1          **THE COURT:**  OKAY.  WELL, LET'S HAVE THE DEFENDANT

2   NOTICE THE INITIAL MOTION THEN.  AND YOU SAID FEBRUARY

3   NINTH.  I WANT TO DO IT SIX WEEKS BEFORE THE HEARING DATE.

4          **MR. PULGRAM:**  THAT SHOULD BE MARCH -- FEBRUARY 7.

5          **THE CLERK:**  FEBRUARY 5.

6          **MR. PULGRAM:**  FEBRUARY 5.

7          **THE COURT:**  WHAT IS IT?

8          **MR. PULGRAM:**  FEBRUARY 5.

9          **THE COURT:**  FEBRUARY 5, OKAY.

10         **THE CLERK:**  FEBRUARY 5.

11         **THE COURT:**  SO IF YOU WOULD FILE YOUR MOTION SIX

12  WEEKS AHEAD, NOT FIVE WEEKS AHEAD.

13         AND THEN YOU WAIT AND FILE YOURS AS AN OPPOSITION

14  AND CROSS MOTION TO THEIRS ON THE NINETEENTH.

15         AND THEN YOU WOULD FILE YOUR REPLY TO THE CROSS

16  MOTION, REPLY TO YOUR MOTION AND OPPOSITION TO THE CROSS

17  MOTION ON FEBRUARY 26.

18         REPLY TO THE CROSS MOTION MARCH 5.

19         AND WE'D HEAR IT ON MARCH 19.

20         **MR. PULGRAM:**  VERY WELL.

21         **THE COURT:**  AND A TRIAL ON MAY 11 -- I DON'T SEE

22  TEN TO FIFTEEN DAYS.  I MEAN THIS THING HAPPENED AND THERE

23  PROBABLY MIGHT BE SOME DAMAGES.  BUT IT'S MAYBE UNCLEAR NOW

24  WHAT HAPPENED.  BUT BY THAT TIME IT WILL BE CLEAR WHAT

25  HAPPENED AND THERE WON'T BE A LOT OF DISPUTE ABOUT THAT, I

1   DON'T THINK.  SO I DON'T KNOW WHAT YOU'D BE DOING FOR TWO OR

2   THREE WEEKS IN TRIAL.

3          **MR. PULGRAM:**  UM, IT IS A FAIR QUESTION, YOUR

4   HONOR.  SO FAR THEY'VE DENIED THAT THEY CREATED THE VERY

5   LAST VERSION OF THE PRESENTATION.  UM, AND DENIED THAT THEY

6   HAVE ANY CONNECTION TO THOSE WHO SENT IT OUT.  I THINK

7   THERE'S GOING TO BE A GOOD BIT OF TESTIMONY, AT LEAST AS WE

8   KNOW THE FACTS SO FAR THAT IS GOING TO BE CIRCUMSTANTIAL,

9   UM, SO IT WON'T BE QUITE AS CLEAR AS SOMEONE ON THEIR SIDE

10  NECESSARILY ADMITTING, OH, YEAH, I WROTE THAT DOCUMENT.  SO

11  FAR MR. WATKINS SAYS I DON'T KNOW HOW THAT LAST CHANGE GOT

12  TO PAGE 12 OR 16 OR 31.  UM, SO --

13         **THE COURT:**  YOU'RE GOING TO HAVE TO FIGURE IT OUT

14  BEFORE THEN SO HAVING DETECTIVE WORK IN FRONT OF A JURY.

15         **MR. PULGRAM:**  UNDERSTOOD.

16         **THE COURT:**  AND EVEN TWO WEEKS, WHAT IT'S ALL

17  ABOUT THIS PRESENTATION AND WHO WROTE IT AND CONSENTED AND

18  WHAT DAMAGES AROSE FROM IT.

19         **MR. PULGRAM:**  IT IS ALSO ABOUT THE REPEATED ACCESS

20  THAT THEY MADE TO OUR PASSWORD PROTECTED SITES IN VIOLATION

21  OF THE COMPUTER FRAUD AND ABUSE ACT.

22         AND NOW THEIR UNCLEAN HANDS DEFENSE, REMEMBER,

23  PURPORTS TO RAISE CONDUCT BY OUR PEOPLE TRYING TO LEARN

24  ABOUT THEIR BUSINESS.  THEY SAY WE ATTEMPTED TO LOG INTO

25  THEIR SECURED AREAS.  THEY DON'T SAY WE SUCCEEDED.  BUT THIS

1    IS PART OF THE UNCLEAN HANDS DEFENSE.  AND THEY CLAIM THAT

2    WE'VE STOLEN THEIR TRADE SECRETS.

3        **THE COURT:**  OKAY.  IF YOU'RE NOT ABLE TO GET THESE

4    CASES CONSOLIDATED OR STAYED, THEN I WOULD BE INCLINED TO

5    STAY THAT PART OF THIS CASE PENDING HAVING THAT DONE IN

6    MASSACHUSETTS BECAUSE WE'RE NOT GOING TO DO IT TWICE.  SO IF

7    WE CAN'T SOMEHOW GET IT ALL IN ONE PLACE, THAT IS IF WORSE

8    COMES TO WORSE, I'LL STAY MY PART AND ON ANYTHING THAT IS

9    DUPLICATIVE OF WHAT IS GOING TO HAPPEN IN MASSACHUSETTS AND

10   WE'LL JUST DO THE PLAINTIFF'S CASE.

11       UM, MAY IS NOT SO GOOD HERE.  I'VE GOT QUITE A FEW

12   CASES ALREADY SET FOR MAY.  SO HOW ABOUT JUNE 1?  THEN --

13       **MR. SINCLAIR:**  THAT'S FINE, YOUR HONOR.

14       **THE COURT:**  -- I'LL CALL IT AN EIGHT-DAY TRIAL.

15       **MR. TAYLOR:**  WE THINK FIVE DAYS IS AS MUCH AS YOU

16   NEED TO ALLOCATE FOR IT BUT --

17       **THE COURT:**  OKAY.  WELL, I'LL CALL IT EIGHT AND

18   HOPE FOR FIVE.  BUT I CAN'T SEE DOING MORE THAN EIGHT.  AND

19   THEN WE'LL HAVE A PRETRIAL CONFERENCE, UM, MAY 19 AT TWO

20   O'CLOCK.  AND FURTHER CASE MANAGEMENT CONFERENCE, UM, MARCH

21   --

22       **THE CLERK:**  NINETEEN.

23       **THE COURT:**  -- NINETEENTH AT TWO O'CLOCK EVEN IF

24   NO CASE DISPOSITIVE MOTIONS ARE FILED.  YOU'LL BE GOING TO

25   JAMS IN FOUR MONTHS.  IF IT DOESN'T SETTLE THEN, I WILL WANT

1  YOU PREFERABLY TO GO BACK TO THAT SAME ARBITRATOR MAYBE

2  AFTER THE SUMMARY JUDGMENT MOTION IS FILED OR AFTER ALL THE

3  DISCOVERY IS DONE OR WHEN THE EXPERT REPORTS COME OUT AND SO

4  ON.  IF NECESSARY, IF YOU CAN'T AGREE TO GO BACK TO THE JAMS

5  PERSON, EVENTUALLY I'LL SEND YOU A MAGISTRATE JUDGE.  BUT I

6  THINK YOU'LL BE BETTER OFF STICKING WITH WHOEVER YOU COME

7  WITH AT JAMS AND JUST GO BACK TO THEM PERIODICALLY AT

8  REASONABLE INTERVALS.

9        **MR. SINCLAIR:**  IF I MAY BRIEFLY COMMENT ON THE

10  QUESTION OF SETTLEMENT, YOUR HONOR, WE ARE -- THE CLIENT

11  EXPRESSLY ASKED ME TO EXPLAIN THAT THERE'S A HIGH MOTIVATION

12  TO SETTLE THIS CASE.  THE PROBLEM IS THERE HAS NOT BEEN A

13  SINGLE OFFER THAT HAS BEEN MADE SINCE WE'VE BEEN COUNSEL.

14  AND INSTEAD WE'VE BEEN TOLD YOU NEED TO MAKE AN OFFER, WHICH

15  WE CAN'T DO BECAUSE WE CAN'T ASSESS ANY DAMAGES.

16        **THE COURT:**  WELL, I GENERALLY TELL PLAINTIFFS TO

17  MAKE A DEMAND FIRST.  NOW, MAYBE THEY'LL SAY THEY NEED THE

18  DISCOVERY TO KNOW WHAT HAPPENED OR SO ON AND SO FORTH.  BUT

19  MY STRATEGY IN SETTLEMENT IS TO SAY THE PLAINTIFF IS THE ONE

20  WHO WANTS SOMETHING SO THE PLAINTIFF OUGHT TO MAKE A DEMAND

21  FIRST.  AND THEN THE DEFENDANT SHOULD MAKE AN OFFER IN

22  RESPONSE TO THAT.  SO I WOULD SUGGEST THAT YOU DO WHAT YOU

23  NEED TO DO TO MAKE YOUR DEMAND.

24        NOW MAYBE YOUR DEMAND INCLUDES SOME SORT OF

25  CONFESSION OR TELL US WHAT YOU DID HERE AND GIVE US THIS

1    DISCOVERY.  AND IN ADDITION TO SOME SORT OF MONETARY DEMAND

2    OR SOME SORT OF EVEN AFFIRMATIVE CONDUCT-TYPE DEMAND THAT

3    THEY WON'T DO THIS SORT OF THING AGAIN.  BUT COME UP WITH

4    SOMETHING AND PUT IT ON THE TABLE AT LEAST TO GET THINGS

5    MOVING.

6            **MR. PULGRAM:**  YOUR HONOR, WE HAVE TALKED ABOUT THE

7    NONMONETARY ASPECTS OF THIS.  UM, AND WE HAVE TOLD THEM VERY

8    CLEARLY THAT WE NEED TO GET THE ACTUAL DOCUMENTS THAT SHOW

9    WHAT HAPPENED HERE.  UM, UNLESS, UM, THEY HAVE SOME NUMBER

10   THEY'RE PREPARED TO OFFER THAT IS SUCH THAT WE COULDN'T

11   REFUSE IT, NOT EVEN KNOWING WHAT HAPPENED.  BUT AT THIS

12   POINT, HAVING A STONEWALL ERECTED SO THAT WE CAN'T SEE

13   ANYTHING OF WHAT'S HAPPENED, WE'RE NOT IN A POSITION TO --

14   TO MAKE THAT MONETARY -- WE WOULD VERY MUCH LIKE TO, BUT YOU

15   MAKE -- IT'S VERY CLEAR WHAT'S GOING ON.

16           **THE COURT:**  BUT WHAT YOU MIGHT DO THEN IS DO YOUR

17   OWN INVESTIGATION INTO WHAT REALLY WENT ON AND PRESENT TO

18   THEM A BELIEVABLE SCENARIO.  I MEAN YOU CAN UNDERSTAND WHY

19   THEY WOULDN'T WANT TO SETTLE, NOT KNOWING WHAT HAPPENED,

20   IT'S HARD TO KNOW SOMETHING IS NOT GOING TO HAPPEN AGAIN IF

21   YOU'RE NOT KNOWING THE FIRST TIME.  SO IF YOU CAN FIGURE OUT

22   HOW IT DID HAPPEN AND SHOW THEM THAT, THEN HOPEFULLY THEY'LL

23   BE IN A MORE CONDUCIVE FRAME OF MIND TO BE ABLE TO TRUST

24   THAT IT'S NOT GOING TO HAPPEN AGAIN ONCE YOU KNOW IT HAS NOT

25   HAPPENED THE FIRST TIME.

1          **MR. SINCLAIR:**  WE HAVE ANSWERED DETAILED

2   INTERROGATORIES AND PROVIDED A WITNESS WHO TESTIFIED AT

3   LENGTH ABOUT EVERYTHING THAT IS POSSIBLY WITHIN THE

4   COMPANY'S KNOWLEDGE ABOUT HOW THIS DOCUMENT LEFT THE BOUNDS

5   OF THE COMPANY AND WE JUST DON'T KNOW.  THE OTHER THING WE

6   DON'T HAVE --

7          **THE COURT:**  YOU MIGHT TRY HARDER TO FIND OUT.

8          **MR. SINCLAIR:**  I'M IN THE PROCESS OF TRYING VERY

9   HARD.  BUT AT SOME POINT YOU HIT A DEAD END.  EVERYBODY

10  RAISES THEIR HANDS AND SAY I JUST DON'T KNOW.  BUT THE

11  BIGGER PROBLEM WE'RE FACING IS THERE IS A VERY STRONG

12  IMPRESSION, BOTH BY COUNSEL AND THE CLIENT, THAT THIS CASE

13  IS ABOUT THE GENERATION OF ATTORNEYS' FEES AS THE NEED TO

14  CAUSE PAIN TO SOFTSCAPE AS A PUNISHMENT FOR WHAT IT DID WHEN

15  THERE ARE NO REAL DAMAGES.  SO WE HAVE VERY DETAILED DAMAGES

16  DISCOVERY, THE ANSWERS TO WHICH ARE DUE IN A FEW WEEKS,

17  ABOUT WHAT IT IS THEY CLAIM TO HAVE SUFFERED BECAUSE WE

18  HAVEN'T SEEN ANY DOCUMENTS THAT SUPPORT IT AND WE HAVEN'T

19  HEARD ANYTHING THAT IS REAL THUS FAR IN THE CASE.

20         **THE COURT:**  UH-HUH.

21         **MR. PULGRAM:**  I, MY ONLY COMMENT TO THAT IS I

22  DIDN'T FILE A SECOND LAWSUIT.  THE GENERATION OF ATTORNEYS'

23  FEES, I DIDN'T FILE A SECOND LAWSUIT.

24         **MR. SINCLAIR:**  DO YOU HAVE ANY COMMENT ABOUT THE

25  DAMAGES ASPECT OF THAT IN THE FIRST LAWSUIT?

1          **THE COURT:**  ARE YOU ASKING HIM?

2          **MR. SINCLAIR:**  YEAH, I WAS JUST ASKING HIM.

3          **THE COURT:**  YEAH.  GENERALLY, WE CONDUCT THINGS

4  THROUGH THE COURT.  BUT I UNDERSTAND YOU THINK THERE AREN'T

5  ANY DAMAGES.  ON THE OTHER HAND, IT'S NOT SOMETHING THAT YOU

6  WOULD WANT TO HAPPEN TO YOU SO IT MIGHT NOT JUST BE A

7  QUESTION OF --

8          **MR. SINCLAIR:**  I UNDERSTAND.

9          **THE COURT:**  -- MONEY DAMAGES.  IT MIGHT BE A

10  QUESTION OF WANTING TO MAKE SURE THAT WHY THIS HAPPENED, HOW

11  IT HAPPENED, AND YOU HAVE SOME ASSURANCE THAT IT'S NOT GOING

12  TO HAPPEN AGAIN.  AND MY FEELING IS THAT IF THAT WERE MORE

13  CLEAR THAT IT MIGHT BE ALSO MORE CLEAR THAT THERE REALLY

14  WEREN'T ANY ACTUAL QUANTITIFIABLE FINANCIAL DAMAGES.  BUT

15  THAT THEY'LL BE SATISFIED TO KNOW THAT, AS I SAY, THAT THEY

16  KNOW WHAT HAPPENED AND THEY FEEL COMFORTABLE THAT IT'S NOT

17  GOING TO HAPPEN AGAIN.  SO IT MAY BE HARD FOR YOU TO FIND

18  OUT WHAT HAPPENED, BUT IT'S A LOT HARDER FOR THEM TO FIND

19  OUT WHAT HAPPENED.  AT LEAST IT'S YOUR COMPANY.  SO I WOULD

20  GO BEYOND JUST ASKING PEOPLE WHAT HAPPENED AND ACCEPTING "I

21  DON'T KNOW" FOR AN ANSWER AND INVESTIGATING THIS.  I MEAN

22  WITH COMPUTERS THEY KEEP A LOT OF INFORMATION ABOUT THINGS

23  AND I THINK IF YOU TRY, YOU CAN FIND OUT WHAT HAPPENED.

24          **MR. SINCLAIR:**  WE ARE TRYING.

25          **THE COURT:**  OKAY.  ANYTHING ELSE?

1          **MR. PULGRAM:**  THANK YOU, YOUR HONOR.

2          **MR. SINCLAIR:**  THANK YOU, YOUR HONOR.

3          **MR. TAYLOR:**  THANK YOU.

4          **MS. CASTRO:**  THANK YOU, YOUR HONOR.

5      (WHEREUPON, AT 3:10 P.M. THE PROCEEDINGS CONCLUDED.)

6              COURT REPORTER'S CERTIFICATE

7          I, STARR A. WILSON, CSR NO. 2462, UNITED

8  STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, DO

9  HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

10 FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

11          I CERTIFY THAT THE TRANSCRIPT FEES AND FORMAT

12 COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL

13 CONFERENCE OF THE UNITED STATES.

14

15          /S/ _____

16              STARR A. WILSON, CSR NO. 2462

17

18

19

20

21

22

23

24

25

# EXHIBIT 15

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   lpulgram@fenwick.com
2  ALBERT L. SIEBER (CSB NO. 233482)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone: (415) 875-2300
5  Facsimile:  (415) 281-1350

6  PATRICK E. PREMO (CSB NO. 184915)
   ppremo@fenwick.com
7  HENRY Z. CARBAJAL III (CSB No. 237951)
   hcarbajal@fenwick.com
8  DENNIS M. FAIGAL (CSB NO. 252829)
   dfaigal@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, CA  94041
11 Telephone:     (650) 988-8500
   Facsimile:     (650) 938-5200
12
   Attorneys for Plaintiff
13 SUCCESSFACTORS, INC.

14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                          OAKLAND DIVISION

18 SUCCESSFACTORS, INC., a Delaware          Case No. CV 08-1376 CW
   corporation,
19                                           MANUAL FILING NOTICE
                  Plaintiff,
20                                           Date:          September 3, 2008
   v.                                        Time:          10:00 a.m.
21                                           Courtroom:     G, 15th Floor
   SOFTSCAPE, INC., a Delaware               Judge:         Hon. Bernard Zimmerman
22 corporation; and DOES 1-10, inclusive,
                                             Date of Filing: July 30, 2008
23               Defendants.                 Trial Date:     May 11, 2009

24

25 RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
          THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26        COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
          ANSWERS AND PROPER PRIVILEGE LOGS
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MANUAL FILING NOTICE                         -1-                    CASE NO. CV 08-1376 CW

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2    Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5    web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11    media

12    __X__    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15    Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                            By: _____/s/ Patrick Premo_____

18                                                    Patrick Premo

19                                            Attorneys for Plaintiff
                                              SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 16

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   lpulgram@fenwick.com
2  ALBERT L. SIEBER (CSB NO. 233482)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone: (415) 875-2300
5  Facsimile:  (415) 281-1350

6  PATRICK E. PREMO (CSB NO. 184915)
   ppremo@fenwick.com
7  HENRY Z. CARBAJAL III (CSB No. 237951)
   hcarbajal@fenwick.com
8  DENNIS M. FAIGAL (CSB NO. 252829)
   dfaigal@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, CA  94041
11 Telephone:    (650) 988-8500
   Facsimile:    (650) 938-5200
12
   Attorneys for Plaintiff
13 SUCCESSFACTORS, INC.

14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUCCESSFACTORS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> SOFTSCAPE, INC., a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. CV 08-1376 CW <br><br> **MANUAL FILING NOTICE** <br><br> Date:          September 3, 2008 <br> Time:          10:00 a.m. <br> Courtroom:   G, 15th Floor <br> Judge:          Hon. Bernard Zimmerman <br><br> Date of Filing: July 30, 2008 <br> Trial Date:     May 11, 2009 |

RE:   **CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY ANSWERS AND PROPER PRIVILEGE LOGS**

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1         This filing is in paper or physical form only, and is being maintained in the case file in the

2    Clerk's office.

3         If you are a participant on this case, this filing will be served in hard-copy shortly.

4         For information on retrieving this filing directly from the court, please see the court's main

5    web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6         This filing was not efiled for the following reason(s):

7         _____    Voluminous Document (PDF file size larger than efiling system allowances)

8         _____    Unable to Scan Documents

9         _____    Physical Object (description): _____

10        _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11   media

12        ___X___    Item Under Seal

13        _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14        _____    Other (description): _____

15   Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                           By:_____ /s/ Patrick Premo _____

18                                                            Patrick Premo

19                                           Attorneys for Plaintiff
                                             SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 17

LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
ALBERT L. SIEBER (CSB NO. 233482)
lmah@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

PATRICK E. PREMO (CSB NO. 184915)
ppremo@fenwick.com
HENRY Z. CARBAJAL III (CSB No. 237951)
hcarbajal@fenwick.com
DENNIS M. FAIGAL (CSB NO. 252829)
dfaigal@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     (650) 988-8500
Facsimile:      (650) 938-5200

Attorneys for Plaintiff
SUCCESSFACTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUCCESSFACTORS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOFTSCAPE, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 08-1376 CW<br><br>**MANUAL FILING NOTICE**<br><br>Date:          September 3, 2008<br>Time:         10:00 a.m.<br>Courtroom:  G, 15th Floor<br>Judge:        Hon. Bernard Zimmerman<br><br>Date of Filing:  July 30, 2008<br>Trial Date:      May 11, 2009 |

**RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY ANSWERS AND PROPER PRIVILEGE LOGS**

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      This filing is in paper or physical form only, and is being maintained in the case file in the

2   Clerk's office.

3      If you are a participant on this case, this filing will be served in hard-copy shortly.

4      For information on retrieving this filing directly from the court, please see the court's main

5   web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6      This filing was not efiled for the following reason(s):

7      _____    Voluminous Document (PDF file size larger than efiling system allowances)

8      _____    Unable to Scan Documents

9      _____    Physical Object (description): _____

10     _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11  media

12     __X__     Item Under Seal

13     _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14     _____    Other (description): _____

15  Dated: July 30, 2008                          FENWICK & WEST LLP

16

17                                                By:_____/s/ Patrick Premo_____

18                                                           Patrick Premo

19                                                Attorneys for Plaintiff
                                                  SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 18

LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
ALBERT L. SIEBER (CSB NO. 233482)
lmah@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

PATRICK E. PREMO (CSB NO. 184915)
ppremo@fenwick.com
HENRY Z. CARBAJAL III (CSB No. 237951)
hcarbajal@fenwick.com
DENNIS M. FAIGAL (CSB NO. 252829)
dfaigal@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:    (650) 988-8500
Facsimile:    (650) 938-5200

Attorneys for Plaintiff
SUCCESSFACTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUCCESSFACTORS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOFTSCAPE, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 08-1376 CW<br><br>**MANUAL FILING NOTICE**<br><br>Date:          September 3, 2008<br>Time:          10:00 a.m.<br>Courtroom:   G, 15th Floor<br>Judge:         Hon. Bernard Zimmerman<br><br>Date of Filing:  July 30, 2008<br>Trial Date:      May 11, 2009 |

**RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY ANSWERS AND PROPER PRIVILEGE LOGS**

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2  Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5  web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11  media

12    ___X___    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15  Dated: July 30, 2008                              FENWICK & WEST LLP

16

17                                                  By: _____/s/ Patrick Premo_____

18                                                          Patrick Premo

19                                                  Attorneys for Plaintiff
                                                    SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 19

1   LAURENCE F. PULGRAM (CSB NO. 115163)
    lpulgram@fenwick.com
2   ALBERT L. SIEBER (CSB NO. 233482)
    lmah@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone: (415) 875-2300
5   Facsimile:  (415) 281-1350

6   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
7   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
8   DENNIS M. FAIGAL (CSB NO. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA  94041
11  Telephone:     (650) 988-8500
    Facsimile:     (650) 938-5200

12
    Attorneys for Plaintiff
13  SUCCESSFACTORS, INC.

14                  UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                       OAKLAND DIVISION

17

18  SUCCESSFACTORS, INC., a Delaware          Case No. CV 08-1376 CW
    corporation,
19                                            **MANUAL FILING NOTICE**
                    Plaintiff,
20                                            Date:       September 3, 2008
    v.                                        Time:       10:00 a.m.
21                                            Courtroom:  G, 15th Floor
    SOFTSCAPE, INC., a Delaware               Judge:      Hon. Bernard Zimmerman
22  corporation; and DOES 1-10, inclusive,
                                              Date of Filing: July 30, 2008
23                  Defendants.               Trial Date:     May 11, 2009

24

25  **RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
            THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26          COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
            ANSWERS AND PROPER PRIVILEGE LOGS**

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2  Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5  web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11  media

12    __X__    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15  Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                By: _____ /s/ Patrick Premo _____

18                                        Patrick Premo

19                                Attorneys for Plaintiff
                                 SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 20

# MINTZ LEVIN

3580 Carmel Valley Rd. Suite 300
San Diego, California 92130
858-314-1500
858-314-1501 fax
www.mintz.com

**Ben L. Wagner** | 858 314 1512 | bwagner@mintz.com

June 24, 2008

**VIA EMAIL AND U.S. MAIL**

Liwen Mah, Esq.
Fenwick & West, LLP
555 California Street, 12th Floor
San Francisco, CA 94104

*Re: SuccessFactors, Inc. v. Softscape, Inc.*;
    Case No.: C08-1376 CW (BZx)

Dear Mr. Mah:

We have received no answer to our inquiry as to which of SuccessFactors' flurry of recent letters should be addressed in which order. However, what follows are Softscape's brief responses to your June 12, 2008 letter concerning Softscape's supplemental responses to Success Factors' 1st RFPs, which are by no means exhaustive and can be discussed in more detail during an in-person meet and confer as required by Magistrate Zimmerman.

## General Objections

As we indicated during our prior meet and confer sessions, we intend to withdraw general objections that go beyond privilege, privacy, improper instructions and definitions. This will be reflected in Softscape's forthcoming amended responses, where any objections will be specifically interposed where appropriate. We expect SuccessFactors to do the same.

### General Objections About the Time Limits and Presentation scope

1.    **Time Limits**

Softscape previously agreed to broaden its search for responsive documents as far back as February 1, 2007, which encompasses the timeframe in which SuccessFactors claims that the "genesis" of the Presentation/SIPP occurred. Requesting Softscape to conduct a general search further back than February 1, 2007 constitutes an improper fishing expedition by SuccessFactors and would unduly burden Softscape with unreasonable e-discovery costs. We do not believe that Mr. Watkins' deposition testimony or Softscape's interrogatory responses justify SuccessFactors' change in its prior position.

As demonstrated by Mr. Watkins' testimony, the SIPP was compiled well within the February 1, 2007 reach-back. *See, e.g.* Rough Deposition Transcript at pp. 147:12-148:15; *see*

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Liwen Mah, Esq.
June 24, 2008
Page 2

*also id.* at p. 139:4-5. Mr. Watkins further testified in deposition that SuccessFactors' customer attrition data was compiled in 2008, regardless of the dates the attrition covered. As a result, SuccessFactors has not provided an appropriate or compelling reason for Softscape to search beyond February 1, 2007 as to any general or specific line of inquiry.[1]

## 2.    Presentation

Softscape's reasons for the distinction between the Presentation and the SIPP are cogent and have been laid out many times during various meet and confer, as well as in its responses to SuccessFactors' Interrogatories. Nevertheless, as demonstrated by the agreed-upon search terms, Softscape is searching for documents responsive to matters pertaining to both the Presentation and SIPP.

## General Objections about privilege with respect to FTI

Your concern lacks context as FTI is not specifically raised in the general objections. Suffice it to say that the attorney-client privilege extends to FTI, and privileged documents will be logged where appropriate. *In re Bieter Co.*, 16 F.3d 929, 933, 939-40 (8th Cir.1994); *U.S. v. Schwimmer*, 892 F.2d 237, 244, 29 Fed. R. Evid. Serv. 434 (2d Cir. 1989); *AMCO Ins. Co. v. Madera Quality Nut LLC*, 2006 WL 931437 **18-19 (E.D. Cal. Apr. 11, 2006); *Sanborn v. Parker*, 2007 WL 495202 *10 (W.D. Ky. Feb. 14, 2007); 81 Am. Jur. 2d Witnesses § 391. Otherwise, there is no obligation to log non-responsive privileged documents. *Federal Trade Com'n v. Digital Interactive Associates, Inc.*, 1997 WL 524905 *4 (D. Colo. March 17, 1997).

## Repeated responses agreeing to produce "relevant" documents

As indicated in meet and confer regarding SuccessFactors' deficient responses, Softscape agrees to amend to replace "relevant" with "responsive" documents to fully comply with Rule 34, and expects SuccessFactors to do the same.

## Specific Requests and Objections

## Request No. 2

SuccessFactors has yet to identify any lost customers or potential customers or specify its alleged damages. Yet it believes it is entitled broadly to any documents concerning those who are "potential, intended, or actual recipients of the PRESENTATION." Limiting communications to those concerning the Presentation is a reasonable narrowing of an otherwise

---

[1] Without agreeing to SuccessFactors' amended response to Softscape's RFPs (Set One), Softscape notes that SuccessFactors has amended to itself object to the time period dating to January 1, 2005 on the basis that "there has been no showing that any part of the Presentation is older than two years." Thus, under SuccessFactors' own concession, there can be no basis for Softscape to search as far back as 2004 for these Requests.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Liwen Mah, Esq.
June 24, 2008
Page 3

overbroad request, and SuccessFactors has provided nothing to show how potential or intended recipients bear on the issues in this case. Documents and communications relating to parties wholly unrelated to the Presentation are irrelevant even under Rule 26's broad definition of relevancy, and certainly not sufficiently along the sliding scale of relevance to justify the invasion into Softscape's confidential and proprietary information.

### Request No. 6

Your description of what this request is seeking is inconsistent with the conjunctive manner in which it is drafted. In that regard, this request seeks communications between Softscape, Sears, Regions Bank, Intelsat, Dave Sinkfield, ICMA Retirement, Harris-Williams, **and** current and former SuccessFactors employees.

With respect to the specific customers and individual identified in the request, Softscape has merely limited that request as it relates to the scope of this litigation (i.e. as such communications relate to the SIPP/Presentation and the truth of the matters asserted therein), which is entirely appropriate given that SuccessFactors has not gone beyond unsupported speculation as to conduct beyond matters pertaining to the Presentation. Notwithstanding the foregoing, Softscape has included these general search terms in its ESI search and will agree to amend its response to include all communications between Softscape and Sears, Regions Bank, Intelsat, Dave Sinkfield, ICMA Retirement, and Harris-Williams regarding SuccessFactors, which occurred between February 1, 2007 to the present.

Concerning communications with "any current or former SUCCESSFACTORS employee or consultant," there is no basis for going beyond those related to the facts contained in the SIPP/Presentation. Further, despite discovery previously propounded by Softscape, SuccessFactors has yet to produce documents sufficient to identify any of its current or former employees. Thus, it is premature for SuccessFactors to seek such communications when in most instances Softscape has no idea the specific identities of who may work or have worked for SuccessFactors.

Finally, with respect to communications with unidentified SuccessFactors customers and "prospective customers," the only relevant "customers" are those that SuccessFactors asserts that Softscape made untruthful statements about in the SIPP/Presentation and those it claims to have lost as a direct and proximately result of the statements made in the Presentation. Once SuccessFactors specifically identifies such "customers" in response to Softscape's interrogatories, Softscape is open to further meet and confer regarding the scope of this request.

### Request No. 7-8

As stated, Softscape has agreed to go back as far as February 1, 2007. More broadly, the support for your positions is unclear. We can discuss these Requests and any remaining disagreement at an in-person meet and confer conference, the method for resolution specified by Magistrate Zimmerman. However, if you have further information to support your positions, which were a bit confusing, we will also consider that additional information.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
June 24, 2008
Page 4

### Requests 10-12

    SuccessFactors is simply not entitled to a mirror/forensic imaging of data storage media for David Watkins, Dennis Martinek or "any computer that was involved" with the Presentation. To provide SuccessFactors unfettered access to media that contains a wealth of non-responsive, irrelevant and highly confidential and private information is entirely improper. Softscape has indicated its willingness to search and produce documents in this litigation, and speculation that items will not be included in such production is not an adequate basis upon which to justify an intrusive mirror imaging of entire hard drives. *Memry Corp. v. Kentucky Oil Technology, N.V.*, 2007 WL 832937 **3-4 (N.D. Cal. Mar. 19, 2007); *see also Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291 *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."); *Bethea v. Comcast*, 218 F.R.D. 328, 330 (D.D.C. 2003); *Floeter v. City of Orlando*, 2006 WL 1000306 *3 (M.D. Fla. Apr. 14, 2006) (plaintiff "has not made any showing that he has requested information contained on these computer hard drives that the [defendant] has failed to produce"); *Balfour Beatty Rail, Inc. v. Vaccarello*, 2007 WL 169628 **2-3 (M.D. Fla. Jan. 18, 2007) (court denied motion to compel because "Plaintiff's requests simply seek computer hard drives. Plaintiff does not provide any information regarding what it seeks to discover from the hard drives nor does it make any contention that Defendants have failed to provide requested information contained on these hard drives.").

    SuccessFactors' concerns are not sustainable at this stage in the litigation. Agreeing to search terms, as Softscape has done, is sufficient to avoid an order as broad and sweeping as imaging of storage media. *Calyon v. Mizuho Securities USA Inc.*, 2007 WL 1468889 **5-6 (S.D.N.Y. 2007) (refusing to order images to be produced to independent expert for search as unnecessary additional layer; defendants indicated willingness to conduct search and there was no reason to question their ability to completely search based upon agreed-upon search protocol).

    In any event, the scope of the imaging requested is fatally overbroad. *Positive Software Solutions Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 561, 562-63 (N.D. Tex. 2003) (Denying request for image of servers and computers that potentially contained relevant evidence; "Imaging would include not only the files at issue, but also anything else that happened to be on a server containing one of those files, which could include irrelevant or privileged information not otherwise discoverable, possibly even including deleted files. The Court remains of the opinion that the scope of the proposed imaging is substantially overbroad.")

### Request No. 13

    Your description of what you hope to obtain in response to Request No. 13 is not consistent with the type of documents this request seeks. Contracts, licenses or agreements, whether in 'actual or prospective' form, do nothing to support SuccessFactors' case - especially those entered into prior to March 4, 2008 when the Presentation was disseminated by John Anonymous.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Liwen Mah, Esq.
June 24, 2008
Page 5

Your "poaching" phraseology also reveals a fundamental defect with this request. As a general proposition, competition is not unlawful. This dispute is not about one competitor's "plans to poach" customers of another, but rather it is about a Presentation and the effect (if any) of its dissemination on customers and potential customers of SuccessFactors. Naturally, any such result harm would occur *after* March 4, 2008, and more importantly consistent with the allegations in SuccessFactors' Complaint.

Finally, SuccessFactors has yet to identify *any* alleged harm to its customer relations or lost customers resulting from the dissemination of the Presentation. Thus, Softscape should not be required to produce highly confidential contracts with any "customers" other than those referenced in the Presentation (if any such documents exist) or any recipients thereof. If SuccessFactors wishes to identify which customers or potential customers (e.g. identifiable prospective economic relationships that would have been commenced but-for the Presentation) were lost as a result of the Presentation, then Softscape will be in a position to search for and produce such documents related to those parties.

**Request No. 14**

The Request is limited to the parties named in it, and not those who used those names, as that would simply lead to a never-ending circle -- it will not be construed beyond comprehension "to include anyone falsely using it here." Softscape has included the names identified in the Request in its search terms and will produce resulting documents within the responsive time frame. That should resolve your concerns with respect to this request.

**Request No. 15**

It is only *use in commerce* of a mark that even qualifies for trademark infringement, and then only if it is likely to confuse as to the *source* of origin. It is for this reason that the Presentation, with its critique of SuccessFactors and reference to it in the third person, could never be confused as actually emanating from SuccessFactors. But even indulging the untenable theory that SuccessFactors' trademark is implicated by its use in the disseminated Presentation, internal use of trademarks is not use in commerce, and thus cannot constitute infringement. Internal use is thus not reasonably within the scope of discovery. Nevertheless, Softscape has produced a number of documents with SuccessFactors' name and logo. Please re-review the already produced documents first before we discuss this further. In any event, your reference to it being "quite possible" that other contexts occurred acknowledges the sheer speculation of any further discovery.

**Request No. 16**

The Request is directed at Plaintiff Softscape, not New Millenium or David Watkins (either as an individual, or in a separate capacity with New Millenium). Softscape has included search terms that cover New Millenium and will produce all such documents in its possession, custody and control. New Millenium Shoe is a separate company and not an alleged "shell company" as SuccessFactors inaccurately described in the case management statement. To the

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
June 24, 2008
Page 6

extent that SuccessFactors feels that Softscape's forthcoming production is insufficient, it should obtain further responsive documents *via* its third party subpoena to New Millenium, which is represented by Ron Davids' office.

\* \* \*

      As stated above, this letter is merely a response to your prior letter and to provide talking points during an in-person meet and confer on any of responses in which SuccessFactors remains unsatisfied. We will be happy to schedule an in-person meet and confer discussion to address any such remaining issues.

Sincerely,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

/s/ Ben Wagner

Ben L. Wagner

BW/sb

# EXHIBIT 21

1    LAURENCE F. PULGRAM (CSB NO. 115163)
     lpulgram@fenwick.com
2    ALBERT L. SIEBER (CSB NO. 233482)
     lmah@fenwick.com
3    FENWICK & WEST LLP
     555 California Street, 12th Floor
4    San Francisco, CA  94104
     Telephone: (415) 875-2300
5    Facsimile:  (415) 281-1350

6    PATRICK E. PREMO (CSB NO. 184915)
     ppremo@fenwick.com
7    HENRY Z. CARBAJAL III (CSB No. 237951)
     hcarbajal@fenwick.com
8    DENNIS M. FAIGAL (CSB NO. 252829)
     dfaigal@fenwick.com
9    FENWICK & WEST LLP
     Silicon Valley Center
10   801 California Street
     Mountain View, CA  94041
11   Telephone:    (650) 988-8500
     Facsimile:    (650) 938-5200

12
     Attorneys for Plaintiff
13   SUCCESSFACTORS, INC.

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                         OAKLAND DIVISION
17

18   SUCCESSFACTORS, INC., a Delaware         Case No. CV 08-1376 CW
     corporation,
19                                            MANUAL FILING NOTICE
                        Plaintiff,
20                                            Date:       September 3, 2008
     v.                                       Time:       10:00 a.m.
21                                            Courtroom:  G, 15th Floor
     SOFTSCAPE, INC., a Delaware              Judge:      Hon. Bernard Zimmerman
22   corporation; and DOES 1-10, inclusive,
                                              Date of Filing:  July 30, 2008
23                      Defendants.           Trial Date:      May 11, 2009

24

25   RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
            THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26          COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
            ANSWERS AND PROPER PRIVILEGE LOGS
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2    Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5    web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11    media

12    ___X___    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15    Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                    By:_____/s/ Patrick Premo_____
                                             Patrick Premo
18
                                    Attorneys for Plaintiff
19                                    SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 22

1   LAURENCE F. PULGRAM (CSB NO. 115163)
    lpulgram@fenwick.com
2   ALBERT L. SIEBER (CSB NO. 233482)
    lmah@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone: (415) 875-2300
5   Facsimile:  (415) 281-1350

6   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
7   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
8   DENNIS M. FAIGAL (CSB NO. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA  94041
11  Telephone:    (650) 988-8500
    Facsimile:    (650) 938-5200
12
    Attorneys for Plaintiff
13  SUCCESSFACTORS, INC.

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                          OAKLAND DIVISION
17

18  SUCCESSFACTORS, INC., a Delaware        Case No. CV 08-1376 CW
    corporation,
19                                          MANUAL FILING NOTICE
                      Plaintiff,
20                                          Date:      September 3, 2008
    v.                                      Time:      10:00 a.m.
21                                          Courtroom: G, 15th Floor
    SOFTSCAPE, INC., a Delaware             Judge:     Hon. Bernard Zimmerman
22  corporation; and DOES 1-10, inclusive,
                                            Date of Filing: July 30, 2008
23                    Defendants.           Trial Date:     May 11, 2009

24

25  RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
           THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26         COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
           ANSWERS AND PROPER PRIVILEGE LOGS
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    This filing is in paper or physical form only, and is being maintained in the case file in the

2  Clerk's office.

3    If you are a participant on this case, this filing will be served in hard-copy shortly.

4    For information on retrieving this filing directly from the court, please see the court's main

5  web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6    This filing was not efiled for the following reason(s):

7    _____    Voluminous Document (PDF file size larger than efiling system allowances)

8    _____    Unable to Scan Documents

9    _____    Physical Object (description): _____

10    _____    Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11  media

12    ___X___    Item Under Seal

13    _____    Conformance with the Judicial Conference Privacy Policy (General Order 53).

14    _____    Other (description): _____

15  Dated: July 30, 2008                FENWICK & WEST LLP

16

17                                   By:_____/s/ Patrick Premo_____

18                                            Patrick Premo

19                                   Attorneys for Plaintiff
                                     SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 23



About Us

Why Softscape

Leadership Team

Customers

Partners

News

Careers

Contact

## Softscape Acknowledges Limited Preliminary Injunction in Lawsuit

FOR IMMEDIATE RELEASE

**Wayland, MA – March 31, 2008 -** Softscape, the global leader in integrated people management software, today announced it appreciates the decision by the District Court for the Northern District of California to limit the preliminary injunction requested by SuccessFactors (NASDAQ:SFSF). Softscape issued this statement:

"While the full truth of this complex case can only be revealed through the litigation process, as opposed to public relations tactics, SuccessFactors continues to mischaracterize numerous details surrounding this case, including references to New Millenium Shoe Corp., which has been doing business for more than 20 years.

"Softscape is taking this matter very seriously as it continues its own investigation, and respects the Court's careful consideration on this matter. Softscape does not condone the use of this type of tactic during the sales process, and the company has specifically instructed its sales force not to engage in any dissemination of the presentation.

"This is an unfortunate event that shows just how competitive our market has become. As a pioneer in the human resources technology industry, we are focused on what we do best: helping our customers achieve bottom-line results. We are infinitely passionate and 100 percent dedicated to our customers, our hard-working employees, and this industry. Our profitable operations and extremely high customer satisfaction and retention rates are true testaments to these efforts."

***About Softscape*** (www.softscape.com)
Softscape is the global leader in integrated people management software that enables organizations to more effectively drive their business performance. Recognized by industry analysts as the most comprehensive strategic human capital management solution, Softscape provides complete employee lifecycle management, including a core system of record, in a single, integrated platform for improved business intelligence. The company offers customers of all sizes and in all industries the most flexibility and choice with multiple purchase, configuration, and deployment options. For more than a decade, Softscape has helped millions of workers across 156 countries be more successful at their jobs while contributing to bottom-line results. Softscape's customers represent Fortune 500/Global 500, mid-market, and government organizations, including Proctor & Gamble, Barclays, AstraZeneca, Seagate, GKN, Edcon, LandAmerica, and the U.S. Department of Homeland Security. Softscape is based in Massachusetts with offices in London, Sydney, New York City, Chicago, San Francisco, Hartford, Washington, D.C., Bangkok, Hong Kong, and Johannesburg.

The Softscape logo and marks related to Softscape products are either trademarks or registered trademarks of Softscape, Inc. Other brand and product names contained herein may be trademarks or registered trademarks of their respective holders.

Media Contact

▸ Christopher
  +1 (508) 35
  cfaust@s

White Papers

 State of the

 Employee E

 Succession

Pay-for-Per

Contact | Privacy | Legal Notice | Privacy | Careers     526 Boston Post Road, Wayland, MA, USA 01778 | (800) 881-2546 | info@softscape.com |

# EXHIBIT 24

# FENWICK & WEST LLP

555 CALIFORNIA STREET, 12TH FLOOR    SAN FRANCISCO, CA 94104

TEL 415.875.2300    FAX 415.281.1350    WWW.FENWICK.COM

June 14, 2008

LIWEN MAH

EMAIL lmah@fenwick.com
DIRECT DIAL (415) 875-2336

## VIA ELECTRONIC AND U.S. MAIL
HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY

Jeffrey Ratinoff, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
1400 Page Mill Road
Palo Alto, CA 94304-1124

Re:    *SuccessFactors, Inc. v. Softscape, Inc.,*
       Case No.: C-08-1376 (CW)

Dear Jeff:

I write to address specific amended objections Softscape made on May 19, 2008 with respect to SuccessFactors' Second Set of Requests for Production of Documents. Softscape's objections unreasonably narrow the scope of Softscape's production and would unacceptably hold back important, relevant documents.

### General Objections

In meet-and-confer sessions, Softscape has questioned SuccessFactors' use of general objections in responses to Softscape's discovery requests, but I note that Softscape has seen fit to list ten general objections in its own responses. Softscape has taken an inconsistent stance with respect to the use of general objections by Softscape versus their use by SuccessFactors. As we have indicated during our meet-and-confer discussions, we expect that Softscape will tell us, as SuccessFactors has agreed to tell you, the extent to which Softscape is withholding or otherwise in any way limiting discovery based on these general objections. Please advise.

That notwithstanding, at least a few certain general objections have obvious, more specific flaws:

### 1. General Objections about the time limits and Presentation scope

It is clear from Softscape's interrogatory responses and deposition testimony that the Presentation involved multiple iterations and collection of information since at least 2004. Thus Softscape's General Objection No. 5 that it should not have to produce documents older than January 1, 2008 is an unreasonable time restriction. For example, Softscape began collecting SuccessFactors' customer attrition data at least as long ago as autumn of 2004 and began setting up New Millenium Shoe as a potential SuccessFactors customer prior to January 2008. It also appears that Softscape accessed password protected areas in violation of the Computer Fraud and Abuse Act prior to January 2008. Responsive documents about these and other topics are surely dated before January 1, 2008.

June 14, 2008
Page 2

Similarly, it is clear that the Presentation underwent several iterations. Since the creation and authorship of the Presentation are not only relevant, but critical, to this case, General Objection No. 9 unreasonably restricts the term "PRESENTATION" to simply the document Bates labeled as SF00000001-SF00000043. Pretending that "PRESENTATION" does not include the various versions of the Presentation—including what Softscape chooses to refer to as the "SIPP" in its interrogatory responses—is unjustified. To the extent that Softscape wishes to use different terminology for the Presentation, SuccessFactors maintains that each discovery request about the Presentation necessarily encompasses all of the various versions of the Presentation or the SIPP, however you choose to refer to it. Please advise if you are willing to include all such materials.

## 2.    General Objections about privilege with respect to FTI

As you know, SuccessFactors has been frustrated by the fact that Softscape has so far failed to produce core documents relating to the investigation of the Presentation and its dissemination, even though Softscape had retained FTI to assist with such an investigation in March 2008, three months ago. In light of FTI's collection efforts, Softscape cannot claim that its lack of production is because it does not yet have the documents. Based on the privilege logs that Softscape has thus far submitted, Softscape also does not appear to be claiming that the bulk of the documents collected by FTI are privileged. Thus we seek confirmation that Softscape will produce the documents collected by FTI, rather than withhold them under some vague assertion of privilege not yet disclosed.

## 3.    Repeated responses agreeing to produce "relevant" documents

In each response in which Softscape agrees to produce documents, Softscape purports to limit its production to "relevant" documents. This is not the standard for discovery under the Federal Rules, nor is it appropriate for Softscape to impose its own unilateral view of relevancy. We therefore require Softscape to produce responsive documents within the scope of the requests, not merely documents that it subjectively deems to be "relevant." We therefore insist that you confirm that Softscape will eliminate this limitation entirely, as you suggested during previous meet and confer sessions. If Softscape has a scope of objection, it can describe the scope of that objection, but a vague filter of "relevancy" is unacceptable.

### Specific Requests and Objections

In addition to the above, SuccessFactors notes the following flaws to Softscape's objections to SuccessFactors' specific requests for documents.

## Request No. 17

To be clear, the Request seeks not only actual press releases, but documents concerning those releases, including drafts never released, communications about those releases, and plans for those releases. Such documents are highly relevant as to Softscape's acts, knowledge, and intentions in issuing those releases, republishing false information, and causing injury to SuccessFactors. These documents may also show participation by third parties (such as Mr. Kutik or others) that bear on bias or assertions of privilege. Thus Softscape's attempt to

June 14, 2008
Page 3

narrowly limit production to just documents that "contain" press releases about this action is an unreasonable limitation.

Given the short period since the commencement of this action and the modest number of press releases, it is hardly a burden to produce documents concerning actual or planned press releases, as SuccessFactors requested.

### Request No. 19

Softscape's response appears to be a wholesale refusal to produce documents showing its actual and prospective customers as of when John Anonymous sent the Presentation. Contrary to Softscape's assertion, a showing of Softscape's customers is both relevant and likely to lead to discovery of admissible evidence. Among other things, first, the origin of John Anonymous's long list of customer recipients is at issue. Softscape's list of customers as of March 4, 2008 is highly probative of the source of that list and Softscape's involvement in the Presentation's dissemination. Second, the list is highly probative of whether Softscape has customers that do not allow their names to be used as references. Third, the list would identify prospective customer deals that Softscape consummated after the creation and distribution of the Presentation. Furthermore, the burden on Softscape is modest, since SuccessFactors asks only for documents sufficient to identify the customers, not all documents. There is no sound basis for Softscape's refusal to produce.

### Request No. 20

Obviously communications with the recipients of John Anonymous's gmail are highly relevant, *inter alia*, as to John Anonymous's identity. In addition, overlap of communications by Softscape with these recipients and John Anonymous's communications with the same group will be probative of Softscape's responsibility and the source of John Anonymous's list. Communications with such persons after receipt of the Presentation will also be relevant to the impact of the Presentation, as well as the way that Softscape was responding—whether it did anything to mitigate the damage from the dissemination or rather ratified and sought to benefit from it.

Softscape's response inexplicably mischaracterizes a search for such communications as potentially burdensome and extensive. It is hard to understand how an electronic search for a finite set of individuals' unique e-mail addresses would be excessively costly or burdensome. The requested time period is short, limited to this calendar year. Moreover, since the bulk of the e-mail addresses are tied to specific individuals who probably do not often correspond with Softscape, the requested search is unlikely to turn up a large number of documents. Nevertheless, the documents that do turn up will likely be critical to revealing who disseminated the Presentation and why. While SuccessFactors is willing to confer in the unlikely event that the search turns up an unwieldy number of nonresponsive documents, SuccessFactors expects that Softscape should have little problem meeting this request.

### Request Nos. 21, 27

These Requests seek communications involving individuals who sent or received e–mails shortly after the dissemination of John Anonymous's gmail. In its responses to these Requests,

June 14, 2008
Page 4

Softscape repeats an unacceptable limitation, restricting production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION." SuccessFactors Requests are not so limited, nor should they be.

Although the individuals or email accounts described in these Requests appear to have communicated directly on March 5, 2008 about the Presentation, their communications on other occasions with Softscape's customers are relevant to establishing the identity, use and purpose of these email accounts, and to show Softscape's broader scheme for targeting customers with calumny about SuccessFactors. Softscape's attempt to rewrite the Requests for SuccessFactors is inappropriate, and Softscape should produce documents without any limitation as to whether the documents pertain to the Presentation.

### Request Nos. 22-25

These Requests pertain to communications involving key individuals who, *inter alia*, played a significant role in strategizing how to attack SuccessFactors, pretexting as SuccessFactors' customer, accessing SuccessFactors information and systems, or attempting to bolster Softscape's position with its customers after the filing of this action. In its responses to these Requests, Softscape recycles an unacceptable limitation, restricting production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION." SuccessFactors Requests are not so limited, nor should they be.

The communications sought by these Requests might not relate to the Presentation yet still be highly relevant as to who Softscape deemed to be receptive to anti-SuccessFactors marketing efforts and why, and to show additional false advertising, representations, and statements about SuccessFactors. The communications with customers are also highly relevant as to the injury to SuccessFactors and its goodwill from the misuses of its proprietary information and false statements other than the Presentation. SuccessFactors is willing to narrow these Requests to communications that relate to the Presentation, its contents, SuccessFactors, this litigation, or any recipient of the Presentation, including but not limited to the recipient's of John Anonymous's gmail. Any further limitation by Softscape is unacceptable.

### Request No. 26

I believe that your response meant to say that Softscape will produce communications between Softscape and wildgracks@yahoo.com, not "between wildgracks@yahoo.com." Please confirm.

Softscape also attempts to limit its production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION." This is unacceptable. SuccessFactors Request is not so limited. This e-mail address appears to be that of Dennis Martinek, who chose this email address, rather than his Softscape address, to communicate with John Anonymous during business hours. This suggests that this email is used for business purposes relating to unfair competition, which makes communications from it particularly important. Further, on at least one occasion Martinek falsely posed as a customer of SuccessFactors in order to obtain information that SuccessFactors would not have freely given to a competitor. Thus it is likely that communications between his private e-mail address and Softscape will help reveal the extent of Softscape's pretexting, and not just as it relates to the

June 14, 2008
Page 5

Presentation. Furthermore, since the e-mail address is ostensibly for Mr. Martinek's private use, not his Softscape e-mail address, the volume of communications for the narrowly tailored period should be reasonable. Thus SuccessFactors insists on the production of all the communications, not merely those relating to the Presentation or its contents.

**Request Nos. 28-29**

These Requests pertain not only to the Presentation and its contents, but also to Softscape's role in strategizing how to attack SuccessFactors, pretexting as SuccessFactors' customer, accessing SuccessFactors information and systems. The Requests are also highly relevant to the extent of injury flowing from such activities. In its responses to these Requests, Softscape improperly attempts to limit its production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION." SuccessFactors Requests are not so limited, nor should they be.

Documents concerning recipients of information obtained through the New Millenium Shoe ruse (Request No. 28) are relevant to show who obtained and used the information fraudulently obtained, and what use was made of it, whether that information eventually made it into the Presentation or not. SuccessFactors is obviously entitled to documentation of who received the Contract Proposal fraudulently obtained, and who received reports from those who reviewed the ACE 275 account, regardless of whether those, or any other materials obtained from SuccessFactors, made it into the Presentation. This information will also show who cooperated and participated in the New Millenium Shoe scheme, who may have supplied content for the Presentation, who may have wrongly disseminated the ill-gotten information obtained from SuccessFactors and how far it may have been disseminated,regardless of whether they mention of the Presentation. Likewise, documents discussing information obtained from SuccessFactors by New Millenium Shoe (Request No. 29) are equally relevant, regardless of whether they mention the Presentation or discuss other information illicitly obtained. They are relevant to, *inter alia*, Softscape's liability for CFAA violations, the extent of injury to SuccessFactors from such violation, Softscape's intent to harm SuccessFactors and misuse information, and how Softscape used or mischaracterized the information obtained from SuccessFactors. Softscape's attempt to rewrite the Requests for SuccessFactors is inappropriate, and Softscape should produce documents without any limitation as to whether the documents pertain to the Presentation.

In addition, the Request seeks documents concerning recipients of any documents *or information* provided to New Millenium Shoe, Ely Valls, or Javier Cruz. Since there were live interactions between these persons and SuccessFactors, it is clear that they received information, not just documents, and Softscape's purported limitation to recipients or discussions of "documents" is inappropriate.

In addition, now that Softscape has revealed Javier Cruz to be a "nom de plume" of David Watkins, they should be treated as one person for the purposes of this Request, and we need your confirmation that that Javier Cruz is construed to include David Watkins.

June 14, 2008
Page 6

### Request Nos. 30, 33-39

These Requests pertain to access between Softscape computers and certain other parties or IP addresses. Softscape in each response has attempted to narrow production to documents concerning access between those IP addresses and "Softscape IP addresses." This narrowing is unacceptable because of the possibility that Softscape computers accessed the other parties or IP addresses without first connecting through Softscape's network. Softscape has acknowledged that some of its computers are laptops that can be used remotely. Softscape must produce documents not only about access involving Softscape IP addresses, but also Softscape computers not connected to Softscape's networks.

Separately, in our June 11, 2008 meet-and-confer, you requested the courtesy of more information about the IP addresses in these Requests to aid Softscape's searches.

For your convenience, the IP addresses are as follows:

| | |
|---|---|
| 74.94.170.178 | Courtyard Marriott as shown in its subpoena response |
| 65.96.237.54 | Dave/Lillian Watkins |
| 65.96.233.62 | Identified in Network Solutions' subpoena response |
| 62.140.137.160 | Identified in Network Solutions' subpoena response |
| 217.188.122.88 | Identified in Network Solutions' subpoena response |
| 82.108.171.66 | Softscape UK |
| 24.34.56.79 | Rick Watkins |
| 98.216.168.122 | Dave/Lillian Watkins |

### Request Nos. 30-31

Softscape's responses purport to limit the production to documents concerning access until March 4, 2008. Because of the possibility that John Anonymous conducted activity after March 4, 2008, this date should be extended until at least March 31, 2008, which should pose marginal burden on Softscape. In addition, as illustrated by the examples of documents listed in Request No. 31, documents relevant to the identity of John Anonymous would not necessarily relate "to the PRESENTATION or any facts contained or statements made in the PRESENTATION." Also, documents showing interaction between the Courtyard Marriott's IP address and Softscape may suggest who historically used the Courtyard Marriott to communicate with Softscape. For Request Nos. 30-31, SuccessFactors therefore insists that Softscape produce the requested documents, irrespective of whether they relate to the Presentation or its contents.

### Request No. 32

Proposed or actual licenses and the like are highly probative of Softscape's intentions with respect to the Presentation, the targets of the Presentation, and damages. The time period is modest, being limited to this calendar year, so the breadth is reasonable.

June 14, 2008
Page 7

**Request No. 33**

I believe the response meant to list 65.96.237.54 as the IP address.  Please confirm.

In addition, Softscape's attempt to limit its production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION" is unacceptable. The household associated with this IP address is that of Dave Watkins, who admittedly was not only involved with the Presentation, but also, for example, with New Millenium Shoe, access of SuccessFactors' demonstration environment, and planning of attacks on SuccessFactors. Further, the time of log ins can evidence Mr. Watkins' whereabouts and activities during critical time periods. Given that Dave and Lillian Watkins likely accessed Softscape's computers for a wide variety of reasons unrelated to this case, SuccessFactors is willing to narrow its request to the following: ALL DOCUMENTS (i) reflecting logs of connection times between SOFTSCAPE servers or computers and the IP address 65.96.237.54, or (ii) CONCERNING access to SOFTSCAPE servers or computers from the IP address 65.96.237.54, that relate to SuccessFactors, New Millenium Shoe, or the dates and times when such access occurred.

**Request Nos. 34-36**

These Requests pertain to who accessed New Millenium Shoe's web-hosting account and why. Softscape's attempt to limit its production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION" is misplaced and inappropriate because many relevant documents about use of the New Millenium Shoe may not be ostensibly about the Presentation or its contents. For instance, a document showing that Dave Watkins accessed the New Millenium Shoe account, which he has not denied, or changed the webpage to facilitate pretexting would likely have no mention of the Presentation yet be highly relevant to show the scheme by Softscape to access SuccessFactors' confidential information without authorization in violation of the CAFA. Furthermore, there should be little legitimate reason for these IP addresses associated with New Millenium Shoe to access Softscape's computers, so the volume of responsive documents should be reasonable. For these Requests, Softscape must produce documents regardless of whether they relate to the Presentation or its contents.

With respect to Request No. 34, I believe the response meant to list 65.96.233.62 as the IP address.  Please confirm.

**Request Nos. 37-39**

As with Request No. 33, Softscape's attempt to limit its production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION" is unacceptable. The Softscape UK office and the Watkins households associated with these IP addresses may have been involved with the Presentation, but also, for example, are implicated in accessing SuccessFactors' demonstration environment and planning attacks on SuccessFactors. Given that the Softscape UK office and the Watkins households likely accessed Softscape's computers for a wide variety of reasons unrelated to this case, SuccessFactors is willing to narrow these Requests as defined for Request No. 33.

June 14, 2008
Page 8

### Request No. 42

Softscape recycles an unacceptable limitation, restricting production to documents "relating to the PRESENTATION or any facts contained or statements made in the PRESENTATION," or relating to "access to the ACE 275 Sales Demo." The individual associated with vallsely@hotmail.com is pertinent not only for her role in creating or disseminating the Presentation, but also for conduct that might not have directly related to the Presentation. Likewise, the ACE275 demonstration is just one facet of the pretexting that occurred. Documents highly relevant to the plan to fraudulently obtain competitors' information without authorization might not specifically mention ACE275, such as emails about obtaining the Contract Proposal, about revising the website, or about pretexting other competitors like Taleo. Furthermore, the volume of communications with a single third-party email address is likely to be modest and reasonable. SuccessFactors is entitled to demonstrate how Softscape used Ely Watkins as a tool or agent for various purposes. Softscape's attempt to rewrite the Requests for SuccessFactors is inappropriate, but to accommodate concerns over personal communications, SuccessFactors is prepared to exclude "communications of a purely personal nature that are unrelated to SOFTSCAPE's business, SUCCESSFACTORS or other competitors of SOFTSCAPE, or NEW MILLENIUM SHOE."

Very truly yours,

Liwen Mah

cc: Bryan Sinclair, Esq.
    Ben Wagner, Esq.

24024/00404/LIT/1286639.3

EXHIBIT 25

# MINTZ LEVIN

1400 Page Mill Road
Palo Alto, California  94304-1124
650-251-7700
650-251-7739 fax
www.mintz.com

Jeffrey Ratinoff | 650 251 7755 | jratinoff@mintz.com

July 9, 2008

**VIA ELECTRONIC AND U.S. MAIL**

Liwen Mah, Esq.
Fenwick & West LLP
555 California St #1200
San Francisco, CA, 94104

Re:    *SuccessFactors, Inc. v. Softscape, Inc.*; Case No.: C08-1376 CW (BZ)

Dear Liwen:

I am writing in response to your June 14, 2008 letter regarding Softscape's responses to
SuccessFactors' Second Set of Requests for Production with the hope of narrowing the issues for
discussion at tomorrow's meet and confer.

## Prior Meet and Confer Agreements

As you may know, Patrick Premo and I engaged in a lengthy meet and confer session over these
responses on May 27, 2008 where several agreements were reached.  Thus, to the extent that
your letter is inconsistent with those agreements, we will insist that they take precedence.

## General Objections

As we indicated during our prior meet and confer sessions, we agreed to withdraw general
objections that go beyond privilege, privacy, improper instructions and specific definitions.  This
will be reflected in Softscape's forthcoming amended responses.  We expect SuccessFactors
("SFI") to do the same.

## General Objections About the Time Limits and Presentation Scope

### 1.    Time Limits

Softscape previously agreed to broaden its search for responsive documents as far back as
February 1, 2007 (unless otherwise limited to January 1, 2008 by SFI's requests), which
encompasses the timeframe in which SFI claims that the "genesis" of the Presentation/SIPP
occurred.  Requesting Softscape to conduct a general search further back than February 1, 2007
constitutes an improper fishing expedition by SFI and would unduly burden Softscape with
unreasonable e-discovery costs.  We do not believe that Mr. Watkins' deposition testimony or
Softscape's interrogatory responses justify SFI's change in its prior position.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
July 9, 2008
Page 2

As demonstrated by Mr. Watkins' testimony, the SIPP was compiled well within the February 1, 2007 reach-back. *See, e.g.* Rough Deposition Transcript at pp. 147:12-148:15; *see also id.* at p. 139:4-5. Mr. Watkins further testified in deposition that SFI's customer attrition data was compiled in 2008, regardless of the dates the attrition covered. As a result, SFI has not provided an appropriate or compelling reason for Softscape to search beyond February 1, 2007 as to any general or specific line of inquiry.[1]

>    **2.    Presentation**

>    Softscape's reasons for the distinction between the Presentation and the SIPP are cogent and have been laid out many times during various meet and confer, as well as in its responses to SFI's Interrogatories. Nevertheless, as demonstrated by the agreed-upon search terms, Softscape is searching for documents responsive to matters pertaining to both the Presentation and SIPP.

**General Objections About Privilege With Respect to FTI**

Your concern regarding objects relating to FTI lacks context as FTI is not specifically raised in the general objections. Nonetheless, the attorney-client privilege extends to FTI. *In re Bieter Co.*, 16 F.3d 929, 933, 939-40 (8th Cir.1994); *U.S. v. Schwimmer*, 892 F.2d 237, 244, 29 Fed. R. Evid. Serv. 434 (2d Cir. 1989); *AMCO Ins. Co. v. Madera Quality Nut LLC*, 2006 WL 931437 **18-19 (E.D. Cal. Apr. 11, 2006); *Sanborn v. Parker*, 2007 WL 495202 *10 (W.D. Ky. Feb. 14, 2007); 81 Am. Jur. 2d Witnesses § 391. Otherwise, there is no obligation to log non-responsive privileged documents. *Federal Trade Com'n v. Digital Interactive Associates, Inc.*, 1997 WL 524905 *4 (D. Colo. March 17, 1997).

**Repeated Responses Agreeing to Produce "Relevant" Documents**

As I represented to Mr. Premo during our prior meet and confer, Softscape agrees to amend to replace "relevant" with "responsive" documents to fully comply with Rule 34. We note that none of SFI's responses, including its recently served amended response to Softscape's First Set of Document requests contain such language. Accordingly, we expect SFI to provide similar Rule 34-compliant responses without further meet and confer.

---

[1] We note that in its own responses to Softscape's discovery, SFI has objected to requests seeking documents for the time period dating to January 1, 2005 to the present as overbroad on the grounds that "there has been no showing that any part of the Presentation is older than two years." Thus, under SFI's own concession, there can be no basis for Softscape to search as far back as 2004 for these Requests.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
July 9, 2008
Page 3

**Specific Requests and Objections**

**Request No. 17**

Your explanation of the relevancy of post-lawsuit press releases remains unclear in relation to the allegations and claims asserted in the Complaint. Further, any such press release is subject to protection under California's litigation privilege (Cal. Civ. Code § 47). Nonetheless, we have produced a number of non-privileged documents relating to post-lawsuit press releases. Further, we have already produced at least one email between Mr. Kutik and Dave Watkins, and have included a search term to capture additional emails with Mr. Kutik. As we have previously explained, Mr. Kutik was not retained by Softscape and therefore your expectations concerning additional documents should be tempered accordingly.

Finally, we will not agree to log any post-filing privileged communications. We note that SFI has taken the position in its own discovery responses that logging privileged communications occurring after the lawsuit was improper and unduly burdensome.

**Request Nos. 19 and 20**

As explained to Mr. Premo during prior meet and confer, it is Softscape's position that its customers and prospects and information related thereto constitute highly sensitive proprietary and trade secret information that is not relevant to SFI's claims. Indeed, it is SFI's customers and prospects that are at issue, not those of Softscape. Furthermore, there are no allegations in the Complaint concerning Softscape's alleged wrongdoing beyond the creation and dissemination of the Presentation. Thus, SFI is not entitled to engage in a fishing expedition with respect to Softscape's most sensitive proprietary information and trade secrets.

We are now in receipt of your interrogatory responses and understand that there are sixteen prospective customers that SFI contends Softscape allegedly interfered with SFI's prospective economic relations with those customers and will agree to produce communications with those companies (if they exist) relating to the allegations in the Complaint under the following conditions: (1) SFI re-designate the identity of those customers as "Confidential" so that Softscape may conduct a reasonable and diligent search without violating the Protective Order; (2) SFI further certify under the penalty of perjury that these are the only prospective customers at issue as of the date of such certification because SFI's interrogatory responses are not entirely clear as to whether it is just these sixteen prospective customers at issue; and (3) SFI produce documents and communications establishing a prospective economic relationship and/or reasonable expectation of an economic benefit with those sixteen companies.

Likewise, SFI is not entitled to broaden discovery into to such highly sensitive information - regardless of the existence of the Protective Order - to explore the issue of dissemination. Obtaining unfettered access to Softscape's sensitive customer information is both unwarranted and not narrowly tailored enough even under the highest level under the Protective Order. In that regard, we are open to discussing alternatives that are less intrusive than Softscape

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Liwen Mah, Esq.
July 9, 2008
Page 4

producing its entire customer database to determine whether there are commonalities between the John Anonymous recipient list and contacts in Softscape's confidential database.

**Request No. 21**

As drafted, Request No. 21 does not merely cover communications that occurred shortly after the Presentation was disseminated. Rather, this request seeks communications between January 1, 2008 to the present. Request No. 21 is also overbroad because there is no limitation on the subject matter of the requested communications between Softscape and its customers. This broad time scope, coupled with the lack of limitation on the subject matter of the communications called for by this request make it both overbroad and unduly burdensome.

Further, as stated above, SFI does have a justifiable reason to seek broad discovery into Softscape's customer relations. Further, your letter indicates that SFI is concerned with communications that relate to the dissemination of the Presentation (and presumable reactions thereto). Thus, it is unclear why SFI believes that Softscape's reasonable limitation of the subject matter of such communications to the Presentation, and facts contained or statements made in the Presentation is unreasonably narrow.

**Request Nos. 22-25**

Your description of what SFI hopes to obtain in response to Request Nos. 22-25 and how these requests are drafted is inconsistent. As drafted, these requests are overbroad because there is no limitation on the subject matter of the requested communications between Softscape and its customers.

As stated above, SFI does not have a justifiable legal or factual basis to seek broad discovery into Softscape's highly sensitive and confidential relationships with its actual and prospective customers - especially those of which SFI has no existing or reasonably certain prospective economic relationship. Softscape's position is supported by controlling case law.

For example, with respect to SFI's intentional interference with prospective economic advantage claim, it must identify customers or prospects that it believes it was competing against Softscape during the relevant time period before obtaining any information relating to Softscape's customers. *See Blank v. Kirwan*, 39 Cal.3d 311, 330-31 (1985) (plaintiff must identify specific "economic relationships" and cannot rest on a mere "hope for an economic relationship and a desire for future benefit"); *accord Pardi v. Kaiser Found. Hosps.*, 389 F3d 840, 852-853 (9th Cir. 2004) (threshold requirement under California law is the existence of an economic relationship between plaintiff and a third party with the probability of future economic benefit to plaintiff).

SFI must also plead and prove an intentional act that is "independently wrongful," i.e., "wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392-393 (1995); *accord Korea Supply Co. v. Lockheed Martin*

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Liwen Mah, Esq.
July 9, 2008
Page 5

*Corp.*, 29 Cal.4th 1134, 1153-1154 (2003). At this time, the only independent wrongs alleged in the Complaint that appear to go beyond the act of the interference itself and would arguably give SFI access to Softscape's customer information is the dissemination of the Presentation and the effect (if any) on SFI's prospective customers, which number sixteen.

Consequently, it is unclear why SFI believes that Softscape's reasonable limitation of the subject matter of the communications with its customers, that are called for by these requests to the Presentation, and facts contained or statements made in the Presentation is unreasonably narrow. In fact, this would go beyond communications with those sixteen prospective customers.

### Request Nos. 26

As demonstrated by Softscape's response to this request and the list of search terms, Softscape has agreed to search for and produce communications between Softscape and wildgracks@yahoo.com related to the Presentation or any facts contained or statements made in the Presentation that are in its possession, custody or control.

During the May 27, 2008 meet and confer between myself and Mr. Premo I proposed to also include communications between wildgracks@yahoo.com and SFI. Mr. Premo did not indicate whether this would be an acceptable amendment and indicated he would get back to me with a final answer. Our offer still stands.

Finally, since SFI issued a subpoena to Dennis Martinek concerning relevant communications from this Yahoo! email address and Mr. Martinek has agreed to substantially comply therewith, there no longer appears to be any controversy as to Softscape's response to this request.

### Request No. 27

Softscape will amend its response to Request No. 27 to include responsive communications between William Hurley/Hurly and Softscape from January 1, 2008 to the present. Further, since Softscape agreed to include search terms that would generate any such documents, there does not appear to be any further issue with this Request.

### Request Nos. 28-29

We do not agree with your characterization of what categories of documents Request Nos. 28 and 29 call for Softscape to produce. Nonetheless, Softscape already agreed to reasonably comply with this request. To that end, Softscape has already produced documents responsive to this request, including communications between New MillinumShoe/Ely Valls and SFI. Softscape has included appropriate search terms in its search term list and will produce any further documents related to the alleged "New Millenium scheme." Thus, no further amended response is required to these requests.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
July 9, 2008
Page 6

**Request Nos. 30, 33-39**

During a May 27, 2008 meet and confer session, Mr. Premo indicated that SFI would identify the IP addresses and would accept Softscape's responses as-is with the exception of extending the time and date cut-off from March 4, 2008 to March 11, 2008 since SFI conceded that these requests simply seek internet/IP address access logs. Thus, since you have identified the IP addresses, Softscape will amend its responses as previously discussed. With respect to Request Nos. 33 and 34, Softscape previously agreed to fix the typos with respect to the IP addresses identified in its responses.

**Request No. 31**

As we previously informed various members of your team, the time period offered in Softscape's response was reasonable, and to date, Softscape has not located any responsive documents relating to Softscape's use of the Waltham Courtyard Marriot as Softscape does not use this hotel for any purpose. However, Softscape agreed to include "Marriot" as an ESI search term at SFI's request and will produce any responsive documents within the agreed-upon time period. Thus, we do not believe there should be any further controversy with this request.

**Request No. 32**

During a May 27, 2008 meet and confer session, Mr. Premo acknowledged that this request was overbroad as drafted and therefore SFI was willing to narrow the scope of this request. Your letter fails to provide a reasonable narrowing of Request No. 32.

In response to an apparent recanting of this concession and agreement, as stated above, SFI is not entitled to discovery concerning Softscape's customer relationships. Indeed, it is highly suspect how actual or proposed licensing agreements, proposals and customer communications with all of Softscape's customers could possibly provide information to support SFI's alleged damages. Other than particular documents (if they exist) pertaining to the sixteen prospective customers identified in SFI's interrogatory responses, such information is not relevant or probative of SFI's alleged damages.

More importantly, SFI's continued insistence that Softscape provide this type of information is illustrative of Softscape's concern that SFI is using this lawsuit as a fishing expedition to gain access to competitive information to which it is otherwise not entitled to have access. Since Softscape has agreed in response to Request No. 21 to provide any communications between Softscape and its customers concerning the Presentation, such communications (if any exist) should be sufficient to provide the information that SFI claims would support its case.

**Request No. 42**

Mr. Premo previously acknowledged that as drafted, this request would require the production of personal family communications between Dave Watkins and Ely Valls having no bearing on the

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
July 9, 2008
Page 7

present lawsuit.  Consequently, Softscape's limitations to the subject matter of this lawsuit is entirely reasonable.  To that end, Softscape has included specific terms for Ely Valls and her email address in its ESI searches.

Sincerely,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Jeffrey M. Ratinoff

JR/sb

4358681v.3

# EXHIBIT 26





*The People Management Experts*

**Company**
About Us
Why Softscape
Leadership Team
Customers
Partners
News
Industry Recognition
Careers
Contact
Worldwide Offices

## Softscape Successful Against Rival SuccessFactors' Frivolous Lawsuit

FOR IMMEDIATE RELEASE

**Wayland, MA – March 14, 2008** - Softscape, the global leader in integrated people management software, today released this statement in response to the lawsuit filed by SuccessFactors (NASDAQ:SFSF) that was announced March 12, 2008:

"The SuccessFactors lawsuit remains a frivolous abuse of the legal system, and we will defend ourselves to the fullest extent. The announcement released by SuccessFactors on March 13, 2008 deliberately misstated Softscape's general counsel's testimony, and ignored key facts contained in the complete statement. (http://www.softscape.com/pdf/doc/TRO_Declaration080312.pdf)

"Softscape does not condone the dissemination of the document in question. Although the document was based on substantiated facts, it was intended for internal use only and was not designed or intended for external distribution. We are conducting our own thorough investigation to determine how an internal document ended up in outside hands. "Yesterday, Softscape was successful in having the court narrowly limit the restraining order. (http://www.softscape.com/pdf/doc/TRO_Decision080313.pdf)

"It is common in a highly competitive market for vendors to review each others' presentations, webinars, and demonstrations and have competitive sales tools. The SuccessFactors lawsuit is an act of desperation by a hostile industry predator."

***About Softscape*** (www.softscape.com)
Softscape is the global leader in integrated people management software that enables organizations to more effectively drive their business performance. Recognized by industry analysts as the most comprehensive strategic human capital management solution, Softscape provides complete employee lifecycle management, including a core system of record, in a single, integrated platform for improved business intelligence. The company offers customers of all sizes and in all industries the most flexibility and choice with multiple purchase, configuration, and deployment options. For more than a decade, Softscape has helped millions of workers across 156 countries be more successful at their jobs while contributing to bottom-line results. Softscape's customers represent Fortune 500/Global 500, mid-market, and government organizations, including

DEMO REQUEST     INFO

Whitepaper:
**Performance Driven L**
Automating Employee
Development Based on
Performance Objectives

**DOWNLOAD NOW**

**Related Information**
■ Latest News
■ Press Release Archive
■ Industry Recognition
■ Online Press Kit

**Media Contact:**

Susan Mohr
+1 508 358-1072 or
smohr@softscape.com

Barclays, AstraZeneca, Seagate, GKN, Edcon, LandAmerica, and the U.S. Department of Homeland Security. Softscape is based in Massachusetts with offices in London, Sydney, New York City, Chicago, San Francisco, Hartford, Washington, D.C., Bangkok, Hong Kong, and Johannesburg.

The Softscape logo and marks related to Softscape products are either trademarks or registered trademarks of Softscape, Inc. Other brand and product names contained herein may be trademarks or registered trademarks of their respective holders.

© Softscape, Inc.  (800) 881-2546

| info@softscape.com | Feedback | Legal Notice |

EXHIBIT 27

**SOFTSCAPE PRIVILEGE LOG FOR HARD COPY DOCUMENTS**
*SuccessFactors v. Softscape*
Case No.: CV-08-01376-CW (BZ)
Northern District of California
Version Date: July 17, 2008

| Bates # | Document Type | Date | Time | Author | Recipient(s) | Subject | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| SSHC000002 | Phone Record | 03/04/08 | | | David Watkins | Personal and private telephone number | Right to Privacy; Confidential Human Resources Information |
| SSHC000003 | Phone Record | 03/04/08 | | | David Watkins | Personal and private telephone number | Right to Privacy; Confidential Human Resources Information |
| SSHC000004 | Phone Record | 03/04/08 | | | David Watkins | Personal and private telephone number | Right to Privacy; Trade Secret/ Confidential and Proprietary Business Information |
| SSHC000242 | Phone Record | 03/07/08 | 09:35 | Yes Telecom | Alex Bartfield | Personal and private telephone number | Right to Privacy |
| SSHC000240 | Phone Record | 03/05/08 | 11:56 | Yes Telecom | Alex Bartfield | Personal and private telephone number | Right to Privacy |
| SSHC000240 | Phone Record | 03/05/08 | 12:47 | Yes Telecom | Alex Bartfield | Personal and private telephone number | Right to Privacy |
| SSHC000241 | Phone Record | 03/04/08 | 7:09P | Verizon Wireless | Matt Park | Personal and private telephone number | Right to Privacy |

1

| Bates # | Document Type | Date | Time | Author | Recipient(s) | Subject | Privilege Asserted |
|---------|---------------|------|------|--------|--------------|---------|--------------------|
| SSHC000241 | Phone Record | 03/05/08 | 7:47A | Verizon Wireless | Matt Park | Personal and private telephone number | Right to Privacy |
| SSHC000241 | Phone Record | 03/05/08 | 7:49A | Verizon Wireless | Matt Park | Personal and private telephone number | Right to Privacy |
| SSHC000242 | Phone Record | 03/04/08 | 5:32P | Verizon Wireless | Michelle Davis | Confidential and proprietary customer information | Right to Privacy; Trade Secret/ Confidential and Proprietary Business Information |
| SSHC000242 | Phone Record | 03/04/08 | 6:37P | Verizon Wireless | Michelle Davis | Personal and private telephone number | Right to Privacy |
| SSHC000242 | Phone Record | 03/04/08 | 6:37P | Verizon Wireless | Michelle Davis | Personal and private telephone number | Right to Privacy |
| SSHC000242 | Phone Record | 03/04/08 | 7:05P | Verizon Wireless | Michelle Davis | Personal and private telephone number | Right to Privacy: Confidential Human Resources Information |
| SSHC000242 | Phone Record | 03/04/08 | 7:09P | Verizon Wireless | Michelle Davis | Personal and private telephone number | Right to Privacy: Confidential Human Resources Information |
| SSHC000243 | Phone Record | 03/04/08 | 5:33P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 5:33P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 5:40P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |

2

| Bates # | Document Type | Date | Time | Author | Recipient(s) | Subject | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| SSHC000243 | Phone Record | 03/04/08 | 5:44P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 6:08P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 6:20P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 6:35P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 6:38P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 6:39P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 7:02P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 7:03P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 7:16P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 7:55P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 9:50P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 9:52P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |

3

| Bates # | Document Type | Date | Time | Author | Recipient(s) | Subject | Privilege Asserted |
|---|---|---|---|---|---|---|---|
| SSHC000243 | Phone Record | 03/04/08 | 9:55P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 9:59P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 10:05P | Verizon Wireless | Sean Tamani | Personal and private telephone number | Right to Privacy |
| SSHC000243 | Phone Record | 03/04/08 | 10:40P | Verizon Wireless | Sean Tamani | Confidential and proprietary customer information | Right to Privacy; Trade Secret/ Confidential and Proprietary Business Information |
| SSHC000244 | Phone Record | 03/04/08 | 6:14P | Verizon Wireless | Dennis Martinek | Confidential and proprietary customer information | Right to Privacy; Trade Secret/ Confidential and Proprietary Business Information |
| SSHC000245 | Phone Record | 03/04/08 | 8:06P | Verizon Wireless | Rick Watkins | Personal and private telephone number | Right to Privacy |
| SSHC000246 | Phone Record | 03/04/08 | 8:27P | Verizon Wireless | Rick Watkins | Personal and private telephone number | Right to Privacy |
| SSHC000246 | Phone Record | 03/04/08 | 9:43P | Verizon Wireless | Rick Watkins | Personal and private telephone number | Right to Privacy |
| SSHC000247 | Phone Record | 03/04/08 | 5:04P | Verizon Wireless | Susanne McFee | Confidential marketing call | Right to Privacy; Trade Secret/ Confidential and Proprietary Business Information |

4

| Bates # | Document Type | Date | Time | Author | Recipient(s) | Subject | Privilege Asserted |
|---------|---------------|------|------|--------|--------------|---------|--------------------|
| SSHC000247 | Phone Record | 03/05/08 | 7:35A | Verizon Wireless | Linda Gagne | Confidential customer call | Right to Privacy; Trade Secret/ Confidential and Proprietary Business Information |

5

# EXHIBIT 28

1   LAURENCE F. PULGRAM (CSB NO. 115163)
    lpulgram@fenwick.com
2   ALBERT L. SIEBER (CSB NO. 233482)
    lmah@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, CA  94104
    Telephone: (415) 875-2300
5   Facsimile:  (415) 281-1350

6   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
7   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
8   DENNIS M. FAIGAL (CSB NO. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA  94041
11  Telephone:     (650) 988-8500
    Facsimile:     (650) 938-5200

12
    Attorneys for Plaintiff
13  SUCCESSFACTORS, INC.

14

15                          UNITED STATES DISTRICT COURT

16                       NORTHERN DISTRICT OF CALIFORNIA

17                                  OAKLAND DIVISION

18  SUCCESSFACTORS, INC., a Delaware          Case No. CV 08-1376 CW
    corporation,
19                                            **MANUAL FILING NOTICE**
                     Plaintiff,
20                                            Date:      September 3, 2008
    v.                                        Time:      10:00 a.m.
21                                            Courtroom: G, 15th Floor
    SOFTSCAPE, INC., a Delaware               Judge:     Hon. Bernard Zimmerman
22  corporation; and DOES 1-10, inclusive,
                                              Date of Filing:  July 30, 2008
23                   Defendants.              Trial Date:      May 11, 2009

24

25  **RE:    CONFIDENTIAL EXHIBITS 1, 2, 3, 11, 12, 15, 16, 17, 18, 19, 21, 22, 28, . TO
            THE DECLARATION OF HENRY Z. CARBAJAL IN SUPPORT OF MOTION TO
26          COMPEL PRODUCTION OF DOCUMENTS, FURTHER INTERROGATORY
            ANSWERS AND PROPER PRIVILEGE LOGS**

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   This filing is in paper or physical form only, and is being maintained in the case file in the

2   Clerk's office.

3       If you are a participant on this case, this filing will be served in hard-copy shortly.

4       For information on retrieving this filing directly from the court, please see the court's main

5   web site at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

6       This filing was not efiled for the following reason(s):

7   _____   Voluminous Document (PDF file size larger than efiling system allowances)

8   _____   Unable to Scan Documents

9   _____   Physical Object (description): _____

10  _____   Non Graphical/Textual Computer File (audio, video, etc.) on CD or other

11  media

12  __X__    Item Under Seal

13  _____   Conformance with the Judicial Conference Privacy Policy (General Order 53).

14  _____   Other (description): _____

15  Dated: July 30, 2008                    FENWICK & WEST LLP

16

17                                          By:_____/s/ Patrick Premo_____

18                                                      Patrick Premo

19                                          Attorneys for Plaintiff
                                            SUCCESSFACTORS, INC.

20

21

22

23

24

25

26

27

28

# EXHIBIT 29

# MINTZ LEVIN

1400 Page Mill Road
Palo Alto, California  94304-1124
650-251-7700
650-251-7739 fax
www.mintz.com

Jeffrey M. Ratinoff | 650 251 7755 | jratinoff@mintz.com

June 20, 2008

**VIA HAND DELIVERY**

Patrick E. Premo, Esq.
Fenwick & West, LLP
801 California Street
Mountain View, CA  94041

Re: *SuccessFactors, Inc. v. Softscape, Inc.*; Case No.: C08-1376 CW (BZ)

Dear Patrick:

Enclosed please find documents bearing bates numbers SSHC000240 - SSHC000246, which consist of the cellular phone records for Alex Bartfield, Matt Park, Michelle Davis, Sean Tamani, Dennis Martinek, and Rick Watkins for calls made between 5:00 p.m. EST on March 4, 2008 and 8:00 a.m. EST on March 5, 2008. These documents have been designated as "Highly Confidential - Outside Attorney's Eyes Only" and should be treated accordingly.

Please note that we have redacted telephone numbers made during the agreed-upon time period on the grounds that such information is unrelated to the present litigation and protected by the constitutional right of privacy and the trade secret privilege, which is reflected in the enclosed privilege log. We also redacted phone calls outside of the agreed-upon time period, which are not reflected in the privilege log because such information is non-responsive.

Sincerely,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Jeffrey M. Ratinoff

JR/ak

Enclosures

4362800v.1

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

EXHIBIT 30

# MINTZ LEVIN

1400 Page Mill Road
Palo Alto, California  94304-1124
650-251-7700
650-251-7739 fax
www.mintz.com

**Jeffrey M. Ratinoff** | 650 251 7755 | jratinoff@mintz.com

July 25, 2008

**VIA HAND DELIVERY**

Henry Carbajal, Esq.
Fenwick & West, LLP
801 California Street
Mountain View, CA  94041

Re: *SuccessFactors, Inc. v. Softscape, Inc.*; Case No.: C08-1376 CW (BZ)

Dear Henry:

Enclosed please find a documents bearing Bates Nos. SSHC000908 - SSHC000916, which consist of Softscape's phone records for Mike Brandt, David Watkins and Lillian Watkins. These documents have been designated as "Highly Confidential - Outside Attorney's Eyes Only" and should be treated accordingly.

Please note that we have redacted telephone numbers made during the agreed-upon time period on the grounds that such information is unrelated to the present litigation and protected by the constitutional right of privacy and the trade secret privilege.  We will provide a revised privilege log for all phone records produced next week that will contain annotations for the redacted telephone numbers as previously represented.

Sincerely,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Jeffrey M. Ratinoff

JMR/ak
Enclosures

4389021v.1

---

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

# EXHIBIT 31

# FENWICK & WEST LLP

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

June 27, 2008

PATRICK E. PREMO

EMAIL PPREMO@FENWICK.COM
DIRECT DIAL (650) 335-7963

**VIA E-MAIL & U.S. MAIL**

Bryan J. Sinclair, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
1400 Page Mill Road
Palo Alto, CA 94062

      Re:   *SuccessFactors, Inc. v. Softscape, Inc.*, Case No. C-08-1376 CW (BZ)

Dear Bryan,

      I am writing in connection with Softscape, Inc.'s waiver of the attorney-client privilege as it relates the PowerPoint presentation entitled "The Naked Truth" ("Presentation") and Softscape's related investigation.

      As you know, SuccessFactors, Inc. has requested documents from Softscape regarding the Presentation and investigation.  Among other things, SuccessFactors has asked for information concerning the:

- creation of and information in the Presentation (Request Nos. 1, 4, 5, 7, 8, 10-12, 14-16, 43, 59, 62);[1]

- release, publication, and dissemination of the Presentation (Request Nos. 2, 5, 9-12, 20-54, 58, 63);

- sales, marketing, and other communications Softscape has had with third parties concerning the Presentation (Request Nos. 3, 5, 6, 12-13, 19, 20-54, 58, 59, 63); and

- investigation by Softscape of the above-listed and other related matters (Request Nos. 5, 18, 43, 58; *see also* Request Nos. 1-16, 19-54, 58-59, 62-63).

Softscape has objected in part to virtually all of these requests to the extent they call "for the production of material protected by the attorney-client privilege or the attorney work product doctrine."[2]

---

[1] The identified "Request Nos." refer to the document requests contained in Plaintiff's First, Second, Third, and Fourth Sets of Requests for Production of Documents and Things.

[2] Softscape has lodged a privilege objection to all document requests except for Request Nos. 44-46 and 48 and the requests contained in Plaintiff's Fourth Set of Requests for Production of Documents and Things (Request Nos. 56-66).  The fourth set of document requests has a return date of July 17, 2008.

Bryan J. Sinclair, Esq.
June 27, 2008
Page 2

Notwithstanding its privilege objections, Softscape has an obligation to produce any and all documents responsive to the requests described above. On March 12 and 17, 2008, Susan Mohr, Softscape's General Counsel, submitted declarations in support of an opposition to SuccessFactors' application for a temporary restraining order ("Mar. 12, 2008 Decl."), and in support of an opposition to SuccessFactors' motion for expedited discovery ("Mar. 17, 2008 Decl."). In these declarations, Ms. Mohr submitted testimony concerning the:

- creation of and information in the Presentation;[3]

- release, publication, and dissemination of the Presentation;[4]

- sales, marketing, and other communications Softscape has had with third parties concerning the Presentation;[5] and

- investigation by Softscape of the above-listed and other related matters.[6]

The two declarations, in other words, contain attorney testimony on the very same matters that are at issue in the litigation and described in SuccessFactors' discovery requests.

Ms. Mohr's testimony as to her knowledge and investigative findings is undoubtedly the result of her communications with Softscape employees regarding the Presentation. The declarations therefore disclose more than mere facts about the Presentation and investigation. Rather, the statements in Ms. Mohr's declarations "represented opinions, based upon confidential communications between attorney and client that go to the heart of the legal claims at issue. By including these communications in the affidavit, counsel . . . effectively waived the attorney-client privilege." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006) (privilege waived where attorney statements in affidavit "could only have been gleaned . . . through communications from his clients"); *see also Computer Network Corp. v. Spohler*, 95 F.R.D. 500, 502 (D. D.C. 1982) ("A party cannot voluntarily disclose facts in his favor before a judicial

---

[3] *See, e.g.*, Mar. 12, 2008 Decl. ¶ 4 ("the Presentation . . . was created in-house by Softscape . . . [and] was intended for internal use only by sales and contained what I believed to be accurate information"); Mar. 17, 2008 Decl., Ex. B ("It is a Softscape confidential document that should be used only for internal use by sales.").

[4] *See, e.g.*, Mar. 12, 2008 Decl. ¶ 4 ("Softscape did not authorize release or publication of the Presentation, and to the best of my knowledge Softscape did not participate in its alleged circulation . . . . Although I am continuing to investigate, Softscape is presently unaware how the disclosure of the Presentation occurred. Further, I am not aware of any information that there was any [other] dissemination . . . ."); Mar. 17, 2008 Decl. ¶ 4 ("To my knowledge, there have been no further public distributions . . . ."), ¶ 7 ("Softscape does not currently know how or by whom the Presentation was released."), ¶ 9 ("Softscape remains unaware of how the Presentation came to be disseminated, but it continues to investigate the facts and circumstances surrounding its distribution.").

[5] *See, e.g.*, Mar. 12, 2008 Decl. ¶ 5 ("To the best of my knowledge, Softscape has never and is not now using the Presentation in external sales meetings or marketing efforts, and has no intention to release on the internet, or otherwise publish externally, the Presentation, which it considers to be confidential business information of Softscape."); Mar. 17, 2008 Decl. ¶ 5 ("To the best of my knowledge, Softscape has never used, is not now using, and will not use the Presentation in any external sales meeting or marketing effort.").

[6] *See, e.g.*, Mar. 12, 2008 Decl. ¶¶ 4-5 (describing general counsel's investigative findings and stating that she is "continuing to investigate"); Mar. 17, 2008 Decl. ¶¶ 4-10 (describing general counsel's investigative findings and stating that Softscape "continues to investigate the facts and circumstances").

Bryan J. Sinclair, Esq.
June 27, 2008
Page 3

tribunal, when they are helpful to his cause, and then invoke the attorney-client privilege as a
shield to prevent a searching inquiry so that a court may determine the truthfulness of the facts
initially presented.").

To be clear, by disclosing its attorney's investigative findings, based on potentially
privileged communications with her clients, Softscape has voluntarily and expressly waived any
privilege and work-product protection as to information relating to the subject matter of the
Presentation and investigation. Softscape further waived the privilege by producing documents
in the form of e-mails regarding its investigation. This waiver is not limited to the statements in
Ms. Mohr's declaration. By submitting attorney testimony in opposition to SuccessFactors'
application for a temporary restraining order and motion for expedited discovery and producing
documents, Softscape "affirmatively chose" to waive the attorney-client privilege in connection
with information "relating to the same subject matter" of the Presentation and investigation. *In
re Papst Licensing*, No. CIV A. MDL-1298, 2001 WL 1135265, at *5 (E.D. La. Sept. 24, 2001);
*see also Pucket v. Hot Springs School Dist.*, 239 F.R.D. 572, 580 (D. S.D. 2006) ("Voluntary
disclosure of the confidential communication to either an opposing or third party expressly
waives the privilege . . . . The scope of an express waiver is not limited to the communication
disclosed but applies to other communications relating to the same subject matter.") (citations
and internal quotation marks omitted).

Please confirm in writing by close of business on June 30, 2008 that Softscape will
produce all documents responsive to Softscape's requests by July 3, including any documents
subject to the privilege waiver discussed above. Please also confirm that you will provide a
privilege log by July 3 indicating which documents you believe are still protected by the
attorney-client privilege or work-product doctrine. Because Softscape's documents and privilege
logs were due long ago,[7] we will ask the Court for immediate relief in the event you fail to give
us such assurances.

Very truly yours,

FENWICK & WEST LLP

Patrick E. Premo

---

[7] The return dates on SuccessFactors' first, second, and third sets of document requests were April 28, May 5, and
May 19, 2008, respectively.