EXHIBIT A

1   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   CANDACE J. MOREY (CSB No. 233081)
    cmorey@fenwick.com
3   LIWEN A. MAH (CSB No. 239033)
    lmah@fenwick.com
4   FENWICK & WEST LLP
    555 California Street, 12th Floor
5   San Francisco, CA  94104
    Telephone: (415) 875-2300
6   Facsimile:  (415) 281-1350

7   PATRICK E. PREMO (CSB NO. 184915)
    ppremo@fenwick.com
8   DENNIS M. FAIGAL (CSB NO. 252829)
    dfaigal@fenwick.com
9   FENWICK & WEST LLP
    Silicon Valley Center
10  801 California Street
    Mountain View, CA  94041
11  Telephone:    (650) 988-8500
    Facsimile:    (650) 938-5200
12

    Attorneys for Plaintiff
13  SUCCESSFACTORS, INC.

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                  OAKLAND DIVISION

18  SUCCESSFACTORS, INC., a Delaware           Case No. CV 08-1376 CW BZ
    corporation,
19                                             **PLAINTIFF'S RESPONSE TO**
                    Plaintiff,                 **DEFENDANT'S FIRST SET OF**
20                                             **INTERROGATORIES (NOS. 1-12)**
           v.
21
    SOFTSCAPE, INC., a Delaware
22  corporation,

23                  Defendant.

24

25  **PROPOUNDING PARTY**:   Defendant SOFTSCAPE, INC.

26  **RESPONDING PARTY**:    Plaintiff SUCCESSFACTORS, INC.

27  **SET NO**:              One (Nos. 1 – 12)

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

2    SuccessFactors, Inc. ("SuccessFactors") hereby responds to Defendant Softscape, Inc.'s

3    ("Softscape") First Set of Interrogatories as follows:

4    **SPECIFIC RESPONSES TO INTERROGATORIES**

5    **INTERROGATORY NO. 1:**

6    IDENTIFY each and every statement in the PRESENTATION that YOU contend is described by

7    the phrase "unprivileged, false, misleading, and disparaging," as alleged in the Sixth Claim for

8    Relief in the COMPLAINT, and all facts and DOCUMENTS supporting each such contention.

9    **RESPONSE TO INTERROGATORY NO. 1, ATTORNEYS' EYES ONLY IN YELLOW:**

10    SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

11    they seek the disclosure of information protected by the attorney-client privilege (including the

12    joint representation and common interest privilege), the litigation privilege, the attorney work-

13    product doctrine, or any other applicable privilege, protection, immunity or restriction on

14    discovery as provided by any applicable law. SuccessFactors objects to all definitions,

15    instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

16    information received from a third party under a nondisclosure agreement or other confidentiality

17    obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

18    any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

19    objects to producing the contents of any part of any agreement which, by its terms, may not be

20    disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

21    definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

22    SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

23    Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

24    of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

25    overbroad and not reasonably calculated to lead to discovery of admissible evidence.

26    SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

27    impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

28    imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Northern District of California, and/or applicable case law.  Discovery is continuing, and

2    SuccessFactors reserves to modify, change, or supplement this response or introduce additional

3    evidence at trial.

4        Subject to and without waiving the foregoing objections, SuccessFactors responds as

5    follows:

6        "The Truth" and "The Naked Truth" (slides 1 and 2) are statements that are false and

7    misleading because the statements described below are unprivileged, false, misleading, and

8    disparaging. Also, the title of the Presentation claims to provide "The Naked Truth," falsely

9    implying that SuccessFactors is not being candid with its customers.

10        "This presentation is a compilation of the facts from Successfactors customers" (slide 2) is

11    false and misleading because most of the purported facts in the Presentation are not "from

12    Successfactors customers," and the compilation is not "from Successfactors customers either." In

13    fact, most of the purported facts were created or compiled by Softscape, which indisputably

14    authored the Presentation.

15        "Successfactors never thought customers would keep track of what they say" (slide 2) is

16    false and misleading because it implies that the Presentation is predominantly substantiated by facts

17    from SuccessFactors customers or that such customers compiled the statements in the Presentation.

18    In fact, most of the purported facts were created or compiled by Softscape, which indisputably

19    authored the Presentation.

20        "These facts represent the measure of Successfactors' lack of corporate integrity and why

21    many of us have left them" (slide 2) is false and misleading because many of the purported facts are

22    themselves false and misleading.  Furthermore, the assertion that the purported facts represent

23    "why many of us have left them" is false and misleading because it implies that SuccessFactors

24    customers authored or compiled the statements in the Presentation. In fact, most of the purported

25    facts were created or compiled by Softscape, which indisputably authored the Presentation.  The

26    assertion that the purported facts represent "why many of us have left them" is also false and

27    misleading because former SuccessFactors customers largely have not "left" SuccessFactors for

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    any of the reasons described in the Presentation. Accordingly, the implication that SuccessFactors

2    has a "lack of corporate integrity" is false.

3         "In 2005 Successfactors had 208 Customers by 2008 134 Were Lost" (slide 3) is false and

4    misleading because it is not correct that SuccessFactors lost 134 of the customers it had in 2005.

5         "In January 2005 there were 208 Customers, 82 were newly acquired" (slide 3) is false and

6    misleading because it is not correct that SuccessFactors had 208 customers in January 2005. Nor is

7    it correct that 82 were newly acquired. In fact, SuccessFactors        REDACTED

8                                        REDACTED

9              REDACTED

10        "49 were acquired before January 2005" (slide 3) is false and misleading because

11   SuccessFactors had acquired more than forty-nine customers before January 2005. Furthermore, if

12   this statement is read in conjunction with the immediately preceding statement about eighty-two

13   customers being "newly acquired," then the implication that SuccessFactors acquired thirty-three

14   customers (82-49) *in* January 2005 is false and misleading because SuccessFactors actually

15   acquired        REDACTED

16        "In January 2008 ONLY 76 of the 208 still remain" (slide 3) is false and misleading

17   because it is not correct that SuccessFactors had 208 customers in January 2005. Nor is it correct

18   that only seventy-six of the customers SuccessFactors had in January 2005 are still customers. In

19   fact,                    REDACTED                                    Accordingly,

20   the statements that "Based on this, 1 out of 2 customers leaves Successfactors within 2-3 years" and

21   "63% of Their 2005 Customers Left Them by 2008" (with the accompanying chart showing 208

22   and 76) are also false and misleading. Furthermore, logically the statement that 76 remain would

23   have to be false if the title's assertion that "134 Were Lost" were true, since 208 minus 76 is 132.

24        "Most career oriented HR people like better odds" (slide 3) is misleading because, in

25   conjunction with the statement that the facts in the Presentation represent "why many of us have

26   left them," it implies that most prospective buyers chose not to buy from SuccessFactors because of

27   the (incorrectly) low customer retention rates, and that the "odds" are the figures falsely described

28   above.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    "The Recurring Theme from customers: Overpromise by Sales and Under – or – No

2    Delivery by Company" (slide 3) is false and misleading because "Recurring Theme" implies that a

3    substantial number of customers is dissatisfied with SuccessFactors, when the true retention rates

4    indicate the opposite, or raised this "Theme" when they have not. *Id.*

5        "Many of Successfactor's [sic] Customers are Dissatisfied, have left them and are Not

6    Listed on their Website Anymore" (slide 4 and slides 13-22) is false and misleading because many

7    customers are not dissatisfied and because it implies that the SuccessFactors customers that "have

8    left them" did so because they were dissatisfied.  In fact, as with any company, SuccessFactors has

9    had customers terminate contracts for a variety of reasons other than dissatisfaction.  The top two

10   reasons SuccessFactors customers have left are from mergers or acquisitions of their companies or

11   from their companies' financial troubles, reasons unrelated to dissatisfaction.  Only a very small

12   percentage of SuccessFactors enterprise and mid-market customers have terminated for

13   dissatisfaction about their implementations, and about only a very small percentage have

14   terminated because of product deficiencies or bugs.  Furthermore, it misleadingly implies that

15   customers are "Not Listed on their Website" because those customers were dissatisfied and left.  In

16   fact, most are satisfied, independent of whether they are listed on SuccessFactors' website.  As

17   Softscape's CEO has acknowledged, not all customers unlisted on company websites are

18   dissatisfied.  Also, the website itself described itself as showing a "sampling" of customers; for

19   example, up to at least January 2005 the website said: "Below is a **sampling** of our 130+ customers

20   - representing every size and industry" (emphasis added).  Those pages showed only 60-80 listed

21   names then, so it should have been clear to any reader that the list did not show all "130+

22   customers."  In the same way, "Example of Lost Customers Just Left off the Web site" (slide 5) is

23   false and misleading because some of the customers left off SuccessFactors' online lists were not

24   "Lost," but rather merged into other companies, chose not to have their names listed, or were

25   customers whom SuccessFactors chose not to list.  Among the merging companies have been

26   Reebok, Peregrine Systems, Portal Software, Hibernia National Bank, Dovebid, Inc., Nalco, ACMI

27   Corp, Portal Software, Inc., KMC Telecom Holdings, Inc., Symbol Technologies, Inc., Riggs

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

1   National Corporation, Varian Inc., Meta Group, BMG Columbia House, Inc., Macromedia, Inc.,

2   Internet Security Systems, and BrassRing.

3        In addition, slides 4 and 13 through 22 present numbers of customers whom SuccessFactors

4   allegedly "No Longer Reference," falsely and misleadingly implying that those customers are

5   dissatisfied with SuccessFactors. In fact, the numbers listed do not reflect the number of

6   dissatisfied customers. In addition, some customers listed in the Presentation continue to be

7   valuable references for SuccessFactors, including, for example, **REDACTED** . Some "customers"

8   listed in the Presentation, including for example                    **REDACTED**                    were never

9   SuccessFactors customers, so "No Longer Reference" is misleading in suggesting that they were

10  ever references. Still other customers choose not to be listed on SuccessFactors' website or serve

11  as references for reasons other than the dissatisfaction alleged Softscape in the Presentation.

12       The lists on slides 5 and 6 with the subheading "Failed Implementations" are false and

13  misleading because a number of the listed customers did not have failed implementations. The top

14  two reasons SuccessFactors customers have left are from mergers or acquisitions of their

15  companies or from their companies' financial troubles, reasons unrelated to failed implementations.

16  This is the case with several customers listed in the Presentation, including but not limited to

17                    **REDACTED**

18                    **REDACTED**                    are still customers or terminated

19  their contracts due to mergers. Other listed customers did not have failed implementations but

20  eventually chose not to continue their contracts with SuccessFactors.

21       Without acknowledging that Softscape's methodology has any validity, SuccessFactors

22  notes that Softscape's statement "We compiled the exact published headcount from publicly

23  available documents for all Customers listed on the web site only" (slide 7) is not substantiated by

24  any documents or spreadsheets that Softscape has yet produced. Accordingly, the statement

25  "Customer Facts and Figures Just Do not Add Up" (slide 7) appears to be based on false or

26  misleading data and calculations. Indeed, the number of users calculated by Softscape is consistent

27  with the excerpted SuccessFactors text, "2+ Million Users," so it is misleading for the Presentation

28  to suggest that SuccessFactors' figures "Do not Add Up."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    "After 6 Months Sears Pulled the Plug on the entire project" (slide 8) is false and

2    misleading because Sears has not "Pulled the Plug" and remains a valued SuccessFactors customer.

3                                  REDACTED

4                                  REDACTED

5                                  REDACTED                                Consistent

6    with its company goal of continuous improvement, SuccessFactors continues working to make

7    improvements to the Sears implementations, but Sears has not terminated the SuccessFactors

8    projects as the Presentation falsely states.

9         With respect to Intelsat (slide 10), the Presentation states that Intelsat's implementation

10   went "over budget by $500k" and "consumed all HR time," and that David Sinkfield of Intelsat

11   "was fed up with it," falsely and misleadingly implying that Intelsat was dissatisfied and regretted

12   the experience. The Presentation misrepresented that Mr. Sinkfield said, "The whole experience

13   was awful!!" In fact, Intelsat                    REDACTED

14                                  REDACTED

15                                  REDACTED

16                                  REDACTED

17                                  REDACTED

18   Furthermore, contrary to the Presentation's statement, "One Size does not fit all  - Forced upgrades

19   do not work,"                     REDACTED

20        "Succuessfactors [sic] can't handle situations where an employee changes their positions

21   and manager during the year" (slide 11) is false and misleading because SuccessFactors has

22   document transfer functionality that addresses this situation.                    REDACTED

23                  REDACTED                                The Presentation is thus misleading

24   in implying that these "situations" are inherent or epidemic "Mid Market Problems" as the title of

25   slide 11 states.

26        The statement that "they have 440 consultants, which implies 1,650 hours of effort for each

27   of their customers" (slide 23) is false and misleading because in fact SuccessFactors has fewer than

28   half that many consultants. SuccessFactors eliminates that possibility that customers will be

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   unpleasantly surprised by the extent of a project because                **REDACTED**

2                                            **REDACTED**

3          **REDACTED**                   · Softscape has acknowledged in its deposition testimony that

4   it does not recall the number of consultants shown in the Presentation as having been stated as such

5   by SuccessFactors. Instead, Softscape made inaccurate assumptions and extrapolations to estimate

6   the number of consulting hours required per SuccessFactors project. In addition, Softscape has

7   continued to assert that the Presentation's statements are substantiated even though there are

8   fundamental arithmetic errors. For example, the Presentation purports to show the number of

9   consultant hours per customer. It shows 100 as "Number of Customers Added" for 2008 (up to

10  March 4, 2008 at the latest). The 100 number, even if true, thus would be the number of customers

11  for only about one sixth of a year, but Softscape erroneously uses an annualized number of

12  consulting hours for 2008 in calculating the number of hours per customer. This falsely and

13  misleadingly inflates the "Average SF Effort to Implement a System."

14         In addition, slide 23 of the Presentation falsely states the number of SuccessFactors

15  employees for 2005 (80), 2006 (432), 2007 (500), and 2008 (700), causing Softscape's estimates of

16  the number of consultants to be erroneous. In fact, SuccessFactors reported the following number

17  of employees: 189 in 2005, a maximum of 386 in 2006, 736 at the end of 2007, and 694 at the end

18  of the first quarter of 2008.

19         "Your Data Security is Mixed with others" (slide 24) is false and misleading, wrongly

20  implying that this is representative of purported SuccessFactors "System Architecture Problems."

21  In fact, all customer data are stored in separate & secure schemas with support for redundancy &

22  high security. SuccessFactors uses database level encryption and secure desktops. Top security

23  specialists and banks have validated SuccessFactors' approach, including Wachovia, Verisign,

24  Symantec, McAfee, and MasterCard. SuccessFactors has data security certifications such as a Safe

25  Harbor Certification through the United States Department of Commerce. Also, as indicated in a

26  December 12, 2007 press release, SuccessFactors successfully completed an SAS 70 (Statement on

27  Auditing Standards No. 70) audit, which assesses the operational effectiveness of internal controls

28  and provides assurance that SuccessFactors employs uniform and reliable operational controls to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    safeguard the data of its customers and users worldwide. In any event, SuccessFactors' data

2    security is superior to what a customer's own on-premises security would typically provide, and in

3    its seven-year existence, SuccessFactors has not had a failure involving a customer's data security.

4          Softscape's claims on slide 25 of "System Architecture Problems" are also false and

5    misleading. "Forms can only be updated by Successfactors because they require customizing not

6    configuring" is inaccurate because in fact customers have access to tools, such as from

7    SuccessFactors' online "SuccessFactory," for modifying forms.

8          "Users have to open up each and every form to do their work" (slide 26) is false and

9    misleading because users do not need to open every form to do their work.

10         With respect to the Ultra release, the Presentation makes several false and misleading

11   statements. "Every month they will add any feature or change they want without asking you if you

12   want it" and "They will install the change without telling you" (slide 28) are false and misleading

13   because they wrongly imply that SuccessFactors makes unwelcome and capricious changes. In

14   fact, almost all changes — including those made in the Ultra release — require the customer's

15   permission, not added unilaterally by SuccessFactors. SuccessFactors' approach regarding delivery

16   of enhancements to customers is to minimize disruption to customers. In addition, the motivation

17   for most changes is not merely what SuccessFactors "wants," but rather what customers request.

18   Accordingly, Softscape's assertion that SuccessFactors has a "change the application whenever you

19   feel like it strategy" is also false and misleading.

20         "System has old and new interface conventions making it confusing to customers" on

21   slide 30 is false and misleading because the screenshot therein is in fact a spliced image combining

22   images before and after Ultra. This screenshot as shown is not part of SuccessFactors' product.

23         On slide 31, Softscape's assertion that "Ultra" functionality is a "scam" is false and

24   misleading because Ultra not only offers advantages and best-in-class technology, but also has been

25   widely acclaimed by third party industry observers. Bersin & Associates observed that

26   SuccessFactors offered "[o]ne of the most comprehensive and well-adapted Talent Management

27   suites on the Market Today." Analysts IDC, Yankee Group, Bersin, and KnowledgeInfusion all

28   offered glowing assessments of Ultra, showing that the Ultra release was hardly a "scam." The

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    statement and depiction that "Facebook integration is just a hyperlink" is false and misleading

2    because it inaccurately describes the robustness of the Facebook connectivity.

3        "Compensation is not a process but a Form" (slide 34) is false and misleading because the

4    compensation functionality is process based, not merely a form.

5        Slide 41 is false and misleading because "Long scrolling forms with A LOT of Data"

6    wrongly asserts that long forms are the usual interface of SuccessFactors. In fact, SuccessFactors

7    includes a feature that allows the user to tab through pages rather than scroll. The implication that

8    the user interface is confusing is false, and the Yankee Group analysts in 2007 noted that

9    SuccessFactors offered an "Intuitive interface and … [is] easy to use for all levels of employees."

10        Slide 43 purports to be a summary of the previous slides and accordingly is false and

11    misleading for the reasons stated above. In addition, "THE TRUTH: Users saw quality issues and

12    poorly thought through solutions that cause corrupted data" juxtaposed with "THEY SAY: "New

13    features and functions released every 30 days vs, Annually or Bi-Annually" falsely and

14    misleadingly implies that "features and functions released every 30 days" by SuccessFactors were

15    poorly thought through and caused corrupted data. In fact, the frequent releases allow

16    SuccessFactors to improve the software and minimize the risk of corrupted data. "Customers have

17    been told you are on our own" is false and misleading because "our" wrongly suggests that a

18    customer authored the statement, not Softscape. It is also false and misleading because it wrongly

19    states that SuccessFactors has told customers they are on their "own," when SuccessFactors has

20    never communicated that to any customer. "All the people in the entire company will get a new

21    feature in the middle of their process – I am sure they will be delighted to relearn the application" is

22    false and misleading because almost all changes require the customer's permission beforehand, and

23    most SuccessFactors updates do not require a user to "relearn the application." "THE TRUTH:

24    Ask your help desk when Successfactors breaks the software," juxtaposed with "THEY SAY:

25    There are no upgrade costs or expenses related to upgrades." Is false and misleading because it

26    wrongly states that SuccessFactors "breaks the software" when it upgrades it. In fact, upgrades

27    improve features, user experience, and reliability of the software. The user's productivity increases

28    with no costs or expenses imposed by SuccessFactors. "THE TRUTH: On Average 1650 hours per

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  project" is false and misleading as described above; the actual average number of professional

2  services hours per project is significantly less and will not induce Wall Street to "demand you pay

3  for help." "THE TRUTH: Security – One Database and forms security only, Performance (the

4  majority of reports needed to run in batch) and the system hangs at peak times during the day" is

5  false and misleading because, as described above, SuccessFactors has different schema for different

6  customers and has had its systems and architecture validated and certified. Furthermore, "the

7  system hangs" is false and misleading because it incorrectly implies that a customer cannot use

8  SuccessFactors services at certain times.

9      Documents supporting the facts stated above include the documents produced in this action,

10  as well as the pleadings, declarations and exhibits filed with the Court.

11      Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

12  supplement this response or introduce additional evidence at trial.

13  **INTERROGATORY NO. 2:**

14      IDENTIFY all facts and DOCUMENTS supporting YOUR contention that as a direct and

15  proximate result of the statements identified in response to Interrogatory No. 1, YOU have

16  suffered a loss to YOUR reputation and/or monetary damages, including but not limited to,

17  details regarding the alleged loss of reputation, the total amount of any monetary damages YOU

18  claim to have suffered, the method of calculation of such damages, the basis for such calculations,

19  and facts and evidence establishing a direct and proximate causal connection between such

20  statements and the damages claimed.

21  **RESPONSE TO INTERROGATORY NO. 2, ATTORNEYS' EYES ONLY IN YELLOW:**

22      SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

23  they seek the disclosure of information protected by the attorney-client privilege (including the

24  joint representation and common interest privilege), the litigation privilege, the attorney work-

25  product doctrine, or any other applicable privilege, protection, immunity or restriction on

26  discovery as provided by any applicable law. SuccessFactors objects to all definitions,

27  instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

28  information received from a third party under a nondisclosure agreement or other confidentiality

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

2   any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

3   objects to producing the contents of any part of any agreement which, by its terms, may not be

4   disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

5   definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

6   SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

7   Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

8   of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

9   overbroad and not reasonably calculated to lead to discovery of admissible evidence.

10  SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

11  impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

12  imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

13  Northern District of California, and/or applicable case law. SuccessFactors further objects that

14  this interrogatory prematurely calls for expert discovery, and calculation of damages will

15  necessarily depend on an evaluation of injuries that are still continuing and evolving in the

16  marketplace. Discovery is continuing, and SuccessFactors reserves to modify, change, or

17  supplement this response or introduce additional evidence at trial.

18      Subject to and without waiving the foregoing objections, SuccessFactors responds as

19  follows:

20      With respect to the Presentation and its dissemination, SuccessFactors has suffered a loss

21  to its reputation from the Presentation, Softscape's misplaced affirmance of the false and

22  misleading statements therein, and the widespread distribution of the Presentation that Softscape

23  enabled to occur.

24      Over seven hundred of SuccessFactors' customers or prospective customers were direct

25  recipients of Softscape's Presentation. Additional customers,                **REDACTED**

26  **REDACTED**  heard of the Presentation indirectly from direct recipients, or from Softscape itself. The

27  content of the Presentation was discussed and repeated in the press, by analysts, by investors, and

28  among potential and actual customers. The fact that so many players in the marketplace for

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Human Resources solutions received Softscape's statements that falsely and misleadingly

2  disparaged SuccessFactors caused the marketplace to have serious and unjustified questions,

3  uncertainty, and concerns about the SuccessFactors brand, its products, its corporate image, and

4  its commitment to its customers.

5      Softscape designed the false and misleading statements in the Presentation to malign

6  SuccessFactors in the view of customers in areas chosen by Softscape for maximum impact. The

7  purpose of the Presentation was to sow Fear, Uncertainty, and Doubt ("FUD"). Softscape

8  achieved its objective by delivery of the Presentation to hundreds of individual customers, the

9  market at large, and the press, impugning and destroying SuccessFactors' hard-won goodwill and

10 injuring its brand in a way that will take years to recover.

11     SuccessFactors has spent hundreds of hours, with much of that time and effort involving

12 top executives, attempting to mitigate the FUD that the Presentation was intended to create.

13 Nevertheless, market analysts, investors, and customers have viewed SuccessFactors skeptically

14 since the Presentation's dissemination on March 4, 2008. For example, in a report entitled "'John

15 Anonymous' Circulates A Criticism of SuccessFactors," JMP Securities noted that even though

16 SuccessFactors claimed the Presentation was false, the Presentation's descriptions of customer

17 problems were "harder to dismiss without independent analysis." JMP stated that it would

18 "reserve final judgment" but nonetheless lowered its price target on SuccessFactors' stock from

19 $15 to $12. ThinkEquity Partners was also immediately aware of the Presentation's

20 dissemination, necessitating a meeting between ThinkEquity and SuccessFactors executives to

21 address the concerns raised by the Presentation. Similarly, SuccessFactors executives had to meet

22 with a Pacific Crest analyst regarding Softscape's statements about SuccessFactors' purported

23 inability to retain customers such as Sears and MasterCard. In addition, a cover page article in

24 the April 7, 2008 issue of *Workforce Management* observed that regardless of SuccessFactors'

25 efforts to combat the mistruths in the Presentation, analysts such as AMR Research believed that

26 Softscape could benefit from the Presentation by gaining publicity about its own set of human

27 resources applications, to the detriment of SuccessFactors. The content of the Presentation has

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  been a regular topic of conversation and concern raised by industry participants in interactions

2  with SuccessFactors personnel.

3       Complicating SuccessFactors' efforts to dispel the smears in the Presentation, Softscape

4  publicly and repeatedly affirmed its false contention that the facts in the Presentation were

5  substantiated or true.  For example, on March 12, 2008, Softscape issued a press release calling

6  the present lawsuit "a frivolous public relations tactic without merit or foundation," thus

7  representing to the world that the Presentation was true.  On March 14, 2008, Softscape issued a

8  press release calling the present lawsuit "a frivolous abuse of the legal system" and "an act of

9  desperation by a hostile industry predator," and stating that the Presentation "was based on

10 substantiated facts."  Softscape contacted customers directly and referred them to this press

11 release.  In addition, on March 12, 2008, Softscape's CEO emailed the Softscape sales group to

12 say that the "[i]nformation contained in the [Presentation] document should be used judiciously in

13 competitive situation as required."  On March 24, 2008, Softscape's CEO emailed all Softscape

14 employees to say that "the information contained in the Presentation is compiled from publicly

15 available sources."  These additional statements from Softscape ratifying and repeating the

16 falsehoods in the Presentation forced SuccessFactors to expend even more time and effort

17 attempting to rehabilitate its reputation and show customers why the Presentation's statements are

18 false and misleading.  In the first week after John Anonymous emailed the Presentation,

19 SuccessFactors' Vice President of Global Product Marketing and Management, Robert

20 Bernshteyn, alone spent more than forty hours on this effort, time he had to take away from his

21 usual responsibilities in planning and leading the company's marketing strategy.  **REDACTED**

22 :                                                  **REDACTED**

23 :    **REDACTED**

24       Reputational harm is especially keen for SaaS companies like SuccessFactors (and unlike

25 Softscape), because SaaS providers' business model depends on continued confidence of

26 customers in the services that they are buying from the software providers.  Many facts remain to

27 be seen as to how SuccessFactors customers will react over time to their FUD created by

28 Softscape's statements in the Presentation, but there is already evidence that customers have

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  already delayed or been dissuaded from purchases of SuccessFactors services because of the

2  Presentation.                               REDACTED

3                                              REDACTED

4

5                                        REDACTED

6

7                                        REDACTED

8                                        REDACTED

9                                        REDACTED

10                                       REDACTED

11                                       REDACTED

12                                       REDACTED

13                                       REDACTED

14         . Information about other particular prospects is still being collected.  Moreover,

15  many potential prospects who were dissuaded from considering SuccessFactors may never be

16  individually identified, because the dire falsehoods radiating from the Presentation will prevent

17  them from ever even contacting SuccessFactors.

18         In addition, SuccessFactors knows of :                    REDACTED

19                                  REDACTED

20                                  REDACTED

21         Even beyond these specific customers, the broader reputational injury to SuccessFactors

22  in the marketplace far exceeds what SuccessFactors initially suspected.  As of March 11, 2008,

23  SuccessFactors thought that perhaps twenty-five customers had received the Presentation, with

24  Softscape already actively competing for about half of those.  In fact, after Google responded to

25  SuccessFactors' subpoena, it was clear that over seven hundred customers and potential

26  customers received the Presentation, including dozens of prospects who had recently attended

27  SuccessFactors events and were seriously considering adopting SuccessFactors services.  The

28  dissemination of the Presentation to those recipients was particularly damaging because the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  majority of the recipients are not yet customers of SuccessFactors and have no direct experience

2  with SuccessFactors products to counteract the false and misleading claims that Softscape made

3  in the Presentation. Recipients with whom SuccessFactors has no relationship will be less

4  inclined to initiate a relationship with SuccessFactors because of the uncertainty and concerns

5  raised by the false and misleading statements in the Presentation.

6        With respect to Softscape's unauthorized access to SuccessFactors' computer systems and

7  data, SuccessFactors has expended hundreds of additional hours investigating such access,

8  securing against those breaches, and tracing the origin of the ill-gotten screen shots in the

9  Presentation. SuccessFactors IT professionals Bil Harmer, Greg Anderson, Mike Stamm and

10  Heather McMurray expended approximately 150 hours, Mark Runyan expended over 80 hours,

11  and Jim Matheson expended over 45 hours. These numbers will increase as more details about

12  Softscape's access emerge from discovery. In addition, the illicit access allowed Softscape to

13  collect materials included in the Presentation and thereby to enhance the legitimacy of

14  Softscape's false and misleading statements, causing or contributing to the damages described

15  above resulting from the Presentation's distribution. Furthermore, the illicit access provided

16  additional unfair competitive advantages to Softscape from the ability to use SuccessFactors'

17  non-public information to compete with SuccessFactors, the extent of which will be determined

18  through discovery. In addition, SuccessFactors seeks statutory damages.

19        With respect to Softscape's unauthorized use of SuccessFactors' trademarks,

20  SuccessFactors has suffered an injury to the value of its marks because Softscape allowed the

21  widespread use of the Presentation with the marks in commerce. Eliminating any doubt about the

22  target of the false and misleading statements in the Presentation, the pages of the Presentation

23  distinctly identify SuccessFactors through its word mark and logo. In the minds of customers and

24  recipients of the Presentation, Softscape has thus created an association between the false and

25  misleading content to the Presentation and Softscape's brand identification. Softscape's use of

26  SuccessFactors' marks was gratuitous, far exceeding any legitimate need to identify

27  SuccessFactors as the target of the false product statements in the Presentation. Accordingly,

28  SuccessFactors intends to seek treble damages with costs and fees.

1    Documents supporting the facts stated above include the documents produced in this action,

2    as well as the pleadings, declarations and exhibits filed with the Court.

3    Discovery is continuing, and this interrogatory calls for expert investigation, discovery, and

4    analysis as to monetary damages and the methodologies of calculating them. Accordingly

5    SuccessFactors reserves to modify, change, or supplement this response or introduce additional

6    evidence at trial.

7    **INTERROGATORY NO. 3:**

8    IDENTIFY each and every statement in the PRESENTATION that YOU contend

9    "disparage and misrepresent the nature, character, and quality of SuccessFactors goods, services,

10    and professional integrity," as alleged in the Seventh Claim for Relief of the COMPLAINT, and

11    all facts and DOCUMENTS supporting each such contention.

12    **RESPONSE TO INTERROGATORY NO. 3:**

13    SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

14    they seek the disclosure of information protected by the attorney-client privilege (including the

15    joint representation and common interest privilege), the litigation privilege, the attorney work-

16    product doctrine, or any other applicable privilege, protection, immunity or restriction on

17    discovery as provided by any applicable law. SuccessFactors objects to all definitions,

18    instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

19    information received from a third party under a nondisclosure agreement or other confidentiality

20    obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

21    any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

22    objects to producing the contents of any part of any agreement which, by its terms, may not be

23    disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

24    definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

25    SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

26    Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

27    of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

28    overbroad and not reasonably calculated to lead to discovery of admissible evidence.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

2  impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

3  imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

4  Northern District of California, and/or applicable case law. SuccessFactors further objects that

5  this Interrogatory is oppressive because it seeks information duplicative of Interrogatory No. 1, in

6  that each statement in the Presentation that is "false, misleading, and disparaging," also serves to

7  "disparage and misrepresent the nature, character, and quality of SuccessFactors goods, services,

8  and professional integrity." Discovery is continuing, and SuccessFactors reserves to modify,

9  change, or supplement this response or introduce additional evidence at trial.

10       Subject to and without waiving the foregoing objections, SuccessFactors responds as

11  follows:

12       This Interrogatory seeks information duplicative of Interrogatory No. 1, in that the

13  statements in the Presentation that are "false, misleading, and disparaging," also serves to

14  "disparage and misrepresent the nature, character, and quality of SuccessFactors goods, services,

15  and professional integrity." Accordingly, SuccessFactors incorporates its answer to Interrogatory

16  No. 1 by reference.

17       Documents supporting the facts stated above include the documents produced in this action,

18  as well as the pleadings, declarations and exhibits filed with the Court.

19       Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

20  supplement this response or introduce additional evidence at trial.

21  **INTERROGATORY NO. 4:**

22       IDENTIFY all facts and DOCUMENTS supporting YOUR contention that as a direct and

23  proximate result of the statements identified in response to Interrogatory No. 3, YOU have

24  suffered monetary damages, including but not limited to, the total amount claimed, the method of

25  calculation of such amount, the basis for such calculations, and facts and evidence establishing a

26  direct and proximate causal connection between such statements and the amount claimed.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**RESPONSE TO INTERROGATORY NO. 4:**

SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent they seek the disclosure of information protected by the attorney-client privilege (including the joint representation and common interest privilege), the litigation privilege, the attorney work-product doctrine, or any other applicable privilege, protection, immunity or restriction on discovery as provided by any applicable law. SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce information received from a third party under a nondisclosure agreement or other confidentiality obligation, or call for the disclosure of information protected by SuccessFactors' employees' or any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also objects to producing the contents of any part of any agreement which, by its terms, may not be disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive. SuccessFactors will construe these terms consistent with its obligations under Federal Rule of Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as overbroad and not reasonably calculated to lead to discovery of admissible evidence. SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the Northern District of California, and/or applicable case law. SuccessFactors further objects that this interrogatory prematurely calls for expert discovery, and calculation of damages will necessarily depend on an evaluation of injuries that are still continuing and evolving in the marketplace. SuccessFactors further objects that this Interrogatory is oppressive because it seeks information duplicative of Interrogatory No. 2, in that each statement in the Presentation that is "false, misleading, and disparaging," also serves to "disparage and misrepresent the nature, character, and quality of SuccessFactors goods, services, and professional integrity." Discovery

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   is continuing, and SuccessFactors reserves to modify, change, or supplement this response or

2   introduce additional evidence at trial.

3        Subject to and without waiving the foregoing objections, SuccessFactors responds as

4   follows:

5        This Interrogatory seeks information duplicative of Interrogatory No. 2, in that the

6   statements in the Presentation that are "false, misleading, and disparaging," also serve to

7   "disparage and misrepresent the nature, character, and quality of SuccessFactors goods, services,

8   and professional integrity." Accordingly, SuccessFactors incorporates its answer to Interrogatory

9   No. 2 by reference.

10  **INTERROGATORY NO. 5:**

11       IDENTIFY each and every prospective customer for which YOU contend that a

12  prospective economic relationship was "disrupted, interrupted completely, or made more difficult

13  or costly to achieve" as a direct and proximate result of the acts alleged in the Eighth Claim for

14  Relief of the COMPLAINT.

15  **RESPONSE TO INTERROGATORY NO. 5, ATTORNEYS' EYES ONLY IN YELLOW:**

16       SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

17  they seek the disclosure of information protected by the attorney-client privilege (including the

18  joint representation and common interest privilege), the litigation privilege, the attorney work-

19  product doctrine, or any other applicable privilege, protection, immunity or restriction on

20  discovery as provided by any applicable law. SuccessFactors objects to all definitions,

21  instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

22  information received from a third party under a nondisclosure agreement or other confidentiality

23  obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

24  any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

25  objects to producing the contents of any part of any agreement which, by its terms, may not be

26  disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

27  definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

28  SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

2   of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

3   overbroad and not reasonably calculated to lead to discovery of admissible evidence.

4   SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

5   impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

6   imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

7   Northern District of California, and/or applicable case law. SuccessFactors further objects that

8   this interrogatory prematurely calls for expert discovery, and calculation of damages will

9   necessarily depend on an evaluation of injuries that are still continuing and evolving in the

10  marketplace. SuccessFactors further objects that this Interrogatory is oppressive because it seeks

11  information duplicative of Interrogatory No. 2. Discovery is continuing, and SuccessFactors

12  reserves to modify, change, or supplement this response or introduce additional evidence at trial.

13          Subject to and without waiving the foregoing objections, SuccessFactors responds as

14  follows:

15          This Interrogatory seeks information duplicative of Interrogatory No. 2. Accordingly,

16  SuccessFactors incorporates its answer to Interrogatory No. 2 by reference.

17          Although it remains to be seen how many additional relationships will be disrupted

18  because of Softscape's misconduct, SuccessFactors identifies relationships with the following

19  customers as having been disrupted, interrupted completely, or made more difficult or costly to

20  achieve: .                                REDACTED

21                                           REDACTED

22                                           REDACTED

23  REDACTED

24          Documents supporting the facts stated above include the documents produced in this action,

25  as well as the pleadings, declarations and exhibits filed with the Court.

26          Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

27  supplement this response or introduce additional evidence at trial.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **INTERROGATORY NO. 6:**

2        For each prospective customer identified in response to the proceeding interrogatory,

3    IDENTIFY all facts and DOCUMENTS that YOU contend show or tend to show a prospective

4    economic relationship, and that in the absence of the alleged wrongful acts by SOFTSCAPE, it was

5    reasonably probable that each such customer would have purchased SUCCESSFACTORS'

6    performance management software products or otherwise have done business with

7    SUCCESSFACTORS.

8    **RESPONSE TO INTERROGATORY NO. 6, ATTORNEYS' EYES ONLY IN YELLOW:**

9        SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

10    they seek the disclosure of information protected by the attorney-client privilege (including the

11    joint representation and common interest privilege), the litigation privilege, the attorney work-

12    product doctrine, or any other applicable privilege, protection, immunity or restriction on

13    discovery as provided by any applicable law. SuccessFactors objects to all definitions,

14    instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

15    information received from a third party under a nondisclosure agreement or other confidentiality

16    obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

17    any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

18    objects to producing the contents of any part of any agreement which, by its terms, may not be

19    disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

20    definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

21    SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

22    Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

23    of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

24    overbroad and not reasonably calculated to lead to discovery of admissible evidence.

25    SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

26    impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

27    imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

28    Northern District of California, and/or applicable case law. SuccessFactors further objects that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  this interrogatory prematurely calls for expert discovery, and calculation of damages will

2  necessarily depend on an evaluation of injuries that are still continuing and evolving in the

3  marketplace. SuccessFactors further objects to the term "reasonably probable" as vague and

4  ambiguous to such an extent as to render this Interrogatory unintelligible. SuccessFactors further

5  objects that this Interrogatory is oppressive because it seeks information duplicative of

6  Interrogatory No. 2. Discovery is continuing, and SuccessFactors reserves to modify, change, or

7  supplement this response or introduce additional evidence at trial.

8      Subject to and without waiving the foregoing objections, SuccessFactors responds as

9  follows:

10      It remains to be seen how many additional relationships will be disrupted because of

11  Softscape's misconduct. Nevertheless,          **REDACTED**

12                              **REDACTED**

13                              **REDACTED**

14      **REDACTED**          . each contacted SuccessFactors or its partners to

15  indicate receipt of the Presentation and to seek a response from SuccessFactors. On information

16  and belief, for each of these customers or prospective customers, Softscape was actively

17  competing against SuccessFactors as of March 4, 2008 when John Anonymous disseminated the

18  Presentation.

19      Documents supporting the facts stated above include the documents produced in this action,

20  as well as the pleadings, declarations and exhibits filed with the Court.

21      Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

22  supplement this response or introduce additional evidence at trial.

23  **INTERROGATORY NO. 7:**

24      IDENTIFY all facts and DOCUMENTS supporting YOUR contention that as a direct and

25  proximate result of SOFTSCAPE's alleged interference with YOUR prospective economic

26  relations, as alleged in the Eighth Claim for Relief in the COMPLAINT, YOU have suffered

27  monetary damages, including but not limited to, the total amount claimed, the method of

28  calculation of such amount, the basis for such calculations, and facts and evidence establishing a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  direct and proximate causal connection between the alleged acts of interference and the amount

2  claimed.

3  **RESPONSE TO INTERROGATORY NO. 7:**

4      SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

5  they seek the disclosure of information protected by the attorney-client privilege (including the

6  joint representation and common interest privilege), the litigation privilege, the attorney work-

7  product doctrine, or any other applicable privilege, protection, immunity or restriction on

8  discovery as provided by any applicable law. SuccessFactors objects to all definitions,

9  instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

10  information received from a third party under a nondisclosure agreement or other confidentiality

11  obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

12  any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

13  objects to producing the contents of any part of any agreement which, by its terms, may not be

14  disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

15  definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

16  SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

17  Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

18  of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

19  overbroad and not reasonably calculated to lead to discovery of admissible evidence.

20  SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

21  impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

22  imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

23  Northern District of California, and/or applicable case law. SuccessFactors further objects that

24  this interrogatory prematurely calls for expert discovery, and calculation of damages will

25  necessarily depend on an evaluation of injuries that are still continuing and evolving in the

26  marketplace. SuccessFactors further objects that this Interrogatory is oppressive because it seeks

27  information duplicative of Interrogatory No. 2. Discovery is continuing, and SuccessFactors

28  reserves to modify, change, or supplement this response or introduce additional evidence at trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Subject to and without waiving the foregoing objections, SuccessFactors responds as

2  follows:

3    This Interrogatory seeks information duplicative of Interrogatory No. 2. Accordingly,

4  SuccessFactors incorporates its answer to Interrogatory No. 2 by reference.

5    Documents supporting the facts stated above include the documents produced in this action,

6  as well as the pleadings, declarations and exhibits filed with the Court.

7    Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

8  supplement this response or introduce additional evidence at trial.

9  **INTERROGATORY NO. 8:**

10    IDENTIFY each and every customer YOU have lost as a direct and proximate result of

11  the wrongful or unlawful acts alleged in the COMPLAINT.

12  **RESPONSE TO INTERROGATORY NO. 8, ATTORNEYS' EYES ONLY IN YELLOW:**

13    SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

14  they seek the disclosure of information protected by the attorney-client privilege (including the

15  joint representation and common interest privilege), the litigation privilege, the attorney work-

16  product doctrine, or any other applicable privilege, protection, immunity or restriction on

17  discovery as provided by any applicable law. SuccessFactors objects to all definitions,

18  instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

19  information received from a third party under a nondisclosure agreement or other confidentiality

20  obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

21  any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

22  objects to producing the contents of any part of any agreement which, by its terms, may not be

23  disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

24  definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

25  SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

26  Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

27  of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

28  overboard and not reasonably calculated to lead to discovery of admissible evidence.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

2    impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

3    imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

4    Northern District of California, and/or applicable case law. SuccessFactors further objects that

5    this interrogatory prematurely calls for expert discovery, and calculation of damages will

6    necessarily depend on an evaluation of injuries that are still continuing and evolving in the

7    marketplace. SuccessFactors further objects to the term "lost" as vague and ambiguous to such

8    an extent as to render this Interrogatory unintelligible. SuccessFactors further objects that this

9    Interrogatory is oppressive because it seeks information duplicative of Interrogatory No. 2.

10   Discovery is continuing, and SuccessFactors reserves to modify, change, or supplement this

11   response or introduce additional evidence at trial.

12           Subject to and without waiving the foregoing objections, SuccessFactors responds as

13   follows:

14           SuccessFactors continues to attempt to sell its solutions to potential customers in spite of

15   the questions, concerns, and uncertainty raised by the false and misleading statements in the

16   Presentation. Thus it remains to be seen which potential customers will stay as lost. That

17   notwithstanding, SuccessFactors identifies those companies listed in the Exhibits to the

18   Declaration of Liwen Mah in Support of SuccessFactors' Motion for Administrative Relief to File

19   Materials Recently Produced by Google Inc. that are not listed as customers in SFP001024.

20           In addition, SuccessFactors knows of:                    **REDACTED**

21                                    **REDACTED**

22                                    **REDACTED**

23           Documents supporting the facts stated above include the documents produced in this action,

24   as well as the pleadings, declarations and exhibits filed with the Court.

25           Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

26   supplement this response or introduce additional evidence at trial.

27

28

1  **INTERROGATORY NO. 9:**

2         For each customer identified in the proceeding interrogatory, IDENTIFY all facts and

3  DOCUMENTS that YOU contend show or tend to show each such customer was lost as a direct

4  and proximate result of the wrongful or unlawful acts alleged in the COMPLAINT and any

5  monetary damages YOU sustained as a direct and proximate result of each such loss.

6  **RESPONSE TO INTERROGATORY NO. 9:**

7         SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

8  they seek the disclosure of information protected by the attorney-client privilege (including the

9  joint representation and common interest privilege), the litigation privilege, the attorney work-

10  product doctrine, or any other applicable privilege, protection, immunity or restriction on discovery

11  as provided by any applicable law. SuccessFactors objects to all definitions, instructions, and this

12  interrogatory to the extent they purport to require SuccessFactors to produce information received

13  from a third party under a nondisclosure agreement or other confidentiality obligation, or call for

14  the disclosure of information protected by SuccessFactors' employees' or any third parties' rights

15  of privacy or other confidentiality obligations. SuccessFactors also objects to producing the

16  contents of any part of any agreement which, by its terms, may not be disclosed. In the definition

17  of "SuccessFactors," SuccessFactors further objects to Softscape's definitions of "you," "your,"

18  and "SuccessFactors" as overly broad, burdensome and oppressive. SuccessFactors will construe

19  these terms consistent with its obligations under Federal Rule of Civil Procedure 33 and applicable

20  case law. In particular, SuccessFactors objects to the inclusion of terms "partners," "associates,"

21  "distributors," "accountants," and "financial advisors" as overbroad and not reasonably calculated

22  to lead to discovery of admissible evidence. SuccessFactors further objects to Softscape's

23  definitions of "Identify" to the extent they seek to impose obligations upon SuccessFactors that is

24  broader than or inconsistent with the obligations imposed by the Federal Rules of Civil Procedure,

25  the Local Rules of the District Court of the Northern District of California, and/or applicable case

26  law. SuccessFactors further objects that this interrogatory prematurely calls for expert discovery,

27  and calculation of damages will necessarily depend on an evaluation of injuries that are still

28  continuing and evolving in the marketplace. SuccessFactors further objects to the term "lost" as

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    vague and ambiguous to such an extent as to render this Interrogatory unintelligible.

2    SuccessFactors further objects that this Interrogatory is oppressive because it seeks information

3    duplicative of Interrogatory No. 2. Discovery is continuing, and SuccessFactors reserves to

4    modify, change, or supplement this response or introduce additional evidence at trial.

5        Subject to and without waiving the foregoing objections, SuccessFactors responds as

6    follows:

7        This Interrogatory seeks information duplicative of Interrogatory No. 2. Accordingly,

8    SuccessFactors incorporates its answer to Interrogatory No. 2 by reference.

9        Based on the list of gmail recipients provided by Google, the majority of Presentation

10   recipients are not yet customers of SuccessFactors and have no direct experience with

11   SuccessFactors products to counteract the false and misleading claims that Softscape made in the

12   Presentation. Recipients with whom SuccessFactors has no relationship will be less inclined to

13   initiate a relationship with SuccessFactors because of the uncertainty and concerns raised by the

14   false and misleading statements in the Presentation. These recipients are lost as a result of

15   Softscape's misconduct.

16       Documents supporting the facts stated above include the documents produced in this action,

17   as well as the pleadings, declarations and exhibits filed with the Court.

18       Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

19   supplement this response or introduce additional evidence at trial.

20   **INTERROGATORY NO. 10:**

21       IDENTIFY all facts and DOCUMENTS supporting YOUR contention in Paragraph 24 of

22   the COMPLAINT that "[t]he mere circulation of the Presentation, despite its demonstrable

23   falsehoods, has caused, and will continue to cause SuccessFactors damage and irreparable harm."

24   **RESPONSE TO INTERROGATORY NO. 10:**

25       SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

26   they seek the disclosure of information protected by the attorney-client privilege (including the

27   joint representation and common interest privilege), the litigation privilege, the attorney work-

28   product doctrine, or any other applicable privilege, protection, immunity or restriction on

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   discovery as provided by any applicable law. SuccessFactors objects to all definitions,

2   instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

3   information received from a third party under a nondisclosure agreement or other confidentiality

4   obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

5   any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

6   objects to producing the contents of any part of any agreement which, by its terms, may not be

7   disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

8   definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

9   SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

10  Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

11  of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

12  overbroad and not reasonably calculated to lead to discovery of admissible evidence.

13  SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

14  impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

15  imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

16  Northern District of California, and/or applicable case law. SuccessFactors further objects that

17  this interrogatory prematurely calls for expert discovery, and calculation of damages will

18  necessarily depend on an evaluation of injuries that are still continuing and evolving in the

19  marketplace. SuccessFactors further objects that this Interrogatory is oppressive because it seeks

20  information duplicative of Interrogatory No. 2. Discovery is continuing, and SuccessFactors

21  reserves to modify, change, or supplement this response or introduce additional evidence at trial.

22          Subject to and without waiving the foregoing objections, SuccessFactors responds as

23  follows:

24          This Interrogatory seeks information duplicative of Interrogatory No. 2. Accordingly,

25  SuccessFactors incorporates its answer to Interrogatory No. 2 by reference.

26          Documents supporting the facts stated above include the documents produced in this action,

27  as well as the pleadings, declarations and exhibits filed with the Court.

28

1    Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

2    supplement this response or introduce additional evidence at trial.

3    **INTERROGATORY NO. 11:**

4    IDENTIFY all facts and DOCUMENTS supporting YOUR contention in Paragraph 24 of

5    the COMPLAINT that "[c]ustomers who received the Presentation while in negotiations to make

6    purchases from SuccessFactors have indicated that whatever the truth of the allegations of the

7    Presentation, those allegations generate far too much negativity for SuccessFactors to overcome."

8    **RESPONSE TO INTERROGATORY NO. 11, ATTORNEYS' EYES ONLY IN YELLOW:**

9    SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

10    they seek the disclosure of information protected by the attorney-client privilege (including the

11    joint representation and common interest privilege), the litigation privilege, the attorney work-

12    product doctrine, or any other applicable privilege, protection, immunity or restriction on

13    discovery as provided by any applicable law. SuccessFactors objects to all definitions,

14    instructions, and this interrogatory to the extent they purport to require SuccessFactors to produce

15    information received from a third party under a nondisclosure agreement or other confidentiality

16    obligation, or call for the disclosure of information protected by SuccessFactors' employees' or

17    any third parties' rights of privacy or other confidentiality obligations. SuccessFactors also

18    objects to producing the contents of any part of any agreement which, by its terms, may not be

19    disclosed. In the definition of "SuccessFactors," SuccessFactors further objects to Softscape's

20    definitions of "you," "your," and "SuccessFactors" as overly broad, burdensome and oppressive.

21    SuccessFactors will construe these terms consistent with its obligations under Federal Rule of

22    Civil Procedure 33 and applicable case law. In particular, SuccessFactors objects to the inclusion

23    of terms "partners," "associates," "distributors," "accountants," and "financial advisors" as

24    overbroad and not reasonably calculated to lead to discovery of admissible evidence.

25    SuccessFactors further objects to Softscape's definitions of "Identify" to the extent they seek to

26    impose obligations upon SuccessFactors that is broader than or inconsistent with the obligations

27    imposed by the Federal Rules of Civil Procedure, the Local Rules of the District Court of the

28    Northern District of California, and/or applicable case law. SuccessFactors further objects that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    this interrogatory prematurely calls for expert discovery, and calculation of damages will

2    necessarily depend on an evaluation of injuries that are still continuing and evolving in the

3    marketplace.  SuccessFactors further objects that this Interrogatory is oppressive because it seeks

4    information duplicative of Interrogatory No. 2.  Discovery is continuing, and SuccessFactors

5    reserves to modify, change, or supplement this response or introduce additional evidence at trial.

6            Subject to and without waiving the foregoing objections, SuccessFactors responds as

7    follows:

8            This Interrogatory seeks information duplicative of Interrogatory No. 2.  Accordingly,

9    SuccessFactors incorporates its answer to Interrogatory No. 2 by reference.

10                                              REDACTED

11                                              REDACTED

12    REDACTED                                  REDACTED

13                                              REDACTED

14                                              REDACTED

15            Documents supporting the facts stated above include the documents produced in this action,

16    as well as the pleadings, declarations and exhibits filed with the Court.

17            Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

18    supplement this response or introduce additional evidence at trial.

19    **INTERROGATORY NO. 12:**

20            IDENTIFY each and every individual employed by SUCCESSFACTORS, including but

21    not limited to officers, employees, agents, consultants, attorneys, investigators and independent

22    contractors, with information related to the identity of "John Anonymous" and/or YOUR efforts

23    to ascertain such identity.

24    **RESPONSE TO INTERROGATORY NO. 12:**

25            SuccessFactors objects to all definitions, instructions, and this interrogatory to the extent

26    they seek the disclosure of information protected by the attorney-client privilege (including the

27    joint representation and common interest privilege), the litigation privilege, the attorney work-

28    product doctrine, or any other applicable privilege, protection, immunity or restriction on discovery

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  as provided by any applicable law.  SuccessFactors objects to all definitions, instructions, and this

2  interrogatory to the extent they purport to require SuccessFactors to produce information received

3  from a third party under a nondisclosure agreement or other confidentiality obligation, or call for

4  the disclosure of information protected by SuccessFactors' employees' or any third parties' rights

5  of privacy or other confidentiality obligations.  SuccessFactors also objects to producing the

6  contents of any part of any agreement which, by its terms, may not be disclosed.  In the definition

7  of "SuccessFactors," SuccessFactors further objects to Softscape's definitions of "you," "your,"

8  and "SuccessFactors" as overly broad, burdensome and oppressive.  SuccessFactors will construe

9  these terms consistent with its obligations under Federal Rule of Civil Procedure 33 and applicable

10  case law.  In particular, SuccessFactors objects to the inclusion of terms "partners," "associates,"

11  "distributors," "accountants," and "financial advisors" as overbroad and not reasonably calculated

12  to lead to discovery of admissible evidence.  SuccessFactors further objects to Softscape's

13  definitions of "Identify" to the extent they seek to impose obligations upon SuccessFactors that is

14  broader than or inconsistent with the obligations imposed by the Federal Rules of Civil Procedure,

15  the Local Rules of the District Court of the Northern District of California, and/or applicable case

16  law.  SuccessFactors further objects to this interrogatory as oppressive and unduly burdensome to

17  the extent that since the filing of the present action, all SuccessFactors employees and the general

18  public have some information about the identity of "John Anonymous" and SuccessFactors' efforts

19  to ascertain his identity.  SuccessFactors further objects that this interrogatory seeks the disclosure

20  of information protected by the attorney-client privilege (including the joint representation and

21  common interest privilege), the litigation privilege, the attorney work-product doctrine, or any

22  other applicable privilege, protection, immunity or restriction on discovery as provided by any

23  applicable law.  Discovery is continuing, and SuccessFactors reserves to modify, change, or

24  supplement this response or introduce additional evidence at trial.

25        Subject to and without waiving the foregoing objections, SuccessFactors responds as

26  follows:

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       James Matheson, Mike Stamm, Randy Womack, Jeremy Bauer, Stacey Epstein, Paul

2 Albright, William Harmer III, Robert Bernshteyn, Jose Lopez, Jorge Corrales, Carla Muccino,

3 Tony Randolph, Tony Dawson, Greg Anderson, Lars Dalgaard, Julian Ong, and Fenwick & West.

4       Documents supporting the facts stated above include the documents produced in this action,

5 as well as the pleadings, declarations and exhibits filed with the Court.

6       Discovery is continuing, and accordingly SuccessFactors reserves to modify, change, or

7 supplement this response or introduce additional evidence at trial.

8

9

10 Dated:  July 7, 2008                          FENWICK & WEST LLP

11

12                              By:

13                               Patrick E. Premo

14                          Attorneys for Plaintiff SUCCESSFACTORS, INC.

                                      *5227767*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## VERIFICATION

I, Robert Bernshteyn, am employed by SuccessFactors, Inc. ("SuccessFactors") as Vice President, Global Product Marketing and Management, and I am authorized to sign this verification on behalf of SuccessFactors.

SuccessFactors' Response to Softscape, Inc.'s First Set of Interrogatories (the "Response") was prepared with the assistance of employees and representatives of SuccessFactors. The contents of this Response are not all within my personal knowledge, and I am informed that there is no single employee of SuccessFactors who has personal knowledge of all the matters set forth in this Response. Subject to the limitations set forth above, I have read the Response and upon information and belief know the contents. I verify under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 7th day of July 2008 at San Mateo, California.

ROBERT BERNSHTEYN

1

## CERTIFICATE OF SERVICE

2
The undersigned declares that:

3
I am employed in the County of Santa Clara, State of California. I am over the age of 18

4
and not a party to this action. My business address is 801 California Street, Mountain View, CA

5
94041.

6
On the date set forth below, I served the attached PLAINTIFF'S RESPONSE TO DEFENDANT'S

7
FIRST SET OF INTERROGATORIES (NOS. 1-12) on the party in the subject action by placing a true

8
copy thereof as indicated below, addressed as follows:

9
  Robert P. Taylor, Esq.
  Bryan J. Sinclair, Esq.

10
  Jeffrey M. Ratinoff, Esq.

11
  Mintz, Levin, Cohn, Ferris, Glovsky
    & Popeo, P.C.

12
  1400 Page Mill Road
  Palo Alto, CA  94304

13

14
☒ **U.S. MAIL:** I am familiar with our business practices for collecting and processing of
mail for the United States Postal Service. Mail placed by me within the office for

15
collection for the United States Postal Service would normally be deposited with the
United States Postal Services that day in the ordinary course of business. The envelope(s)

16
bearing the address(es) above was sealed and placed for collection and mailing on the date
below following our ordinary business practices.

17

18
☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand on the
office(s) of the addressee(s).

19
☐ **BY FEDERAL EXPRESS:** I caused such envelope(s) to be delivered to Federal Express
for overnight courier service to the office(s) of the addressee(s).

20
☒ **BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by electronic

21
mail to the addressee(s).

22
☐ **BY FACSIMILE:** I caused a copy of such document(s) to be sent via facsimile
transmission to the office(s) of the party(s) stated above and was transmitted without error.

23
I declare under penalty of perjury under the laws of the State of California that the above

24
is true and correct. Executed on at Mountain View, California.

25

26

27
_Kathleen Nelson_
Kathleen Nelson

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5227767

CERT. OF SERVICE FOR PLAINTIFF'S RESPONSE TO
DEFENDANT'S FIRST SET OF ROGS (NOS. 1 – 12)

CASE NO. CV 08-1376 CW BZ

EXHIBIT B

# DOCUMENT SUBMITTED UNDER SEAL

EXHIBIT C

SuccessFactors Announces Record Second Quarter Fiscal 2008 Results          http://www.successfactors.com/press-releases/detail/?id=1184459



**SuccessFactors**
People Performance

PRODUCTS    BENEFITS    CUSTOMERS    . ABOUT US    EXPLORE    (800) 809-9920 | CONTACT | SUPPORT
International Sites

Company Overview
Management Team
Request a Meeting
Global Offices
Careers
Partners
News
Press Releases
Investor Relations

**NEXT STEPS**

Request a Meeting

Application Suite Video

Attend an Event/Webinar

SuccessFactors Press Releases
Subscribe to the Press Releases RSS feed.
View All Press Releases >

# SuccessFactors Announces Record Second Quarter Fiscal 2008 Results

**Revenue Grows a Strong 71% Year-over-Year**
**-- Deferred revenue grew to a new high of $123.6M, up 94% year-over-year**
**-- Non-GAAP gross margin improves sequentially from 61% to 65%**
**-- Non-GAAP operating margin Improves sequentially 7 full percentage points**
**-- Cash flow used in operating activities improves 7 full percentage points to ($6.4) million compared to ($6.9) million in Q207**
**-- Raises full year fiscal 2008 guidance**

SAN MATEO, Calif., Aug 06, 2008 (BUSINESS WIRE) -- SuccessFactors, Inc. (NASDAQ:SFSF), the global leader in on-demand performance and talent management solutions, today announced results for its second fiscal quarter of 2008 which ended June 30, 2008.

"SuccessFactors again delivered a strong quarter with outstanding execution, resulting in superior year-over-year revenue growth of 71% and deferred revenue growth year-over-year of 94% in what continues to be a challenging economy," said Lars Dalgaard, chief executive officer for SuccessFactors. "At the same time as outgrowing the industry, we delivered our best non-GAAP operating margin in more than three years. In the last 6 months, non-GAAP gross margin was improved 12 full percentage points from 53% to 65%, and non-GAAP operating margin improved 39 full percentage points."

Discussing strategic areas of investment, Dalgaard continued, "The reductions in COGS (cost of goods sold) and general & administrative expenses were due to the productivity of our professional services team and leverage across our G&A functions which allowed us to invest more aggressively in the revenue generating areas of research & development and sales & marketing. We continue to be impressed with the strength and depth of our entire team, not just the management team but throughout the organization."

SuccessFactors' results for the second quarter of fiscal year 2008:

-- Q2 FY08 Revenue: Revenue was $25.7 million, compared to $15.0 million for the same period last year, an increase of 71%, and an increase of 10% sequentially from Q108.

-- Q2 FY08 Customers: Added approximately 190 new customers during the quarter. The company had approximately 2,140 customers as of June 30, 2008, an increase of 83% from 1,167 customers as of June 30, 2007, and an increase of 10% from 1,950 customers as of March 31, 2008.

-- Q2 FY08 Margins: Non-GAAP gross margin improved to 65% for the quarter ended June 30, 2008, up from 61% for the quarter ended March 31, 2008. Non-GAAP operating margin improved by 7 full percentage points to (70%) for the quarter ended June 30, 2008, compared to (77%) for the quarter ended March 31, 2008.

-- Q2 FY08 Expenses: Total non-GAAP operating expenses were held to 7% sequential growth from the first quarter of 2008, versus growth of 107% over fiscal 2007. During the quarter ended June 30, 2008, non-GAAP sales and marketing expenses were held to 7% sequential growth from the first quarter of 2008, versus 115% over fiscal 2007. Non-GAAP general and administrative expenses declined 5% sequentially from the first quarter of 2008, versus 149% growth over fiscal 2007. Non-GAAP research and development expenses increased 20% sequentially from the first quarter of 2008, versus 54% growth over fiscal 2007. For the quarter ended June 30, 2008, the non-GAAP total operating expenses excluded approximately $1.8 million in stock-based compensation expense.

-- Q2 FY08 Cash Flows Used in Operations: For the quarter ended June 30, 2008, the company used $6.4 million of cash in operating activities, down from the $6.9 million used in the quarter ended June 30, 2007. Total cash, cash equivalents and marketable securities at June 30, 2008 were $105.7 million. The company's secondary offering was completed on June 23, 2008 and raised total net proceeds of approximately $27.7 million to the company.

-- Q2 FY08 Net Loss per Share: On a GAAP basis, for the quarter ended June 30, 2008, the net loss per common share, basic and diluted, was $0.37. The non-GAAP net loss per common share, basic and diluted, was $0.33, which excludes approximately $2.0 million in stock-based compensation expense, compared to a non-GAAP net loss per share, basic and diluted, of $0.34 in Q108. GAAP and non-GAAP net loss per common share calculations are based on 52.3 million weighted average shares outstanding during the quarter.

-- Q2 FY08 Total Deferred Revenue: Total deferred revenue as of June 30, 2008 was $123.6 million, an increase of 94% compared to June 30, 2007 and 10% compared to March 31, 2008.

Additional Second Quarter Fiscal 2008 Highlights:

-- Continued to gain strong traction within the SMB group adding new customers including Noblis, Omaha World-Herald Company, Syniverse Technologies, Goodwill of San Francisco, Philadelphia Gas Works, Bates College, OpenTV, 3PAR, Perceptive Software, Trident Microsystems, Paylocity, Ingres, Chyron Corporation, Supfina Machine Company, Office of Financial Management State of Washington, Bare Escentuals Beauty, Samsung Telecommunications America, 1st Franklin Financial Corp., and The Recording Academy.

-- Added enterprise customers including Alticor, CH2M Hill, Wellstar Health Systems, EMC, Hollister Incorporated, PCL Constructors, Salina Regional Health Care, Woodward Governor, Starkey Laboratories, Daughters of Charity Health System, and United Industries Corporation.

-- Recorded strongest European performance ever, adding new customers in over 9 countries including Hilti in Lichtenstein, TetraPak in Switzerland, General Dynamics in Germany, Societe Generale and SKF in France, Cable and Wireless in the United Kingdom, Novozymes and Kongsberg in Denmark, and Sky Italia and Navionics in Italy.

-- Made outstanding progress in Asia Pacific, adding new customers including Lend Lease Management Services and Super Partners in Australia, LG Electronics, SaeJong Industries, and inter-M in Korea, Prince Court Medical Center in Singapore, and Saigon Postel in Malaysia.

-- New partner-driven customers included TriNet with InfoPartners, Tibion, Rockwall Hospital and SteelEye; Riverside Group with Polar Window; GeoLearning with Kingland; and Sistemas CBT with Grupo Copri Mexico.

-- Hosted 2,000+ customers and prospects for more than 15 SuccessFactors seminars, events, and other sponsored activities across North America in cities such as Toronto, Boston, Minneapolis, Houston, Phoenix, Washington, D.C., Chicago, New York, San Francisco, Nashville, and Philadelphia. In Q3 FY08 more than 20 similar events are planned globally.

-- Hosted more than 700 people from over 300 companies at SuccessFactors' 2008 Global User Conference, with more than 40 customer-led sessions.

-- Announced first SuccessFactors European User Conference to be held in Q408.

-- CEO Lars Dalgaard was named winner of the 2008 Ernst & Young Entrepreneur of the Year Award in Northern California/Silicon Valley in the Software-as-a-Service category. Dalgaard was selected a winner from an extraordinary pool of 27 finalists that were culled from more than 90 nominations of business leaders by a panel of independent judges.

8/6/2008 4:36 PM

SuccessFactors Announces Record Second Quarter Fiscal 2008 Results          http://www.successfactors.com/press-releases/detail/?id=1184459

**BOOKMARK & SHARE US     NETWORK US**

**BLOGS, PODCASTS & FEEDS** (All Feeds)
HappyFactors! | Performance & Talent Management
People Performance Radio Podcast

**VIDEOS** (View All)
People Are Your Most Important Asset
CXO: Increasing Bottom Line Results
The Future Workforce
SuccessConnect 2008 in Review

**QUICK LINKS**

| Press Releases | Global Offices | Privacy |
| News | Events | Site Map |
| SFSF Investors | Careers | |

© 2008 SuccessFactors, Inc. All rights reserved.

8/6/2008 4:36 PM

EXHIBIT D

SuccessFactors Announces Record First Quarter Fiscal 2008 Results          http://www.successfactors.com/press-releases/detail/?id=1142460

**SuccessFactors** ✕
People Performance                    PRODUCTS    BENEFITS    CUSTOMERS    ABOUT US    EXPLORE         **(800) 809-9920 | CONTACT | SUPPORT**
                                                                                                        International Sites

Company Overview
Management Team          SuccessFactors Press Releases
Request a Meeting        ✉ Subscribe to the Press Releases RSS feed.
Global Offices           View All Press Releases ›
Careers
Partners
News                     # SuccessFactors Announces Record First Quarter Fiscal 2008 Results
Press Releases
Investor Relations          Signs New Customer for 300,000 Initial Users - World's Largest On-Demand Deployment -- Record revenue of $23.5 million,
                            increase of 89% year-over-year from $12.4 million and 22% sequentially -- Non-GAAP gross margin improves sequentially from
**NEXT STEPS**              53% to 61% -- Non-GAAP operating margin improves sequentially by 32% -- Cash flow used in operating activities improves by 67%
                            to ($4.0) million compared to ($12.3) million in Q407 -- New customers rose by approximately 200, bringing total customers to
→ Request a Meeting         1,950, up 94% year-over-year -- Raises full year fiscal 2008 guidance
                         SAN MATEO, Calif., May 08, 2008 (BUSINESS WIRE) -- SuccessFactors, Inc. (NASDAQ: SFSF), the global leader in on-demand performance
🖥 Application Suite Video and talent management solutions, today announced results for its first fiscal quarter of 2008 which ended March 31, 2008.

📅 Attend an Event/Webinar "Our strategy is working better than planned as the whole company executed with excellence, driving organic revenue growth of 89%
                         year-over-year, and 22% sequentially, while improving our cash flow used in operations by 67% sequentially," said Lars Dalgaard, Chief
                         Executive Officer, SuccessFactors. "We used $8.3 million less cash in operations during the first quarter of fiscal 2008 versus Q407, with
                         market-leading pure organic growth, demonstrating the power of our model and the discipline of our team - setting SuccessFactors up
                         for a very promising 2008. Even in a weak economy, customers have a large appetite for products that increase revenues and decrease
                         costs. We do both with a passion for revolutionizing the way the world works."

                         SuccessFactors' results for the first quarter of fiscal year 2008 were as follows:

                         -- Q1 FY08 Revenue: Revenue was $23.5 million, compared to $12.4 million for the same period last year, an increase of 89%, and an
                         increase of 22% sequentially from Q407.

                         -- Q1 FY08 Customers: Added approximately 200 new customers during the quarter. The company had approximately 1,950 customers
                         as of March 31, 2008, an increase of 94% from 1,003 customers as of March 31, 2007, and an increase of 11% from 1,750 customers as of
                         December 31, 2007.

                         -- Q1 FY08 Margins: Non-GAAP gross margin improved to 61% for the quarter ended March 31, 2008, up from 53% for the quarter ended
                         December 31, 2007. Non-GAAP operating margin improved by 32% to (77%) for the quarter ended March 31, 2008 compared to (109%)
                         for the quarter ended December 31, 2007.

                         -- Q1 FY08 Expenses: Total non-GAAP operating expenses were held to 3% sequential growth from the fourth quarter of 2007, versus
                         growth of 107% over fiscal 2007. During the quarter ended March 31, 2008, non-GAAP sales and marketing expenses were held to 1%
                         sequential growth from the fourth quarter of 2007, versus 115% over fiscal 2007. Non-GAAP general and administrative expenses were
                         held to 18% sequential growth from the fourth quarter of 2007, versus 149% growth over fiscal 2007. Non-GAAP research and
                         development expenses declined 2% sequentially from the fourth quarter of 2007, versus 54% growth over fiscal 2007. For the quarter
                         ended March 31, 2008, the non-GAAP total operating expenses exclude approximately $1.6 million in stock-based compensation
                         expense.

                         -- Q1 FY08 Cash Flows Used in Operations: For the quarter ended March 31, 2008, the company used $4.0 million of cash in operating
                         activities, down from the $12.3 million used in the quarter ended December 31, 2007. Total cash, cash equivalents and marketable
                         securities at March 31, 2008 were $86.4 million.

                         -- Q1 FY08 Net Loss per Share: On a GAAP basis, for the quarter ended March 31, 2008, the net loss per common share, basic and
                         diluted, was $0.37. The GAAP loss improved by $0.74 sequentially from Q407, and by $4.03 from the prior year's Q107. The non-GAAP
                         net loss per common share, basic and diluted, was $0.34, which excludes approximately $1.8 million in stock-based compensation
                         expense. The non-GAAP loss improved by $0.15 sequentially from Q407. GAAP and non-GAAP net loss per common share calculations
                         are based on 51.7 million weighted average shares outstanding during the quarter.

                         -- Q1 FY08 Total Deferred Revenue: Total deferred revenue as of March 31, 2008 was $112.8 million, an increase of 99% compared to
                         March 31, 2007 and 12% compared to December 31, 2007.

                         Additional First Quarter Fiscal 2008 Highlights:

                         -- Added many small business customers including BMC Healthnet Plan, InterContinental Exchange, Coremetrics, Nature's Path Organic
                         Foods, Magellan Navigation, Dewey Homes, Suburban Sports Group, Greylock Partners, SolarCity, Jessco Homes, Washington
                         Convention and Tourism, and 23andMe.

                         -- Continued to gain traction in the mid-market adding Rainmaker Systems, Kao Brands Company, Mentor Corp, Webb Wheel Products,
                         Inc., 1st Source Corporation, New Jersey Resources Service Corporation, Berkshire Property Advisors, DHG, Webb Wheel Products, Cole
                         Haan, and Athenahealth.

                         -- Executed on its C-level strategy approach adding enterprise customers Briggs & Stratton, Gannett, Murphy Oil, The Vail Corporation,
                         SAS Institute, Wheeling-Pittsburgh Steel Corporation, R.J. Reynolds, Scholastic Corporation, El Paso Corporation, and Fidelity
                         Investment Management Limited.

                         -- Announces the world's largest software-as-a-service deployment of 300,000 users initially at one of the world's largest private
                         employers and one of Fortune's 2008 Global 500 largest public corporations by revenue.

                         -- Adds Wall Street firm Morgan Stanley with 50,000 users, replacing its homegrown system.

                         -- Announces SuccessFactors Global Users Conference, June 2-5 in San Francisco. Event will feature 40 customer and 10
                         product-focused presentations and visionary keynotes including Dr. Robert Sutton, Professor of Management Science & Engineering at
                         Stanford University and the author of The No Asshole Rule, Peter Capelli, professor of management at The University of Pennsylvania
                         Wharton School and director of the Wharton School Center for Human Resources, and Godfrey Sullivan, former president and CEO of
                         Hyperion Solutions.

                         Guidance:

                         SuccessFactors is initiating guidance for its second quarter and is raising its full fiscal year 2008 guidance.

                         -- Q2 FY08: Revenue for the company's second fiscal quarter is projected to be in the range of approximately $24 million to $25
                         million. Non-GAAP net loss per common share, basic and diluted, is expected to be in the range of approximately ($0.39) to ($0.41).
                         Non-GAAP net loss per common share estimates exclude the effects of estimated stock-based compensation expense and assume an
                         average weighted share count of approximately 52 million shares.

                         -- Full Year FY08: The company is raising guidance for full year revenue for fiscal 2008 from approximately $101 million to $103
                         million, to approximately $104 million to $106 million. The company now expects the non-GAAP net loss per common share for fiscal
                         2008 to be in the range of ($1.55) to ($1.59); previous guidance had been in the range of ($1.63) to ($1.67). Non-GAAP net loss per
                         common share estimates exclude the effects of estimated stock-based compensation expense and assume an average weighted share count

SuccessFactors Announces Record First Quarter Fiscal 2008 Results          http://www.successfactors.com/press-releases/detail/?id=1142460

**BOOKMARK & SHARE US**

**NETWORK US**

**VIDEOS** (View All)

People Are Your Most Important Asset

CXO: Increasing Bottom Line Results

The Future Workforce

SuccessConnect 2008 in Review

**BLOGS, PODCASTS & FEEDS** (All Feeds)

HappyFactors | Performance & Talent Management

People Performance Radio Podcast

**QUICK LINKS**

Press Releases     Global Offices     Privacy

News               Events            Site Map

SFSF Investors     Careers

© 2008 SuccessFactors, Inc. All rights reserved.

8/6/2008 4:37 PM

EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**CERTIFIED COPY**

```
-------------------------------x
SUCCESSFACTORS, INC., a Delaware

corporation,

                    Plaintiff,

                                        Case No.

vs.                                     CV 08 1376 CW (BZ)


SOFTSCAPE, INC., a Delaware

corporation; DOES 1-10, inclusive,

                    Defendants.

-------------------------------x
```

VIDEOTAPED DEPOSITION OF DAVID V. WATKINS, a

witness called by and on behalf of the Plaintiff,

taken pursuant to Rule 30 of the Federal Rules of

Civil Procedure, before James A. Scally, RMR, CRR, a

Notary Public in and for the Commonwealth of

Massachusetts, at the offices of Bromberg & Sunstein

LLP, 125 Summer Street, Boston, Massachusetts, on

Thursday, May 29, 2008, commencing at 9:16 a.m.

**USLEGAL SUPPORT**

*Certified Shorthand Reporters*

180 Montgomery Street
Suite 2180
San Francisco, CA 94104

888-575-3376 • Fax 888-963-3376
www.uslegalsupport.com

Los Angeles • Orange County • San Diego • Inland Empire • Ventura • San Jose • San Francisco • Sacramento    and across the nation

```
 1                    A P P E A R A N C E S

 2

 3        FENWICK & WEST LLP

 4        555 California Street

 5        12th Floor

 6        San Francisco, California  94104

 7        415-875-2300

 8        By:  Laurence F. Pulgram, Esq.

 9            Counsel for the Plaintiff

10

11        DAVIDS & COHEN PC

12        40 Washington Street

13        Suite 20

14        Wellesley, Massachusetts  02481

15        781-416-5055

16        By:  Ronald M. Davids, Esq.

17            Counsel for the Defendant Softscape, Inc.

18

19        Also Present:

20        Hank Watkins

21        Jason Lachapelle, Videographer

22

23

24

25

                                                        2
```

Page 111

1    Watkins.  We're going off the record.  The

2    time is 12:02.

3        (Recess.)

4        THE VIDEOGRAPHER:  We're back on the

5    record.  This marks the beginning of

6    videotape number 3 in the deposition of

7    Softscape, Inc., Rule 30(b)(6) designee

8    David V. Watkins.  The time is 12:10.

9  BY MR. PULGRAM:

10    Q.   Mr. Watkins, The Naked Truth presentation is on

11  SuccessFactors' logo, correct?

12    A.   The SIPP -- the current SIPP?  The specific time

13  period you're talking about?

14    Q.   I'm talking about the presentation which we've

15  defined as the one that was sent around by John Anonymous.

16    A.   The John Anonymous.  Correct, that is using

17  SuccessFactors' logo.

18    Q.   Right.  And the prior versions of The Naked Truth

19  document internally were on SuccessFactors' logo, correct?

20    A.   Correct, prior revisions were on SuccessFactors'

21  logo.

22                      REDACTED

23                      REDACTED

24                      REDACTED

25          REDACTED

88fc0482-7eac-4032-a2b4-d56ee2ed7dd1

1                    REDACTED

2                    REDACTED

3                    REDACTED

4                    REDACTED

5                      REDACTED

6                      REDACTED

7                      REDACTED

8                      REDACTED

9                    REDACTED

10                    REDACTED

11                    REDACTED

12                    REDACTED

13        REDACTED

14                    REDACTED

15                    REDACTED

16    SuccessFactors employee.

17        Q.   Can you spell her name, please?

18        A.   I don't know specifically, but it's phonetic,

19        REDACTED

20        Q.   Is she still an employee --

21        A.   To the best of my knowledge, that's her.

22        Q.   Is she still an employee of Softscape?

23        A.   No, she's not.

24        Q.   How did she come to give a PowerPoint on that

25    template to Softscape?

88fc0482-7eac-4032-a2b4-d56ee2ed7dd1

1    2004?

2        A.    Right.

3        Q.    And some numbers for subsequent years?

4        A.    Correct.  So I'm --

5        Q.    And -- and so -- so what -- what was the 2004

6    audit?  Who did that?

7        A.    That would have been from one of the --

8    multiple -- it could have been from PowerPoints and

9    webinars, so it could have actually come from those

10   documents.

11       Q.    Who did it?

12       A.    Me.

13       Q.    Okay.  And when did you do it?

14       A.    Again, like I had said, sometime in the beginning

15   of this year.

16       Q.    You did the audit in the beginning of this year

17   for who was a customer in 2004?

18       A.    Correct.

19       Q.    And is that audit what's reflected in this

20   spreadsheet?

21       A.    Correct.

22       Q.    So you made the marks for the 2004 year on this

23   spreadsheet in 2008?

24       A.    Correct.

25       Q.    And you did so using whatever you had by way of

Page 154

1    was created, or did that exist before?

2        A.    The summary was -- was probably created this year.

3        Q.    It was --

4        A.    So the content -- the summary, the Excel

5    spreadsheet itself would have been created this year.  I'm

6    assuming you're saying that, not the content in the

7    spreadsheet.

8        Q.    No.  I'm talking as -- you're correct that I'm

9    talking about the summary itself.

10       A.    The spreadsheet itself was probably created this

11   year.

12       Q.    This calculation of the percentage of customers

13   that were lost, that was first performed this year, 2008,

14   correct?

15       A.    Calculation of percentage lost, the one in the

16   PowerPoint presentation?

17       Q.    Correct.

18       A.    Correct.

19                         REDACTED

20   REDACTED

21                         REDACTED

22                         REDACTED

23                         REDACTED

24                         REDACTED

25   REDACTED

88fc0482-7eac-4032-a2b4-d56ee2ed7dd1

1    A.    I -- I don't have a reason to disbelieve that she

2    potentially talked to him, correct.

3    Q.    And --

4    A.    But I don't -- I don't know specifically.

5                    REDACTED

6                    REDACTED

7                    REDACTED

8                    REDACTED

9                    REDACTED

10   REDACTED

11   Q.    Okay.  And what was Ely supposed to do in

12   contacting SuccessFactors?

13   A.    She was to get a trial -- trial site that -- that

14   I could gain access to.

15   Q.    Did SuccessFactors -- strike that.

16                    REDACTED

17   REDACTED

18                    REDACTED

19                    REDACTED

20                    REDACTED

21                    REDACTED

22                    REDACTED

23                    REDACTED

24   REDACTED

25                    REDACTED

1    the phone with Ely?

2        A.    Just that it was another employee at New

3    Millennium Shoe.

4        Q.    Weren't you represented to have been a consultant

5    for New Millennium Shoe?

6        A.    I don't recall specifically.

7        Q.    And wasn't that the way by which you could have

8    such detailed knowledge and ask such detailed questions?

9        A.    No, I don't believe that was the reason.

10        Q.    Were you on the website -- strike that.

11            Were you in the password-protected account the day

12    before the first demonstration?

13        A.    I don't remember the specific days, but the odds

14    are if somebody entered the account, it would have been me.

15        Q.    And were you reviewing it to prepare questions to

16    be presented to Mr. Corrales?

17        A.    I was reviewing it for intellectual property.

18        Q.    For intellectual property.

19        A.    Correct.

20        Q.    What do you mean by that, sir?

21        A.    Because I believed SuccessFactors misappropriated

22    my IP.

23        Q.    So that was before the first demo, correct?

24        A.    What was before the first demo?

25        Q.    This review, because you thought that

Page 249

1    SuccessFactors had misappropriated your IP.

2        A.    The review would have been before the first demo,

3    correct, by dates, I think.

4        Q.    And then after the first demo --

5        A.    I can't remember.  Whenever -- there was an e-mail

6    that I got with the password and user ID.  I can't remember

7    whether it was before the presentation or after it.  But at

8    some point in time, whenever I got that user ID and

9    password, that was when I gained access.

10       Q.    After the first demo and before the second by Mr.

11   Corrales, you again accessed the account, did you not?

12       A.    I believe I did.

13       Q.    And that was for pretty much the whole day before

14   that presentation, correct?

15       A.    I believe I was in there for a good part of the

16   day, yes.

17       Q.    And what were you doing?

18       A.    Looking for intellectual property that they had

19   misappropriated.

20       Q.    Did you have a set of questions to ask Mr.

21   Corrales when you got him on for the second demo?

22       A.    Not specifically.

23       Q.    Did you have any notes?

24       A.    No.

25       Q.    Did you make any notes during the presentation?

88fc0482-7eac-4032-a2b4-d56ee2ed7dd1

1      Q.    Okay.   Is your pricing at Softscape something that

2  you consider to be confidential?

3              MR. DAVIDS:   You can answer that.

4              Then let's make this the last question of

5              the day.

6              MR. PULGRAM:   Well, I'll make it the

7              last subject.   Won't take more than a

8              couple minutes, I assume.   Thanks.

9              MR. DAVIDS:   Objection.   That general

10             question you can answer.

11     A.    Yes, I do.

12     Q.    And when you received Exhibit 14 from Mr.

13  Corrales, it also said "Confidential" on it; did it not?

14     A.    I do believe it did.

15     Q.    And it included SuccessFactors' pricing

16  information, did it not?

17     A.    I think it did have some SuccessFactors pricing

18  information in it.   That's correct.

19             MR. PULGRAM:   We'll see you tomorrow.

20             THE VIDEOGRAPHER:   This marks the end

21             of videotape number 6 in the deposition of

22             Softscape, Inc., Rule 30(b)(6) designee

23             David V. Watkins.   We're going off the

24             record.   The time is 5:36.

25             (Deposition adjourned.)

                                                     265

**U.S. LEGAL SUPPORT**

269

COMMONWEALTH OF MASSACHUSETTS                          SUFFOLK, SS.

        I, JAMES A. SCALLY, RMR, CRR, a Certified
Shorthand Reporter and Notary Public duly commissioned and
qualified in and for the Commonwealth of Massachusetts, do
hereby certify that there came before me on the 29th day of
May, 2008, at 9:16 a.m., the person hereinbefore named,
DAVID V. WATKINS, who provided satisfactory evidence of
identification as prescribed by Executive Order 455 (03-13)
issued by the Governor of the Commonwealth of
Massachusetts, was by me duly sworn to testify to the truth
and nothing but the truth of his knowledge concerning the
matters in controversy in this cause; that he was thereupon
examined upon his oath, and his examination reduced to
typewriting under my direction; and that this is a true
record of the testimony given by the witness to the best of
my ability.
        I further certify that I am neither
attorney or counsel for, nor related to or employed by, any
of the parties to the action in which this deposition is
taken, and further, that I am not a relative or employee of
any attorney or counsel employed by the parties hereto or
financially interested in the action.


My Commission Expires:  April 23, 2015




_James A Scally_
James A. Scally, RMR, CRR
    CSR/Notary Public

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**CERTIFIED COPY**

-----------------------------------x

SUCCESSFACTORS, INC., a Delaware

corporation,

              Plaintiff,

                           Case No.

vs.                         CV 08 1376 CW (BZ)

SOFTSCAPE, INC., a Delaware      Vol. II

corporation; DOES 1-10, inclusive,

              Defendants.

-----------------------------------x

VIDEOTAPED DEPOSITION OF DAVID V. WATKINS, a

witness called by and on behalf of the Plaintiff,

taken pursuant to Rule 30 of the Federal Rules of

Civil Procedure, before James A. Scally, RMR, CRR, a

Notary Public in and for the Commonwealth of

Massachusetts, at the offices of Bromberg & Sunstein

LLP, 125 Summer Street, Boston, Massachusetts, on

Friday, May 30, 2008, commencing at 9:16 a.m.

**US LEGAL SUPPORT**

Certified Shorthand Reporters

180 Montgomery Street
Suite 2180
San Francisco, CA 94104

888-575-3376 • Fax 888-963-3376
www.uslegalsupport.com

```
1                    A P P E A R A N C E S

2

3          FENWICK & WEST LLP

4          555 California Street

5          12th Floor

6          San Francisco, California  94104

7          415-875-2300

8          By:    Laurence F. Pulgram, Esq.

9            Counsel for the Plaintiff

10

11         DAVIDS & COHEN PC

12         40 Washington Street

13         Suite 20

14         Wellesley, Massachusetts  02481

15         781-416-5055

16         By:    Ronald M. Davids, Esq.

17           Counsel for the Defendant Softscape, Inc.

18

19       Also Present:

20       Hank Watkins

21       Jason Lachapelle, Videographer

22

23

24

25

                                                        271
```

Page 411

1          (Recess.)

2          THE VIDEOGRAPHER:  We're back on the

3     record.   The time is 1:42.

4   BY MR. PULGRAM:

5     Q.   Mr. Watkins, you testified earlier that you

6   believed that Softscape's IP may have been misappropriated

7                    REDACTED

8        REDACTED

9                    REDACTED

10       REDACTED

11    Q.   You need to tell me exactly which ones, please.

12    A.   I don't know the exhaustive list.

13    Q.   Give me your very best recollection, sir.

14          MR. DAVIDS:  And just for the record,

15     I'm going to let him answer it, but I'm

16     going to object to the extent -- and I'm

17     not sure you're looking for this, but I

18     don't think you want him to reveal any

19     trade secrets in answering this question.

20          So I want you to answer specifically

21     enough so that you can be responsive to the

22     question, but at the same time be mindful

23     of testifying to trade secrets of Softscape

24     specifically.

25    Q.   I want a complete answer, 100 percent, to the

eb03a1b2-b5ee-48e8-becb-4ae4283c4be8

1   question.  There's a highly confidential, attorneys eyes'

2   only provision here.  I need your very best testimony, sir.

3   Go ahead.

4               MR. DAVIDS:  With my caution, you can

5           testify.

6                           REDACTED

7       REDACTED

8                           REDACTED

9                           REDACTED

10      REDACTED

11                          REDACTED

12                          REDACTED

13                          REDACTED

14                          REDACTED

15      REDACTED

16                          REDACTED

17                          REDACTED

18                          REDACTED

19      A.    That's a trade secret.

20               MR. DAVIDS:   Objection.

21      Q.    Are you refusing to answer the question?

22      A.    On the grounds that my counsel has said so.

23               MR. PULGRAM:  Are you instructing him

24           not to answer?

25               MR. DAVIDS:  No.  Let me just have a

1          minute with him.

2                    MR. PULGRAM:  Off the record.

3                    THE VIDEOGRAPHER:  Going off the

4          record.  The time is 1:44.

5                    (Recess.)

6                    THE VIDEOGRAPHER:  Back on the

7          record.  The time is 1:46.

8     BY MR. PULGRAM:

9          Q.   Are you refusing to answer the question?

10         A.   Can you repeat the question, please?

11                              REDACTED

12                              REDACTED

13                              REDACTED

14                              REDACTED

15                              REDACTED

16                              REDACTED

17                              REDACTED

18                              REDACTED

19                              REDACTED

20                              REDACTED

21                              REDACTED

22                              REDACTED

23                              REDACTED

24                              REDACTED

25                              REDACTED

eb03a1b2-b5ee-48e8-becb-4ae4283c4be8

Page 414

1                         REDACTED

2                         REDACTED

3                         REDACTED

4                         REDACTED

5                         REDACTED

6                         REDACTED

7       REDACTED

8                         REDACTED

9                         REDACTED

10                        REDACTED

11              REDACTED

12                        REDACTED

13                        REDACTED

14              REDACTED

15              REDACTED

16              REDACTED

17                        REDACTED

18                        REDACTED

19      A.    I'm telling --

20              MR. DAVIDS:    Objection.

21      A.    Would you like me to describe what I'm saying

22   infringes on my IP?

23      Q.    I wanted you to answer that question first.

24                        REDACTED

25          REDACTED

eb03a1b2-b5ee-48e8-becb-4ae4283c4be8

Page 415

1                          REDACTED

2                          REDACTED

3           REDACTED

4           REDACTED

5      Q.    Okay.  And why don't you give me more detail about

6  what it is that you claim could be using your IP.

7                          REDACTED

8                          REDACTED

9                          REDACTED

10                         REDACTED

11                         REDACTED

12                         REDACTED

13                         REDACTED

14                         REDACTED

15                         REDACTED

16                         REDACTED

17                         REDACTED

18          REDACTED

19              MR. DAVIDS:  Objection.

20                         REDACTED

21                         REDACTED

22                         REDACTED

23              MR. DAVIDS:  I'm going to object.

24        You know, I've been pretty, I think,

25        liberal about allowing you to ask these

eb03a1b2-b5ee-48e8-becb-4ae4283c4be8

1    questions.  I really don't know where this

2    fits in within the 30(b)(6).  I do

3    understand that he's testified that it was

4    his belief and that's why he wanted to look

5    at the website that they had

6    misappropriated.  So I'm allowing you to

7    ask him questions, I guess, generally.  But

8    drilling down into the specifics I think

9    really does go beyond the scope.

10           So obviously you're going to ask what

11   you want, but at some point I'm going to

12   shut it off, and if we want to talk to the

13   judge about it, we can.  So I just want to,

14   I guess, put that caution on the record and

15   let you go ahead.

16   BY MR. PULGRAM:

17                        REDACTED

18                        REDACTED

19          REDACTED

20                        REDACTED

21                        REDACTED

22          REDACTED

23      Q.  So you're familiar that it's not legally wrong for

24   two companies to do things the same way unless there is

25   some wrongdoing in coming to that same way, correct?

Page 417

1    MR. DAVIDS:  I'm going to object.  I

2  think we've gone far enough into this.  If

3  you want to take it up with the judge, we

4  can.

5    MR. PULGRAM:  We will.

6    MR. DAVIDS:  Okay.

7  Q.  Were there any other areas --

8    MR. DAVIDS:  Just so we're clear, I'm

9  not going to let him testify any more about

10  specific trade secrets.

11    MR. PULGRAM:  We'll call the judge.

12    MR. DAVIDS:  So let's call the judge.

13    MR. PULGRAM:  We're going to go

14  forward with the other issues in the

15  deposition in the meantime.  I'm just

16  marking this so that we'll be able to have

17  it for the judge.

18    MR. DAVIDS:  If you insist on asking

19  the questions, let's call the judge now.  I

20  think that's the appropriate procedure.

21    MR. PULGRAM:  Well, I'm going forward

22  with other questions, sir.

23    MR. DAVIDS:  Okay.  But the

24  appropriate procedure would be to call the

25  judge now.  If you insist on going forward

eb03a1b2-b5ee-48e8-becb-4ae4283c4be8

1    with the questions, I'm entitled to seek a

2    protective order.  So let's call the judge

3    on that.

4        MR. PULGRAM:  I'm asking him about

5    other topics until we get clarification on

6    this from the judge.  Don't worry.

7        MR. DAVIDS:  Okay.  I just want you

8    to know that I think it's improper to

9    continue when there's a pending line of

10   question that you continue -- or intend to

11   continue on.  The appropriate procedure is

12   to suspend the deposition, and I have a

13   right to do that, and call the judge.  If

14   you don't want to do that, we won't do

15   that.

16       MR. PULGRAM:  Okay.  We won't.

17   BY MR. PULGRAM:

18       Q.  I do have one question that's not going to ask you

19   about the content of your trade secrets, but it's this:

20                          REDACTED

21                          REDACTED

22                          REDACTED

23                          REDACTED

24                          REDACTED

25               REDACTED

Page 419

1    Q.    And do you mean through the demo account?

2    A.    Through the trialware.   When I accessed it, I

3    validated it.

4    Q.    You validated it then?

5    A.    To the best of my knowledge with the information

6    that was at my disposal at the time.

7    Q.    Did you have any indication of anything that you

8    believed suggested a misappropriation before you went on to

9    the ACE system?

10   A.    To the best of my knowledge, there was a press

11   announcement in the January time frame that alerted me to

12   some of these features and functions.

13   Q.    Anything else?

14   A.    To the best of my knowledge, no.   Not that I can

15   remember specifically.

16   Q.    This was a SuccessFactors press announcement?

17   A.    Correct.

18   Q.    And it announced what functions?

19   A.    It announced the introduction of their Ultra

20   Solution.

21   Q.    When that Ultra Solution was released, was it

22   widely acclaimed by the press?

23          MR. DAVIDS:   Objection.

24   A.    I don't know what that -- what -- I don't know

25   whether it was widely acclaimed by the press or not.

eb03a1b2-b5ee-48e8-becb-4ae4283c4be8

1    confusing to customers.  And that statement I am absolutely

2    100 percent holding true to because I witnessed it.

3        Q.    Even though you no longer are able to testify

4    whether or not the screens you display here accurately

5    reflect the current Ultra version; is that right?

6              MR. DAVIDS:  Objection.

7        A.    Counsel, this says old and this says new, and I am

8    standing by that statement, because I witnessed it when I

9    actually went into the product.

10             MR. DAVIDS:  Okay.  We're going to

11                end it now.  It's 20 of 4:00.

12             MR. PULGRAM:  Our position is that

13                this neither comports with our agreement

14                and, in particular, for that reason,

15                doesn't comport with fairness, because

16                yesterday we stated exactly how long it was

17                going to take, and until basically an hour

18                and a half ago we were going to have the

19                full five and a half hours today.  I can't

20                keep you from walking out.

21             MR. DAVIDS:  Well, we've already been

22                here almost 6 1/2 hours.  We took 45

23                minutes for lunch.  So even if we were to

24                be here for six hours, we've been here

25                longer than that.  And the course of the

                                                        495

1    whole deposition has been far longer than

2    12 hours.  That's our position.  If you

3    disagree with it, then take it up with the

4    judge.

5         MR. PULGRAM:  The time of the

6    deposition is the time on the record.

7         THE VIDEOGRAPHER:  This marks the end

8    of videotape number 10 in the deposition of

9    Softscape, Inc., Rule 30(b)(6) designee

10   David V. Watkins.  We're going off the

11   record.  The time is 3:41.

12        (Deposition adjourned.)

13

14

15

16

17

18

19

20

21

22

23

24

25

496

1   COMMONWEALTH OF MASSACHUSETTS        SUFFOLK, SS.

2

3          I, JAMES A. SCALLY, RMR, CRR, a Certified
Shorthand Reporter and Notary Public duly commissioned and
4   qualified in and for the Commonwealth of Massachusetts, do
hereby certify that there came before me on the 30th day of
5   May, 2008, at 9:34 a.m., the person hereinbefore named,
DAVID V. WATKINS, who provided satisfactory evidence of
6   identification as prescribed by Executive Order 455 (03-13)
issued by the Governor of the Commonwealth of
7   Massachusetts, was by me duly sworn to testify to the truth
and nothing but the truth of his knowledge concerning the
8   matters in controversy in this cause; that he was thereupon
examined upon his oath, and his examination reduced to
9   typewriting under my direction; and that this is a true
record of the testimony given by the witness to the best of
10   my ability.
          I further certify that I am neither
11   attorney or counsel for, nor related to or employed by, any
of the parties to the action in which this deposition is
12   taken, and further, that I am not a relative or employee of
any attorney or counsel employed by the parties hereto or
13   financially interested in the action.

14

15   My Commission Expires:  April 23, 2015

16

17

18    _____
     James A. Scally, RMR, CRR
19      CSR/Notary Public

20

21

22

23

24

EXHIBIT F

1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  CANDACE J. MOREY (CSB No. 233081)
   cmorey@fenwick.com
3  LIWEN A. MAH (CSB No. 239033)
   lmah@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA  94104
   Telephone: (415) 875-2300
6  Facsimile:  (415) 281-1350

7  PATRICK E. PREMO (CSB NO. 184915)
   ppremo@fenwick.com
8  DENNIS M. FAIGAL (CSB NO. 252829)
   dfaigal@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, CA  94041
11 Telephone:    (650) 988-8500
   Facsimile:    (650) 938-5200

12
13 Attorneys for Plaintiff
   SUCCESSFACTORS, INC.

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                   OAKLAND DIVISION

18 SUCCESSFACTORS, INC., a Delaware          Case No. CV 08-1376 CW
   corporation,
19                                           **PLAINTIFF'S AMENDED RESPONSE TO**
                  Plaintiff,                 **DEFENDANT'S FIRST REQUEST FOR**
20                                           **PRODUCTION (NOS. 1 – 35)**
21         v.

22 SOFTSCAPE, INC., a Delaware
   corporation,
23
                  Defendant.
24

25 **PROPOUNDING PARTY:**  Defendant SOFTSCAPE, INC.

26 **RESPONDING PARTY:**   Plaintiff SUCCESSFACTORS, INC.

27 **SET NO:**             One (Nos. 1 – 35)

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

2    SuccessFactors, Inc. ("SuccessFactors") hereby responds to Defendant Softscape, Inc.'s

3    ("Softscape") First Set of Requests for Production of Documents as follows:

4                                **GENERAL OBJECTIONS**

5        SuccessFactors makes the following General Objections to each of the document requests

6    propounded by Softscape:

7        1.      SuccessFactors objects to all definitions, instructions and document requests to the

8    extent they seek to impose obligations upon SuccessFactors that is broader than or inconsistent

9    with the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of the

10   District Court of the Northern District of California, and/or applicable case law.

11       2.      SuccessFactors further objects to all definitions, instructions, and document requests

12   to the extent they seek the disclosure of information protected by the attorney-client privilege

13   (including the joint representation and common interest privilege), the litigation privilege, the

14   attorney work-product doctrine, or any other applicable privilege, protection, immunity or

15   restriction on discovery as provided by any applicable law.  SuccessFactors does not intend to

16   produce such privileged or protected documents or information.  SuccessFactors' inadvertent

17   disclosure of any such documents or information is not to be deemed a waiver of any privilege or

18   protection, and SuccessFactors expressly reserves the right to object to the introduction at trial or

19   any other use of such information that may be inadvertently disclosed.

20       3.      SuccessFactors further objects to all definitions, instructions, and document requests

21   to the extent they purport to require SuccessFactors to produce documents containing any

22   information received from a third party under a nondisclosure agreement or other confidentiality

23   obligation, or call for the disclosure of information protected by SuccessFactors' employees' or any

24   third parties' rights of privacy or other confidentiality obligations.  SuccessFactors also objects to

25   producing the contents of any part of any agreement which, by its terms, may not be disclosed.

26       4.      SuccessFactors objects to all definitions, instructions and document requests to the

27   extent they seek production of documents that contain confidential financial, proprietary, trade

28   ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    secret or other confidential or competitively sensitive business information. Such material will

2    only be produced subject to the protective order entered in this action.

3        5.    SuccessFactors further objects to all definitions, instructions and document

4    requests to the extent they are vague, ambiguous, fail to describe the information sought with the

5    required reasonable particularity, are so unintelligible that SuccessFactors cannot respond, or are

6    not reasonably calculated to lead to discovery of admissible evidence.

7        6.    SuccessFactors objects to all definitions, instructions and document requests to the

8    extent they seek production of documents not limited to a relevant time period.

9        7.    SuccessFactors objects to all definitions, instructions and document requests to the

10   extent they prematurely seek expert discovery.

11       8.    SuccessFactors further objects to Softscape's definitions of "you," "your," and

12   "SuccessFactors" as overly broad, burdensome and oppressive. SuccessFactors will construe

13   these terms consistent with its obligations under Federal Rule of Civil Procedure 34 and

14   applicable case law. In particular, SuccessFactors objects to the inclusion of terms "distributors"

15   and "dealers" as overbroad and not reasonably calculated to lead to discovery of admissible

16   evidence. SuccessFactors further objects to the terms "indirect contractors, and/or all other

17   persons acting or purporting to act on its behalf" as vague, ambiguous, overbroad, burdensome

18   and not reasonably calculated to lead to discovery of admissible evidence.

19       9.    SuccessFactors objects to any format or organization of production that is neither

20   agreed upon nor required by Federal Rules of Civil Procedure 26 and 34. SuccessFactors

21   specifically objects to Instruction 6 to the extent that it purports to require production of

22   electronic data beyond what is required by Rule 26(b)(2) and 34(b)(2). As contemplated by the

23   comments to the 2006 Amendment to Rule 34, SuccessFactors reserves the right to produce

24   electronically stored information in a non-native format and to confer with Softscape "in an effort

25   to resolve the matter before the requesting party can file a motion to compel." Data as ordinarily

26   maintained might not be in native format and might not be reasonably accessible or usable.

27       10.   SuccessFactors further objects to Instruction 7 on the grounds that it is oppressive

28   and unduly burdensome to the extent it requires a log for each document created after this action

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    was filed. Unless agreed to the contrary, SuccessFactors will not log documents created or

2    prepared in anticipation of this litigation after March 4, 2008 by it or its employees, attorneys or

3    agents. SuccessFactors also will not log documents and other materials protected by the attorney-

4    client privilege (including the joint representation and common interest privilege), the litigation

5    privilege, the attorney work-product doctrine, or any other applicable privilege, protection,

6    immunity or restriction on discovery created on or after March 4, 2008. With the exception of the

7    above categories of documents, SuccessFactors will provide a log of any documents (responsive to

8    otherwise non-objectionable discovery requests) that are withheld on the grounds of the attorney-

9    client privilege, work product doctrine or any other privilege or immunity. SuccessFactors also

10   objects to Instruction 7 on the grounds that it is oppressive, unduly burdensome, and irrelevant to

11   the extent it purports to require SuccessFactors to identify all persons who might have any

12   knowledge about the basis of privilege.

13          11.    SuccessFactors has not yet completed its investigation, collection of information,

14   discovery, or analysis concerning this action. The following responses are based on information

15   known and available to SuccessFactors at this time. SuccessFactors reserves the right to modify,

16   change, or supplement its responses and to produce additional evidence at trial, whether

17   consistent or inconsistent with these responses.

18          12.    A representation that SuccessFactors will produce particular categories or types of

19   documents in response to a request is not a representation that such documents necessarily exist.

20   SuccessFactors will conduct a search of reasonable scope for the categories and types of

21   documents identified in its responses.

22                    **RESPONSE TO DOCUMENTS TO BE PRODUCED**

23   **REQUEST FOR PRODUCTION NO. 1:**

24          A true and accurate bit for bit copy of all server log files concerning SuccessFactors'

25   website for the period January 1, 2007 to the present.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

27          SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

28   SuccessFactors further objects to this request for "bit for bit" copies of individual computer files as

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    unintelligible in that an individual file cannot be copied "bit for bit" in isolation from other data on

2    the same storage medium.  To the extent that this request implicitly purports to require production

3    of a bit for bit copy of any entire web server, SuccessFactors objects to this request as being

4    overbroad and burdensome.

5      SuccessFactors further objects to the terms "website" and "log files" as vague, ambiguous,

6    and overbroad to the extent that Softscape seeks data concerning any website other than

7    www.successfactors.com or any data submitted by users through forms.  The request for all server

8    log files is overbroad and not reasonably calculated to lead to discovery of admissible evidence,

9    in that only the log files showing activity by Softscape or those working in concert with Softscape

10   are relevant.

11     SuccessFactors will construe this request to ask only for a true and correct copy of server

12   log files from SuccessFactors' web servers from January 1, 2007 to the present with respect to the

13   www.successfactors.com website.  SuccessFactors reserves the right to produce accessible,

14   electronically stored information in a non-native but reasonably usable format.

15     Subject to and without waiving the foregoing objections and the General Objections,

16   SuccessFactors responds as follows:

17     To the extent such documents are within its possession, custody, or control, SuccessFactors

18   will produce a true and correct copy of server log files from SuccessFactors' web servers for

19   www.successfactors.com from January 1, 2007 to the present.  Documents that contain confidential

20   financial, proprietary, trade secret or other confidential or competitively sensitive business

21   information will only be produced subject to the protective order entered in this action.

22   **REQUEST FOR PRODUCTION NO. 2:**

23     A true and accurate bit for bit copy of SuccessFactors' "ACE Demo environment" in the

24   condition it was in at the time(s) SuccessFactors claims Softscape accessed it without

25   authorization (see Paragraphs 22 and 23 of the Complaint).

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

27     SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

28   SuccessFactors further objects to this request for "bit for bit" copies of individual computer files as

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   unintelligible in that an individual file cannot be copied "bit for bit" in isolation from other data on

2   the same storage medium.  To the extent that this request implicitly purports to require production

3   of a bit for bit copy of any entire server, SuccessFactors objects to this request as being overbroad

4   and burdensome.

5        SuccessFactors further objects to the term "environment" as vague, ambiguous, and

6   overbroad to the extent that Softscape seeks data concerning online meetings facilitated by third

7   parties such as Citrix Systems or data concerning participants in ACE demonstrations.

8        SuccessFactors further objects that a request for a copy of the "environment" is

9   unintelligible because an ACE demonstration comprises not a set of static files or pages, but

10  rather Extensible Markup Language documents dependent on user definitions and input.  Thus

11  there is no definitive "true and accurate" copy of the environment that is meaningful.  To the

12  extent that Softscape seeks information about SuccessFactors demonstrations, the request is

13  overbroad and not reasonably calculated to lead to discovery of admissible evidence, in that only

14  pages accessed by Softscape or those working in concert with Softscape are relevant.

15       SuccessFactors will construe this request to ask only for the environment on the web

16  server for the SuccessFactors sales demonstration website, https://salesdemo.successfactors.com

17  as it existed during February and March 2008.  To the extent practicable, SuccessFactors reserves

18  the right to produce accessible, electronically stored information in a non-native but reasonably

19  usable format.

20       Subject to and without waiving the foregoing objections and the General Objections,

21  SuccessFactors responds as follows:

22       SuccessFactors will allow Outside Attorneys' Eyes Only access to and inspection of the

23  sales demonstration at https://salesdemo.successfactors.com as it existed during February and

24  March 2008.  To the extent they exist, SuccessFactors will produce copies of default pages from the

25  demonstration, but these do not embody or constitute a demonstration.  Documents that contain

26  confidential financial, proprietary, trade secret or other confidential or competitively sensitive

27  business information will only be produced subject to the protective order entered in this action.

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**REQUEST FOR PRODUCTION NO. 3:**

All product snapshots, demonstrations and webinars concerning SuccessFactors' products for the period January 1, 2005 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

SuccessFactors incorporates by reference its General Objections as if fully set forth herein. SuccessFactors further objects to the terms "snapshots" and "demonstrations" as vague, ambiguous, and overbroad. SuccessFactors further objects to the request for "demonstrations and webinars" as unintelligible to the extent that Softscape seeks anything tangible for oral or interactive demonstrations/webinars that are not recorded. SuccessFactors further objects to this request as oppressive and unduly burdensome to the extent that the documents are equally accessible to Softscape on the web.

SuccessFactors further objects that the request for "All product snapshots, demonstrations and webinars" is overbroad and unduly burdensome. SuccessFactors further objects that the request for product snapshots, demonstrations and webinars is overbroad and not reasonably calculated to lead to discovery of admissible evidence, in that only documents concerning the applications, features, and product data referred to in the Presentation are relevant. In addition, only the Introduction to Ultra webinar accessed by Defendant or those in concert with Defendant in the creation of the Presentation is germane.

SuccessFactors will construe "snapshots" to refer to product summaries available to the public on SuccessFactors' website. SuccessFactors will construe "demonstrations" to refer to demonstrations on SuccessFactors' password-protected ACE server.

SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and burdensome in light of the fact that there has been no showing that any part of the Presentation is older than two years. SuccessFactors reserves the right to produce accessible, electronically stored information in a non-native but reasonably usable format.

Subject to and without waiving the foregoing objections and the General Objections, SuccessFactors responds as follows:

To the extent such documents are within its possession, custody, or control, SuccessFactors

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   will produce true and correct copies of product description documents and default pages from the

2   SuccessFactors sales demonstration website, https://salesdemo.successfactors.com, and from the

3   URL http://www.successfactors.com/media/webinars/introduction-to-ultra/ as they existed during

4   February and March 2008. Documents that contain confidential financial, proprietary, trade secret

5   or other confidential or competitively sensitive business information will only be produced subject

6   to the protective order entered in this action.

7   **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

8          Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

9   SuccessFactors clarifies and amends its response as follows. Softscape clarified that it seeks

10  documents showing screenshots from any demonstration or webinar that SuccessFactors asserts

11  Softscape accessed without authorization. Softscape further clarified that the product of interest is

12  Ultra. With this understanding, SuccessFactors will produce, in addition to documents

13  SuccessFactors agreed to produce above, nonprivileged documents within its possession, custody,

14  or control that show screenshots from any demonstration or webinar that SuccessFactors asserts

15  Softscape accessed without authorization. SuccessFactors will also produce standard marketing

16  collateral for Ultra, to the extent it has not already produced such materials.

17  **REQUEST FOR PRODUCTION NO. 4:**

18         Documents and communications concerning any restrictions, terms of use, or other

19  conditions that were in effect at the times SuccessFactors contends its website was accessed by

20  Softscape or persons acting on its behalf.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

22         SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

23  SuccessFactors further objects to the terms "restrictions, terms of use, or other conditions" as

24  vague, ambiguous, and overbroad. SuccessFactors further objects that it is vague and ambiguous

25  what "Documents and communications concerning any restrictions, terms of use, or other

26  conditions" refers to.

27         SuccessFactors further objects to this request as oppressive and unduly burdensome to the

28  extent that the documents are equally accessible to Softscape on the web.

1  SuccessFactors will construe these terms to include only terms of use that expressly

2  appeared on its website, not other legal restrictions or conditions that may exist.  SuccessFactors

3  reserves the right to produce accessible, electronically stored information in a non-native but

4  reasonably usable format.

5  Subject to and without waiving the foregoing objections and the General Objections,

6  SuccessFactors responds as follows:

7  To the extent such documents are within its possession, custody, or control, SuccessFactors

8  will produce a true and correct copy of nonprivileged documents and communications concerning

9  terms of use for visitors to its website on or after January 1, 2006.

10  **REQUEST FOR PRODUCTION NO. 5:**

11  Documents and communications concerning any restrictions, terms of use, or other

12  conditions that were in effect at the times SuccessFactors contends its online demonstration

13  environment was accessed by Softscape or persons acting on its behalf.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

15  SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

16  SuccessFactors further objects to the terms "restrictions, terms of use, or other conditions" as

17  vague, ambiguous, and overbroad.  SuccessFactors further objects that it is vague and ambiguous

18  what "Documents and communications concerning any restrictions, terms of use, or other

19  conditions" refers to.

20  SuccessFactors further objects to this request as oppressive and unduly burdensome to the

21  extent that the documents are equally accessible to Softscape on the web.

22  SuccessFactors will construe these terms to include only terms of use that were expressed

23  to online demonstration participants, not other legal restrictions or conditions that may exist.

24  SuccessFactors reserves the right to produce accessible, electronically stored information in a

25  non-native but reasonably usable format.

26  Subject to and without waiving the foregoing objections and the General Objections,

27  SuccessFactors responds as follows:

28  To the extent such documents are within its possession, custody, or control, SuccessFactors

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   will produce a true and correct copy of nonprivileged documents and communications concerning

2   terms of use for participants in its online demonstrations on or after January 1, 2006.

3   **REQUEST FOR PRODUCTION NO. 6:**

4        Documents that evidence user access of SuccessFactors' website, its customer community,

5   its webinars, and/or its online demonstrations for the period January 1, 2007 to the present.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

7        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

8   SuccessFactors further objects to the request as overbroad and calling for production of documents

9   not reasonably likely to lead to relevant, admissible evidence, in that only access by Softscape or

10  those in concert with Softscape is relevant.  SuccessFactors reserves the right to produce accessible,

11  electronically stored information in a non-native but reasonably usable format.

12       Subject to and without waiving the foregoing objections and the General Objections,

13  SuccessFactors responds as follows:

14       To the extent such documents are within its possession, custody, or control, SuccessFactors

15  will produce a true and correct copy of nonprivileged documents concerning access of

16  SuccessFactors' website, its customer community, its webinars, and/or its online demonstrations for

17  the period January 1, 2007 to the present by Softscape or those working in concert with Softscape.

18  **REQUEST FOR PRODUCTION NO. 7:**

19       All documents, including but not limited to contracts and budget information, concerning

20  the implementation or attempted implementation of SuccessFactors' product(s) for Harris

21  Williams, ICMA Retirement, Intelsat, Merrill Lynch, Regions Bank or Sears for the period

22  January 1, 2005 to the present.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

24       SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

25  SuccessFactors further objects to the term "budget information" as vague, ambiguous, and

26  overbroad.  SuccessFactors further objects that the request for "All documents" is overbroad and

27  unduly burdensome.  SuccessFactors further objects that the request for documents concerning the

28  implementation or attempted implementation of any SuccessFactors' product is overbroad and not

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  reasonably calculated to lead to discovery of admissible evidence, in that only documents about the

2  purported statements attributed to the customers in the Presentation are relevant. SuccessFactors

3  further objects that the overbreadth of the request is oppressive and unduly burdensome because of

4  the large number of documents for the customers identified.

5      SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

6  burdensome. SuccessFactors reserves the right to produce accessible, electronically stored

7  information in a non-native but reasonably usable format.

8      Subject to and without waiving the foregoing objections and the General Objections,

9  SuccessFactors responds as follows:

10     To the extent such documents are within its possession, custody, or control, SuccessFactors

11  will produce true and correct copies of nonprivileged documents about the statements attributed to

12  the customers regarding their experience with SuccessFactors' products. Documents that contain

13  confidential financial, proprietary, trade secret or other confidential or competitively sensitive

14  business information will only be produced subject to the protective order entered in this action.

15  **REQUEST FOR PRODUCTION NO. 8:**

16     All documents and communications concerning customer satisfaction or dissatisfaction

17  with SuccessFactors' products or services, including without limitation all surveys, evaluations

18  and/or complaints received by SuccessFactors for the period January 1, 2005 to the present.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

20     SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

21  SuccessFactors further objects to the terms "satisfaction or dissatisfaction" and "evaluations" as

22  vague, ambiguous, and overbroad. SuccessFactors further objects that the request for "All

23  documents and communications" is overbroad and unduly burdensome. SuccessFactors further

24  objects that the request for documents and communications concerning satisfaction or

25  dissatisfaction of any SuccessFactors customer is overbroad and not reasonably calculated to lead

26  to discovery of admissible evidence, in that only documents about the statements attributed to the

27  customers regarding their experience with SuccessFactors' products are relevant. SuccessFactors

28  further objects that the overbreadth of the request is oppressive and unduly burdensome because of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    the large number of documents for all customers.

2        SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

3    burdensome.  SuccessFactors reserves the right to produce accessible, electronically stored

4    information in a non-native but reasonably usable format.

5        Subject to and without waiving the foregoing objections and the General Objections,

6    SuccessFactors responds as follows:

7        To the extent such documents are within its possession, custody, or control, SuccessFactors

8    will produce true and correct copies of nonprivileged documents about the statements attributed to

9    the customers regarding their experience with SuccessFactors' products.  Documents that contain

10   confidential financial, proprietary, trade secret or other confidential or competitively sensitive

11   business information will only be produced subject to the protective order entered in this action.

12   **REQUEST FOR PRODUCTION NO. 9:**

13       Documents and communications concerning prospective customers' satisfaction or

14   dissatisfaction with SuccessFactors' products or services, including without limitation all surveys,

15   evaluations and/or complaints received by SuccessFactors for the period January 1, 2005 to the

16   present.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

18       SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

19   SuccessFactors further objects to the terms "prospective," "satisfaction or dissatisfaction" and

20   "evaluations" as vague, ambiguous, and unintelligible.  SuccessFactors further objects that the

21   request for documents and communications concerning satisfaction or dissatisfaction of any

22   SuccessFactors customer is overbroad and not reasonably calculated to lead to discovery of

23   admissible evidence, in that only documents about the statements attributed to the customers

24   regarding their experience with SuccessFactors' products are relevant.  SuccessFactors further

25   objects that the request is unintelligible in that prospective customers cannot be satisfied or

26   dissatisfied with SuccessFactors' products or services.

27       SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

28   burdensome.  SuccessFactors reserves the right to produce accessible, electronically stored

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    information in a non-native but reasonably usable format.

2              Subject to and without waiving the foregoing objections and the General Objections,

3    SuccessFactors responds as follows:

4              SuccessFactors is unable to identify documents responsive to satisfaction of *prospective*

5    customers.

6    **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

7              Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

8    SuccessFactors clarifies and amends its response as follows. Softscape clarified that the product of

9    interest is Ultra. Softscape also narrowed the term "prospective" to mean prospects who received a

10   pitch or proposal from SuccessFactors but have not contracted with SuccessFactors subsequently.

11   With this understanding, SuccessFactors has conducted a reasonable and diligence search and is

12   unable to identify documents responsive to Defendant's narrowed request.

13   **REQUEST FOR PRODUCTION NO. 10:**

14             Documents and communications concerning the identity of SuccessFactors' actual and

15   prospective customers as of January 1, for each calendar year 2005 through 2008.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

17             SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

18   SuccessFactors further objects to the term "prospective" as vague, ambiguous, and overbroad.

19   SuccessFactors further objects that the request for documents and communications concerning the

20   identity of any prospective SuccessFactors customer is overbroad, not relevant, and not reasonably

21   calculated to lead to discovery of admissible evidence.  SuccessFactors further objects that the

22   request for all documents concerning the identity of any actual SuccessFactors customer is

23   overbroad and not reasonably calculated to lead to discovery of admissible evidence, to the extent

24   that the request is not limited to statements made in the Presentation and at issue in this lawsuit.

25             SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

26   burdensome.  SuccessFactors reserves the right to produce accessible, electronically stored

27   information in a non-native but reasonably usable format.

28             Subject to and without waiving the foregoing objections and the General Objections,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  SuccessFactors responds as follows:

2      To the extent such documents are within its possession, custody, or control, SuccessFactors

3  will produce true and correct copies of nonprivileged documents sufficient to establish the truth or

4  falsity of statements about the identity of customers asserted in the Presentation.  Documents that

5  contain confidential financial, proprietary, trade secret or other confidential or competitively

6  sensitive business information will only be produced subject to the protective order entered in this

7  action.

8  **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

9      Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

10  SuccessFactors clarifies and amends its response as follows. Softscape clarified that the product of

11  interest is Ultra. Softscape also narrowed the term "prospective" to mean prospects who received a

12  pitch or proposal from SuccessFactors but have not contracted with SuccessFactors subsequently.

13  SuccessFactors reiterates that the identity of prospective customers is not relevant to the

14  Presentation's assertions about actual customers' purported attrition or dissatisfaction.  Nor is the

15  identity of prospective customers prior to Softscape's access to SuccessFactors' nonpublic

16  information or systems relevant. With this understanding, SuccessFactors will produce, in addition

17  to documents SuccessFactors agreed to produce above, nonprivileged documents within its

18  possession, custody, or control sufficient to show the identity of customers who received a pitch or

19  proposal from SuccessFactors about Ultra but have declined to purchase Ultra from SuccessFactors

20  after Softscape's wrongful access of SuccessFactors' information or systems.

21  **REQUEST FOR PRODUCTION NO. 11:**

22      Documents that list or otherwise identify all of SuccessFactors on-line product

23  demonstrations hosted on its website during the period January 1, 2007 to the present.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

25      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

26  SuccessFactors further objects to the terms "demonstrations" and "hosted" as vague, ambiguous,

27  and overbroad.  SuccessFactors further objects to the phrase "demonstrations hosted on its website"

28  as unintelligible to the extent that Softscape seeks anything tangible for oral or interactive

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  demonstrations that are not recorded; it is unclear what it means for such demonstrations to be

2  "hosted" on a website.

3       SuccessFactors further objects that the request for identification of all demonstrations is

4  overbroad and not reasonably calculated to lead to discovery of admissible evidence, in that only

5  documents concerning the applications, features, and product data referred to in the Presentation

6  are relevant. SuccessFactors further objects to the request for identification of all demonstrations

7  as overbroad and not reasonably calculated to lead to discovery of admissible evidence, in that

8  only the ACE275 demonstrations accessed by Defendant or those in concert with Defendant are

9  germane.

10      SuccessFactors will construe "demonstrations" to refer to demonstrations involving

11  SuccessFactors' password-protected ACE275 account. SuccessFactors reserves the right to

12  produce accessible, electronically stored information in a non-native but reasonably usable format.

13      Subject to and without waiving the foregoing objections and the General Objections,

14  SuccessFactors responds as follows:

15      To the extent such documents are within its possession, custody, or control, SuccessFactors

16  will produce true and correct copies of nonprivileged documents identifying when demonstration

17  materials from the ACE275 account were accessed by or for Softscape or those known to be in

18  concert with Softscape. Documents that contain confidential financial, proprietary, trade secret or

19  other confidential or competitively sensitive business information will only be produced subject to

20  the protective order entered in this action.

21  **REQUEST FOR PRODUCTION NO. 12:**

22      Documents that list or otherwise identify all of the webinars hosted by SuccessFactors

23  during the period January 1, 2007 to the present.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

25      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

26  SuccessFactors further objects to this request as oppressive and unduly burdensome to the extent

27  that the documents are equally accessible to Softscape on the web.

28      SuccessFactors further objects that the request for identification of all webinars is

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  overbroad and not reasonably calculated to lead to discovery of admissible evidence, in that only

2  webinars concerning the applications, features, and product data referred to in the Presentation are

3  relevant.  SuccessFactors further objects to the request for identification of all webinars as

4  overbroad and not reasonably calculated to lead to discovery of admissible evidence, in that only

5  the webinars accessed by Defendant or those in concert with Defendant in the creation of the

6  Presentation are germane.

7       SuccessFactors will construe "webinar" to refer to the Introduction to Ultra webinar

8  accessed by Softscape or those in concert with Softscape.  SuccessFactors reserves the right to

9  produce accessible, electronically stored information in a non-native but reasonably usable format.

10      Subject to and without waiving the foregoing objections and the General Objections,

11  SuccessFactors responds as follows:

12      To the extent such documents are within its possession, custody, or control, SuccessFactors

13  will produce true and correct copies of nonprivileged documents identifying when SuccessFactors'

14  Introduction to Ultra webinar was accessed by or for Softscape or those known to be in concert

15  with Softscape.  Documents that contain confidential financial, proprietary, trade secret or other

16  confidential or competitively sensitive business information will only be produced subject to the

17  protective order entered in this action.

18  **REQUEST FOR PRODUCTION NO. 13:**

19      Documents that list or otherwise identify all persons who logged in to any webinar hosted

20  by SuccessFactors during the period January 1, 2005 to the present.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

22      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

23  SuccessFactors further objects to this request as unintelligible in that persons do not log in to a

24  webinar.

25      SuccessFactors further objects that the request for identification of all webinars is overbroad

26  and not reasonably calculated to lead to discovery of admissible evidence, in that only webinars

27  concerning the applications, features, and product data referred to in the Presentation are relevant.

28  SuccessFactors further objects to the request's scope of "any webinar" as overbroad and not

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  reasonably calculated to lead to discovery of admissible evidence, in that only the webinar accessed

2  by Defendant or those in concert with Defendant in the creation of the Presentation are germane.

3       SuccessFactors will construe "webinar" to refer to the Introduction to Ultra webinar

4  accessed by Softscape or those in concert with Softscape.  SuccessFactors reserves the right to

5  produce accessible, electronically stored information in a non-native but reasonably usable format.

6       SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

7  burdensome in light of the fact that there has been no showing that any part of the Presentation is

8  older than two years.

9       Subject to and without waiving the foregoing objections and the General Objections,

10  SuccessFactors responds as follows:

11       To the extent such documents are within its possession, custody, or control, SuccessFactors

12  will produce true and correct copies of nonprivileged documents identifying Softscape employees

13  or those known to be in concert with Softscape who accessed the Introduction to Ultra webinar.

14  Documents that contain confidential financial, proprietary, trade secret or other confidential or

15  competitively sensitive business information will only be produced subject to the protective order

16  entered in this action.

17  **REQUEST FOR PRODUCTION NO. 14:**

18       Documents that list or otherwise identify all of the passwords issued by SuccessFactors to

19  users of the ACE Demo environment, or any other on-line SuccessFactors product demonstration,

20  for the period January 1, 2005 to the present.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

22       SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

23  SuccessFactors further objects to the terms "environment" and "demonstration" as vague,

24  ambiguous, and overbroad.  SuccessFactors further objects to the term "issued" as unintelligible to

25  the extent that users create passwords rather than having them issued by SuccessFactors.

26       SuccessFactors further objects that the request's purported scope covering the "ACE

27  Demo environment" and "any other on-line SuccessFactors product demonstration" is overbroad

28  and not reasonably calculated to lead to discovery of admissible evidence, in that only documents

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   concerning the applications, features, and product data referred to in the Presentation are relevant.

2   Further, only the ACE275 demonstrations accessed by Defendant or those in concert with

3   Defendant are germane.

4       SuccessFactors will construe "environment" and "demonstration" to refer to demonstrations

5   involving SuccessFactors' password-protected ACE275 account. SuccessFactors reserves the right

6   to produce accessible, electronically stored information in a non-native but reasonably usable

7   format.

8       Subject to and without waiving the foregoing objections and the General Objections,

9   SuccessFactors responds as follows:

10       To the extent such documents are within its possession, custody, or control, SuccessFactors

11   will produce true and correct copies of nonprivileged documents identifying passwords for the

12   ACE275 account that was accessed by or for Softscape or those known to be in concert with

13   Softscape. Documents that contain confidential financial, proprietary, trade secret or other

14   confidential or competitively sensitive business information will only be produced subject to the

15   protective order entered in this action.

16   **REQUEST FOR PRODUCTION NO. 15:**

17       Documents and communications concerning SuccessFactors' retention of its customers,

18   including without limitation, the date on which each customer first licensed SuccessFactors'

19   products, when each such customer terminated its business relationship with SuccessFactors

20   (if applicable), and the reasons for each such termination during the period January 1, 2005 to the

21   present.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

23       SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

24   SuccessFactors further objects to the term "retention" as vague, ambiguous, and overbroad.

25   SuccessFactors further objects that the request for documents and communications concerning the

26   "reasons for each such termination during the period January 1, 2005 to the present" is overbroad,

27   not relevant, and not reasonably calculated to lead to discovery of admissible evidence.

28       SuccessFactors reserves the right to produce accessible, electronically stored information

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   in a non-native but reasonably usable format.

2       Subject to and without waiving the foregoing objections and the General Objections,

3   SuccessFactors responds as follows:

4       To the extent such documents are within its possession, custody, or control, SuccessFactors

5   will produce true and correct copies of nonprivileged documents about customer retention rates to

6   the extent they pertain to the lists shown on SuccessFactors' website.  Documents that contain

7   confidential financial, proprietary, trade secret or other confidential or competitively sensitive

8   business information will only be produced subject to the protective order entered in this action.

9   **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

10      Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

11  SuccessFactors clarifies and amends its response as follows. Softscape clarified that it was willing

12  to narrow the request to reasons for termination to those customers who terminated because of

13  failed implementations.  With this understanding, SuccessFactors will produce, in addition to

14  documents SuccessFactors agreed to produce above, nonprivileged documents about customer

15  retention rates to the extent they pertain to the Presentation's statements alleged to be false.

16  **REQUEST FOR PRODUCTION NO. 16:**

17      All documents concerning the removal of any customer's name from SuccessFactors'

18  website or its marketing collateral during the period January 1, 2005 to the present.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

20      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

21  SuccessFactors further objects that the request for "All documents" is overbroad and unduly

22  burdensome, especially to the extent that such documents are equally accessible to Softscape.

23      SuccessFactors reserves the right to produce accessible, electronically stored information

24  in a non-native but reasonably usable format.

25      Subject to and without waiving the foregoing objections and the General Objections,

26  SuccessFactors responds as follows:

27      To the extent such documents are within its possession, custody, or control, SuccessFactors

28  will produce true and correct copies of nonprivileged documents about the listing of customers in

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    public materials. Documents that contain confidential financial, proprietary, trade secret or other

2    confidential or competitively sensitive business information will only be produced subject to the

3    protective order entered in this action.

4    **REQUEST FOR PRODUCTION NO. 17:**

5        Documents concerning how customer data is stored and maintained by SuccessFactors,

6    including without limitation database structure and security information, for the period January 1,

7    2005 to the present.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

9        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

10   SuccessFactors further objects to the terms "customer data" and "how" as vague, ambiguous, and

11   overbroad, especially because it is unclear whether the use of the word "customer" is possessive or

12   descriptive. SuccessFactors further objects that the request for information about how

13   SuccessFactors stores or maintains data is overbroad and not reasonably calculated to lead to

14   discovery of admissible evidence, in that SuccessFactors' handling of data is not at issue except as

15   it relates to the purported security issues referred to in the Presentation.

16       SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

17   burdensome in light of the fact that there has been no showing that any part of the Presentation is

18   older than two years. SuccessFactors reserves the right to produce accessible, electronically

19   stored information in a non-native but reasonably usable format.

20       Subject to and without waiving the foregoing objections and the General Objections,

21   SuccessFactors responds as follows:

22       To the extent such documents are within its possession, custody, or control, SuccessFactors

23   will produce true and correct copies of nonprivileged documents about data security technology

24   used by SuccessFactors with respect to data that SuccessFactors customers use with SuccessFactors

25   applications. Documents that contain confidential financial, proprietary, trade secret or other

26   confidential or competitively sensitive business information will only be produced subject to the

27   protective order entered in this action.

28   ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  **REQUEST FOR PRODUCTION NO. 18:**

2  Documents concerning data security and database schema for SuccessFactors' products,

3  including without limitation source code, for the period January 1, 2005 to the present.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

5  SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

6  SuccessFactors further objects that the request is overbroad and not reasonably calculated to lead to

7  discovery of admissible evidence, especially to the extent that the request calls for production of

8  any source code.

9  SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

10  burdensome in light of the fact that there has been no showing that any part of the Presentation is

11  older than two years. SuccessFactors reserves the right to produce accessible, electronically

12  stored information in a non-native but reasonably usable format.

13  Subject to and without waiving the foregoing objections and the General Objections,

14  SuccessFactors responds as follows:

15  To the extent such documents are within its possession, custody, or control, SuccessFactors

16  will produce true and correct copies of nonprivileged documents, not including SuccessFactors'

17  proprietary source code, about data security technology used by SuccessFactors with respect to data

18  that SuccessFactors customers use with SuccessFactors applications. Documents that contain

19  confidential financial, proprietary, trade secret or other confidential or competitively sensitive

20  business information will only be produced subject to the protective order entered in this action.

21  **REQUEST FOR PRODUCTION NO. 19:**

22  Documents that identify SuccessFactors' consultants, contractors and employees during

23  the period January 1, 2005 to the present.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

25  SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

26  SuccessFactors further objects that the request is overbroad and not reasonably calculated to lead to

27  discovery of admissible evidence, because the identity of SuccessFactors' contractors and

28  employees is not relevant. SuccessFactors further objects that the request is overbroad and not

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    reasonably calculated to lead to discovery of admissible evidence to the extent that the request calls

2    for identification rather than quantification of consultants.

3        SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

4    burdensome in light of the fact that there has been no showing that any part of the Presentation is

5    older than two years.  SuccessFactors reserves the right to produce accessible, electronically

6    stored information in a non-native but reasonably usable format.

7        Subject to and without waiving the foregoing objections and the General Objections,

8    SuccessFactors responds as follows:

9        To the extent such documents are within its possession, custody, or control, SuccessFactors

10   will produce a document quantifying SuccessFactors' consultants.  Documents that contain

11   confidential financial, proprietary, trade secret or other confidential or competitively sensitive

12   business information will only be produced subject to the protective order entered in this action.

13   **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

14       Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

15   SuccessFactors clarifies and amends its response as follows. SuccessFactors has produced

16   documents quantifying consultants and partner resources. SuccessFactors will also produce

17   documents sufficient to show the number of employees in 2005, 2006, 2007, and 2008.

18   **REQUEST FOR PRODUCTION NO. 20:**

19       Documents that identify all current and former SuccessFactors employees, contractors or

20   consultants who have been employed by Softscape during the period January 1, 2005 to the present.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

22       SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

23   SuccessFactors further objects that the request is overbroad and not reasonably calculated to lead to

24   discovery of admissible evidence, because the identity of SuccessFactors' consultants, contractors

25   and employees is not relevant.  SuccessFactors further objects that the request is oppressive and

26   unduly burdensome in that the information sought is equally accessible to Softscape and/or

27   presumes that SuccessFactors has knowledge that it may not have.

28       SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    burdensome in light of the fact that there has been no showing that any part of the Presentation is

2    older than two years.  SuccessFactors reserves the right to produce accessible, electronically

3    stored information in a non-native but reasonably usable format.

4    **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

5           Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

6    SuccessFactors clarifies and amends its response as follows. As noted in the meet-and-confer,

7    SuccessFactors maintains no systematic means of tracking which of its employees worked for

8    Softscape prior to being employed by SuccessFactors or later work for Softscape after being

9    employed by SuccessFactors.

10   **REQUEST FOR PRODUCTION NO. 21:**

11          All documents concerning any alleged damage to SuccessFactors' computer systems

12   resulting from Softscape's access to SuccessFactors' ACE Demo environment (see Paragraphs 22

13   and 23 of the Complaint).

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

15          SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

16   SuccessFactors further objects that the request for "All documents" is overbroad and unduly

17   burdensome.  SuccessFactors further objects that the request prematurely calls for expert discovery.

18   SuccessFactors reserves the right to produce accessible, electronically stored information in a

19   non-native but reasonably usable format.

20          Subject to and without waiving the foregoing objections and the General Objections,

21   SuccessFactors responds as follows:

22          To the extent such documents are within its possession, custody, or control, SuccessFactors

23   will produce nonprivileged documents concerning damage to SuccessFactors' computer systems

24   resulting from Softscape's access.  Documents that contain confidential financial, proprietary, trade

25   secret or other confidential or competitively sensitive business information will only be produced

26   subject to the protective order entered in this action.

27   ///

28   ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  **REQUEST FOR PRODUCTION NO. 22:**

2      All documents and communications concerning SuccessFactors' reaction or response to the

3  distribution of the Presentation, including any investigation of that distribution by SuccessFactors.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

5      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

6  SuccessFactors further objects that the request for "All documents and communications" is

7  overbroad and unduly burdensome.  SuccessFactors further objects that the request is oppressive

8  and unduly burdensome to the extent that the documents and communications sought are equally

9  accessible to Softscape.

10      Subject to and without waiving the foregoing objections and the General Objections,

11  SuccessFactors responds as follows:

12      To the extent such documents are within its possession, custody, or control, SuccessFactors

13  will produce nonprivileged documents and communications concerning SuccessFactors' reaction or

14  response to the distribution of the Presentation.  Documents that contain confidential financial,

15  proprietary, trade secret or other confidential or competitively sensitive business information will

16  only be produced subject to the protective order entered in this action.

17  **REQUEST FOR PRODUCTION NO. 23:**

18      All documents concerning the identity of any person who distributed the Presentation.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

20      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

21  SuccessFactors further objects that the request for "All documents" is overbroad and unduly

22  burdensome.  SuccessFactors further objects that the request is oppressive and unduly burdensome

23  to the extent that the request seeks documents that are equally accessible to Softscape and/or

24  presumes that SuccessFactors has knowledge that it may not have.

25      Subject to and without waiving the foregoing objections and the General Objections,

26  SuccessFactors responds as follows:

27      To the extent such documents are within its possession, custody, or control, SuccessFactors

28  will produce nonprivileged documents concerning the identities of persons who might have

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  distributed the Presentation to parties other than SuccessFactors, its counsel, and the Court.

2  Documents that contain confidential financial, proprietary, trade secret or other confidential or

3  competitively sensitive business information will only be produced subject to the protective order

4  entered in this action.

5  **REQUEST FOR PRODUCTION NO. 24:**

6       All documents concerning the receipt of the Presentation by any person, including without

7  limitation, communications received from SuccessFactors' customers.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

9       SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

10 SuccessFactors further objects that the request for "All documents" is overbroad and unduly

11 burdensome.  SuccessFactors further objects that the request is oppressive and unduly burdensome

12 to the extent that the request seeks documents that are accessible to Softscape and/or presumes that

13 SuccessFactors has knowledge that it may not have.  SuccessFactors further objects that the request

14 is oppressive and unduly burdensome because of the large number of recipients who received

15 and/or may have communicated about the Presentation.

16      Subject to and without waiving the foregoing objections and the General Objections,

17 SuccessFactors responds as follows:

18      To the extent such documents are within its possession, custody, or control, SuccessFactors

19 will produce communications received from SuccessFactors' customers about the Presentation and

20 nonprivileged documents about such communications.  Documents that contain confidential

21 financial, proprietary, trade secret or other confidential or competitively sensitive business

22 information will only be produced subject to the protective order entered in this action.

23 **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

24      Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

25 SuccessFactors clarifies and amends its response as follows. Softscape clarified that the Request

26 seeks documents concerning the receipt of the Presentation, even if they are not documents from

27 SuccessFactors customers. With this understanding, SuccessFactors will produce, in addition to

28 documents SuccessFactors agreed to produce above, nonprivileged documents within its

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  possession, custody, or control concerning the receipt of the Presentation.

2  **REQUEST FOR PRODUCTION NO. 25:**

3      All documents and communications concerning any PowerPoint presentation or slides,

4  evaluation, summary or analysis prepared by SuccessFactors which identifies internal problems,

5  issues, or deficiencies concerning any SuccessFactors product during the period January 1, 2005

6  through the present.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

8      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

9  SuccessFactors further objects to the terms "evaluation, summary or analysis" and "problems,

10  issues, or deficiencies" as vague, ambiguous, and overbroad. SuccessFactors further objects to the

11  request for "All documents and communications" product as overbroad and unduly burdensome.

12  SuccessFactors further objects to the request and the purported scope "concerning any

13  SuccessFactors product" as overbroad and not reasonably calculated to lead to discovery of

14  admissible evidence, since only the products and purported problems identified in the Presentation

15  are relevant.

16      SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

17  burdensome in light of the fact that there has been no showing that any part of the Presentation is

18  older than two years. SuccessFactors reserves the right to produce accessible, electronically

19  stored information in a non-native but reasonably usable format.

20      Subject to and without waiving the foregoing objections and the General Objections,

21  SuccessFactors responds as follows:

22      To the extent such documents are within its possession, custody, or control, SuccessFactors

23  will produce true and correct copies of nonprivileged SuccessFactors documents and

24  communications concerning any false or misleading statements included in the Presentation.

25  Documents that contain confidential financial, proprietary, trade secret or other confidential or

26  competitively sensitive business information will only be produced subject to the protective order

27  entered in this action.

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **REQUEST FOR PRODUCTION NO. 26:**

2        Documents identifying the name and e-mail address of any person who was provided with

3    a copy of the Presentation by SuccessFactors.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

5        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

6    SuccessFactors further objects that the request is oppressive and unduly burdensome to the extent

7    that the request seeks information that is accessible to Softscape.

8        Subject to and without waiving the foregoing objections and the General Objections,

9    SuccessFactors responds as follows:

10        Plaintiff is not aware of any SuccessFactors' employees or agents that have provided a

11    copy of the Presentation to any person other than Softscape and its counsel, SuccessFactors and

12    its counsel, and the Court in connection with the present litigation.

13    **REQUEST FOR PRODUCTION NO. 27:**

14        All e-mail correspondence and web access logs for each person identified in your response

15    to Request 24 for the period February 1, 2008 to present.

16    **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

17        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

18    SuccessFactors further objects that the request for "All" correspondence and logs is overbroad and

19    unduly burdensome, especially to the extent that it calls for documents that SuccessFactors would

20    not have. SuccessFactors further objects to the terms "e-mail correspondence" and "web access

21    logs" as vague, ambiguous, and overbroad. SuccessFactors will interpret these terms to encompass

22    only e-mails sent by third parties to SuccessFactors and access logs related to

23    www.successfactors.com.

24        SuccessFactors further objects that the request is oppressive and unduly burdensome to the

25    extent that the request seeks documents that are accessible to Softscape and/or presumes that

26    SuccessFactors has knowledge that it may not have. SuccessFactors further objects that the request

27    is oppressive and unduly burdensome because of the large number of recipients who received

28    and/or may have communicated about the Presentation.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Subject to and without waiving the foregoing objections and the General Objections,

2    SuccessFactors responds as follows:

3    To the extent such documents are within its possession, custody, or control, SuccessFactors

4    will produce e-mail communications received from SuccessFactors' customers about the

5    Presentation and server logs for www.successfactors.com. Documents that contain confidential

6    financial, proprietary, trade secret or other confidential or competitively sensitive business

7    information will only be produced subject to the protective order entered in this action.

8    **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

9    Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

10    SuccessFactors clarifies and amends its response as follows. SuccessFactors will produce, in

11    addition to documents SuccessFactors agreed to produce above, nonprivileged communications

12    within its possession, custody, or control with customers who received the Presentation.

13    **REQUEST FOR PRODUCTION NO. 28:**

14    All documents concerning SuccessFactors' competitor analysis of Softscape and/or its

15    products, including without limitation, information obtained from public or subscription sources;

16    communications with current or former Softscape employees, contractors, consultants or

17    customers; and/or field research interviews, for the period January 1, 2005 to the present.

18    **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

19    SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

20    SuccessFactors further objects to the term "analysis" as vague, ambiguous, and overbroad.

21    SuccessFactors further objects that the antecedent of "its" is unclear; SuccessFactors will interpret

22    the request to refer to Softscape's "products." SuccessFactors further objects that the request for

23    "All documents" is overbroad and unduly burdensome, especially to the extent that such documents

24    are accessible to Softscape. SuccessFactors further objects that the request for documents

25    concerning competitive analysis is overbroad, not relevant, and not reasonably calculated to lead to

26    discovery of admissible evidence, in that the Presentation does not directly mention Softscape or its

27    products.

28    SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    burdensome in light of the fact that there has been no showing that any part of the Presentation is

2    older than two years.  SuccessFactors reserves the right to produce accessible, electronically

3    stored information in a non-native but reasonably usable format.

4    **REQUEST FOR PRODUCTION NO. 29:**

5         All documents distributed by SuccessFactors to any person concerning Softscape, for the

6    period January 1, 2005 to the present.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

8         SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

9    SuccessFactors further objects that "any person" is vague, ambiguous, and overbroad;

10   SuccessFactors will interpret the request to refer only to persons aside from Softscape and its

11   counsel, SuccessFactors and its counsel, and the Court.  SuccessFactors further objects that the

12   request for "All documents" is overbroad and unduly burdensome, especially to the extent that such

13   documents are accessible to Softscape.  SuccessFactors further objects that the request for

14   documents concerning Softscape is overbroad, not relevant, and not reasonably calculated to lead to

15   discovery of admissible evidence, in that the Presentation does not directly mention Softscape or its

16   products.

17        SuccessFactors further objects to the period dating to January 1, 2005 as overbroad and

18   burdensome in light of the fact that there has been no showing that any part of the Presentation is

19   older than two years.  SuccessFactors reserves the right to produce accessible, electronically

20   stored information in a non-native but reasonably usable format.

21   **REQUEST FOR PRODUCTION NO. 30:**

22        SuccessFactors' document preservation policies, and all communications relating to

23   and/or memorializing such policies, including the preservation of documents by SuccessFactors

24   in this Litigation.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

26        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

27   SuccessFactors further objects that the request for "all communications" is overbroad and unduly

28   burdensome, especially to the extent that such documents are accessible to Softscape.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    SuccessFactors further objects that the request for documents concerning Softscape is duplicative,

2    oppressive and unduly burdensome in light of Paragraphs 7 and 8 of the Court's April 23, 2008

3    Evidence Preservation Order and the April 30, 2008 Declaration of Patrick Premo Regarding

4    Plaintiff SuccessFactors, Inc.'s Compliance with Paragraph 7 of the Court's Evidence Preservation

5    Order.

6         Subject to and without waiving the foregoing objections and the General Objections,

7    SuccessFactors responds as follows:

8         SuccessFactors is not aware of responsive, nonprivileged documents concerning

9    document preservation policies and instead refers Defendant to Paragraphs 7 and 8 of the Court's

10   April 23, 2008 Evidence Preservation Order and the April 30, 2008 Declaration of Patrick Premo

11   Regarding Plaintiff SuccessFactors, Inc.'s Compliance with Paragraph 7 of the Court's Evidence

12   Preservation Order.

13   **FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

14        Subsequent to the parties having met and conferred on June 9 and June 11, 2008,

15   SuccessFactors clarifies and amends its response as follows. SuccessFactors notes that it has

16   produced any responsive, nonprivileged documents concerning document preservation policies,

17   except to the extent that such documents are already publicly available.

18   **REQUEST FOR PRODUCTION NO. 31:**

19        All documents concerning the statements contained in the Declaration of Robert Bernshteyn

20   in Support of Plaintiff's Ex Parte Application for a Temporary Restraining Order and Order to

21   Show Cause re Preliminary Injunction, filed March 11, 2008.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

23        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

24   SuccessFactors further objects that the request for "All documents concerning the statements" is

25   overbroad and unduly burdensome. SuccessFactors further objects that the request prematurely

26   calls for expert discovery. SuccessFactors reserves the right to produce accessible, electronically

27   stored information in a non-native but reasonably usable format.

28        Subject to and without waiving the foregoing objections and the General Objections,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    SuccessFactors responds as follows:

2         To the extent such documents are within its possession, custody, or control, SuccessFactors

3    will produce nonprivileged documents that Robert Bernshteyn reviewed or relied on in preparing

4    the Declaration of Robert Bernshteyn in Support of Plaintiff's Ex Parte Application for a

5    Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, filed March 11,

6    2008. Documents that contain confidential financial, proprietary, trade secret or other confidential

7    or competitively sensitive business information will only be produced subject to the protective

8    order entered in this action.

9    **REQUEST FOR PRODUCTION NO. 32:**

10        All documents concerning the statements contained in the Declaration of Robert Bernshteyn

11   in Support of Preliminary Injunction and Expedited Discovery, filed March 21, 2008.

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

13        SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

14   SuccessFactors further objects that the request for "All documents concerning the statements" is

15   overbroad and unduly burdensome. SuccessFactors further objects that the request prematurely

16   calls for expert discovery. SuccessFactors reserves the right to produce accessible, electronically

17   stored information in a non-native but reasonably usable format.

18        Subject to and without waiving the foregoing objections and the General Objections,

19   SuccessFactors responds as follows:

20        To the extent such documents are within its possession, custody, or control, SuccessFactors

21   will produce nonprivileged documents that Robert Bernshteyn reviewed or relied on in preparing

22   the Declaration of Robert Bernshteyn in Support of Preliminary Injunction and Expedited

23   Discovery, filed March 21, 2008. Documents that contain confidential financial, proprietary, trade

24   secret or other confidential or competitively sensitive business information will only be produced

25   subject to the protective order entered in this action.

26   ///

27   ///

28   ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  **REQUEST FOR PRODUCTION NO. 33:**

2      All documents concerning the statements contained in the Declaration of James Matheson

3  in Support of Plaintiff's Ex Parte Application for a Temporary Restraining Order and Order to

4  Show Cause re Preliminary Injunction, filed March 11, 2008.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

6      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

7  SuccessFactors further objects that the request for "All documents concerning the statements" is

8  overbroad and unduly burdensome. SuccessFactors further objects that the request prematurely

9  calls for expert discovery. SuccessFactors reserves the right to produce accessible, electronically

10  stored information in a non-native but reasonably usable format.

11      Subject to and without waiving the foregoing objections and the General Objections,

12  SuccessFactors responds as follows:

13      To the extent such documents are within its possession, custody, or control, SuccessFactors

14  will produce nonprivileged documents that James Matheson reviewed or relied on in preparing the

15  Declaration of James Matheson in Support of Plaintiff's Ex Parte Application for a Temporary

16  Restraining Order and Order to Show Cause re Preliminary Injunction, filed March 11, 2008.

17  Documents that contain confidential financial, proprietary, trade secret or other confidential or

18  competitively sensitive business information will only be produced subject to the protective order

19  entered in this action.

20  **REQUEST FOR PRODUCTION NO. 34:**

21      All documents concerning the statements contained in the Declaration of James Matheson

22  in Support of Preliminary Injunction and Expedited Discovery, filed March 21, 2008.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

24      SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

25  SuccessFactors further objects that the request for "All documents concerning the statements" is

26  overbroad and unduly burdensome. SuccessFactors further objects that the request prematurely

27  calls for expert discovery. SuccessFactors reserves the right to produce accessible, electronically

28  stored information in a non-native but reasonably usable format.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Subject to and without waiving the foregoing objections and the General Objections,

2  SuccessFactors responds as follows:

3    To the extent such documents are within its possession, custody, or control, SuccessFactors

4  will produce nonprivileged documents that James Matheson reviewed or relied on in preparing the

5  Declaration of James Matheson in Support of Preliminary Injunction and Expedited Discovery,

6  filed March 21, 2008.  Documents that contain confidential financial, proprietary, trade secret or

7  other confidential or competitively sensitive business information will only be produced subject to

8  the protective order entered in this action.

9  **REQUEST FOR PRODUCTION NO. 35:**

10    All documents concerning the statements contained in the Declaration of Jorge Andres

11  Corrales in Support of Preliminary Injunction and Expedited Discovery, filed March 11, 2008.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

13    SuccessFactors incorporates by reference its General Objections as if fully set forth herein.

14  SuccessFactors further objects that the request for "All documents concerning the statements" is

15  overbroad and unduly burdensome.  SuccessFactors further objects that the request prematurely

16  calls for expert discovery.  SuccessFactors reserves the right to produce accessible, electronically

17  stored information in a non-native but reasonably usable format.

18    Subject to and without waiving the foregoing objections and the General Objections,

19  SuccessFactors responds as follows:

20    To the extent such documents are within its possession, custody, or control, SuccessFactors

21  will produce nonprivileged documents that Jorge Andres Corrales reviewed or relied on in

22  preparing the Declaration of Jorge Andres Corrales in Support of Preliminary Injunction and

23  Expedited Discovery, filed March 11, 2008.  Documents that contain confidential financial,

24  proprietary, trade secret or other confidential or competitively sensitive business information will

25  only be produced subject to the protective order entered in this action.

26  ///

27  ///

28  ///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Dated:  June 24, 2008                          FENWICK & WEST LLP

2

3                                            By:    

4                                                   _____
                                                    Liwen Mah
5                                                   Attorneys for Plaintiff SUCCESSFACTORS, INC.
                                                                                    5227767
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## CERTIFICATE OF SERVICE

The undersigned declares that:

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to this action. My business address is 555 California Street, San Francisco, CA 94104.

On the date set forth below, I served the attached PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1 – 35) on the party in the subject action by placing a true copy thereof as indicated below, addressed as follows:

| | |
|---|---|
| Jessica L. Grant, Esq. | Robert P. Taylor, Esq. |
| Jonathan A. Patchen, Esq. | Bryan J. Sinclair, Esq. |
| Jayesh S. Hines-Shah | Jeffrey M. Ratinoff, Esq. |
| Taylor & Company Law Offices, LLP | Mintz, Levin, Cohn, Ferris, Glovsky |
| One Ferry Building, Suite 355 | & Popeo, P.C. |
| San Francisco, CA 94111 | 1400 Page Mill Road |
| | Palo Alto, CA 94304 |

☒ **U.S. MAIL:** I am familiar with our business practices for collecting and processing of mail for the United States Postal Service. Mail placed by me within the office for collection for the United States Postal Service would normally be deposited with the United States Postal Services that day in the ordinary course of business. The envelope(s) bearing the address(es) above was sealed and placed for collection and mailing on the date below following our ordinary business practices.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand on the office(s) of the addressee(s).

☐ **BY FEDERAL EXPRESS:** I caused such envelope(s) to be delivered to Federal Express for overnight courier service to the office(s) of the addressee(s).

☒ **BY ELECTRONIC MAIL:** I caused such document(s) to be delivered by electronic mail to the addressee(s).

☐ **BY FACSIMILE:** I caused a copy of such document(s) to be sent via facsimile transmission to the office(s) of the party(s) stated above and was transmitted without error.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on at San Francisco, California.

Dated:    June 24, 2008

_____
Reba Williams-Jones

*5227767*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| | |
|---|---|
| PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION (NOS. 1 – 35) | CASE NO. CV 08-1376 CW |

EXHIBIT G

1  ROBERT P. TAYLOR (SBN 46046)
   Email: rptaylor@mintz.com
2  BRYAN J. SINCLAIR (SBN 205885)
   Email: bsinclair@mintz.com
3  JEFFREY M. RATINOFF (SBN 197241)
   Email: jratinoff@mintz.com
4  MINTZ LEVIN COHN FERRIS GLOVSKY AND
   POPEO, PC
5  1400 Page Mill Road
   Palo Alto, California 94304-1124
6  Telephone: (650) 251-7700
   Facsimile: (650) 251-7739
7
8  Attorneys for Defendant,
   SOFTSCAPE, INC.
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   OAKLAND DIVISION

13  SUCCESSFACTORS, INC, a Delaware        Case No. CV 08-1376 CW (BZx)
    corporation,
14                                         DEFENDANT'S AMENDED
                  Plaintiff,               RESPONSES AND OBJECTIONS TO
15                                         PLAINTIFF'S SECOND SET OF
        vs.                                INTERROGATORIES (NO. 20)
16
    SOFTSCAPE, INC., a Delaware corporation,
17  and DOES 1-10, inclusive,
18                Defendants.
19

20  PROPOUNDING PARTY:    Plaintiff SUCCESSFACTORS, INC.

21  RESPONDING PARTY:     Defendant SOFTSCAPE, INC.

22  SET NO.:              Two (2) [Interrogatory No. 20] - Amended Responses

23      Defendant Softscape, Inc. ("Softscape" or "Defendant"), through its attorneys, hereby

24  objects and responds to Plaintiff SuccessFactors, Inc.'s ("SuccessFactors" or "Plaintiff") Second Set

25  of Interrogatories (No. 20) as follows:

26                       **PRELIMINARY STATEMENT**

27      Defendant responds to these interrogatories on the basis of the best information available to

28  it at the time of gathering responsive materials, within the limits of the Federal Rules of Civil

                                  - 1 -

1  Procedure ("FRCP"), and subject to the objections described below. Further investigation may

2  reveal additional information that is responsive to these interrogatories. Defendant reserves the

3  right to continue discovery and investigation into this matter and to present, during the trial period

4  and otherwise, additional information discovered after the date of the present amended responses.

5  Defendant reserves the right where appropriate, to supplement and/or correct the disclosures and

6  amended responses contained herein.

7  **GENERAL OBJECTIONS**

8  The following General Objections apply to the interrogatories and shall have the same force

9  and effect as if set forth in response to each individually numbered interrogatory.

10  1.    Defendant objects to the definitions of "YOU," "YOUR," "DEFENDANT," or

11  "SOFTSCAPE" because the terms mean and include, collectively and/or individually, Softscape,

12  Inc., and its parents, subsidiaries, affiliates, predecessors or successor companies, if any, and its

13  current and former officers, directors, employees, consultants, attorneys, authorized agents, sales

14  representatives, distributors, dealers, direct and indirect contractors, and/or all other PERSONS

15  acting or purporting to act on its behalf. Such a broad definition seeks information from all of

16  Defendant's predecessors-in-interest, its subsidiaries, related companies, licensees, their officers,

17  directors and managing agents of those companies, which is neither possible nor reasonable.

18  Defendant will answer each interrogatory on behalf of Softscape including the knowledge of

19  members of its current management team deemed most likely to have such knowledge. Defendant

20  further objects to this definition to the extent that it imposes any obligation beyond what it required

21  by the FRCP.

22  2.    Defendant objects to the definitions of "PLAINTIFF" or "SUCCESFACTORS" on

23  the grounds that the definitions are vague and ambiguous, overbroad, compound and overly

24  complex, unduly burdensome and oppressive, and call for information that is neither relevant nor

25  reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to

26  these definitions to the extent that they impose any obligation beyond what is required by the FRCP.

27  3.    Defendant objects to the definitions of "DOCUMENT" or "DOCUMENTS" on the

28  grounds that the definitions are vague and ambiguous, overbroad, compound and overly complex,

- 2 -

DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND
SET OF INTERROGATORIES (NO. 20)                     Case No. C08-1376 CW (BZ)

1   unduly burdensome and oppressive, and call for information that is neither relevant nor reasonably

2   calculated to lead to the discovery of admissible evidence. Defendant further objects to these

3   definitions to the extent that they impose any obligation beyond what is required by the FRCP.

4          4.     Defendant objects to the definitions of "COMMUNICATION" or

5   "COMMUNICATIONS" on the grounds that the definitions are vague and ambiguous, overbroad,

6   compound and overly complex, unduly burdensome and oppressive, and call for information that is

7   neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

8   Defendant further objects to these definitions to the extent that they impose any obligation beyond

9   what is required by the FRCP.

10         5.     Defendant objects to the definition of "CONCERNING" on the grounds that the

11  definition is vague and ambiguous, overbroad, compound and overly complex, unduly burdensome

12  and oppressive, and calls for information that is neither relevant nor reasonably calculated to lead to

13  the discovery of admissible evidence. Defendant further objects to this definition to the extent that

14  it imposes any obligation beyond what is required by the FRCP.

15         6.     Defendant objects to the definition of "IDENTIFY" on the grounds that the

16  definition is vague and ambiguous, overbroad, compound and overly complex, unduly burdensome

17  and oppressive, and calls for information that is neither relevant nor reasonably calculated to lead to

18  the discovery of admissible evidence. Defendant further objects to this definition to the extent that

19  it imposes any obligation beyond what is required by the FRCP.

20         7.     Defendant objects to Plaintiff's instructions in their entirety to the extent it imposes

21  any obligation beyond what is required by the FRCP and applicable case law.

22                          **RESPONSES AND OBJECTIONS**

23  **INTERROGATORY NO. 20:**

24         Please state in detail all facts CONCERNING YOUR Seventh Affirmative Defense of

25  "unclean hands," including, without limitations, identification of each person purportedly involved

26  in any act constituting unclean hands, the acts purportedly committed, and the IDENTITY of all

27  DOCUMENTS purportedly supporting such defense.

28  ///

                                    - 3 -

**RESPONSE TO INTERROGATORY NO. 20:**

Defendant objects to the extent it requests information protected by the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized by law. Defendant objects to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive to the extent it requires Defendant to "state in detail all facts" and that interrogatories may not be the most efficient or least burdensome method of discovery to elicit information supporting Softscape's defense. Further, this interrogatory is premature due to SuccessFactors' failure and/or refusal to produce documents in response to Softscape's document requests that go to issues related to Softscape's unclear hands defense. Accordingly, Softscape reserves its right to amend, produce or supply additional facts and information as fact and expert discovery proceed in this action.

Notwithstanding its objections, but subject thereto, Softscape states as follows:

Many of the "bad acts" that Successfactors has alleged in the Complaint against Softscape have been done by Successfactors itself to Softscape. Moreover, Successfactors has engaged in many other "bad acts" involving Softscape that should preclude it from any equitable relief in this action. In an attempt to gain a competitive advantage over Softscape, who according to the deposition of Successfactors CEO Lars Dalgaard is SuccessFactors most formidable competitor, SuccessFactors has used unfair and deceptive acts to compete with Softscape, including but not limited to intentionally targeting Softscape employees, both current and former, in order to gain access to Softscape's confidential and proprietary information; surreptitiously seeking access to Softscape's proprietary information and publishing false information about Softscape designed to portray Softscape in a poor light in the marketplace. Successfactors employees have repeatedly signed up from 2005 until 2007 to view Softscape webinars intended for its existing and potential customer base. These employees include Emily Chen, Wendy Jakszta, Catherine Almquist, Lori McNally, Mark Vashon, Max Goldman, Marty Pitkow, David Shanteler, and Sharyn Fitzpatrick.

Lars Dalgaard, the highest ranking employee at Successfactors, at a trade show entered the Softscape exhibitors booth as a customer for the purpose of gaining information about Softscape and its products. During the 2007 HR Tech tradeshow, a Successfactors employee used a false

- 4 -

1   badge and posed as a potential customer in order to get a demonstration and information from the

2   representatives in the Softscape booth. John (last name unknown), a Successfactors' employee in

3   its Sydney office, falsely informed Jason Sharpe from Lion Nathan that Softscape was going out of

4   business. Successfactors distributed false information about Softscape in the form of Powerpoint

5   campaigns authored by Rob Bernshteyn and other materials to potential customers, such as

6   Fairchild Semiconductor, that contain misrepresentations about Softscape's level of satisfaction

7   amongst current and past customers. Successfactors distributed altered newspaper articles

8   regarding Softscape in order to show Softscape in a negative light and make it appear as though the

9   newspaper itself had written the article.

10          At least one trade show, Successfactors employees have been seen taking "press kits" from

11   Softscape and other vendors, and literally throwing them into trash cans so they would not be

12   available for distribution at the trade show. On information and belief, Softscape believes that

13   Successfactors has engaged in a pattern over several months of distributing false information about

14   Softscape regarding pending lawsuits, employee morale and the leadership team in various internet

15   blogs, such as Coderific, The Vault, and Boss Awards as well as to potential customers.

16          An unidentified Successfactors' employee, concealing his true identity, called Matthew

17   Park, Softscape's Vice President of Sales, in the Fall of 2007 and requested Softscape pricing and

18   product information by representing that they were a potential customer. The telephone caller

19   identification on Matthew Park's telephone indicated that the call originated at Successfactors. Mr.

20   Park confronted the caller with the fact that he knew the caller was from Successfactors and the

21   caller immediately hung up.

22          During Successfactors roadshow presentation in connection with its initial public offering,

23   Successfactors altered analyst reports in order to misrepresent to the investment community the

24   relative positions of Softscape and Successfactors in the marketplace in an effort to paint itself in a

25   more favorable, albeit misleading, light. In an effort to lure away AstraZeneca, a Softscape

26   prospect, Successfactors told them that Softscape were dishonest people to work with.

27   SuccessFactors has solicited several Softscape employees with access to Softscape's confidential

28   and proprietary information who had previously entered into NDAs with Softscape in connection

- 5 -

1   with their hiring, for the purpose of hiring the them to work for SuccessFactors and to gain access to

2   Softscape's confidential and proprietary information.  The Softscape employees were still working

3   for Softscape when SuccessFactors solicited them.  Successfactors targeted Softscape employees in

4   an effort to utilize their knowledge and experience of Softscape's business to address ongoing

5   deficiencies in its product and its lack of customer retention capabilities. The NDAs entered into by

6   the Softscape employees specifically prohibited them from revealing;

7
8
9
10
11
12
            ...to any person or entity any of the information concerning the organization,
            business or finances of the Company [Softscape]...(including but not limited
            to specifications, manuals, software in various stages of development,
            customer and prospect lists, sales plans and projections, product pricing
            information, prospect names, addresses and telephone number...sales
            proposals, demonstrations systems, sales material...and information relating
            to the Company's existing and future products and business
            plans)...and...shall not use or attempt to use any such information in any
            manner which may injure or cause loss or  may be calculated to injure or
            cause loss, whether directly or indirectly, to the Company.

13          The NDAs also prohibited the Softscape employees from working for a competitor, like

14  SuccessFactors, for one year from the termination of their employment with Softscape.

15  SuccessFactors knew or should have known that the Softscape employees had entered into NDAs

16  yet notwithstanding its knowledge of the terms of the NDAs, SuccessFactors hired the Softscape

17  employees to work for SuccessFactors less than one year after their employment with Softscape had

18  terminated.

19          On information and belief, Successfactors offered to pay legal expenses to Softscape

20  employees if they were willing to break their employment contracts with Softscape.  SuccessFactors

21  specifically hired Softscape employees in order to obtain Softscape's proprietary information and

22  trade secrets.  At least one of the Softscape employees was hired by SuccessFactors because

23  SuccessFactors knew that the individual wanted to share confidential information about Softscape

24  with SuccessFactors.

25          Specifically, Successfactors hired Hans Peter Fuelle, a former Softscape employee, to

26  appropriate Softscape's customer opportunities associated with the development of the German

27  market.  Successfactors hired Jeremy Watson, a former Softscape employee, for the purpose of

28  gaining access to and understanding Softscape's confidential and proprietary business information

- 6 -

1  including its business model, prospect lists and to assist in the design of Successfactor's

2  management software. Successfactors hired Jim Duffy who had confidential knowledge of

3  Softscape's customers and business opportunities. Successfactors hired Alex Chudnovsky, a former

4  Softscape employee, to gain access to his knowledge about Softscape customers and prospects in

5  the Midwest and his knowledge of compensation management. Successfactors hired Maureen Hill,

6  a former Softscape employee, to gain access to Softscape's proprietary demonstration system.

7  Successfactors hired David Madden, a former Softscape employee. Immediately prior to leaving

8  Softscape, David Madden was part of the Softscape team working on the next generation Softscape

9  product design and development. He was hired by Successfactors to enable Successfactors to gain

10  access to Softscape's proprietary product information and utilize his knowledge of Softscape's

11  product design to assist Successfactors with the design of its next generation product.

12  Successfactors hired Letty Ma, a former Softscape employee, to gain access to leads she had

13  developed at Softscape and Raymond Kuo, a former Softscape employee, to gain access to contact

14  lists and demonstration information. Successfactors hired Mark Lancaster, a former Softscape

15  employee, in order to gain information regarding how Softscape delivers software profitably to mid

16  market customers.

17       As a result of some of SuccessFactors' actions as set forth above, Softscape sought legal and

18  equitable relief to prevent any further harm to Softscape caused by SuccessFactors' actions in the

19  matter of *Softscape v. SuccessFactors et al*, Docket No. 05-2814 BLS2, Suffolk County,

20  Massachusetts. As part of the settlement of the above-referenced lawsuit, SuccessFactors and

21  Softscape entered into a Mutual Non-Solicitation Agreement (the "MNSA") pursuant to which the

22  parties agreed that for a six month period beginning June 12, 2007,

23       neither Softscape nor SuccessFactors shall solicit, induce or attempt to induce
         any employee of the other party to terminate employment with that other
24       party, except to the extent that the employee of the other party initiated
         contact with the hiring party regarding potential employment. Softscape and
25       SuccessFactors shall instruct the headhunters and/or placement firms that it
         utilizes not to contact the other company's employees on its behalf for the six
26       (6) months following the Effective Date.

27

28       Notwithstanding the foregoing, in furtherance of SuccessFactors campaign to obtain a

- 7 -

DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND
SET OF INTERROGATORIES (NO. 20)                    Case No. C08-1376 CW (BZ)

1  competitive advantage in the marketplace, SuccessFactors continued to target Softscape employees

2  within the six months following the effective date of the MNSA. For example, Successfactors

3  recruiters attempted, unsuccessfully, to recruit Softscape employees Alex Bartfield and Nick Adams

4  in Softscape's London office, during the six month period in violation of its express agreement that

5  it would not do so.

6        Softscape has also discovered, through a recent review of email documentation, that one of

7  the former Softscape employees, Maureen Hill, improperly obtained a copy of Softscape's

8  demonstration software just after she had accepted a position with SuccessFactors. Softscape

9  believes that Ms. Hill brought Softscape's software to Successfactors which it utilized unfairly to

10  compete with Softscape.

11        Softscape has also recently discovered that an individual with an IP address directly

12  connected with SuccessFactors attempted to access Softscape's confidential computer systems

13  located at Softscape's secured datacenter located in Wayland, Massachusetts in order to obtain

14  Softscape's proprietary information to further develop SuccessFactors' products. Softscape's

15  secure system houses Softscape's proprietary intellectual property for use only by authorized

16  Softscape employees. Softscape's demonstration software is kept confidential in secure, password

17  protected systems and is not accessible to the general public. Fortunately, the Successfactor

18  employee was not successful.

19        In or about January 2008, SuccessFactors publicly announced its new product offering,

20  SuccessFactors ULTRA, which competes with Softscape's product. Many of SuccessFactors' new

21  product enhancements, included within its recent ULTRA product, mimic or copy those functions

22  and features that Softscape's products have had for several years because, Softscape believes, the

23  former Softscape employees, who had knowledge and access to Softcape's confidential information

24  while employed at Softscape, wrongfully disclosed Softscape's confidential and proprietary product

25  information to SuccessFactors, including but not limited to confidential and proprietary information

26  regarding the integrated functionality of Softscape's products. Softscape believes that

27  SuccessFactors used Softscape's confidential and proprietary information to develop its new

28  competing product offering, SuccessFactors ULTRA. Customer demand for integrated functionality

- 8 -

1  has increased and the integrated platform that Softscape manufactures is a competitive advantage in

2  the marketplace.

3

4  Dated:  July 21, 2008                    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC

5

6

7                                          By:  BRYAN J. SINCLAIR

8                                               Attorneys for Defendant,
                                                SOFTSCAPE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

1

**PROOF OF SERVICE**

2        At the time of service, I was over 18 years of age and not a party to this action. I am

3   employed in the County of Santa Clara, State of California. My business address is 1400 Page Mill

4   Road, Palo Alto, California 94304.

5        On July 21, 2008, I served a true copy of the following document described as

6   **DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S**

7   **SECOND SET OF INTERROGATORIES (NO. 20)** on the interested parties in this action as

8   follows:

9   **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document to be sent

10  from e-mail address sburde@mintz.com to the person at the e-mail address listed below. I did not

11  receive, within a reasonable time after the transmission, any electronic message or other indication

12  that the transmission was unsuccessful.

13              Henry Z. Carbajal III, Esq.
                Fenwick & West LLP
14              801 California Street
                Mountain View, CA  94041
15              E-Mail: hcarbajal@fenwick.com

16              **Counsel for SuccessFactors**

17        I declare under penalty of perjury, under the laws of the United States of America, that the

18  foregoing is true and correct and that I am employed in the office of a member of the bar of this

19  Court at whose direction the service was made.

20        Executed on July 21, 2008, at Palo Alto, California.

21

22                                      _____
                                        Alice P. Kava
23

24  4385657v.1

25

26

27

28

                                        - 10 -

EXHIBIT H

# MINTZ LEVIN

1400 Page Mill Road
Palo Alto, California 94304-1124
650-251-7700
650-251-7739 fax
www.mintz.com

Jeffrey Ratinoff | 650 251 7755 | jratinoff@mintz.com

## HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY

June 11, 2008

**VIA ELECTRONIC AND U.S. MAIL**

Liwen Mah, Esq.
Fenwick & West LLP
555 California St #1200
San Francisco, CA, 94104

Re:     *SuccessFactors, Inc. v. Softscape, Inc.*; Case No.: C08-1376 CW (BZ)

Dear Liwen:

As we discussed today, I am writing to provide an update concerning Softscape's production of certain telephone records for the time period of 5:00 p.m. EST on March 4, 2008 to 7:00 a.m. EST on March 5, 2008.

From the list of custodians provided by SuccessFactors, it is our understanding that the following custodians had cell phones that were either paid for or provided by Softscape during the relevant time period:

REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED

Further, we have located corporate phone records for the extensions used by the employees in Softscape's Wayland office, which are on the list provided by SuccessFactors and were employed by Softscape during the agreed-upon time period. As previously advised, we are in the process of reviewing responsive phone records to determine whether there are any confidentiality or privacy issues that need to be addressed and will produce records that contain activity during the agreed-upon time period after our review is complete.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

Liwen Mah, Esq.
June 11, 2008
Page 2

**HIGHLY CONFIDENTIAL -ATTORNEYS' EYES ONLY**

We are also currently investigating whether corporate records exist for any employees identified in SuccessFactors' list that are not in Softscape's Wayland office (e.g., England and Australia) and will report to you whether such records exist as soon as our investigation is complete.

Thank you for your continuing patience with the foregoing matter.

Sincerely,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

Jeffrey M. Ratinoff

JR/sb/ak

4352352v.2

EXHIBIT I

# Ratinoff, Jeffrey

| | |
|---|---|
| **From:** | Ratinoff, Jeffrey |
| **Sent:** | Friday, June 06, 2008 2:25 PM |
| **To:** | 'Laurence Pulgram' |
| **Cc:** | Liwen Mah; Patrick Premo; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com |

**Subject:** RE: SuccessFactors v. Softscape

Dear Mr. Pulgram:

I will briefly respond to your email below since you have chosen to disengage yourself from our dialogue:

1. We met and conferred with Ms. Morey on designation issues the other day and will plan on discussing the matters you raised below with her when we receive a list of the portions of the deposition that SuccessFactors considers to be improperly designated under the Protective Order.
2. Faxing the subpoena 14 minutes after asking whether we would accept service makes clear that you had no intention of waiting for an answer. Further, it is disingenuous to presume that it was a simple yes or no question, which it was not. In that regard, I <u>expressly</u> stated I needed to confer with my client (an obviously needed to obtain Mr. Kurzner's consent) before giving you an answer. I was not given reasonable time, such as the two days that you had appeared to offer, to do so. At this point, I find it unnecessary to deconstruct the remainder of your ex post facto explanation.
3. We learned that the process server yet again attempted to serve Mr. Kurzner today. Without further comment on the disappointing manner in which your Firm chose to proceed, we have now obtained authorization to accept service on Mr. Kurzner's behalf. As such, please immediately notify the process server to cease harassing Mr. Kurzner.
4. A response to your original questions concerning Mr. Kurzner will be included in a forthcoming response to Mr. Carbajal's letter that was sent late last night.
5. ***Please do not attempt to directly contact any Softscape employees, even though you may believe that they have some knowledge or documents outside the scope of their employment. If a similar incident occurs again, please consider this email as notice that will not hesitate to seek an immediate protective order and any other appropriate relief from the Court.***

Finally, I believe we could have resolved this days ago had you simply called us first before attempted to contact Mr. Kurzner directly and then escalating matters after we <u>politely</u> asked that your Firm not to do so.
As I have other pressing matters to attend to, I too will disengage from this dialogue. Have a nice weekend.

Sincerely,
Jeffrey Ratinoff

**From:** Laurence Pulgram [mailto:LPulgram@Fenwick.com]
**Sent:** Thursday, June 05, 2008 5:57 PM
**To:** Ratinoff, Jeffrey
**Cc:** Liwen Mah; Patrick Premo; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com
**Subject:** RE: SuccessFactors v. Softscape

DESIGNATED BY SUCCESSFACTORS AS
HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

Mr. Ratinoff:

I apologize for not being able to get back to you sooner. Your client chose today to issue a press release attacking my client and to file a lawsuit against them, and there are a number of other pre-existing items on my calendar. For that reason, this will be my last letter on this subject, and conversation from here will be continued by those who are responsible for the meet and confer process on our team.

1. Softscape has thus far refused to designate any of the testimony of Mr. Watkins lower than Highly Confidential, Outside Counsel Only. We assume that Softscape is treating all the information, questions and answers, in the deposition in that manner. We disagree with that designation as to many subjects and have already met in person on some of those subject with Softscape's counsel.                **REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

2. The rules of procedure require that SuccessFactors supply you with notice of subpoenas it issues. We did so on Tuesday (at 10:54 a.m. by your account). I had asked you in my 10:40 email whether you would accept service, so I do not understand why you claim it was significant that I sent the subpoena 14 minutes later--that's why I asked. I did not ask you to tell me your answer within two days; acceptance of service for someone *you* were claiming was an employee of Softscape was an issue that should have been a simple yes or know. (My time frame of two days was as to confirmation of preservation of documents and mirror imaging of drives--for which two days seemed reasonable). At 12:26, you responded, declining to state whether you would accept service, but clearly asserting that Softscape did *not* have control of Mr. Kurzner's documents from prior to his joining Softscape. Given your response SuccessFactors proceeded to attempt to serve Mr. Kurzner personally. There is, of course, nothing improper about serving Mr. Kurzner directly, imposing an indisputable and definitive obligation upon him to preserve his documents, and especially not where Softscape was claiming that his information did not belong to Softscape. Indeed, I also told you again, in my last email yesterday evening, that we were doing exactly that, while again telling you that we didn't need to deliver to him personally if you chose to accept for him. Remarkably, you still have not agreed to accept service for him, and accordingly we will continue to attempt to serve Mr. Kurzner unless you do.

3. I was not present at the meet and confer you had yesterday, though I understand that your last paragraph describes it inaccurately. The recording will reflect what happened. You should take up that issue with those in attendance.

4. If you do not confirm, within the two day time frame that I requested initially, that Mr. Kurzner's pre- and post-employment media have been preserved and mirror imaged, we reserve the right immediately to take that issue up with the Court, as preservation is not an issue that can be deferred.

Again, kindly direct your future correspondence on these issues to the attorneys who are responsible for meeting with you, Mr. Carbajal and Ms. Morey.

Sincerely,

Laurence Pulgram

---

**From:** Ratinoff, Jeffrey [mailto:JRatinoff@mintz.com]
**Sent:** Thursday, June 05, 2008 9:20 AM
**To:** Laurence Pulgram
**Cc:** Liwen Mah; Patrick Premo; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com
**Subject:** RE: SuccessFactors v. Softscape

Mr. Pulgram:

Thank you for explaining why SF is seeking discovery from Mr. Kurzner. We will answer the bulk of your questions concerning his status and our position concerning his pre-employment documents and media in due course. However, we had three follow-up issues that require immediate attention.

First, you designated you email below as "Highly Confidential". We presume you are only designated the portion paraphrasing Mr. Watkins' testimony. If this is the case, then we believe the designation would relate to Softscape's prior designation of the testimony. Please confirm whether you contend that your email contains SuccessFactors confidential information, and if so, identify such confidential information.

Second, in light of what has previously occurred in our short tenure and what we just learned this morning concerning a process server's repeated attempts to serve a subpoena on Mr. Kurzner at his home, we respectfully disagree with your assessment concerning SuccessFactors not engaging overly-aggressive tactics. The record speaks for itself:

On Tuesday, despite the fact that Mr. Watkins testified last week that Mr. Kurzner was a Softscape employee, an attorney from your office attempted to contact Mr. Kurzner directly without first seeking our permission. Yesterday morning, we requested that your firm cease contacting him and reconfirmed his employment status. At 10:40 a.m., you responded and asked me whether Mintz Levin would accept service of a subpoena on behalf of Mr. Kurzner and gave me two days to provide a response. However, before having a reasonable opportunity to respond to your email or otherwise confer with my client within that two-day window, at approximately 10:54 a.m. - *only fourteen minutes later* - I received a copy of a fully drafted subpoena with numerous document requests via fax. Apparently, a process server was simultaneously sent to serve Mr. Kurzner with this same subpoena.

I had hoped that we would not have to bring this unfortunate series of events to Judge Zimmerman's attention. However, unless you immediate confirm that the process server has been called off, we will be seeking an immediate telephone conference with Judge Zimmerman and obtain his opinion on the issue.

Finally, during our meet and confer with Ms. Morey and Mr. Carbajal yesterday, they committed to meeting and conferring with us over SuccessFactors' deficient responses to Softscape's document requests on Monday afternoon. However, they indicated that another member of your team would be in contact with us to confirm the exact time. Thus, we would appreciate a firm commitment today on who will be meeting and conferring with us on Monday and what time they are available on Monday. After we discuss the outstanding issues with SuccessFactors' responses to the RFPs, we will are willing to discuss any unresolved issues relating to Mr. Kurzner's media or documents.

Sincerely,
Jeffrey Ratinoff

---

**From:** Laurence Pulgram [mailto:LPulgram@Fenwick.com]
**Sent:** Wednesday, June 04, 2008 6:25 PM
**To:** Ratinoff, Jeffrey
**Cc:** Liwen Mah; Patrick Premo; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com
**Subject:** RE: SuccessFactors v. Softscape

DESIGNATED BY SUCCESSFACTORS AS
HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

Dear Mr. Ratinoff:

Thank you for your commitment to provide the documents relating to Mr. Kurzner that are within the scope of SuccessFactors' document requests and that are in Softscape's possession, custody or control. We do need your and/or his assurance that his media have been mirrored or preserved for both his pre- and post-employment periods. If you are not able to give that on his behalf as to his media not controlled by Softscape, we will interact with him directly. Because you asked that we proceed through Softscape, we went to you first. Since effective

preservation requires immediate action (indeed, in our view it should have occurred long ago), we renew our request for your response as to preservation of records within two days.

REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED
REDACTED

REDACTED

REDACTED

REDACTED
REDACTED
REDACTED
REDACTED

As for your other comments, I disagree entirely with your assertion of "overly aggressive litigation tactics" or "evading" your requests. The record is very clear as to what has happened in this case so far, and I am not going to repeat it. We fundamentally disagree with your contention that documents have been produced in a reasonable time by Softscape. To the contrary, the Watkins deposition further confirmed the opposite, that innumerable key documents have been collected but withheld from production.

To its credit, however, the Mintz Levin firm has, generally, done its job in a civil and courteous way. My interactions with Mr. Davids have been entirely courteous. I intend to keep them that way, and will not rise to the bait of the ad hominem remarks in your letter. However, if you genuinely want to maintain that approach, do not ever again accuse me of sharp practices.

I await your confirmation on whether Softscape has mirror copied Mr. Kurzner's media, and whether you are able, as his counsel or otherwise, to assure that his pre-Softscape media and records have also been preserved.

Sincerely,

Laurence Pulgram

---

**From:** Ratinoff, Jeffrey [mailto:JRatinoff@mintz.com]
**Sent:** Wednesday, June 04, 2008 12:26 PM
**To:** Laurence Pulgram
**Cc:** Liwen Mah; Patrick Premo; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com
**Subject:** RE: SuccessFactors v. Softscape

Dear Mr. Pulgram:

While what you describe to be the circumstances of the ex parte communication may not have violated the letter of Rule 2-100, it certainly trampled on the spirit of that rule. It is also inconsistent with my understanding that you obtained testimony during Mr. Watkins' deposition that Mr. Kurzner was a current Softscape employee. In that regard, we have confirmed that he started at Softscape last month. Thus, it is unclear why your team felt it was appropriate to contact him directly before first obtaining permission from our office or at least inquiring

into his status. Thus, we would appreciate a further explanation as to why this happened.

With respect to your demands regarding Kurzner documents, to the extent they are covered by Plaintiff's outstanding discovery, Softscape will produce responsive documents in its possession, custody and control. To the extent his media may be covered by the Preliminary Injunction and/or the Federal Rules, and is in Softscape's possession custody or control, Softscape has and/or will comply with its obligations.

With respect to Mr. Kurzner's documents and things that relate to his prior employment with Accenture or his personal computer and documents, please: (1) explain what the relevancy is; (2) point to the outstanding document requests calling for such information; and (3) why Plaintiff believes that it would fall within Softscape's possession, custody or control.

In regard to the proposed subpoena we just received, we will discuss this with Softscape and get back to you in a reasonable period of time. However, Softscape and Mr. Kurzner obviously do not have possession custody or control of Accenture computers and documents. Also, the Court strongly encourage the parties not to engage in non-party discovery until **both parties** have had an opportunity to depose respective Rule 30(b)(6) witnesses and **both parties** have conducted some initial discovery.

I would also note that both the improper contacting of Mr. Kurzner and your follow-up demands regarding Mr. Kurzner are simply the latest examples of SuccessFactors' overly aggressive litigation tactics. In the month that we have been in this case, we have been bombarded with demands for immediate responses to inquires and complete compliance with broad discovery and document requests. My understanding is that our predecessor counsel had a similar unpleasant experience.

This type of gamesmanship and "sharp" practice is counter-productive and ultimately will create unnecessary discovery disputes and ill-will between our respective firms. As both myself and Mr. Sinclair have repeatedly informed various members of your team, we have and will continue to cooperate and comply with our discovery obligations. You and your team simply need to allow us a reasonable amount of time to do so.

I would also note that SuccessFactors does not appear to be inclined to match the frantic pace in which it has unilaterally imposed on Softscape and continues to evade our demands to meet and confer on deficiencies in Plaintiff's discovery responses and document production. This is especially the case with documents supporting Success Factors' purported damages, which raises serious doubts on the legitimacy of such claims and its various inappropriate fishing expeditions.

There is no rule that the plaintiff is entitled to obtain all of its discovery before the defendant has an opportunity to do so. Thus, on a go-forward basis, we would ask that Plaintiff take a more measured and cooperative approach to discovery and this litigation. Otherwise, we will be seeking an appropriate protective order from the Court.

Sincerely,
Jeffrey Ratinoff

---

**From:** Laurence Pulgram [mailto:LPulgram@Fenwick.com]
**Sent:** Wednesday, June 04, 2008 10:40 AM
**To:** Ratinoff, Jeffrey; Patrick Premo
**Cc:** Liwen Mah; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com
**Subject:** RE: SuccessFactors v. Softscape

Dear Mr. Ratinoff,

Fenwick abides by the Rules of Professional Conduct and did so here. That rule limits attorney contacts with a person known to be represented by another counsel in the matter. Mr. Kurzner is publicly listed as an employee of Accenture, not Softscape, and has commented on this litigation on the internet purportedly as an Accenture employee. When Fenwick called him (at a number not appearing to be related to Softscape in any way), the first question asked to him was whether he was employed by Softscape. When he answered that he was, Fenwick terminated the conversation on the spot--as you know if you talked with Mr. Kurzner. There was no improper contact.

Assuming Mr. Kurzner is a Softscape employee, please confirm within the next two days (i) that all of his hard drives and other media have been mirror imaged, including those from prior to his employment date, (ii) that all of his documents relating to SuccessFactors, his change of employment, or the Presentation have been preserved, and (iii) that responsive documents from Mr. Kurzner are being provided in response to SuccessFactors document requests. Further, please advise whether counsel for Softscape will be representing Mr. Kurzner individually and will accept a subpoena to him.

Sincerely,

Laurence Pulgram

**LAURENCE PULGRAM**
Fenwick & West LLP
Partner, Litigation Group
☎ (415) 875-2390
📠 (415) 281-1350
✉ lpulgram@fenwick.com

---

**From:** Ratinoff, Jeffrey [mailto:JRatinoff@mintz.com]
**Sent:** Wednesday, June 04, 2008 8:47 AM
**To:** Patrick Premo
**Cc:** Laurence Pulgram; Liwen Mah; Henry Carbajal; Candace Morey; Sinclair, Bryan; Taylor, Robert; rdavids@davids-cohen.com
**Subject:** SuccessFactors v. Softscape

Patrick:

We learned this morning that a member of your litigation team directly contacted Larry Kurzner, a current Softscape employee, without first obtaining Mintz Levin's prior consent. We hope that this was an inadvertent oversight of Cal. R. Prof. Conduct 2-100, and that in the future, any attempt to communicate with a Softscape employee will be done through our office.

Thank you for your prompt attention to this matter.

Sincerely,
Jeffrey Ratinoff

**Jeffrey M. Ratinoff | Of Counsel**
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
1400 Page Mill Rd. | Palo Alto, CA 94304
Main: 650.251.7700 | Direct: 650.251.7755 | Fax: 650.251.7739
E-mail: jratinoff@mintz.com
Web: www.mintz.com

---------------------------------------------------------------

IRS CIRCULAR 230 NOTICE

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax

penalties or in connection with marketing or promotional materials.

-------------------------------------------------------------

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended
for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you
are not the intended recipient, or the person responsible for delivering the e-mail to the intended
recipient, be advised you have received this message in error and that any use, dissemination,
forwarding, printing, or copying is strictly prohibited. Please notify Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo immediately at either (617) 542-6000 or at ISDirector@Mintz.com, and destroy all copies of
this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.

-------------------------------------------
IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick &
West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed
herein.
-------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential. It is intended to be read only by the individual or entity to
whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this
message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and
delete or destroy any copy of this message.

-------------------------------------------------------------

IRS CIRCULAR 230 NOTICE

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this
communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax
penalties or in connection with marketing or promotional materials.

-------------------------------------------------------------

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended
for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you
are not the intended recipient, or the person responsible for delivering the e-mail to the intended
recipient, be advised you have received this message in error and that any use, dissemination,
forwarding, printing, or copying is strictly prohibited. Please notify Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo immediately at either (617) 542-6000 or at ISDirector@Mintz.com, and destroy all copies of
this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.

-------------------------------------------------------------

IRS CIRCULAR 230 NOTICE

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this
communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax

penalties or in connection with marketing or promotional materials.

------------------------------------------------------------------

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended
for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you
are not the intended recipient, or the person responsible for delivering the e-mail to the intended
recipient, be advised you have received this message in error and that any use, dissemination,
forwarding, printing, or copying is strictly prohibited. Please notify Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo immediately at either (617) 542-6000 or at ISDirector@Mintz.com, and destroy all copies of
this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.

EXHIBIT J

## FENWICK & WEST LLP

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

July 16, 2008

HENRY Z. CARBAJAL III

EMAIL HCARBAJAL@FENWICK.COM
DIRECT DIAL (650) 335-7193

**VIA ELECTRONIC AND U.S. MAIL**

Jeffrey Ratinoff, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
1400 Page Mill Road
Palo Alto, CA  94304-1124

Mintz Levin
Palo Alto

JUL 18 2008

RECEIVED

Re:   *SuccessFactors, Inc. v. Softscape, Inc.,*
      Case No.: C-08-1376 (CW)

Dear Jeffrey:

I write in response to your letter received yesterday afternoon regarding scheduling of a meet and confer session for Thursday, July 17, 2008 at 2:00 p.m. at your Palo Alto offices. Therein, you argued without any degree of specificity that Softscape refuse to meet and confer on some issues raised for the parties' July 10, 2008 conference, issued inadequate, conclusory responses on additional issues and propose further delays on still more issues with the familiar refrain that at some unspecified time in the future you will provide SuccessFactors with definitive answers.

As a threshold matter, the parties *did not* agree that no further meet and confer sessions would be held on issues raised for the July 10, 2008 conference. You unilaterally suggested it, but that does not make it an agreement. SuccessFactors never agreed to forego discussion of issues raised for the July 10 conference. Indeed, Softscape should have been unequivocally apprised of this fact once it received my letter the next day requesting a meet and confer date on held-over issues. As you know, Judge Zimmerman's July 7, 2008 discovery order required a meet and confer session encompassing all pending disputes, and to the extent the disputes remained unresolved after the session, the parties would have leave to move to compel. While you may certainly choose to stand on your discovery responses, you cannot refuse to discuss issues we raised. To the extent you have done so in your letter yesterday, for example, on the remaining disputed responses to SuccessFactors' Second Set of Requests for Production, we would like to confirm this on the record tomorrow. We can then apprise the Court of Softscape's refusal to meet and confer according to its July 7 order, despite SuccessFactors raising the issues in advance of the July 10, 2008 conference.

With respect to your attempts to address the residual issues listed in my July 11, 2008 letter, your letter yesterday is largely ineffective.

Jeffrey Ratinoff, Esq.
July 16, 2008
Page 2

## Concerns With Softscape's Document Production

      1.     We understand that you and your client do not see the need to further meet and confer. However, the Court ordered lead trial counsel to meet and confer on pending disputes. It did not carve out items that had been discussed (but not resolved) previously by other attorneys on each team. Nevertheless, we can note Softscape's refusal in our motion to compel. Let us know if you and your client will maintain your current position.

      2.     Your response to the issue regarding confirmation that Softscape is producing all responsive documents from its computers and servers does not answer the inquiry. We asked whether your client will be producing responsive documents from all of Softscape's computers and servers, not whether you were searching them. Moreover, you did not confirm the search of and production of documents from the specific servers identified in my July 11 letter. Your cursory response is inadequate. This also highlights the problem with Softscape's attempt to refuse to meet and confer and address the issue in general terms. We notified Softscape of issues we intended to raise with as much simplicity, and as efficiently, as possible. For example, with respect to the particular servers mentioned, we also would like to know whether the current version of the Presentation from the SRC server will be produced. We would also like to discuss access to bit-for-bit copies of the SRC server and Dave Watkins' hard drive. The need for this is to search for the files themselves and to conduct a forensic examination of any deletions/changes to those files. We also wanted to discuss the need for Softscape to search backup tapes for versions of the Presentation. The way the myriad issues had to be raised for the July 10 conference necessarily meant the omission of details that would be included in an in-person meet and confer session. Again, we can simply note Softscape's refusal to meet and confer in our motion to compel. Let us know if Softscape will maintain its position.

      3.     Your answer is a non-sequitur. In your July 13, 2008 letter you indicated that the additional search terms the parties agreed upon would be applied on a "go forward basis." We would expect that you would run the agreed upon search terms. What you have not confirmed is that you ran the terms for custodians, .pst files, etc. *that you had already searched prior to June 6,* for example documents from Mr. Faust and Mr. Watkins.

      4.     Your response is inadequate. We issued a letter on June 12, 2008 regarding documents identified in Mr. Watkins' deposition, listing specific documents and categories of documents with pincites to the deposition testimony. You should be able to tell us whether you will produce these documents. SuccessFactors should not have to wait until August 1 for this notification and thereafter have to start the process all over again by identifying documents Softscape did not produce and then guess as to why. With respect to documents identified within your interrogatory responses, we expect that Softscape will produce all documents referred to therein. Again, Softscape should be able to tell us whether it will produce these documents without delay past August 1. Moreover, whatever you have produced to partially satisfy these requests to date, you should identify by Bates range, which we requested on June 12.

Jeffrey Ratinoff, Esq.
July 16, 2008
Page 3

## Phone Records

1.      While your commitment to produce corporate phone records by July 21 is appreciated, it has been more than a month since SuccessFactors raised the issue. Moreover, Softscape provides no explanation for why it is waiting until July 21 to produce these responsive documents for the tier 1 custodians when their documents were due yesterday.

2.      Some mobile phone records for six of nine employees with Softscape-paid mobile phones were produced on June 20. Softscape provides no explanation for why it is waiting a month to provide phone records for Lillian Watkins and Mike Brandt, or why it took a month to notify us that Ms. McFee had made no phone calls between 5:00 p.m. EST on March 4 and 7:00 a.m. on March 5.

3.      Softscape's redaction of information within produced, and we assume within soon to be produced, phone records based on fear we will use the numbers for an improper purpose is an offensive allegation with no basis in fact. You presented the same argument last month during our June 4 meet and confer session and we took offense because the allegation has no basis. Although we will not detail how we plan to utilize the information as a matter of litigation strategy, we can assure Softscape that the information will not be used for any harassing, or other illegal or unethical purpose. Continued "redaction" of requested information by Softscape is thus unnecessary.

## Kurzner Documents

You have presented your explanation regarding Accenture before, but that does not answer the question that was asked. We asked for confirmation that (1) Mr. Kurzner's documents were preserved, and (2) his hard drive has been imaged. A representation that Mr. Kurzner has taken "reasonable measures to preserve his data" answers neither inquiry, and makes it appear as if some documents were not preserved. Clarification of this subject should be included in a meet and confer session. Alternatively, we can note Softscape's refusal to meet and confer in our motion to compel.

## Instant Messaging Records

Here, as has often occurred, Softscape's response is further delay and a promise to get back to us with an answer. We have been inquiring as to this issue for months, as you acknowledge, without a definitive answer from Softscape. Please set a firm date for the confirmation from your consultants and your update on reconstruction possibilities. Otherwise, we will note Softscape's refusal to meet and confer in our motion to compel.

## Deposition Dates

Discussion of the continuation of Mr. Watkins' deposition and the scheduling of other deposition dates were on the table for discussion last Thursday and we received no proposed

Jeffrey Ratinoff, Esq.
July 16, 2008
Page 4

dates from Softscape. This issue should have been resolved last week, but we can finalize these dates during our July 17, 2008 meeting. To do so, we need Softscape's proposed dates today. We understand from Bryan Sinclair's e-mails this week that you have been consulting with Mr. Watkins regarding Softscape's now-untimely document production. It should thus be no trouble for Softscape to confirm a deposition date with him.

## Insurance Policies

Softscape assured us that the insurance policies would be produced this week. We are not prepared to receive the policies after SuccessFactors' Rule 30(b)(6) deposition. The policies should have been delivered in May. We expect to receive the policy on July 17, 2008, when we meet.

## Issues Deferred by Softscape for Client Consultation

For several issues raised on July 10, Softscape requested that it be allowed to consult with its client and that it would give us its final position by yesterday. We are disappointed that Softscape has now responded without any further effort at compromise on any deferred issue. It does not appear to us that you consulted with your client in good faith on the deferred issues, and that you requested time for client consultation as either a delaying tactic or to avoid having to articulate Softscape's unreasonable positions on the record. Either rationale is unacceptable and will be noted in our motion to compel.

## Scheduling a Conference on Interrogatory Responses

To be clear, we are unwilling to agree to discuss the interrogatory responses during our July 17 meeting because there are numerous other discovery issues that predate and have been pending for weeks. Our position on the issue is clear. You requested a meet and confer conference on July 9 and we responded promptly. Five days later Softscape sent us an 11-page letter brief of grievances, citing numerous cases. Your explanation as to why this does not affect SuccessFactors' ability to meet and confer is rife with contradictions. You first contend that the issues raised by Softscape are "simple." If so, there was no need to issue an 11-page letter brief to point out Softscape's complaints. Moreover, you spend another two and a half pages in your letter yesterday explaining Softscape's complaints. Either the issues are not simple and should have been explained by letter from Softscape well in advance of proposing a meet and confer conference, or Softscape is simply issuing letter briefs as "make work" for SuccessFactors' attorneys.

Your other contention that Softscape does not need to respond in writing to the letter is contradictory and a non-sequitur. On page 11 of your July 14 letter brief you asked for a response to any or all of the objections you raised in terms of agreement to withdraw or amend *in advance of the meet and confer session*. Moreover, the point is not just that SuccessFactors be afforded adequate time to respond to the letter as a matter of form and professional courtesy, but that it have adequate time to look into the issues raised to be able to be prepared to discuss them,

Jeffrey Ratinoff, Esq.
July 16, 2008
Page 5

including client consultation if necessary, and allow for a meaningful meet and confer session. In this regard, your rigid interpretation of Judge Zimmerman's order regarding meet and confer scheduling has enormous potential for abuse. Under your interpretation, SuccessFactors can schedule a meet and confer on Softscape's responses to our Fourth Set of Requests for Production on July 17th when we receive the responses, wait to identify any of the precise complaints until two days prior to the conference or less, send a letter of complaint of unlimited length, and demand a conference within five days of our July 17th request. We have no doubt that if we adopted such a procedure going forward, Softscape would request more time to respond and would consider raising the issue with Judge Zimmerman. Moreover, should the parties persist in the procedure Softscape is now promulgating, we can look forward to many more unproductive meet and confer sessions, where the answers are invariably "I need to look into the issue further" or "I need to talk to my client," resulting in further delay and inefficiency due to inadequate time to analyze issues in advance of meet and confer conferences. At bottom, Softscape prematurely requested a meet and confer on interrogatory responses in light of its letter brief, and the conference on this subject should take place after SuccessFactors has adequate opportunity to look into and respond to the issues you have raised.

We look forward to meeting with you tomorrow at 2:00 p.m. on held-over issues from the parties' July 10 conference. Thank you for your cooperation.

Very truly yours,

FENWICK & WEST LLP

Henry Z. Carbajal III

hzc/ss

cc:    Laurence F. Pulgram, Esq. (via electronic transmission)
       Patrick E. Premo, Esq. (via electronic transmission)
       Liwen Mah, Esq. (via electronic transmission)
       Robert P. Taylor, Esq. (via electronic transmission)
       Bryan J. Sinclair, Esq. (via electronic transmission)

EXHIBIT K

# Ratinoff, Jeffrey

| | |
|---|---|
| **From:** | Patrick Premo [PPremo@fenwick.com] |
| **Sent:** | Monday, June 02, 2008 5:54 PM |
| **To:** | Ratinoff, Jeffrey |
| **Cc:** | Sinclair, Bryan; Laurence Pulgram; Liwen Mah; Henry Carbajal |
| **Subject:** | Third Party Subpoena to Courtyard Marriott |
| **Attachments:** | Marriott.pdf |

Jeff:

I wanted to follow up on our prior meet and confer meeting and your email sent earlier this afternoon. Attached is the written response and only document that we received in response to SuccessFactors' subpoena to the Courtyard Marriott.

-Patrick

Patrick E. Premo
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

Direct: 650.335.7963
Cell: 408.315.1321
Fax: 650.938.5200
----------------------------------------
IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
----------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential. It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

8/5/2008



## LAW DEPARTMENT
## FACSIMILE COVER SHEET

**DATE:**      April 3, 2008                    **NUMBER OF PAGES: 2**
                                               (INCLUDING COVER SHEET)

**TO:**   Dennis Faigal, Esq.                   **FAX No.  650-938-5200**

---

**FROM:**    Randi Neches                    **FAX:**      301-380-6727
                                            **PHONE:**    301-380-6613

**SUBJECT:**   *IP address*

**MESSAGE:**  Please see attached.

---

Important Notice

This information contained in this facsimile transmission is protected by the attorney-client and/or the attorney work product privilege. It is strictly confidential and is intended solely for the use of the recipient identified above. If you are not the intended recipient, you are hereby notified that reading, copying, or distributing this transmission is prohibited. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmittal in error, please notify the sender by telephone call, collect, and return this transmission in its entirety by mail. All postage will be reimbursed. Thank you.



Marriott International, Inc.          Marriott Drive
Corporate Headquarters               Washington, D.C. 20058

                                     Randi Neches
                                     Paralegal
                                     Litigation
                                     Phone: 301/380-6613
                                     Fax: 301/380-6727
                                     E-mail: randi.neches@marriott.com

                          April 3, 2008


**VIA FAX (650-938-5200)**

Dennis Faigal, Esq.
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041

        Re:    Subpoena – IP Address 74.94.170.178

Dear Mr. Faigal:

        I wanted to follow-up with some additional information found regarding the IP address 74.94.170.178. This address is connected to the Courtyard Marriott, Waltham, Ma. This property is operated pursuant to a franchise agreement and in order to obtain any information, you will need to contact the property directly. The hosting address is Comcast, and if you need to obtain any associated logs, please contact them directly, as well.

        Consequently, Marriott International, Inc. does not have any additional documentation in its possession responsive to your subpoena.


                          Sincerely,

                          Randi Neches

                          Randi Neches

EXHIBIT L

## Ratinoff, Jeffrey

| | |
|---|---|
| **From:** | Patrick Premo [PPremo@fenwick.com] |
| **Sent:** | Tuesday, June 03, 2008 12:31 PM |
| **To:** | Ratinoff, Jeffrey |
| **Cc:** | Sinclair, Bryan; Wagner, Benjamin; Laurence Pulgram; Liwen Mah; Henry Carbajal |
| **Subject:** | RE: Third Party Subpoena to Courtyard Marriott |

Jeff, we have not issued any subsequent subpoenas to Comcast. You have have what we have. As for your second question, we will prepare the initial draft of the Joint CMC Statement and will send for your review once completed.

-Patrick

**From:** Ratinoff, Jeffrey [mailto:JRatinoff@mintz.com]
**Sent:** Tuesday, June 03, 2008 9:14 AM
**To:** Patrick Premo
**Cc:** Sinclair, Bryan; Wagner, Benjamin; Laurence Pulgram; Liwen Mah; Henry Carbajal
**Subject:** RE: Third Party Subpoena to Courtyard Marriott

Patrick,

Thanks for getting Marriot's response to me. Have you made any effort to exhaust the additional avenues with Comcast as suggested by the Courtyard Marriot?

Also, we have June 10 as the date that the parties' joint case management statement is due. As the plaintiff, do you want to take a crack at putting that together for our review?

Thanks,
Jeff

**From:** Patrick Premo [mailto:PPremo@fenwick.com]
**Sent:** Monday, June 02, 2008 5:54 PM
**To:** Ratinoff, Jeffrey
**Cc:** Sinclair, Bryan; Laurence Pulgram; Liwen Mah; Henry Carbajal
**Subject:** Third Party Subpoena to Courtyard Marriott

Jeff:

   I wanted to follow up on our prior meet and confer meeting and your email sent earlier this afternoon. Attached is the written response and only document that we received in response to SuccessFactors' subpoena to the Courtyard Marriott.

-Patrick

Patrick E. Premo
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

8/5/2008

Direct: 650.335.7963
Cell:  408.315.1321
Fax:  650.938.5200
--------------------------------------------
IRS Circular 230  Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
--------------------------------------------
ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

---------------------------------------------------------------

IRS CIRCULAR 230 NOTICE

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties or in connection with marketing or promotional materials.

---------------------------------------------------------------

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the e-mail to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify Mintz, Levin, Cohn, Ferris, Glovsky and Popeo immediately at either (617) 542-6000 or at ISDirector@Mintz.com, and destroy all copies of this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.

8/5/2008

EXHIBIT M

Asia Pacific Network Information Centre

**APNIC** | Info & FAQ | Resource services | Training | Meetings | Membership | Documents | Whois & Search | Internet community

You're here: Home » Database

Quick Links

### Query the APNIC Whois Database

## Need help?

General search help

Help tracking spam and hacking

To assist you with debugging problems, this whois query was received from IP Address [ ]. Your web client may be behind a web proxy.

```
% [whois.apnic.net node-2]
% Whois data copyright terms    http://www.apnic.net/db/dbcopyright.html

inetnum:      203.117.152.96 - 203.117.152.127
netname:      TBWA-Singapore-Pte-Ltd
country:      SG
descr:        TBWA Singapore Pte Ltd
admin-c:      NS110-AP
tech-c:       NS110-AP
status:       ASSIGNED NON-PORTABLE
changed:      ipadmin@starhub.com 20071116
mnt-by:       MAINT-AS4657-AP
source:       APNIC

person:       NOC SHI
nic-hdl:      NS110-AP
e-mail:       noc@starhub.com
address:      19 TaiSeng Drive
address:      Singapore 535222
phone:        +65 6825 7878
fax-no:       +65 6821 6012
country:      SG
changed:      ipadmin@starhub.com 20060607
mnt-by:       MAINT-AS4657-AP
source:       APNIC
```

**Bold: Object type.**

Underlined: Primary key(s).

Hyperlinks: Searchable Attributes.

2 records found for '203.117.152.104'

Search for 203.117.152.104     Search

**IP address lookups**      **Miscellaneous queries**

○ **-I**  1st level less specific          **-i**  Inverse attributes        | None |

○ **-L**  All less specific

                                           **-T**  Object types       | All<br>as-block<br>as-set |

○ **-m**  1st level more specific

○ **-M**  All more specific                **Query hints**

                                                Include "AS" in front of an AS number.
                                                Example: AS4808

○ **-x**  Exact match only
                                                Include "-t" (template only) or "-v" (template and
                                                description) in front of an object name to view the
                                                template
☐ **-d**  Associated reverse domain              Example: -t inetnum

## Further information

[APNIC Whois Database query options](#)
[APNIC Whois Database objects resource guide](#)
[Invalid database contact report form](#)

Last modified 07-Feb-2002 04:29:00 EST | © 1999 - 2002 APNIC Pty. Ltd. Comments to:
[webmaster@apnic.net](mailto:webmaster@apnic.net)

# EXHIBIT N



Asia Pacific Network Information Centre

**APNIC** | Info & FAQ | Resource services | Training | Meetings | Membership | Documents | Whois & Search | Internet community

You're here: Home » Database

Quick Links

### Query the APNIC Whois Database

### Need help?

General search help

Help tracking spam and hacking

To assist you with debugging problems, this whois query was received from IP Address [ ]. Your web client may be behind a web proxy.

```
% [whois.apnic.net node-2]
% Whois data copyright terms    http://www.apnic.net/db/dbcopyright.html
```

```
inetnum:      61.133.87.224 - 61.133.87.239
netname:      YTLYTELE-COM
descr:        Yantai laiyang telecom bureau
country:      CN
admin-c:      DS95-AP
tech-c:       DS95-AP
mnt-by:       MAINT-CNCGROUP-SD
changed:      ip@sdinfo.net 20031010
status:       ASSIGNED NON-PORTABLE
source:       APNIC

route:        61.133.0.0/17
descr:        CNC Group CHINA169 Shandong Province Network
country:      CN
origin:       AS4837
mnt-by:       MAINT-CNCGROUP-RR
changed:      abuse@cnc-noc.net 20060118
source:       APNIC

person:       Data Communication Bureau Shandong
nic-hdl:      DS95-AP
e-mail:       ip@sdinfo.net
address:      No.77 Jingsan Road,Jinan,Shandong,P.R.China
phone:        +86-531-6052611
fax-no:       +86-531-6052414
country:      CN
changed:      ip@sdinfo.net 20050330
mnt-by:       MAINT-CNCGROUP-SD
source:       APNIC
```

**Bold: Object type.**
Underlined: Primary key(s).
Hyperlinks: Searchable Attributes.

### 3 records found for '61.133.87.226'

**Search for** 61.133.87.226                          | Search |

**IP address lookups**                                **Miscellaneous queries**

○ **-l**   1st level less specific                    **-i**   Inverse attributes   | None |

○ **-L**   All less specific
                                                     **-T**   Object types   | All \n as-block \n as-set |
○ **-m**   1st level more specific

○ **-M**   All more specific                         **Query hints**

                                                         Include "AS" in front of an AS number.
○ **-x**   Exact match only                              Example: AS4808

                                                         Include "-t" (template only) or "-v" (template and
☐ **-d**   Associated reverse domain                     description) in front of an object name to view the
                                                         template
                                                         Example: -t inetnum

## Further information

APNIC Whois Database query options
APNIC Whois Database objects resource guide
Invalid database contact report form

Last modified 07-Feb-2002 04:29:00 EST | © 1999 - 2002 APNIC Pty. Ltd. Comments to:
webmaster@apnic.net