# MINTZ LEVIN

1400 Page Mill Road
Palo Alto, California  94304-1124
650-251-7700
650-251-7739 fax
www.mintz.com

**Robert P. Taylor** | 650 251 7740| RPTaylor@mintz.com

August 13, 2008

The Honorable Bernard Zimmerman
U.S. District Court for the Northern District of California
450 Golden Gate Ave., Courtroom G, 15th Floor
San Francisco, CA  94102

Re:     *SuccessFactors, Inc. v. Softscape, Inc.*; Case No.: CV 08-1376 CW (BZ)

Dear Judge Zimmerman:

      Defendant Softscape, Inc. ("Softscape") submits this letter brief in response to the August 11, 2008, letter filed by Plaintiff SuccessFactors, Inc. ("Plaintiff") seeking an order either requiring Softscape to search computer backup tapes or allow "forensic analysis" of mirror images already in existence, all in pursuit of the "final" version of the PowerPoint Presentation that is at issue in this case.  Without addressing Plaintiff's conjecture and posturing, Softscape will focus on the facts surrounding Softscape's searches and production, many of which are reflected in Softscape's Opposition to Plaintiff's Motion to Compel filed today.

      Softscape's search for responsive documents was conducted on forensically created images of all servers and computers where relevant documents might reside.  There is no need to conduct a redundant search of backup tapes for the same computers during the same time period for the same information.  Softscape has explained to Plaintiff's counsel on multiple occasions that Instant Messages are not saved or stored on any of the computers in question.  Likewise, because Instant Messages use only the local RAM of a user's computer, Softscape's corporate servers (and their back-up tapes) would not contain any such information.  Indeed, to deal with the possibility that a computer might have been configured by the user to save his or her IMs, Softscape specifically searched for XML files (MSN's format), .html files (for AIM) and .dat files (for Yahoo).

      With respect to "contemporaneous emails" that Plaintiff's letter references, all such e-mails were already captured on the forensically imaged Softscape server that was the subject of a search.

      With respect to the Presentation (or "SIPP" as Softscape has identified the internal document), Softscape searched every forensic image in its possession, custody or control within which the "Naked Truth" PowerPoint Presentation ("the Presentation") might reside.  As documented more fully in Softscape's opposition to Plaintiff's pending motion, Softscape has produced every version of the Presentation that it located through those searches and in their native format that contains the "metadata" associated with those files.  Softscape does not have a document management system that creates logs, retains old versions of documents, or retains any related metadata beyond that associated with the Windows Operating System and PowerPoint program.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

The Honorable Bernard Zimmerman
August 13, 2008
Page 2

Thus, there are no logs to track or any features in Softscape's servers where additional versions of the SIPP might have been saved.[1]

      Plaintiff complains that none of versions of the SIPP produced by Softscape is identical to the Presentation distributed by John Anonymous. Softscape cannot locate or produce things that it does not have. Plaintiff's speculation that other versions of the SIPP may still exist, despite Softscape's efforts to find them, is insufficient to justify obtaining expensive, highly intrusive and marginally probative discovery. *See Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144 (D.Mass. 2005) (refusing to allow plaintiff to conduct an intrusive forensics examination of defendants' email system where plaintiff provided no reliable or competent information to show that defendants' representations regarding a critical e-mail were misleading or substantively inaccurate).

      Softscape has already expended substantial sums to image and preserve data resident on multiple servers and computers. Extensive searches have been conducted on those images for responsive documents. Given that the images were taken immediately after the period of the alleged misconduct and given that Softscape does not deny creating the SIPP, it would be enormously unfair to Softscape to impose the further cost of what Plaintiff seeks. The cost is highly disproportionate to the value of what such a search is likely to reveal. Softscape would effectively have to restore its entire company computer system in a separate environment at an extremely high cost in man-hours and money and then conduct the same search and review that it is just concluding.[2] The likelihood of the backup tapes revealing any different or additional information than what has already been produced is extremely low (if not zero). The Court should not compel production of backup tapes or any further efforts to locate additional documents. *See Oxford House, Inc. v. City of Topeka,* 2007 WL 1246200, *4-*5 (denying motion to compel information contained on back-up tapes where cost of retrieval far exceeds likelihood of retrieving relevant communications).

      Softscape requests that the Court deny Plaintiff's request for a conference and/or deny Plaintiff's request for leave to file a motion to compel.

Respectfully submitted,

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

*/s/ Robert P. Taylor*

Robert P. Taylor

4404812v.1

---

[1] With respect to the "attendee list" of a SFI sales dinner, Softscape has produced the document it received from a former Accenture employee. It has searched for, and agreed to produce, any other saved versions of the "attendee list" that it located on any of its imaged media.

[2] Indeed, the estimated economic burden associated with the collection and assimilation of back-up tapes (which contain redundant information to that existing on the forensically imaged servers) and the search of such backup tapes is well in excess of $150,000.